

SIDLEY AUSTIN LLP
787 SEVENTH AVENUE
NEW YORK, NY 10019
+1 212 839 5300
+1 212 839 5599 FAX

AMERICA • ASIA PACIFIC • EUROPE

+1 212 839 7336
JKUSTER@SIDLEY.COM

August 29, 2023

**Via ECF**
Hon. John P. Cronan
United States District Court
Southern District of New York
500 Pearl Street, Room 1320
New York, NY 10007

Re:   *NCR Corporation v. B.A.T Industries p.l.c.,* No. 1:23-cv-01172-JPC

Dear Judge Cronan:

This firm represents Plaintiff NCR Corporation ("NCR") in the above-referenced action. In accordance with Rule 6(A) of Your Honor's Individual Rules and Practices in Civil Cases, NCR respectfully requests a pre-motion conference in anticipation of filing: (i) a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c); (ii) a motion to dismiss Defendant B.A.T Industries p.l.c. ("BAT")'s counterclaims under Fed. R. Civ. P. 12(b)(6); and (iii) a motion to strike BAT's affirmative defenses.

**NCR's Complaint**

NCR's Complaint centers on BAT's unambiguous contractual obligation to contribute to environmental cleanup costs at the Kalamazoo River Superfund site. In 1978, BAT purchased two paper mills (together the Appleton Papers Division or "APD") from NCR. *See* Complaint ("Compl.") Dkt. 1, ¶ 16. BAT later would agree as part of a 1998 Confidential Settlement Agreement ("CSA") to share cleanup costs with NCR at any sites where allegations of contamination involved APD. Specifically, the CSA requires BAT to contribute to cleanup costs at "Future Sites," which are defined as:

> . . . any facility, property, or location . . . alleged to be contaminated with Hazardous Substances as a result, in whole or in part, of the manufacture, recycling, deinking, or repulping of any amount of PCB[1]-containing NCR Paper brand carbonless paper that was manufactured utilizing the assets that were the subject of the Purchase Agreement [of the APD].

Compl. ¶ 27. Under the CSA, BAT agreed to joint and several liability for 55 percent of costs relating to Future Sites, and NCR agreed to liability for the remaining 45 percent, up to the first $75 million in costs. *Id.* ¶¶ 22, 23, 28. The parties agreed to arbitrate the allocation of costs beyond that threshold, with an arbitration panel subsequently ruling that BAT would be liable for 60 percent, and NCR for 40 percent, of all future costs beyond $75 million. *Id.* ¶¶ 5, 23. None of these facts are in dispute. *See* Answer ("Ans."), Dkt. 21 ¶¶ 5, 23, 28; BAT Counterclaims ("CC"), Dkt.

---

[1] "PCBs" are polychlorinated biphenyls, a class of chemical found in the carbonless copy paper that the APD paper mills manufactured.

21 ¶ 53.

As set forth in NCR's Complaint, the Kalamazoo River site became a Future Site in 2010, when Georgia-Pacific Consumer Products LP ("Georgia-Pacific") commenced a lawsuit against NCR and others seeking to allocate responsibility for contamination of the Kalamazoo River site. Compl. ¶ 59. Georgia-Pacific alleged that NCR was partially responsible for Kalamazoo contamination because the two APD mills acquired by BAT had sold PCB-laden paper remnants, known as "broke," to recycling mills located along the Kalamazoo River, resulting in the discharge of waste containing PCBs in the Kalamazoo River. *Id.* ¶¶ 38-39.[2]

Accordingly, BAT's contribution obligations under the CSA were triggered by Georgia-Pacific's allegations, and NCR seeks a declaration that the Kalamazoo River is a "Future Site," for which BAT is obligated to pay its share of the expected hundreds of millions of dollars of investigation and cleanup. *Id.* ¶¶ 8, 65.

### NCR's Anticipated Motion for Judgment on the Pleadings

The CSA is unambiguous and covers the precise scenario at issue here—allegations of contamination resulting, at least in part, from the manufacture and recycling of paper made by the APD mills. Indeed, in its Answer (filed on June 23), BAT did not dispute the validity of the CSA, the allegations summarized above, or otherwise even contend that its terms are ambiguous, admitting that its terms "speak for themselves." Ans. ¶¶ 5, 22-28. BAT further admits that the CSA applies "to *potential liabilities* arising out of the APD business that was acquired by BAT." CC ¶ 22 (emphasis added).

