**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NCR CORPORATION,

                Plaintiff,

    v.

B.A.T INDUSTRIES p.l.c.,

                Defendant.

Case No.: 1:23-cv-1172-JPC

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF NCR CORPORATION'S MOTION FOR JUDGMENT ON THE PLEADINGS, MOTION TO STRIKE AFFIRMATIVE DEFENSES, AND MOTION TO DISMISS COUNTERCLAIMS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................... 2

      A.     BAT's Purchase of APD From NCR ........................................................ 2

      B.     Fox River Cleanup ................................................................................... 2

      C.     The CSA .................................................................................................. 3

      D.     The Georgia-Pacific Litigation ............................................................... 4

ARGUMENT ........................................................................................................................ 6

    I.     THE COURT SHOULD GRANT JUDGMENT ON THE PLEADINGS
         ON NCR'S DECLARATORY JUDGMENT CLAIM. ......................................... 6

      A.     Relevant Legal Standards ....................................................................... 6

      B.     The Kalamazoo River is a "Future Site" Covered by the CSA for
           Which BAT is Obligated to Pay its Allocated Share. ............................... 7

      C.     BAT Cannot Manufacture Ambiguity Where There Is None. .................... 9

    II.    THE COURT SHOULD STRIKE BAT'S AFFIRMATIVE DEFENSES. .......... 11

      A.     Relevant Legal Standards ..................................................................... 11

      B.     The Court Should Strike BAT's Affirmative Defenses ........................... 12

    III.   THE COURT SHOULD DISMISS BAT'S COUNTERCLAIMS. ...................... 14

      A.     Relevant Legal Standards ..................................................................... 14

      B.     The Court Should Dismiss Count III – Constituting BAT's Mirror
           Image Contract Counterclaim. ............................................................... 14

      C.     BAT Cannot State a Claim for Fraudulent Inducement (Count I). ........... 15

      D.     BAT Cannot State a Claim for Negligent Misrepresentation (Count
           II). ......................................................................................................... 22

      E.     The Court Should Dismiss Count IV Because BAT Cannot Satisfy
           the Doctrine of *In Pari Delicto*. .......................................................... 25

      F.     BAT Cannot Satisfy The Public Policy Doctrine, So This Court
           Should Dismiss Counterclaim Count V. .................................................. 28

CONCLUSION ................................................................................................................... 29

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*Acito v. IMCERA Grp., Inc.*,
   47 F.3d 47 (2d Cir. 1995) ............................................................................15

*Amusement Indus., Inc. v. Stern*,
   786 F. Supp. 2d 758 (S.D.N.Y. 2011)..........................................................24

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................14

*Ashland Inc. v. Morgan Stanley & Co, Inc.*,
   700 F. Supp. 2d 453 (S.D.N.Y 2010)...........................................................19

*Barron Partners, LP v. LAB123, Inc.*,
   593 F. Supp. 2d 667 (S.D.N.Y. 2009).............................................15, 20, 22

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985)......................................................................................26

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................14

*In re Bernard L. Madoff Inv. Sec., LLC*,
   605 B.R. 570 (Bankr. S.D.N.Y. 2019)..........................................................26

*BrandAid Mktg. Corp. v. Biss*,
   462 F.3d 216 (2d Cir. 2006)..........................................................................26

*Cap. World Trading, LLC v. Next Up Funding, Inc.*,
   No. 11-cv-4136, 2012 WL 601073 (S.D.N.Y. Feb. 23, 2012) .....................6

*Citibank, N.A. v. Morgan Stanley & Co. Int'l, PLC*,
   724 F. Supp. 2d 398 (S.D.N.Y. 2010).....................................................6, 10

*Cleveland v. Caplaw Enters.*,
   448 F.3d 518 (2d Cir. 2006)............................................................................6

*Concord Cap. Mgmt., LLC v. Fifth Third Bank*,
   No. 650478/2010, 2011 WL 10564345 (Sup. Ct. N.Y. Cnty. Dec. 1, 2011)....................26, 27

*Crigger v. Fahnestock & Co., Inc.*,
   443 F.3d 230 (2d Cir. 2006)..........................................................................18

*Dembeck v. 220 Cent. Park S., LLC*,
   33 A.D.3d 491 (1st Dep't 2006) ...................................................................23

*Deutsche Bank Nat'l Trust Co. v. Sinclair*,
    891 N.Y.S.2d 445 (2d Dep't 2009)................................................................16

*In re Food Mgmt. Grp., LLC*,
    380 B.R. 677 (Bankr. S.D.N.Y. 2008)............................................................7

*GEOMC Co., Ltd. v. Calmare Therapeutics Inc.*,
    918 F.3d 92 (2d Cir. 2019)...............................................................11, 12, 13

*Georgia-Pacific v. NCR*,
    980 F. Supp. 2d 821 (W.D. Mich. 2013) ...............................................5, 8, 10

*Gibbs-Alfano v. Burton*,
    281 F.3d 12 (2d Cir. 2002).............................................................................28

*Hydro Invs., Inc. v. Trafalgar Power Inc.*,
    227 F.3d 8 (2d Cir. 2000) .............................................................................24

*ImagePoint, Inc. v. JPMorgan Chase Bank, Nat'l Ass'n*,
    27 F. Supp. 3d 494 (S.D.N.Y. 2014)............................................................27

*Johnson v. Nextel Commc'ns, Inc.*,
    660 F.3d 131 (2d Cir. 2011)....................................................................15, 16

*Kimmell v. Schaefer*
    89 N.Y.2d 257 (N.Y. 1996). .........................................................................23

*Law Debenture Trust Co. of New York v. Maverick Tube Corp.*,
    595 F.3d 458 (2d Cir. 2010)............................................................................7

*Levantino v. Starwood Mortg. Cap. LLC*,
    No. 15-cv-5349, 2015 WL 7430860 (S.D.N.Y. Nov. 20, 2015).....................4

*Marketing/Trademark Consultants, Inc. v. Caterpillar, Inc.*,
    No. 98-cv-2570, 2000 WL 648162 (S.D.N.Y. May 19, 2000) ..............14, 15

*Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*,
    500 F.3d 171 (2d Cir. 2007)..........................................................................15

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Walton Ins. Ltd.*,
    696 F. Supp. 897 (S.D.N.Y. 1988)................................................................23

*Naughright v. Weiss*,
    826 F. Supp. 2d 676 (S.D.N.Y. 2011)...........................................................20

*Neopharm Ltd. v. Wyeth–Ayerst Int'l LLC*,
    170 F. Supp. 3d 612 (S.D.N.Y. 2016).............................................................6

*Nomura Sec. Int'l, Inc. v. E\*Trade Sec., Inc.*,
    280 F. Supp. 2d 184 (S.D.N.Y. 2003) .................................................................26

*NXIVM Corp. v. Sutton*,
    No. 06-CV-1051, 2019 WL 4010859 (D.N.J. Aug. 26, 2019) ................................28

*Obabueki v. Int'l Bus. Machines Corp.*,
    145 F. Supp. 2d 371 (S.D.N.Y. 2001) .................................................................12

*Oden v. Boston Sci. Corp.*,
    330 F. Supp. 3d 877 (E.D.N.Y. 2018) ............................................................20, 21

*Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*,
    85 F. Supp. 2d 282 (S.D.N.Y. 2000 ......................................................................21

*Ortho-Clinical Diagnostics Bermuda Co. Ltd. v. FCM, LLC*,
    No. 15-cv-5607, 2017 WL 2984023 (S.D.N.Y. July 6, 2017).........................17, 19

*Phoenix Cos., Inc. v. Cocentrix Ins. Admin. Sols. Corp.*,
    554 F. Supp. 3d 568 (S.D.N.Y. 2021) ...........................................................17, 18

*PRCM Advisers LLC v. Two Harbors Inv. Corp.*,
    No. 20-cv-5649, 2023 WL 5152288 (S.D.N.Y. Aug. 10, 2023)............................11

*RKA Film Fin., LLC v. Kavanaugh*,
    100 N.Y.S.3d 611, 6 (Sup. Ct. N.Y. Cnty. 2018) ...........................................23, 24

