# EXHIBIT A

04/19/2001 11:01 FAX                                                    ☒002

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK-PRODUCT

### CONFIDENTIAL SETTLEMENT AGREEMENT
### BETWEEN NCR CORPORATION AND B.A.T INDUSTRIES
### P.L.C. AND APPLETON PAPERS INC.

This Settlement Agreement is entered into effective
February 12, 1998 between NCR Corp. ("NCR"), on the one hand, and
B.A.T Industries p.l.c. and Appleton Papers Inc. (collectively
referred to hereafter as "API/BAT"), on the other hand.

### RECITALS

WHEREAS, the Sovereigns, as defined herein, have
alleged that NCR and API/BAT, among others, are potentially
responsible under federal and state laws for investigation and
remediation of Hazardous Substances, as defined herein, in the
sediments of the Fox River sites in Wisconsin, as defined herein,
and for damages to natural resources in the surrounding
environment, allegedly as a result of the manufacture and
recycling of carbonless paper.

WHEREAS, the United States Environmental Protection
Agency ("U.S. EPA") has also alleged that NCR and API/BAT are
potentially liable under federal law for Hazardous Substances
contamination at Marina Cliffs in Wisconsin, as defined herein
(hereinafter referred to as "the Marina Cliffs sites");

 

Strictly Confidential/To Be Circulated Only
On a Need to Know Basis

WHITING CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                    NCR-FOX-1375680

WHEREAS, NCR filed a declaratory judgment action in the United States District Court for the Southern District of New York (95 Civ. 4620 (KTD)) (hereinafter referred to as "the Southern District of New York litigation") against API/BAT seeking a declaration that API/BAT is obligated to defend and indemnify NCR against claims arising out of or relating to the Fox River and Marina Cliffs sites pursuant to the "Agreement of Purchase and Sale of Assets by and among B.A.T Industries Limited, Lentheric, Inc. and NCR Corporation" and the "Assumption Agreement", both of which are dated June 30, 1978 (collectively referred to hereafter as "the Purchase Agreement").

WHEREAS, API/BAT filed a counterclaim alleging that NCR is obligated to defend and indemnify them against claims arising out of or relating to the Fox River and Marina Cliffs sites pursuant to the Purchase Agreement;

WHEREAS, notwithstanding the Southern District of New York litigation, NCR and API/BAT have worked together cooperatively as members of "the Fox River Group," an organization currently comprised of seven of the companies identified by the Sovereigns as potentially responsible parties for the Fox River sites. Pursuant to a "Funding and Interim Implementation Agreement Among Certain Companies Concerning the Fox River" ("Interim Funding Agreement") dated January 31, 1997 and entered by and among members of the Fox River Group, NCR and

Strictly Confidential/To Be Circulated Only
On a Need to Know Basis

2

NCR-FOX-1375681

API/BAT have incurred costs to defend and investigate the Sovereigns' claims relating to the Fox River sites, which costs have heretofore been divided equally between NCR and API/BAT subject to reallocation upon the conclusion or settlement of the Southern District of New York litigation;

WHEREAS, NCR and API/BAT have also entered into a Joint Defense Agreement dated December 19, 1995, pursuant to which they have cooperated with each other, exchanged joint defense materials, and otherwise assisted each other in the defense of the Sovereigns' and potential third-party claims;

WHEREAS, without admitting any fact, responsibility, fault, or liability, NCR and API/BAT expect to incur additional Claims, Damages, and Defense Costs, as those terms are defined herein, in connection with the Fox River sites;

WHEREAS, without admitting any fact, fault, or liability, NCR and API/BAT recognize that claims similar to those asserted by the Sovereigns against NCR and API/BAT relating to the Fox River sites (i.e. Hazardous Substances contamination arising from or relating to the manufacture or recycling of carbonless paper) may arise in the future with respect to other sites;

WHEREAS, NCR and API/BAT have entered into an agreement with the U.S. EPA to settle any and all environmental claims asserted against NCR or API/BAT relating to or arising out of the



Strictly Confidential/To Be Circulated Only
On a Need to Know Basis                      3