NCR therefore intends to move under Rule 12(c) for judgment on the pleadings as to its declaratory judgment claim. Courts within the Second Circuit regularly grant judgment on the pleadings in similar circumstances. *See e.g., Capital World Trading, LLC v. Next Up Funding, Inc.*, No. 11-cv-4136, 2012 WL 601073, at *2-3 (S.D.N.Y. Feb. 23, 2012) (granting judgment on the pleadings where contract unambiguously required defendant to cover certain payments); *Neopharm Ltd. v. Wyeth–Ayerst Int'l LLC*, 170 F. Supp. 3d 612, 615 (S.D.N.Y. 2016) ("Judgment on the pleadings is particularly appropriate in a dispute regarding a breach of contract where the primary issue is determining the parties' legal rights and obligations.").

### BAT's Counterclaim and NCR's Anticipated Motion to Dismiss

Faced with unambiguous contractual liability under the CSA, BAT filed five declaratory judgment counterclaims against NCR, which NCR intends to move to dismiss.

Breach of Contract: BAT's breach of contract counterclaim is the mirror image of NCR's claim and seeks a declaration that BAT has no obligation to contribute to Kalamazoo cleanup costs. BAT's contract claim fails for the reasons outlined above.

Fraudulent Inducement and Negligent Misrepresentation: BAT alleges that the CSA is the product of fraudulent inducement and a negligent misrepresentation by NCR because NCR allegedly never disclosed to BAT that there was a likelihood that liability would arise at the

---

[2] While not required for the Kalamazoo River to be a Future Site, the district court accepted these allegations and held that APD-related broke did, in fact, contaminate the river. *See Georgia-Pacific v. NCR*, 980 F. Supp. 2d 821, 835 (W.D.Mich. 2013) (finding that "broke from [APD mills] . . . reached the [Kalamazoo] Site").

Kalamazoo River site. These claims fail for several reasons, including BAT's failure to plead: (i) any actionable statements or omissions, because the alleged misrepresentations relate to future events rather than present existing facts, and because the Future Sites language clearly contemplated the possibility of liability at Kalamazoo and other sites; (ii) any duty on NCR's part to disclose information that BAT alleges was omitted; and (iii) that BAT reasonably relied on the allegedly omitted information, notwithstanding the Future Sites language.

*In Pari Delicto*: BAT argues that NCR cannot recover under the CSA because of alleged misconduct by NCR dating back to the 1960s. However, this argument woefully misconstrues the *in pari delicto* doctrine. Among other reasons, BAT cannot state an *in pari delicto* counterclaim because BAT contends it is an innocent party, whereas *in pari delicto* applies to two parties at mutual fault for one particular harm. *See BrandAid Mktg. Corp. v. Biss,* 462 F.3d 216, 218 (2d Cir. 2006). In addition, the wrongs that BAT accuses NCR of committing, even if true, would be wholly distinct from the breach of contract that NCR has alleged against BAT. *See ImagePoint, Inc. v. JPMorgan Chase Bank, Nat. Ass'n*, 27 F. Supp. 3d 494, 515 (S.D.N.Y. 2014) (finding *in pari delicto* did not apply because "the alleged misconduct of [Plaintiff] has nothing to do with the claims in this case . . .").

Public Policy: BAT argues that NCR cannot recover under the CSA because any such recovery would constitute indemnification for punitive damages, which is against New York public policy. This counterclaim must be dismissed for failing to state a claim. BAT's only basis for contending that its contributions to Kalamazoo cleanup costs would equate to indemnification for punitive damages is its own conclusory and self-serving definition of punitive damages; BAT does not allege that any court has actually imposed punitive damages on NCR and that BAT is indemnifying NCR for those damages. BAT's payment obligations arise from a contractually-mandated split of costs, not a punitive damages award issued by a court of law.

### **NCR's Motion to Strike BAT's Affirmative Defenses**

NCR also intends to move to strike BAT's eight affirmative defenses, many of which overlap entirely with its counterclaims or otherwise do not contain sufficient information to "provide fair notice of the nature of the defense." *Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.,* 16-cv-2767, 2016 WL 6906583, at *7 (S.D.N.Y. Nov. 21, 2016).

\*   \*   \*

NCR therefore respectfully requests a pre-motion conference regarding these motions. If granted, these motions will lead to significant efficiencies, disposing of the case without the need for discovery. NCR is also prepared to proceed without a conference if the Court determines a conference to be unnecessary.

NCR proposes the following briefing schedule: NCR's opening brief to be submitted within 14 days of the Court's pre-motion determination; BAT's opposition due 28 days thereafter; NCR's reply due 21 days after BAT's opposition.

Respectfully submitted,

/s/ John J. Kuster
John J. Kuster

cc:   Counsel of record (via ECF)