*Sebastian Holdings, Inc. v. Deutsche Bank AG*,
    912 N.Y.S.2d 13 (1st Dep't 2010) ......................................................................23

*Sogeti USA LLC v. Whirlwind Bldg. Sys., Inc.*,
    274 F. App'x 105 (2d Cir. 2008) .......................................................................16

*State St. Glob. Advisors Trust Co. v. Visbal*,
    431 F. Supp. 3d 322 (S.D.N.Y. 2020).............................................................15, 21

*Stern v. Gen. Elec. Co.*,
    924 F.2d 472 (2d Cir. 1991).............................................................................13, 14

*Stone v. Sutton View Cap., LLC*,
    No. 17-cv-1574, 2017 WL 6311692 (S.D.N.Y. Dec. 8, 2017)...............................15

*Stuart Silver Assocs., Inc. v. Baco Dev. Corp.*,
    665 N.Y.S.2d 415 (1st Dep't 1997) ....................................................................20

*Taylor Precision Prods., Inc. v. Larimer Grp., Inc.*,
    No. 15-cv-4428, 2022 WL 336953 (S.D.N.Y. Feb. 4, 2022) ................................18

*Telectronics Proprietary, Ltd. v. Medtronic, Inc.*,
    687 F. Supp. 832 (S.D.N.Y. 1988)...................................................................13

*Terra Secs. ASA Konkursbo v. Citigroup, Inc.*,
    820 F. Supp. 2d 541 (S.D.N.Y. 2011)..............................................................18

*In re Time Warner Inc. Sec. Litig.*,
    9 F.3d 259 (2d Cir. 1993) .................................................................................23

*Trs. of N.Y.C. v. M.C.F. Assocs., Inc.*,
    530 F. Supp. 3d 460 (S.D.N.Y. 2021)....................................................12, 13, 27

*Trionic Assocs., Inc. v. Harris Corp.*,
    27 F. Supp. 2d 175 (E.D.N.Y. 1998) ...............................................................16

*VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.*,
    594 F.Supp.2d 334 (S.D.N.Y. 2008)................................................................6, 7

*VoiceAge Corp. v. RealNetworks, Inc.*,
    926 F. Supp. 2d 524 (S.D.N.Y. 2013)..............................................................6, 7

*Wargo v. Hillshire Brands Co.*,
    599 F. Supp. 3d 164 (S.D.N.Y. 2022)..............................................................22

*Wells Fargo Bank, N.A. v. U.S. Life Ins. Co. in City of New York*,
    No. 22-cv-8606, 2023 WL 3091676 (S.D.N.Y. Apr. 26, 2023) .....................11, 12

*WestRM-West Risk Mkts., Ltd. v. Lumbermens Mut. Cas. Co.*,
    314 F. Supp. 2d 229, 240 (S.D.N.Y. 2004).......................................................19

Plaintiff NCR Corporation ("NCR") respectfully submits this memorandum of law in support of: (i) its Motion for Judgment on the Pleadings on its Declaratory Judgment Claim pursuant to Federal Rule of Civil Procedure 12(c); (ii) its Motion to Strike Defendant B.A.T Industries p.l.c.'s ("BAT") affirmative defenses pursuant to Federal Rule 12(f); and (iii) its Motion to Dismiss the Declaratory Judgment Counterclaims filed by BAT under Federal Rule 12(b)(6).

## PRELIMINARY STATEMENT

This is a straightforward contract dispute about BAT's refusal to honor its clear and unambiguous agreement to reimburse NCR for BAT's contractually-allocated share of cleanup costs at the Kalamazoo River Superfund site (the "Kalamazoo River Site" or "Kalamazoo"). The sediment underlying miles of the river was contaminated by polychlorinated biphenyls ("PCBs") from the manufacture of carbonless copy paper by two paper mills, together the Appleton Papers Division ("APD"). BAT purchased the APD from NCR in 1978, and in 1998, as part of a Confidential Settlement Agreement ("CSA") with NCR, agreed to share cleanup costs at any sites where allegations of contamination involved APD. Yet now that BAT's obligations under the CSA have been triggered as a result of litigation alleging a connection between APD and Kalamazoo River contamination, BAT has wrongly refused to pay its mandated share of that liability.

Moreover, faced with this unambiguous contractual liability, BAT responded to NCR's complaint with several counterclaims. BAT Counterclaims, Dkt. 21 ("CC"). Heavy on self-serving, hyperbolic rhetoric, but light on substance, BAT attempts to depict itself as an innocent party duped by NCR into signing the CSA and forced to pay for NCR's misdeeds. Not so. BAT's agreement to contribute to cleanup costs when future liabilities arose was secured through detailed, lengthy, and informed negotiations between NCR and BAT, a sophisticated, multinational corporate entity represented by experienced legal counsel. BAT's counterclaim allegations fail to state a plausible claim that the CSA was the product of fraud or misrepresentation on the part of

NCR. As the CSA makes abundantly clear on its face, BAT was always on notice that it could incur additional liability based on allegations against APD at locations outside of the Fox River. BAT cannot cry fraud and negligence 25 years after executing the CSA now that such liability has arisen. BAT's counterclaims are not serious causes of action and serve only to delay and distract from its failure to honor its clear and unambiguous contractual obligation to pay its fair share of Kalamazoo River cleanup costs.

NCR respectfully requests that the Court grant judgment on the pleadings and issue a declaratory judgment that BAT is obligated to compensate NCR for BAT's share of costs incurred relating to the Kalamazoo River Site. NCR further requests that the Court dismiss each of BAT's counterclaims for failing to state a claim and strike its affirmative defenses.

## FACTUAL BACKGROUND

### A.  BAT's Purchase of APD From NCR

BAT admits that it purchased the APD from NCR as part of a 1978 Agreement of Purchase and Sale of Assets (the "Purchase Agreement"). BAT Answer, Dkt. 21 ("Ans.") ¶ 3. The APD comprised the Appleton Coated Paper Company ("ACPC") and Combined Paper Mills ("CPM"), two mills located on the Fox River in Wisconsin. Ans. ¶ 2; CC ¶ 29. The BAT subsidiary that received the APD assets from NCR originally was called Lentheric, Inc., but was subsequently renamed Appleton Papers Inc., and later Appvion Inc. (collectively, "API"). Ans. ¶ 3; Compl. ¶ 16. As BAT admits in its counterclaims, BAT assumed certain liabilities of APD when acquiring it in 1978. CC ¶ 8.

### B.  Fox River Cleanup

In 1994, the State of Wisconsin notified NCR and API that they were potentially responsible parties under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA" or "Superfund") for cleanup costs and natural resources damages at the

Fox River and at Marina Cliffs, another site in Wisconsin. Ans. ¶ 18. BAT does not dispute that contamination at those sites was alleged to be traceable to APD in two ways. First, the APD mills were located on the Fox River and were alleged to have directly discharged PCBs into the Fox River. *Id.* Second, the two mills were alleged to have sold paper scrap, known as "broke," to brokers and other mills on the Fox River, which recycled the broke into new paper products. During that recycling process, the PCB coating on NCR paper was stripped off and discharged into the Fox River. *Id.*

NCR and BAT/API originally disputed how the 1978 Purchase Agreement had assigned CERCLA cleanup costs, damages, and claims. *Id.* ¶ 19. After NCR filed a declaratory judgment action in 1995 relating to the split of CERCLA costs, the parties engaged in mediation to resolve the litigation and settle their respective liabilities for any future claims or damages that might one day be alleged to have been caused in part by PCBs from the APD operations. Compl. ¶¶ 20-21; Ans. ¶ 20. That mediation resulted in the CSA. Compl. ¶ 21; Ans. ¶ 21.