WHITING CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                    NCR-FOX-1375682

Marina Cliffs sites, in the amount of $89,024.00, subject to limited "reopener" provisions, which amount NCR and API/BAT have agreed to divide equally between them;

WHEREAS, in an effort to resolve the Southern District of New York litigation, and to allocate as between NCR and API/BAT all Claims, Damages, and Defense Costs, as defined herein, arising out of or relating to the Fox River sites or to the Marina Cliffs sites to the extent the reopener provisions are invoked, the parties participated in a private and confidential mediation on February 12, 1998;

WHEREAS, as a result of the mediation, NCR and API/BAT have independently determined, with the advice of their respective counsel, that it is in their best interests to fully settle and compromise the Southern District of New York litigation and to allocate as between themselves all Claims, Damages, and Defense Costs, as defined herein, relating to the Fox River sites, to the Marina Cliffs sites to the extent the reopener provisions are invoked or the pending settlement is not approved, and to Future Sites, as defined herein, up to a total of $75 million;

WHEREAS, NCR and API/BAT have agreed to arbitrate the allocation as between them of any Claims, Damages, and Defense Costs relating to the Fox River sites, the Marina Cliffs sites,

Strictly Confidential/To Be Circulated Only
On a Need to Know Basis

4

or Future Sites, in excess of $75,000,000, which arbitration
shall be final, compulsory, and binding.

NOW THEREFORE, in exchange for the mutual conditions
and covenants set forth herein, and for good and valuable
consideration, the receipt and sufficiency of which is hereby
acknowledged, NCR and API/BAT mutually agree as follows:

1. <u>DEFINITIONS:</u>  This Settlement Agreement incorporates the
definitions set forth in Section 101 of the Comprehensive
Environmental Response, Compensation and Liability Act
("CERCLA"), 42 U.S.C. §9601, and in regulations promulgated under
CERCLA and in any amendments thereto.  In addition, whenever the
following terms are used in this Settlement Agreement, they shall
have the following meanings:

a.   "API" means Appleton Papers Inc., formerly known
as Lentheric, Inc.

b.   "BAT" means B.A.T Industries Limited or BAT
Industries, p.l.c.

c.   "API/BAT" means API and/or BAT, individually or
collectively.

d.   With the exception of Excepted Matters, as defined
herein, "Claim" or "Claims" means any and all liabilities, suits,
claims, including specifically claims for indemnification arising
under the Purchase Agreement, causes of action, or demands of any
kind or nature asserted against NCR or API/BAT and relating to

Strictly Confidential/To Be Circulated Only
<u>On a Need to Know Basis</u>                          5

WHITING CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                    NCR-FOX-1375684

the release or disposal of Hazardous Substances to or at the Fox River sites or Future Sites; whether incurred or yet to be incurred, whether presently known or unknown, whether developed in the future or now in existence, and whether based on:

(1)  any federal, state, or local environmental or other law or regulation, whenever enacted or adopted, whether existing now or in the future, including without limitation any cause of action under CERCLA (and any regulations promulgated thereunder), 42 U.S.C. § 9601 et seq.; the Resource Conservation and Recovery Act ("RCRA") (and any regulations promulgated thereunder), 42 U.S.C. § 6901 et seq.; the Clean Water Act ("CWA")(and any regulations promulgated thereunder), 33 U.S.C. § 1251 et seq.; the Toxic Substances Control Act (and any regulations promulgated thereunder), 15 U.S.C. §§ 2601 et seq.; regulations governing PCBs, 40 CFR Part 761; the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, insofar as such act relates to a claim under a federal, state, or local environmental law or regulation as set forth above; Wis. Stat. Chapters 160, 283, 291, and 292; Wis. Stat. sec. 29.29;

Strictly Confidential/To Be Circulated Only
On a Need to Know Basis

6

WHITING CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                    NCR-FOX-1375685

☒008

Wis. Stat. sec. 30.12; and any regulations
promulgated thereunder.