### C.  **The CSA**

The CSA, attached hereto as Exhibit A, effective as of February 12, 1998, explicitly defines the share of costs that each party would bear relating to the Fox River Site, Marina Cliffs, and any "Future Sites." Ex. A. At 4. The Parties agreed to an "Initial Allocation" of "all Damages or *Group Defense Costs* allocated or assessed to, imposed upon, or incurred by NCR or API/BAT, either singly or collectively, relating to the Fox River sites, the Marina Cliffs sites . . . or *Future Sites*." *Id.* ¶ 3 (emphasis added). "Group Defense Costs" include "all investigation, administrative and defense costs allocable to NCR or API/BAT in connection with . . . the activities of any group of allegedly responsible parties formed by API, NCR, and any other [potentially responsible parties] in connection with the Fox River sites or at any of the Future Sites." *Id.* ¶ 1(j). And the parties defined "Future Sites" to include "any facility, property, or location, other than the Fox River sites,

alleged to be contaminated with Hazardous Substances as a result, in whole or in part, of the manufacture, recycling, deinking, or repulping of any amount of PCB-containing NCR Paper brand carbonless paper that was manufactured utilizing the assets that were the subject of the Purchase Agreement . . . ." *Id.* ¶ 1(i).

The CSA provided for an "initial allocation" of liabilities between as API/BAT on the one hand and NCR on the other as follows: "55% will be borne by API/BAT and 45% will be borne by NCR, up to a total of $75,000,000 in the aggregate." *Id.* ¶ 3. For costs that exceed $75 million in the aggregate, the CSA provided for a "Subsequent Allocation" of damages to be set through arbitration for any damages or costs in excess of $75 million. *Id.* ¶ 4. An arbitration panel subsequently determined that 60 percent of costs beyond the $75 million threshold would be borne by API/BAT and 40 percent by NCR. Ans. ¶ 23. The $75 million threshold was exceeded during the Fox River investigation and cleanup. Compl. ¶ 32. In sum, under the terms of the CSA and the attendant arbitration award, BAT and API (which is now bankrupt, *id*. ¶ 5) are jointly and severally liable to NCR for 60 percent of all Damages and Group Defense Costs arising from the Fox River, Marina Cliffs, or any Future Site. There is no (and there cannot be any) legitimate dispute about this.

### D.  **The Georgia-Pacific Litigation**

In November 2010, following a CERCLA investigation, the EPA notified NCR that it may be liable for cleanup costs relating to the Kalamazoo River Site. CC ¶¶ 63-64. In 2010, Georgia-Pacific Consumer Products LP ("Georgia-Pacific") commenced a CERCLA lawsuit against NCR and two other defendants seeking to allocate responsibility for contamination of the Kalamazoo River Site. *See* Am. Compl., *Georgia-Pacific Consumer Prods. LP v. NCR Corp.* (W.D. Mich. 2011), Dkt. 80 (attached hereto as Exhibit B). Georgia-Pacific alleged that ACPC and CPM—the two APD companies acquired by BAT—were partially responsible for Kalamazoo contamination

by selling PCB-laden broke that they knew or should have known "would result in the discharge of wastewater and the disposal of other waste containing PCBs." *Id.* ¶¶ 76-78.[1]

As the litigation unfolded, investigation and cleanup at Kalamazoo continued. Compl. ¶ 41. Following a share-allocation trial in 2018, Georgia-Pacific and NCR were each assigned 40 percent shares of Georgia-Pacific's past costs. *Georgia-Pacific Consumer Prods. LP v. NCR Corp.* 358 F. Supp. 3d 613, 618 (W.D. Mich. 2018), *rev'd on other grounds*, 32 F.4th 534. In December 2020, NCR entered a consent decree with the United States and the State of Michigan, under which NCR agreed to clean up certain portions of the Kalamazoo River in return for a release of liability for the entire site (the "Consent Decree"). Compl. ¶ 42. The Consent Decree also satisfies NCR's entire Kalamazoo liability to the federal and state governments for any future costs that Georgia-Pacific or any other private party might incur. *Id.*

NCR notified BAT that, pursuant to the CSA, BAT would be required to pay for 60 percent of the resulting costs under the Consent Decree. *Id.* ¶ 46. Despite coordinating with NCR on the defense of the Georgia-Pacific action, BAT announced for the first time in 2019 that it was disclaiming its CSA obligations and would not pay for any share of the cleanup costs at the Kalamazoo River Site. *Id.* ¶¶ 48-49.

NCR commenced this litigation seeking a declaratory judgment under the clear terms of the CSA that BAT must compensate NCR for 60 percent of any costs associated with the Kalamazoo River Site.

---

[1] While not required for the Kalamazoo River to be a Future Site, the district court accepted these allegations and held that APD-related broke did, in fact, contaminate the river. *See Georgia-Pacific v. NCR,* 980 F. Supp. 2d 821, 833-35 (W.D. Mich. 2013) ("The evidence also shows that, by mid–1970, knowledge of the PCB problem with CCP broke had spread outside NCR, to companies like ACPC and CPM" and finding that "broke from ACPC . . . reached the [Kalamazoo] Site").

# ARGUMENT

## I.    THE COURT SHOULD GRANT JUDGMENT ON THE PLEADINGS ON NCR'S DECLARATORY JUDGMENT CLAIM.

### A.    Relevant Legal Standards

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed, but early enough not to delay trial. The standard for analyzing a motion for judgment on the pleadings under Rule 12(c) is identical to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006), and a court will grant a motion for judgment on the pleadings "if, from the pleadings, the moving party is entitled to judgment as a matter of law." *VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.*, 594 F. Supp. 2d 334, 340 (S.D.N.Y. 2008) (marks and citation omitted).

"Judgment on the pleadings is particularly appropriate in a dispute regarding a breach of contract where the primary issue is determining the parties' legal rights and obligations." *Neopharm Ltd. v. Wyeth–Ayerst Int'l LLC*, 170 F. Supp. 3d 612, 615 (S.D.N.Y. 2016). Courts in the Second Circuit have consistently held that judgments on the pleadings are proper in contract disputes where the contractual terms at issue are unambiguous. *See e.g., Cap. World Trading, LLC v. Next Up Funding, Inc.*, No. 11-cv-4136, 2012 WL 601073, at *2-3 (S.D.N.Y. Feb. 23, 2012) (granting judgment on the pleadings where contract unambiguously required defendant to cover certain payments); *Citibank, N.A. v. Morgan Stanley & Co. Int'l, PLC*, 724 F. Supp. 2d 398, 407 (S.D.N.Y. 2010) (similar and noting defendant's "attempt to introduce ambiguity where there is none cannot prevent this result"); *VoiceAge Corp. v. RealNetworks, Inc.*, 926 F. Supp. 2d 524,525 (S.D.N.Y. 2013) (entering judgment on the pleadings in contractual dispute over royalties and

noting "[m]otions for judgment on the pleadings are an underutilized tool for litigants whose claims are amenable to immediate resolution").

Under New York law, contract "[l]anguage whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation." *Law Debenture Trust Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010). Where the "interpretation urged by one party would strain [ ] the contract language beyond its reasonable and ordinary meaning," a finding of ambiguity is improper. *Id.* (marks and citations omitted).

Finally, a court considering a motion for judgment on the pleadings is "entitled to rely upon documents attached to or incorporated by reference in a complaint; and documents attached to and incorporated by reference in an answer." *VoiceAge*, 926 F. Supp. 2d at 525; *see also VCG*, 594 F. Supp. 2d at 339-40 ("When analyzing a Rule 12(c) motion, the Court considers the pleadings and exhibits attached thereto, statements or documents incorporated by reference in the pleadings, matters subject to judicial notice, and documents submitted by the moving party") (marks and citation omitted).

## B.  The Kalamazoo River is a "Future Site" Covered by the CSA for Which BAT is Obligated to Pay its Allocated Share.

NCR is entitled to a declaration that the Kalamazoo River is a "Future Site" for which BAT is obligated to pay its share of investigation and cleanup contribution obligations under the CSA. The CSA unambiguously defines the share of costs that each party must bear relating to the Fox River Site and any "Future Sites," defining "Future Sites" to include:

> . . . any facility, property, or location, other than the Fox River sites, *alleged to be contaminated* with Hazardous Substances[2] as a result, *in whole or in part*, of the manufacture, recycling, deinking, or repulping of any amount of PCB-containing NCR Paper brand carbonless paper that was manufactured utilizing the assets that were the subject of the Purchase Agreement.[3]

Ex. A. ¶ 1(i) (emphasis added).