(2)   any administrative claim, statutory claim, or
      claim at common law, legal or in equity, in
      connection with any purported or alleged remedial
      action or damages, including natural resource
      damages, including but not limited to action
      required to: (a) clean up, restore, dredge,
      remove, treat, or in any way address the release
      or disposal of Hazardous Substances, including
      off-site treatment and disposal; (b) prevent the
      release or threat of release or minimize the
      further release of Hazardous Substances; (c)
      observe the cleanup, restoration, removal or
      treatment of Hazardous Substances; and (d) perform
      pre-remedial studies and investigations,
      assessments of natural resource damages, post-
      remedial care, and restoration planning and
      implementation.

e.   With the exception of Excepted Matters, "Damages"

means:

(1)   all out-of-pocket study, restoration,
      acquisition, cleanup, removal, remedial,
      investigative, oversight or response costs,

Strictly Confidential/To Be Circulated Only

On a Need to Know Basis                                       7

WHITING CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                    NCR-FOX-1375686



or penalties allocated or assessed to, imposed upon, or incurred by NCR or API/BAT in response to Claims; whether arising from administrative proceedings, litigation, or settlement; and whether asserted directly by the Sovereigns, by way of a private party actions (in the nature of contribution or otherwise), or pursuant to allocation proceedings conducted by and between potentially responsible parties ("PRPs") at the Fox River sites or Future Sites;

(2) all damages, including natural resource damages, allocated or assessed to, imposed upon, or incurred by NCR or API/BAT in response to Claims; whether arising from administrative proceedings, litigation, or settlement; and whether asserted directly by the Sovereigns, by way of private party actions (in the nature of contribution or otherwise), or pursuant to allocation proceedings conducted by and between PRPs at the Fox River sites or Future Sites;

(3) all costs allocated or assessed to, imposed upon, or incurred by NCR or API/BAT pursuant



Strictly Confidential/To Be Circulated Only
On a Need to Know Basis

8

WHITING CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                    NCR-FOX-1375687

to the reopener provisions in the settlement
agreement with U.S. EPA regarding the Marina
Cliffs sites.

f.    "Excepted Matters": Significant Claims, Damages,
or Group Defense Costs relating to or arising from the release or
disposal of Hazardous Substances, other than PCBs, to or at the
Fox River sites or Future Sites by NCR or API/BAT after June 30,
1978, are expressly excluded from the scope of this Agreement.
For the purposes of this Agreement, "significant" means Claims,
Damages, or Group Defense Costs attributable to NCR's or
API/BAT's liability for Hazardous Substances at the Fox River
sites or Future Sites, the total of which exceeds $250,000.00.
To the extent that such significant Claims, Damages, or Group
Defense Costs relate to releases or disposal activities
commencing prior to June 30, 1978, but which continued
thereafter, the parties shall negotiate in good faith to
apportion such claims as between them.  In the event the parties
are unable to reach agreement, the provisions of ¶ 10 (Dispute
Resolution) shall apply.

Also excluded from the scope of this Agreement are any
and all claims asserted by private parties (i.e. non-governmental
entities) alleging personal injury, property damage, or other
similar claims as a result of exposure to or the presence of
hazardous substances which are attributable to the operations or

Strictly Confidential/To Be Circulated Only
On a Need to Know Basis                          9

WHITING CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                    NCR-FOX-1375688

activities of NCR or API/BAT. Notwithstanding the foregoing, nothing in this Agreement shall be construed or interpreted to exclude from the scope of this Agreement third-party claims for contribution arising from or relating to Claims, Damages, or Group Defense Costs otherwise covered by this Settlement Agreement.

g.    "The Fox River Group" means those companies that have organized together to defend against the Sovereigns' claims (currently: Fort James Corporation, NCR Corporation, Appleton Papers Inc., PH Glatfelter Company, Wisconsin Tissue Mills, Inc., U.S. Paper Mills Corp., and Riverside Paper Corporation) and any other entities or persons which may hereafter join the Fox River Group or any successor organization of potentially responsible parties.