Under the plain terms of the CSA, the Kalamazoo River became a Future Site in 2012 when Georgia-Pacific filed a complaint alleging that (a) the broke generated by ACPC and CPM (both APD mills, *see* Ans. ¶¶ 2-3), was sold either directly or through third-party waste paper brokers to paper companies for recycling and deinking, (b) NCR, its subsidiaries and its various contract coaters—including the APD mills—shipped (or arranged to ship) this PCB-containing broke, and (c) the recycling of this broke was "the Principal Source" of contamination at the Kalamazoo River Site. *See* Ex. B ¶¶ 13, 74-78.

BAT does not dispute the validity of the CSA and admits that its terms "speak for themselves." Ans. ¶ 5. BAT also does not deny that Georgia-Pacific alleged that NCR was liable for cleanup at the Kalamazoo River Site, at least in part, because APD sold substantial quantities of PCB-containing waste to brokers and dealers that ended up getting recycled or deinked at paper mills on the Kalamazoo River. *See id*. ¶¶ 38-39 ("With respect to the allegations contained in Paragraph 38 [and 39] of the Complaint, BAT respectfully refers to the filings and findings in that action for the allegations therein . . . ").

---

[2] The CSA's definition of Hazardous Substances incorporates Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), among other statutes. Ex. A at ¶ 1(k). PCBs are hazardous substances under CERCLA. *See Georgia-Pacific,* 980 F. Supp. 2d at 825.

[3] The CSA defines the Purchase Agreement as the "Agreement of Purchase and Sale of Assets by and among B.A.T Industries Limited, Lentheric, Inc. and NCR Corporation" and the "Assumption Agreement," both dated June 30, 1978. Ex. A at 2 (marks omitted).

## C.  **BAT Cannot Manufacture Ambiguity Where There Is None.**

In an effort to create contractual ambiguity where there is none, BAT argues, without citing to any provision of the CSA or the Purchase Agreement, that Kalamazoo cleanup costs "do not fall within the scope of the CSA because, among other things, the liability is not attributable to the assets that were the subject of the [Purchase Agreement]." CC ¶ 99. As discussed, BAT has no plausible basis for this conclusory assertion; BAT admits it purchased the APD mills from NCR in 1978 as part of the Purchase Agreement. Ans. ¶¶ 2-3; CC ¶ 22. And the Georgia-Pacific complaint specifically alleged that broke generated by APD mills and sold through third-party waste paper brokers was "the Principal Source" of contamination at the Kalamazoo River Site. *See* Ex. B ¶¶ 13, 74-78. Thus, there can be no question that the Kalamazoo was alleged to be contaminated by assets that were part of the Purchase Agreement and which therefore fall within the scope of the CSA.

In another effort to contort the CSA, BAT asserts that it has no contractual obligations under the CSA because the "liability NCR faces for the pollution of the Kalamazoo River is a liability which is attributable only to NCR itself, not to the APD business that BAT acquired." CC ¶ 22; *see also id.* ¶ 13 (denying liability because "the courts have expressly held that NCR's liability is not premised on any knowledge or intent of ACPC – the business acquired by BAT") (emphasis omitted). But these contentions misconstrue the CSA, which applies to Future Sites like Kalamazoo on the basis of a site being "*alleged* to be contaminated," Ex. A ¶ 1(i) (emphasis added), as a result of paper made with APD's assets, *see also* CC ¶ 22 (admission by BAT that the CSA applies to *potential liabilities* arising out of the APD business that was acquired by BAT). Future Sites liability does not arise based only on a fact-finder's ultimate determination of

the source of the contamination, as BAT claims,[4] and BAT's contribution obligations under the CSA are not premised on whether a court ultimately held that APD mills, NCR, or anyone else acted with "knowledge or intent" as BAT suggests. Indeed, BAT admits in its counterclaims that the CSA applies "to *potential* liabilities arising out of the APD business that was acquired by BAT." *Id.* (emphasis added). In any event, the fact-finder in the Georgia-Pacific action *did* hold that NCR was liable for cleanup costs at the Kalamazoo River, at least in part, on account of shipments of broke from the APD mills. *See Georgia-Pacific,* 980 F. Supp. 2d at 835.

BAT further asserts that it "never agreed to be responsible for NCR's liability in respect of the Kalamazoo River." Ans. At 2. But this contention is both wrong and an improper framing of the issue. BAT is not "responsible for NCR's liability"; it is responsible for its own contractually agreed (and arbitrator-ordered) allocation of future costs for environmental liabilities at Future Sites, which unequivocally now includes the Kalamazoo River following the Georgia-Pacific litigation.

Beyond these misinterpretations of the CSA, BAT's Answer and Counterclaims are silent as to any ambiguities in the CSA. There is no reason why this Court cannot determine on the pleadings that BAT breached the CSA, and there is no need for discovery. *See Citibank,* 724 F. Supp. 2d at 407 (defendant's "attempt to introduce ambiguity where there is none cannot prevent" judgment on the pleadings as to contract dispute). In sum, because Georgia-Pacific specifically alleged that the Kalamazoo River was contaminated, at least in part, from the manufacture, recycling, or deinking of PCB-containing NCR paper manufactured by APD mills

---

[4] In the context of environmental cleanup efforts, it makes sense that parties would reach cost-sharing agreements like the CSA that turn on *allegations* of contamination rather than ultimate findings of liability, because allegations or administrative notices of potential liability typically result in investigation and cleanup costs years before liability is resolved.

acquired by BAT in the Purchase Agreement, Kalamazoo cleanup obligations fall squarely within BAT's cleanup responsibilities under the unambiguous terms of the CSA. And as demonstrated in the following sections, BAT's counterclaims and affirmative defenses are insufficiently pleaded and do not preclude the Court from entering a motion for judgment on the pleadings. The Court should grant judgment on the pleadings in favor of NCR's declaratory judgment contract claim.

## II.    THE COURT SHOULD STRIKE BAT'S AFFIRMATIVE DEFENSES.

BAT's affirmative defenses, which are entirely conclusory and devoid of factual support, are not viable and should be stricken.

### A.    <u>Relevant Legal Standards</u>

Federal Rule of Civil Procedure 12(f) allows a court to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" from a pleading. *See also PRCM Advisers LLC v. Two Harbors Inv. Corp.*, No. 20-cv-5649, 2023 WL 5152288, at *5 (S.D.N.Y. Aug. 10, 2023) ("The sufficiency of affirmative defenses can be 'determined [also] on a pretrial motion for judgment on the pleadings or summary judgment'") (citing *Blonder-Tongue Lab's, Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 348 (1971)).

The Second Circuit has held that "the plausibility standard of [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)] applies to determining the sufficiency of . . . the pleading of an affirmative defense." *GEOMC Co., Ltd. v. Calmare Therapeutics Inc*., 918 F.3d 92, 98 (2d Cir. 2019). BAT therefore must "support [affirmative] defenses with some factual allegations to make them plausible." *Id.* at 99. And this Court has found, "[s]ubject to heightened requirements for affirmative defenses sounding in fraud" courts assess Rule 12(f) motions "under standards similar to those used in assessing a motion to dismiss for failure to state a claim." *Wells Fargo Bank, N.A. v. U.S. Life Ins. Co. in City of New York*, No. 22-cv-8606, 2023 WL 3091676, at *3 (S.D.N.Y.

Apr. 26, 2023) (quoting *GEOMC*, 918 F.3d at 98) ("We conclude that the plausibility standard of *Twombly* applies to determining the sufficiency of all pleadings, including the pleading of an affirmative defense")). To prevail on a motion to strike affirmative defenses, a party "ordinarily must show that (1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense." *GEOMC,* 918 F.3d at 96 (marks and citations omitted). As shown below, NCR has made such a showing.

### B.    The Court Should Strike BAT's Affirmative Defenses.

As an initial matter, affirmative defenses two (breach of contract), three (recoupment based on fraudulent inducement), seven (public policy), and eight (*in pari delicto*) merely recycle BAT's declaratory judgment counterclaims. Those affirmative defenses should be stricken for the same reasons as set forth in Section III herein.

BAT's first affirmative defense, that NCR's Complaint fails to state a claim upon which relief can be granted, fails for the reasons discussed in Sections I above. NCR's declaratory judgment claim for interpretation of the CSA plainly *does* state a claim, and BAT's Answer concedes all the facts necessary to allow the Court to decide the claim on the pleadings.