h.    "Fox River sites" means those portions of the lower Fox River in Wisconsin, from and including Little Lake Butte des Morts and continuing downstream to the mouth of the Fox River where it enters Green Bay, Green Bay, and Lake Michigan; the banks, floodplains and wetlands thereof;  and any deposits, sediment management units, and other discrete areas of contamination within or adjacent to those areas; alleged to be contaminated with Hazardous Substances as a result, in whole or in part, of the manufacture, recycling, deinking, or repulping of any amount of PCB-containing NCR Paper brand carbonless paper

Strictly Confidential/To Be Circulated Only
On a Need to Know Basis                                    10

WHITING CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                              NCR-FOX-1375689

that was manufactured utilizing the assets that were the subject
of the Purchase Agreement.

     i.   "Future Sites" means any facility, property, or
location, other than the Fox River sites, alleged to be
contaminated with Hazardous Substances as a result, in whole or
in part, of the manufacture, recycling, deinking, or repulping of
any amount of PCB-containing NCR Paper brand carbonless paper
that was manufactured utilizing the assets that were the subject
of the Purchase Agreement.

     j.   With the exception of Excepted Matters, "Group
Defense Costs" means:  all investigation, administrative and
defense costs allocable to NCR or API/BAT in connection with the
Fox River Group's activities, as that group now exists or as its
membership may be reconstituted from time to time, or the
activities of any group of allegedly responsible parties formed
by API, NCR, and any other PRPs in connection with the Fox River
sites or at any of the Future Sites.

     k.   "Hazardous Substances" means hazardous substances
as defined in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14) and
its corresponding regulations; solid or hazardous wastes as
defined in Section 1004 of the Resource, Conservation and
Recovery Act, 42 U.S.C. § 6903, and its corresponding
regulations; and hazardous, dangerous, or toxic wastes or
substances as defined or used in the Wisconsin Spill Act and its

Strictly Confidential/To Be Circulated Only
On a Need to Know Basis                        11

☒013



corresponding regulations or other comparable Wisconsin laws and regulations.

l.    "The Marina Cliffs sites" means the former Northwestern Barrel/Marina Cliffs facility located in South Milwaukee, Wisconsin near the intersection of Fifth Avenue and Marina Drive.

m.    "NCR" means NCR Corporation, formerly known as AT&T Global Information Solutions Company.

n.    "Sovereigns" means the United States, through any of its agencies, including but not limited to the Environmental Protection Agency, the Fish & Wildlife Service of the Department of the Interior, the National Oceanic and Atmospheric Administration of the Department of Commerce, and the United States Department of Justice; the Menominee Indian Tribe of Wisconsin; the Oneida Tribe Indians of Wisconsin; the State of Wisconsin, through any of its agencies, including but not limited to the Wisconsin Department of Justice and the Wisconsin Department of Natural Resources; and any other agency of any federal, state, or local governments, or Indian tribe, which may now or in the future assert claims arising out of or relating to the release or disposal of Hazardous Substances to or at the Fox River sites, the Marina Cliffs sites, or Future Sites.



Strictly Confidential/To Be Circulated Only
On a Need to Know Basis                    12

WHITING CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                    NCR-FOX-1375691

2.  CONFIDENTIALITY PROVISIONS:

     a.  The terms of this Settlement Agreement, except for the separate Subsequent Allocation Arbitration Agreement which is appended hereto as Exhibit A, are strictly confidential and shall not be disclosed to (i) any third party; (ii) any employee, agent, attorney, or other representative of the parties who does not have a reasonable need to know the initial allocation; or (iii) any of the arbitrators chosen pursuant to this Settlement Agreement.

     b.  Notwithstanding the foregoing, this paragraph does not apply to: (i) disclosures, which pursuant to the signed opinion of counsel, are required by securities laws or stock exchange rules; (ii) disclosures to the parties' outside auditors; (iii) disclosures to insurance carriers who may be obligated to provide coverage to NCR or API/BAT with regard to the Fox River sites, the Marina Cliffs sites, or Future Sites, subject to an appropriate confidentiality agreement; (iv) disclosures required pursuant to court or government agency order provided, however, that timely notice of all requests for disclosure shall be provided to each of the parties to this Settlement Agreement to enable the parties hereto to seek the entry of protective orders; or (v) such other disclosures to which the parties mutually agree.