BAT's fourth affirmative defense, unclean hands, is not viable and must be dismissed. First, "[p]leading the words 'unclean hands' without more, . . . is not a sufficient statement of such defense." *Obabueki v. Int'l Bus. Machines Corp.*, 145 F. Supp. 2d 371, 401 (S.D.N.Y. 2001), *aff'd*, 319 F.3d 87 (2d Cir. 2003). In addition, the defense must be dismissed for the same reasons as BAT's *in pari delicto* counterclaim addressed *infra* at Section III(E): BAT failed to plead that NCR has engaged in any misconduct with a nexus to NCR's declaratory judgment action. *See id.* ("The 'unclean hands' doctrine 'closes the door of a court of equity to one tainted with inequitableness or bad faith *relative to the matter in which he seeks relief*.'") (emphasis added); *Trs. of N.Y.C. v.*

*M.C.F. Assocs., Inc.*, 530 F. Supp. 3d 460, 465 (S.D.N.Y. 2021) (unclean hands defense "legally insufficient" because purported misconduct was general conduct over the last fifty years as opposed to "the enforcement of the [contract] at issue here").[5]

BAT's fifth affirmative defense (waiver, estoppel, and/or laches) and sixth affirmative defense (failure to mitigate damages) are not pleaded with any particularly. BAT introduces no facts sufficient to support what right NCR could have waived or relinquished, what BAT believes NCR should be estopped from asserting, what sort of unreasonable delay would allow BAT to invoke the doctrine of laches, or how NCR could have mitigated damages. Given the irrelevance of these defenses to the dispute, and BAT's failure to articulate them with any specificity, there are no questions of law or fact that might allow them to succeed. The Court should strike the defenses as insufficient for their lack of any factual or legal basis. *See GEOMC*, 918 F.3d at 99 (Defendant "needed to support [affirmative] defenses with some factual allegations to make them plausible"); *see also e.g.*, *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 687 F. Supp. 832, 841 (S.D.N.Y. 1988) ("the word 'estoppel' without more is not a sufficient statement of a defense") (citation omitted).

Finally, NCR would be prejudiced by having to litigate BAT's factually and legally insufficient affirmative defenses. Where a "defense is neither factually insufficient nor legally valid, the general principle that '[i]ncreased time and expense of trial may constitute sufficient prejudice to warrant granting [Plaintiff's] Rule 12(f) motion' applies. Forcing Plaintiffs to litigate [an] affirmative defense through trial establishes sufficient prejudice to further warrant striking the

---

[5] *See also infra* Section III(E) distinguishing the authorities cited by BAT in its recent Pre-Motion Conference opposition letter, Dkt. No. 25, for the proposition that a party claiming innocence can assert the *in pari delicto* defense.

affirmative defense." *M.C.F. Assocs.,* 530 F. Supp. 3d at 467 (quoting *Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 272 (S.D.N.Y. 1999).

## III.    THE COURT SHOULD DISMISS BAT'S COUNTERCLAIMS.

### A.    <u>Relevant Legal Standards</u>

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A "motion to dismiss must be granted if the pleadings fail adequately to allege the elements of the claim on which the plaintiff's theory of liability is based." *Stern v. Gen. Elec. Co.*, 924 F.2d 472, 476 (2d Cir. 1991). In reviewing a complaint under Rule 12(b)(6), courts apply a "plausibility standard" guided by "two working principles," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009): (i) "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); and (ii) "only a complaint that states a plausible claim for relief survives a motion to dismiss," *Iqbal*, 556 U.S. at 679.

### B.    <u>The Court Should Dismiss Count III – Constituting BAT's Mirror Image Contract Counterclaim.</u>

BAT seeks a declaratory judgment that it has no obligation to NCR for any cleanup or investigation costs relating to the Kalamazoo River on the basis that such costs do not fall within the scope of the CSA. This counterclaim is the mirror image of NCR's request for a declaration from the Court that BAT does have cleanup obligations under the CSA. BAT's counterclaim should be dismissed for the same reason the Court should grant NCR judgment on the pleadings: the CSA unambiguously requires BAT to contribute to Kalamazoo cleanup costs. *See* Section I; *see also Marketing/Trademark Consultants, Inc. V. Caterpillar, Inc.*, No. 98-cv-2570, 2000 WL 648162, at *3 (S.D.N.Y. May 19, 2000) ("Issues of contract interpretation are generally matters of law and are therefore suitable for disposition on a motion to dismiss").

### C. **BAT Cannot State a Claim for Fraudulent Inducement (Count I).**

BAT alleges that NCR fraudulently induced it to enter into the CSA in an attempt to force BAT to contribute to Kalamazoo cleanup costs. BAT fails to state a claim for fraudulent inducement for multiple reasons.

To state a claim for fraud in the inducement, BAT must allege: "(i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by [BAT]; and (iv) resulting damages." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 143 (2d Cir. 2011) (citing *Ross v. Louise Wise Servs., Inc.*, 868 N.E. 2d 189 (N.Y. 2007)). In the case of omission-based fraudulent inducement claims, a plaintiff also must plead a duty to disclose the omitted information. *See Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir. 2007); *accord Barron Partners, LP v. LAB123, Inc.*, 593 F. Supp. 2d 667, 671 (S.D.N.Y. 2009). The failure to plausibly and sufficiently plead any one of these elements is fatal to BAT's fraud-based claims. *See e.g., Stone v. Sutton View Cap., LLC,* No. 17-cv-1574, 2017 WL 6311692, at *4 (S.D.N.Y. Dec. 8, 2017).

In addition, the heightened pleading standards of Federal Rule of Civil Procedure 9(b) apply to claims of fraudulent inducement. As such, the complainant "must allege specific facts as to the fraud, including the misleading statements, speaker, time, place, individuals involved, and specific conduct at issue." *State St. Glob. Advisors Trust Co. v. Visbal*, 431 F. Supp. 3d 322, 352 (S.D.N.Y. 2020) (citing Fed. R. Civ. P. 9(b)); *accord Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 51 (2d Cir. 1995).

### 1. **BAT Did Not Plead Any Actionable Statements Or Omissions.**

As a threshold matter, BAT's fraud claim fails because BAT failed to plausibly plead the existence of any "material misrepresentation of a presently existing or past fact." *Nextel,* 660 F.3d at 143. In support of Count I, BAT alleges only a single representation it contends was untrue: that

NCR "represented to BAT that it had no reason to think it would face liability at any site other than Fox River and Marina Cliffs." CC ¶ 77. BAT also alleges an omission in the form of NCR "conceal[ing] the fact that it had intentionally arranged for discharges of PCBs into the Kalamazoo River and that it was fully aware of the likelihood of it being found liable as an arranger." *Id.*

The alleged representation and omission by NCR regarding the likelihood of future liability at the Kalamazoo River cannot constitute actionable misrepresentations—even assuming the allegations were accurate—because they relate to the *possibility* of an event, not a "presently existing or past fact." *Nextel,* 660 F.3d at 143; *see also Trionic Assocs., Inc. v. Harris Corp.*, 27 F. Supp. 2d 175, 183 (E.D.N.Y. 1998), *aff'd,* 198 F.3d 235 (2d Cir. 1999) (dismissing fraudulent inducement claim where statement about projected revenues was "not a misrepresentation of present fact, but a projection of future possible" events); *Deutsche Bank Nat'l Trust Co. v. Sinclair*, 891 N.Y.S.2d 445, 447 (2d Dep't 2009) ("[A] fraud claim must be based upon a misrepresentation of an existing fact rather than upon an expression of future expectations") (collecting cases).