Strictly Confidential/To Be Circulated Only
On a Need to Know Basis

13

WHITING CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

NCR-FOX-1375692

04/19/2001 11:05 FAX                                                        ☒015

3.  <u>INITIAL ALLOCATION:</u>  Without admitting any fact, responsibility, fault, or liability, the parties agree to combine and allocate as between themselves, beginning February 16, 1998, all Damages or Group Defense Costs allocated or assessed to, imposed upon, or incurred by NCR or API/BAT, either singly or collectively, relating to the Fox River sites, the Marina Cliffs sites (to the extent that the reopener provisions are invoked), or Future Sites as follows:  55% will be borne by API/BAT and 45% will be borne by NCR, up to a total of $75,000,000 in the aggregate (the "Initial Allocation").

4.  <u>SUBSEQUENT ALLOCATION:</u>

a.  Pursuant to the terms of the Subsequent Allocation Arbitration Agreement attached hereto as Exhibit A, NCR and API/BAT agree to participate in discovery and a compulsory, binding arbitration to allocate as between them all Claims, Damages, or Group Defense Costs relating to the Fox River sites, the Marina Cliffs sites, or Future Sites, in excess of $75,000,000 (the "Subsequent Allocation").

b.  The parties agree that the Subsequent Allocation Arbitration cannot be triggered, nor can a panel of arbitrators be requested and convened unless and until $50 million of the $75 million Initial Allocation has been expended in connection with the Fox River sites, the Marina Cliffs sites, or Future Sites. At that point, either party can initiate the arbitration pursuant



Strictly Confidential/To Be Circulated Only
<u>On a Need to Know Basis</u>                          14

to the procedures set forth in the Subsequent Allocation
Arbitration Agreement attached as Exhibit A.

    5.    <u>PAYMENT OF DAMAGES OR GROUP DEFENSE COSTS</u>

<u>ALLOCATED OR ASSESSED UPON NCR OR API/BAT</u>:  NCR and API/BAT shall
each designate an individual with responsibility for reviewing
all Damages or Group Defense Costs allocated to or assessed upon
NCR or API/BAT, either singly or collectively, relating to the
Fox River sites, the Marina Cliffs sites (to the extent that the
reopener provisions are invoked), or the Future sites ("the
Authorization Administrator").  The Authorization Administrators
shall promptly review all such Damages or Group Defense Costs
when tendered for payment and upon approval thereof, shall cause
their respective companies to pay their applicable shares in
accordance with the Initial and Subsequent Allocations, as
defined above in ¶¶ 3 and 4.  If either of the Authorization
Administrators believes any Damages or Group Defense Costs are
inappropriate or unauthorized, or otherwise has questions or
concerns about any portion of such Damages or Group Defense
Costs, the Authorization Administrators shall confer with one
another in an effort to arrive at a consensus.  If a dispute
arises as to the propriety of the payment of any Damages or Group
Defense Costs, the provisions of ¶ 10 (relating to dispute
resolution) shall apply.

Strictly Confidential/To Be Circulated Only
On a Need to Know Basis            15

6.    <u>RELEASE AND MUTUAL COVENANTS NOT TO SUE</u>:  Without

releasing or discharging the obligations of any of the parties as

set forth in this Settlement Agreement, the Subsequent Allocation

Arbitration Agreement attached as Exhibit A, the Joint Defense

Agreement attached as Exhibit B, and the Joint Insurance Recovery

Agreement attached as Exhibit C, and expressly recognizing the

parties' rights to enforce same, and in consideration of the

payments to be made and the binding arbitration to be conducted

pursuant to those agreements, the parties do release and covenant

not to sue one another as follows:

a.    <u>Release and Covenant Not to Sue by NCR</u>:  With the

exception of Excepted Matters, NCR, for itself, its directors,

officers, stockholders, divisions, agents, subsidiaries,

predecessors, successors and assigns, or anyone acting on their

behalf hereby: (1) releases and forever discharges API and BAT,

and their respective directors, officers, stockholders,

divisions, agents, subsidiaries, predecessors, successors,

assigns or grantors or anyone acting on their behalf, from any

and all Claims, Damages, and Group Defense Costs (as defined

herein); and (2) covenants not to commence any civil, judicial,

administrative, or other action in law or equity for any Claims,

Damages, and Group Defense Costs that NCR had, has, or at any

time in the future may have, against API or BAT, and their

respective directors, officers, stockholders, divisions, agents,

Strictly Confidential/To Be Circulated Only
On a Need to Know Basis                              16