Moreover, BAT's pleadings establish that NCR did not misrepresent anything at all. To state a claim for fraudulent inducement, a representation or omission of fact must be "false and known to be false." *Sogeti USA LLC v. Whirlwind Bldg. Sys., Inc.*, 274 F. App'x 105, 107 (2d Cir. 2008). According to BAT, however, NCR represented that "it had no reason to think it would face liability at any site other than Fox River and Marina Cliffs, [but] that such liability, '*if any*,' was only '*potential*' and *would arise*, if at all, on the basis that 'NCR paper was recycled at mills other than those on the Fox River.'" CC ¶ 77 (emphasis added). Thus, while BAT inexplicably says it interpreted this alleged statement as a guarantee that Future Site liability would never arise, the statement expressly contemplated the opposite: that there was the possibility of Future Site liability, which put BAT on notice that NCR paper was recycled at mills other than those along

the Fox River. Indeed, from the moment NCR proposed the Future Sites language, BAT was on notice of the potential for liability at Future Sites (defined in the CSA as including locations *other than* the Fox River and Marina Cliffs). That was, by definition, the very point of including the Future Sites provision in the CSA. It borders on the absurd for BAT to agree to a settlement with Future Sites language only to claim it did so only because it was assured that no Future Site would ever exist. This *ex post* argument to avoid the clear intent of the contractual provision is meritless. BAT has not plausibly alleged that NCR misrepresented or omitted any material fact.

### 2.    BAT Did Not Plead Reasonable Reliance.

BAT's fraudulent inducement claim also fails because BAT does not plead reasonable reliance, *see* CC ¶¶ 74-85, and cannot, as a matter of law, have reasonably relied on NCR's alleged misrepresentations. While BAT alleges in a conclusory fashion that NCR "induced" it to enter the CSA, it never states that its decision to enter into the CSA was in reasonable reliance on NCR's silence or its representation as to the likelihood of potential liability at Future Sites like Kalamazoo. This is not surprising; given NCR's proposal of the Future Sites provision, it would be patently *unreasonable* for BAT to consider NCR's alleged statements or omissions to mean that no liability was possible with respect to any Future Sites (be it Kalamazoo or anywhere else). This pleading failure alone is fatal to BAT's fraudulent inducement claim. *See Ortho-Clinical Diagnostics Bermuda Co. Ltd. v. FCM, LLC*, No. 15-cv-5607, 2017 WL 2984023, at *4 (S.D.N.Y. July 6, 2017) ("fraud claims can fail as a matter of law for failure to plausibly allege reasonable reliance"); *see also Phoenix Cos., Inc. v. Cocentrix Ins. Admin. Sols. Corp.*, 554 F. Supp. 3d 568, 595 (S.D.N.Y. 2021) ("courts may determine as a matter of law that a party's reliance [is] unreasonable

where the alleged misrepresentation is explicitly contradicted by the written agreement") (marks and citation omitted).

But even if BAT had attempted to plead reasonable reliance in its counterclaims, this element still would require dismissal of BAT's fraudulent inducement claim as a matter of law because: (1) BAT is a sophisticated party, and (2) BAT does not allege that it inquired, or did any other diligence, with respect to the Kalamazoo River Site or other Future Sites. "Reasonable reliance entails a duty to investigate the legitimacy of [a transaction] where [the claimant] was placed on guard or practically faced with the facts." *Crigger v. Fahnestock & Co., Inc.*, 443 F.3d 230, 234 (2d Cir. 2006) (marks and citation omitted); *see also Taylor Precision Prods., Inc. v. Larimer Grp., Inc.*, No. 15-cv-4428, 2022 WL 336953, at *15 (S.D.N.Y. Feb. 4, 2022) ("A general duty to exercise minimal diligence is heightened in the context of negotiations between sophisticated business entities"). Indeed, "the greater the sophistication . . . the more inquiry that is required." *Crigger*, 443 F.3d at 235.

Here, BAT's pleadings reflect that it is a sophisticated party. *See Terra Secs. ASA Konkursbo v. Citigroup, Inc.*, 820 F. Supp. 2d 541, 547 (S.D.N.Y. 2011) (question of a party's sophistication may be determined from the pleadings as a matter of law). BAT is a large, multinational "holding company for the British American Tobacco p.l.c. group of companies, which operate in more than 100 countries." Ans. ¶ 10. BAT also was represented by sophisticated counsel at the Simpson, Thacher & Bartlett firm in CSA negotiations. CC ¶ 17; Ex. A at 24.

And BAT was "placed on guard [and] practically faced with the facts," *Crigger*, 443 F.3d at 234 (marks and citation omitted), because NCR specifically requested the Future Sites language and, according to BAT, told BAT that there was a potential for future liability "on the basis that 'NCR paper was recycled at mills other than those on the Fox River.'" CC ¶ 77. BAT's pleadings,

in fact, indicate that it had heightened awareness of, and focus on, Future Sites because NCR proposed that provision after both the mediation that led to the CSA and the agreement in principle that the parties had been negotiating. *Id.* ¶ 11.

Yet, critically, BAT does not allege that it engaged in any diligence or inquiry whatsoever as to any Future Sites. BAT does not even allege that it requested any additional information or detail from NCR. This is not reasonable reliance on the alleged representation or omission that BAT now claims to have been fraudulent. *See Ashland Inc. v. Morgan Stanley & Co, Inc.*, 700 F. Supp. 2d 453, 470-71 (S.D.N.Y 2010) (dismissing fraud claims and finding reliance was not reasonable where plaintiff, a sophisticated investor, failed to exercise any diligence with respect to transaction); *Ortho-Clinical*, 2017 WL 2984023, at *4 ("reliance is not reasonable where 'a sophisticated party performs no independent investigation whatsoever'") (citation omitted). It does not matter for present purposes whether BAT simply failed to conduct such diligence, or—the more logical conclusion—was fully aware of the possibility of liability at Future Sites.

If BAT wanted to learn about potential Future Sites, it could have asked. If BAT wanted to confine its liability to only those sites that had been discussed, or to impose any other set of conditions on the definition of Future Sites, it could have insisted on such conditions. But having failed even to allege that it performed any diligence or inquiry whatsoever, and admitting that it accepted contractual language that expressly did not limit liability to any specifically identified sites, BAT cannot plead reasonable reliance, twenty years later, on the information it claims induced it to sign the CSA. BAT "may not now attempt to avoid [its] obligations for failing to perform adequate due diligence" through a fraudulent inducement claim. *WestRM-West Risk Mkts., Ltd. v. Lumbermens Mut. Cas. Co.*, 314 F. Supp. 2d 229, 240 (S.D.N.Y. 2004).

### 3.     BAT Did Not Plead A Duty To Disclose.

The Court also should dismiss BAT's fraudulent inducement claim with respect to NCR's alleged omission about the potential for Kalamazoo liability because NCR had no duty to disclose any purportedly omitted information—and BAT has not plausibly pleaded otherwise.

It is blackletter law that "[n]ondisclosure only becomes actionable . . . where a defendant has a duty to disclose." *Barron Partners,* 593 F. Supp. 2d at 671. A duty to disclose "ordinarily arises where the parties are in a fiduciary or other relationship signifying a heightened level of trust." *Naughright v. Weiss*, 826 F. Supp. 2d 676, 690 (S.D.N.Y. 2011) (citing *Remington Rand Corp. v. Amsterdam–Rotterdam Bank*, 68 F.3d 1478, 1483 (2d Cir. 1995)). "[S]uperior knowledge can impose a duty to disclose but only in instances where a party (1) has superior knowledge, (2) that is not available to the other party by reasonable inquiry, and (3) the first party knows that the second party is acting on the basis of mistaken knowledge." *Id.* (citing *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 582 (2d Cir. 2005)) (marks omitted).

While BAT alleges that NCR "was under an affirmative duty to disclose the likely Kalamazoo River liability to BAT during the CSA negotiations," CC ¶ 79, BAT does not allege a fiduciary duty or other special relationship between the parties giving rise to a duty to disclose. Thus, it appears BAT is attempting to plead the existence of a duty based on the "superior knowledge" prong. The "superior knowledge" prong, however, requires a party to plead that it could not have discovered the information through reasonable inquiry. *See e.g.*, *Stuart Silver Assocs., Inc. v. Baco Dev. Corp.*, 665 N.Y.S.2d 415, 418 (1st Dep't 1997) (declining to apply the superior knowledge doctrine in the context of a real estate transaction where plaintiff could have performed due diligence and discovered facts); *accord Oden v. Boston Sci. Corp.*, 330 F. Supp. 3d 877, 899-900 (E.D.N.Y. 2018) (dismissing claim where plaintiff alleging fraud relating to a product's side effects failed to "adequately plead facts that the information purportedly withheld

was not otherwise available to Plaintiff by reasonable inquiry via his physicians or other external sources of information").