subsidiaries, predecessors, successors, assigns, grantors or
anyone acting on its or their behalf.  Notwithstanding the
foregoing, NCR does not release API/BAT with respect to Excepted
Matters, and expressly reserves the right to assert any claims it
now has or may have in the future with respect to Excepted
Matters.

        b.   <u>Release and Covenant Not to Sue by API</u>:  With the
exception of Excepted Matters, API, for itself, its directors,
officers, stockholders, divisions, agents, subsidiaries,
predecessors, successors and assigns, or anyone acting on their
behalf hereby: (1) releases and forever discharges NCR and its
respective directors, officers, stockholders, divisions, agents,
subsidiaries, predecessors, successors, assigns or grantors or
anyone acting on their behalf, from any and all Claims, Damages,
and Group Defense Costs (as defined herein); and (2) covenants
not to commence any civil, judicial, administrative, or other
action in law or equity for any Claims, Damages, and Group
Defense Costs that API had, has, or at any time in the future may
have, against NCR and its respective directors, officers,
stockholders, divisions, agents, subsidiaries, predecessors,
successors, assigns, grantors or anyone acting on its or their
behalf.  Notwithstanding the foregoing, API does not release NCR
with respect to Excepted Matters, and expressly reserves the



Strictly Confidential/To Be Circulated Only
On a Need to Know Basis                          17

right to assert any claims it now has or may have in the future
with respect to Excepted Matters.

    c.   <u>Release and Covenant Not to Sue by BAT</u>:  With the
exception of Excepted Matters, BAT, for itself, its directors,
officers, stockholders, divisions, agents, subsidiaries,
predecessors, successors and assigns, or anyone acting on their
behalf hereby: (1) releases and forever discharges NCR, and its
respective directors, officers, stockholders, divisions, agents,
subsidiaries, predecessors, successors, assigns or grantors or
anyone acting on their behalf, from any and all Claims, Damages,
and Group Defense Costs (as defined herein); and (2) covenants
not to commence any civil, judicial, administrative, or other
action in law or equity for any Claims, Damages, and Group
Defense Costs that BAT had, has, or at any time in the future may
have, against NCR and its respective directors, officers,
stockholders, divisions, agents, subsidiaries, predecessors,
successors, assigns, grantors or anyone acting on its or their
behalf.  Notwithstanding the foregoing, BAT does not release NCR
with respect to Excepted Matters, and expressly reserves the
right to assert any claims it now has or may have in the future
with respect to Excepted Matters.

    7.   <u>NO ADMISSION OF LIABILITY</u>:  By entering into this
Settlement Agreement, and the exhibits hereto, the parties are
not admitting to any unlawful conduct or liability on their part.


Strictly Confidential/To Be Circulated Only
On a Need to Know Basis

18

WHITING CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER        NCR-FOX-1375697

04/19/2001 11:07 FAX                                                    ☑020

The parties further acknowledge and agree that this Settlement Agreement shall not be admissible as evidence in any federal, state, local, tribal, or administrative agency proceeding, except in a proceeding to enforce same.

8.    SURVIVAL OF ¶ 10.19: The parties confirm that the provisions of ¶ 10.19 of the Purchase Agreement are still in full force and effect between the parties and are applicable to disputes arising under this Settlement Agreement.  The parties recognize and agree that ¶ 10.19 of the Purchase Agreement and/or this subsection of the Settlement Agreement do not create any rights or obligations with respect to third parties not signatories to this Settlement Agreement or with respect to disputes arising out of matters unrelated to the Purchase Agreement or this Settlement Agreement.