Even assuming BAT is correct that NCR had superior knowledge about the likelihood of Future Sites, despite BAT's ownership of the APD mills, BAT does not plead that the information allegedly withheld by NCR was not available to BAT through a reasonable inquiry to NCR or through any other diligence that a sophisticated and well-represented multinational company like BAT could perform with ease. NCR did not, as a matter of law, have a duty to disclose the allegedly omitted information.

### 4.    BAT Cannot Satisfy Rule 9(b)'s Heightened Pleading Requirements.

Finally, BAT's fraudulent inducement claim must fail because it does not identify the specific "speaker, time, place, individuals involved, and specific conduct at issue," as required by Rule 9(b) of the Federal Rules of Civil Procedure. *Visbal*, 431 F. Supp. 3d at 352 (citing Fed. R. Civ. P. 9(b)). With respect to BAT's assertion that "NCR represented to BAT that it had no reason to think it would face liability at any site other than Fox River and Marina Cliffs," CC ¶ 77, BAT does not satisfy even one of the 9(b) heightened pleading requirements. This is not an actionable representation.

With respect to fraudulent omissions, a complaint satisfies Rule 9(b) by setting forth "(1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff[;] and (4) what defendant obtained through the fraud." *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000), *aff'd*, 2 F. App'x 109 (2d Cir. 2001). BAT alleges in a conclusory fashion that NCR "concealed" facts about the potential for Kalamazoo River liability. But nowhere in its counterclaims does BAT allege *who* from NCR should have made the desired disclosure, *when* such disclosure should have been made, and in *what* document or other communication any

such disclosure would have been appropriate. These pleading deficiencies are fatal to BAT's fraudulent inducement claim.

### D.  **BAT Cannot State a Claim for Negligent Misrepresentation (Count II).**

Repackaging its fraudulent inducement claim but covering virtually identical territory, BAT seeks a declaration from the Court that BAT is entitled to "equitably recoup any alleged damages NCR seeks to recover from BAT under the CSA" because NCR allegedly induced BAT to enter into the CSA through a negligent misrepresentation. CC ¶¶ 94-95. The single representation and omission that form the basis of BAT's negligent misrepresentation claim are the same as its fraudulent inducement claim, CC ¶¶ 87-91, and should be dismissed for many of the same reasons. *See e.g.*, *Barron Partners*, 593 F. Supp. 2d at 674 (dismissing defendants' negligent misrepresentation counterclaim "for many of the same reasons as their counterclaim for fraudulent inducement").

"To state a claim for negligent misrepresentation under New York law, the plaintiff must allege that '(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.'" *Wargo v. Hillshire Brands Co.*, 599 F. Supp. 3d 164, 175 (S.D.N.Y. 2022) (citing *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012)). BAT has failed adequately to plead at least three of these elements: duty/special relationship, falsity, and reasonable reliance.

### 1.    BAT Did Not Plead Any Special Relationship Giving Rise to a Duty To Disclose.

As with its fraudulent inducement claim, BAT does not adequately plead the critical first element of its negligent misrepresentation claim: duty. Under the "duty" element, "New York strictly limits negligent misrepresentation claims to situations involving 'actual privity of contract between the parties or a relationship so close as to approach that of privity.'" *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 271 (2d Cir. 1993) (quoting *Ossining Union Free School Dist. v. Anderson LaRocca Anderson,* 541 N.Y.S.2d 335, 335 (1989)). In *Kimmell v. Schaefer,* the New York Court of Appeals directed that "liability for negligent misrepresentation has been imposed only on those persons" who (i) "possess unique or specialized expertise" or (ii) "are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." 89 N.Y.2d 257, 263 (N.Y. 1996).

BAT does not, and cannot, allege that NCR was in any position of confidence or trust with respect to BAT. The parties, both sophisticated and represented by counsel, were engaged in an arm's length negotiation to settle past and future liability issues. Under New York law, no duty exists between such parties to an "arm's length business transaction." *Dembeck v. 220 Cent. Park S., LLC*, 33 A.D.3d 491, 492 (1st Dep't 2006); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Walton Ins. Ltd.*, 696 F. Supp. 897, 902-03 (S.D.N.Y. 1988) (no duty to speak as to terms of a settlement where parties were dealing at arms' length, and were not in trust or confidential relationship, and insurer could have inquired as to contents of settlement release at any time); *Sebastian Holdings, Inc. v. Deutsche Bank AG*, 912 N.Y.S.2d 13, 15 (1st Dep't 2010) ("arm's-length transactions pursuant to contracts between sophisticated business entities [] do not give rise to fiduciary duties"); *RKA Film*, 100 N.Y.S.3d at 5 (quoting *CIFG Assur. N. Am., Inc. v. Bank of*

*Am., N.A.*, 41 Misc 3d 1203(A), at 13-14 (Sup. Ct. N.Y. Cnty. 2013)) ("[a]rm's length transactions . . . do not create a duty for one party to impart correct information on another").

With respect to the "special expertise" prong, BAT alleges that NCR's "unique knowledge of its own role in the discharge of PCBs into the Kalamazoo River" triggered an affirmative duty to disclose. CC ¶ 89. But as the court in *RKA Film* held, "Defendants' superior knowledge of a business does not give rise to a special relationship between sophisticated business parties. This is true even where the business is defendant's own." 100 N.Y.S.3d at 6 (citations omitted); *see also Levantino v. Starwood Mortg. Cap. LLC*, No. 15-cv-5349, 2015 WL 7430860, at *6 (S.D.N.Y. Nov. 20, 2015) ("[A] 'claim that [a defendant] had superior knowledge of the particulars of its own business practices is insufficient' to show a special relationship") (quoting *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 928 N.Y.S.2d 229, 235-36 (1st Dep't 2011)).

### 2.    BAT Did Not Plead Falsity.

BAT also cannot satisfy the second element of a negligent misrepresentation claim: that NCR made a representation it knew or should have known was incorrect. *See Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758, 778 (S.D.N.Y. 2011). As with BAT's fraudulent inducement claim, under New York law, an actionable misrepresentation must be "factual in nature and not promissory or relating to future events that might never come to fruition." *Hydro Invs., Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20-21 (2d Cir. 2000). But NCR's alleged statement that it had no reason to think it would face liability at sites other than Fox River and Marina Cliffs, and its alleged omission of its knowledge of potential future liability at Kalamazoo, cannot form the basis of a negligent misrepresentation claim because they are premised on the precise type of future contingency that is not actionable under New York law.

In addition, for the reasons discussed in Section III(C), there was nothing false about any alleged NCR representation or omission with respect to Kalamazoo liability. As BAT admits, NCR

fully informed BAT of the possibility that liability could be incurred at sites beyond the Fox River. *See* CC ¶ 17 (admitting NCR informed BAT of the "'potential' for claims in respect of future sites" because "'NCR paper was recycled at mills other than those on the Fox River,' and thus that it 'makes sense' to include such sites in the CSA on an 'if any' basis'").

### 3. BAT Did Not Plead Reasonable Reliance

BAT's negligent misrepresentation claim also fails as a matter of law because it did not plead the fifth element of its negligent misrepresentation claim: reasonable reliance. *See id.* ¶¶ 86-95. Even if BAT had *alleged* that it reasonably relied on the negligent misrepresentations allegedly made by NCR (which it did not), it could not have adequately pleaded reasonable reliance for all of the reasons discussed in Section III(C)(3).

*          *          *

For this pleading failure, and all of the reasons discussed in Section III(D) herein, the Court should dismiss BAT's negligent misrepresentation claim for failing to state a claim.

### E. The Court Should Dismiss Count IV Because BAT Cannot Satisfy the Doctrine of *In Pari Delicto*.

BAT attempts to use the doctrine of *in pari delicto* to avoid its contractual responsibility for Kalamazoo cleanup costs, alleging supposed NCR misconduct "since at least the mid-1960s" that BAT believes "bars [NCR] from now seeking to enforce a contract term against BAT under the doctrine of *in pari delicto*." *Id.* ¶¶ 104, 106. BAT, however, woefully misconstrues the *in pari delicto* doctrine.