9.    DISMISSAL OF S.D.N.Y. LITIGATION:  Upon the conclusion of the Subsequent Allocation Arbitration referred to in Exhibit A, the parties will cause a judgment of the United States District Court for the Southern District of New York to be entered on any arbitration award and upon entry of said judgment, shall request the dismissal of the Southern District of New York litigation.

10.    DISPUTE RESOLUTION:

a.    Inter-Company Dispute Escalation Procedures:  In the event of any disputes under this Agreement, except those


Strictly Confidential/To Be Circulated Only
On a Need to Know Basis _____                19

WHITING CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                        NCR-FOX-1375698

relating to the Subsequent Allocation Arbitration which shall be governed by the Subsequent Allocation Arbitration Agreement attached as Exhibit A, the parties shall submit the issue for resolution to their respective General Counsel, who shall attempt in good faith to resolve the dispute. If resolution is not reached, the parties will then submit the issue for resolution to their respective Chief Financial Officers who shall also negotiate in good faith to resolve the matter. If these inter-company dispute escalation procedures are not effective, the parties shall participate in non-binding mediation before a mediator jointly agreed upon the parties.

    b.   <u>Funding Disputes</u>: In the event that the inter-company dispute escalation procedures and the non-binding mediation are not effective, NCR and API/BAT agree that any and all disputes over payment of any Damages or Group Defense costs allocated to or assessed upon NCR or API/BAT shall be submitted to arbitration in New York, New York administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules. Judgment on the award entered by the Arbitrator shall be entered in any court having jurisdiction thereof.

    11.  <u>JOINT DEFENSE:</u> By virtue of this Settlement Agreement, NCR and API/BAT have joint and common legal interests with respect to the Fox River sites or Future Sites. NCR and

Strictly Confidential/To Be Circulated Only
On a Need to Know Basis 

             20

API/BAT hereby affirm and continue their Joint Defense Agreement entered into on December 19, 1995, attached hereto as Exhibit B. NCR and API/BAT agree to continue to cooperate, coordinate, and assist one another in the defense of the Sovereigns' and potential third-party claims relating to the Fox River sites, as well as Future Sites, and further agree to implement a coordinated and efficient joint defense effort among themselves. The parties agree to share documents, factual material, mental impressions, memoranda, interview reports and other information in any form, whether written, oral, computerized or otherwise, relating to the Fox River sites and Future Sites. It is the goal of the parties to work together as closely as possible as if the parties are one entity and to manage effectively and efficiently the joint defense effort. To that end, the parties agree to identify tasks and projects ("Shared Tasks") relating to their joint defense efforts and assign Shared Tasks among NCR and API/BAT, and their outside counsel, in a fair, equitable and efficient manner. The parties will meet on a regular and periodic basis to review Shared Tasks and identify any new Shared Tasks to be assigned. It is the intent and desire of the parties that any information exchanged between or among them shall be maintained as confidential and shall be subject to all applicable privileges and protections from disclosure, including without limitation the joint defense privilege, the attorney-client

Strictly Confidential/To Be Circulated Only
On a Need to Know Basis

21

WHITING CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
NCR-FOX-1375700

privilege, and the attorney work product doctrine.
Notwithstanding the foregoing, nothing in this Settlement
Agreement or in the Joint Defense Agreement shall give rise to an
attorney-client relationship between Sidley & Austin and API/BAT
or between Simpson Thacher & Bartlett and NCR.

12. <u>JOINT INSURANCE RECOVERY</u>: NCR and API/BAT agree
to pursue jointly and share applicable insurance proceeds in
accordance with the terms of the Joint Insurance Recovery
Agreement, attached hereto as Exhibit C.

13. <u>JOINT AND SEVERAL LIABILITY OF API AND BAT</u>: BAT
and API are jointly and severally liable to NCR for the 55% share
of the Initial Allocation allocable to API/BAT and for the share
allocated to API/BAT in the Subsequent Allocation Arbitration.
This Settlement Agreement does not affect or vary any of the
contractual arrangements or indemnities previously entered into
between API and BAT relating to the Claims, Damages and Group
Costs that are to be allocated hereunder.