First, *in pari delicto* generally is an affirmative defense, not a cause of action.[6] *See In re Bernard L. Madoff Inv. Sec., LLC*, 605 B.R. 570, 590 (Bankr. S.D.N.Y. 2019).

---

[6] Indeed, BAT itself asserts *in pari delicto* as an affirmative defense as well. *See* Ans. at 8.

Second, the phrase "*in pari delicto*" translates to "in equal fault" and requires *mutual* fault for a particular harm. *See BrandAid Mktg. Corp. v. Biss,* 462 F.3d 216, 218 (2d Cir. 2006) ("application of the [*in pari delicto*] doctrine requires that the plaintiff be an active, voluntary participant in the unlawful activity that is the subject of the suit") (marks and citation omitted). BAT, in contrast, argues that it is an *innocent* party rather than one of two parties at *mutual fault*. *See* CC ¶ 23. That is not a basis upon which to invoke the doctrine. *See Nomura Sec. Int'l, Inc. v. E\*Trade Sec., Inc.*, 280 F. Supp. 2d 184, 201 (S.D.N.Y. 2003) (defendant "denies any wrongdoing and claims it had no knowledge of the stock manipulation. Thus, *in pari delicto* is an inappropriate defense in this case").

In an attempt to circumvent the blackletter principle that *in pari delicto* applies only "in a case of equal or mutual fault," *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306 (1985) (cleaned up), BAT cited *Concord Cap. Mgmt.t, LLC v. Fifth Third Bank*, No. 650478/2010, 2011 WL 10564345 (Sup. Ct. N.Y. Cnty. Dec. 1, 2011) in its Pre-Motion Conference letter for the proposition that a party claiming innocence may assert the *in pari delicto* defense. *See* Dkt. 25 at 3. BAT, however, misreads *Concord*, which involved "a dispute between two wrongdoers," *id*. at \*4 (marks and citation omitted), not one party claiming innocence like BAT. Specifically, the Plaintiff in *Concord* had "engaged in criminal and fraudulent acts," while the Defendant had "failed to prevent [Plaintiff's] management from committing fraud by not properly performing its contractual duties," *Id.* at \*4-5. The court applied *in pari delicto* because it found that the allegations in the complaint demonstrated plaintiff's wrongdoing "far exceed[ed] any wrongdoing [Defendant] is alleged to have committed." *Id.* at \*4. *Concord*, therefore, does not allow a party

that claims complete innocence to invoke the doctrine and, in fact, supports the unequivocal legal precept that *in pari delicto* requires mutual fault.[7]

Third, *in pari delicto* does not apply because the wrongs of which BAT accuses NCR are wholly distinct from the breach of contract that NCR alleges here against BAT. *In pari delicto* "refers to the plaintiff's participation in the *same wrongdoing* as the defendant." *In re Food Mgmt. Grp.*, LLC, 380 B.R. 677, 693 (Bankr. S.D.N.Y. 2008) (emphasis added) (marks and citations omitted). But BAT does not allege that NCR participated in the same wrongdoing that it alleged against BAT. Instead, BAT bases its *in pari delicto* theory on NCR's "long history of fraudulent activity in its manufacturing and marketing of dangerous PCB-laden products, and in concealing its responsibility for the liabilities arising from its wrongful acts," CC ¶ 103, while the injuries NCR alleges in its Complaint arise from BAT's failure to pay its fair share of cleanup obligations under the CSA. BAT cannot assert *in pari delicto* where NCR's claim and BAT's counterclaim relate to distinct allegations of wrongdoing. *See ImagePoint, Inc. v. JPMorgan Chase Bank, Nat'l Ass'n*, 27 F. Supp. 3d 494, 515 (S.D.N.Y. 2014) (finding "[t]he alleged misconduct of [plaintiff] has nothing to do with the claims in this case . . . Accordingly, the [*in pari delicto*] doctrine does not apply because the instant suit does not seek to 'undo the consequences' of [plaintiff]'s allegedly improper acts"); *cf. M.C.F. Assocs., Inc.*, 530 F. Supp. 3d at 465 (unclean hands defense "legally insufficient" because purported misconduct was general conduct over the last fifty years as opposed to "the enforcement of the [contract] at issue here").

Finally, BAT's attempt to rely on the doctrine under the present circumstances is particularly inapplicable as it would defeat the entire purpose of the CSA. The CSA was entered

---

[7] BAT's *in pari delicto* theory, and its claims of innocence, also entirely ignore the allegations and findings of liability relating to the contamination caused by APD, which BAT purchased in 1978.

as a way to apportion liability for both parties' involvement in circumstances giving rise to environmental liability. It would be nonsensical for the *in pari delicto* doctrine to permit a party to such an agreement to breach its obligations and then avoid contractual liability by claiming the other party was equally at fault for the underlying circumstances that led to the settlement agreement in the first place.

Because BAT fundamentally misconstrues the doctrine of *in pari delicto*, which is wholly inapplicable to NCR's claims, this Court should dismiss Count IV for failing to state a claim.

**F.  BAT Cannot Satisfy The Public Policy Doctrine, So This Court Should Dismiss Counterclaim Count V.**

In its final counterclaim, BAT argues that it should have no liability for Kalamazoo cleanup costs because such costs constitute punitive damages and New York public policy prohibits contracts that indemnify a party for punitive damages. CC ¶¶ 39, 120. BAT's public policy counterclaim is deeply flawed and should be dismissed for failing to state a claim.

As an initial matter, "New York public policy only prohibits indemnification when [a] fact finder determines that the indemnitee intended to cause harm." *NXIVM Corp. v. Sutton*, No. 06-cv-1051, 2019 WL 4010859, at *8 (D.N.J. Aug. 26, 2019) (citing *CBS Corp. v. Eaton Corp.*, No. 07-cv-11344, 2010 WL 1375169, at *2 (S.D.N.Y. Mar. 30, 2010); *see also Gibbs-Alfano v. Burton*, 281 F.3d 12, 21 (2d Cir. 2002) ("[I]n the absence of a judgment of intentional conduct on the part of [defendants], we do not find any reason under New York public policy to hold the Indemnification Clause unenforceable").[8] Ignoring New York law on punitive damages, BAT offers the following theory:

---

[8] The *Gibbs-Alfano* court further noted that "Defendants have not cited any case, and we found none, where a New York court declined to enforce an otherwise valid indemnification agreement between parties where the party seeking indemnification settled, without admitting liability, claims against it alleging intentional wrongdoing." 281 F.3d at 21.

> [The] awards of damages against NCR were explicitly found to be
> in excess of the actual proportionate share of PCBs for which NCR
> was responsible for discharging. The excess amounts were found to
> be justified as equitable due to NCR's bad behavior. Such
> apportionment is a form of punitive damages intended to punish
> NCR for its bad behavior.

CC ¶¶ 115-116.

But BAT does not allege that any trier of fact found that NCR intentionally caused injury as required under New York law, or that any court actually imposed punitive damages on NCR or suggested that NCR should be punished. BAT's self-serving opinion that the awards against NCR reflect its "bad behavior" is both inaccurate and irrelevant. These awards reflect what a fact-finder determined to be NCR's share of CERCLA cleanup costs, and the court's opinion nowhere describes that share as punitive. *See e.g., Georgia-Pacific*, 358 F. Supp. 3d at 618 (apportioning liability for Kalamazoo cleanup costs as among NCR, Georgia-Pacific, and others). There is no support in the law for BAT's assertion that the parties' agreement to the CSA's allocation of future costs equates to an agreement to indemnify NCR for punitive damages.

BAT's public policy cause of action should be dismissed as a matter of law for failing to state a cognizable cause of action.

## **CONCLUSION**

For all of the foregoing reasons, the Court should grant judgment on the pleadings as to NCR's declaratory judgment action, strike BAT's affirmative defenses, and dismiss BAT's counterclaims in their entirety.

29

Dated: October 2, 2023
New York, New York

Respectfully submitted,

/s/ John J. Kuster
John J. Kuster
Zachary Payne
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300
jkuster@sidley.com
zpayne@sidley.com

Bruce R. Braun (admitted *pro hac vice*)
Charles K. Schafer (admitted *pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000
bbraun@sidley.com
cschafer@sidley.com

*Attorneys for Plaintiff NCR Corporation*