14. <u>CONTROLLING LAW</u>: This Settlement Agreement, and
the agreements attached as exhibits, shall be construed under and
governed by the laws of New York.

15. <u>ENTIRE AGREEMENT</u>: This Settlement Agreement, and
the agreements attached as exhibits, set forth the entire
agreement of the parties with respect to liability as between
NCR, on the one hand, and API/BAT, on the other, for the Fox

Strictly Confidential/To Be Circulated Only
On a Need to Know Basis                         22

WHITING CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                    NCR-FOX-1375701



River sites, the Marina Cliffs sites, and Future Sites, and supersedes any prior understanding or agreement between them respecting those sites. No amendments, changes, alterations, or modifications to the terms of this Settlement Agreement, or the agreements attached as exhibits, may be made or shall be binding unless they are agreed to in writing by all of the parties hereto.

16. <u>ASSIGNABILITY</u>: This Settlement Agreement, and the agreements attached as exhibits, is not assignable without the prior consent in writing of all parties hereto.

17. <u>COUNTERPARTS</u>: This Agreement may be signed in one or more counterparts. All counterparts together shall constitute a single agreement.

18. <u>AUTHORITY</u>: The individual signatories hereto represent and warrant that they have read this Settlement Agreement and agreements attached as exhibits, that they are fully authorized to execute such agreements on behalf of the entities identified above their signatures, that they and the entity they represent understand the terms of their agreements, and that they are executing the same voluntarily upon their best judgment.

19. <u>NOTICES</u>: Any notices required to be provided under this Settlement Agreement, and any agreements attached as



Strictly Confidential/To Be Circulated Only
On a Need to Know Basis                    23

WHITING CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                    NCR-FOX-1375702

04/19/2001 11:08 FAX                                                    ☑025

exhibits, shall be served by both facsimile and next-day delivery

service, and shall be delivered to the following:

        For NCR:

        Jon S. Hoak
        Senior Vice President and General Counsel
        NCR Corp.
        1700 S. Patterson Blvd.
        Dayton, OH  45479-0001
        937/445-2900
        Fax: 937/445-7214

        For BAT:

        Robert A. Bourque
        Simpson Thacher & Bartlett
        425 Lexington Avenue
        New York, New York 10017
        212/455-3595
        Fax:  212/455-2502

        For API:

        Paul J. Karch
        General Counsel
        Appleton Papers Inc.
        P. O. Box 359
        Appleton, WI  54912-0359
        920/991-8663
        Fax: 920/991-8852



Strictly Confidential/To Be Circulated Only
On a Need to Know Basis                              24

WHITING CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                    NCR-FOX-1375703



IN WITNESS WHEREOF, each of the parties hereto has

executed this Agreement effective February 12, 1998.

NCR CORPORATION

By: _____

Its: _____

Date: _____


BAT INDUSTRIES p.l.c.

By: _____

Its: _____

Date: _____


APPLETON PAPERS INC.

By: _____

Its: _____

Date: _____




**Strictly Confidential/To Be Circulated Only**
<u>On a Need to Know Basis</u>                    25

WHITING CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                    NCR-FOX-1375704

IN WITNESS WHEREOF, each of the parties hereto has executed this Agreement effective February 12, 1998.

NCR CORPORATION

By: _____

Its: _____

Date:_____

BAT INDUSTRIES p.l.c.

By: _____

Its: _A Horney_____

Date: _July  26,  1999_____

APPLETON PAPERS INC.

By: _____

Its: _____

Date:_____



Strictly Confidential/To Be Circulated Only
On a Need to Know Basis_____                    25

04/19/2001 11:09 FAX                                                    ☑028

IN WITNESS WHEREOF, each of the parties hereto has

executed this Agreement effective February 12, 1998.

NCR CORPORATION

By: _____

Its: _____

Date:_____

BAT INDUSTRIES p.l.c.

By: _____

Its: _____

Date: _____

APPLETON PAPERS INC.

By: _____

Its: Vice President, Secretary & General Counsel

Date: _July 5, 1999_____

Strictly Confidential/To Be Circulated Only
On a Need to Know Basis                        25

WHITING CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER          NCR-FOX-1375706