UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NCR CORPORATION,<br><br>                                  Plaintiff,<br><br>           -against-<br><br><br>B.A.T. INDUSTRIES p.l.c.<br><br>                                  Defendant. | Case No.: 1:23-cv-1172-JPC |

**B.A.T INDUSTRIES P.L.C.'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS, TO STRIKE
AFFIRMATIVE DEFENSES, AND TO DISMISS COUNTERCLAIMS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................................................1

STATEMENT OF RELEVANT FACTS ............................................................................4

ARGUMENT ........................................................................................................................7

I.     NCR IS NOT ENTITLED TO THE EXTRAORDINARY REMEDY OF
       JUDGMENT ON THE PLEADINGS .................................................................8

       A.     The CSA Does Not Cover the Liabilities at Issue in This Action .........................9

       B.     Judgment on the Pleadings Cannot Be Granted in Light of BAT's
              Counterclaims and Defenses.................................................................................. 11

II.    NCR'S MOTION TO DISMISS BAT'S COUNTERCLAIMS MUST ALSO BE
       DENIED.....................................................................................................................12

       A.     BAT Amply Pleaded a Claim for Fraud in the Inducement ................................. 13

              1.     BAT Adequately Alleges Material Omissions and
                     Misrepresentations By NCR ..................................................................... 14

              2.     BAT Adequately Alleges that NCR Had a Duty to Disclose ................... 15

              3.     BAT Adequately Alleges Reliance............................................................ 17

       B.     BAT Adequately Pleaded a Claim for Negligent Misrepresentation................... 18

       C.     BAT Has Properly Pleaded its In Pari Delicto Claim and Defense...................... 21

       D.     BAT Amply Pleaded a Claim for Violation of New York Public Policy............. 24

III.   NCR'S MOTION TO STRIKE BAT'S AFFIRMATIVE DEFENSES SEEKS
       DRASTIC AND EXTRAORDINARY RELIEF AND MUST BE DENIED ..................27

       A.     Pleading Standards................................................................................................ 27

       B.     NCR Has Not Met, And Cannot Meet, Its Burden In Seeking to Strike
              BAT's Defenses .................................................................................................... 29

CONCLUSION.....................................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Knowledge Tech, LLC v. Fleitas*,
No. 21-CV-992 (PKC), 2021 WL 6126966, at *4-5 (S.D.N.Y. Dec. 28, 2021)......................20

*Agora Gourmet Foods Inc. v. Edge*,
No. 60365/2018, 2020 WL 11272263 (Sup. Ct. Westchester Cnty. Aug. 28,
2020) ..............................................................................................................................16

*Al Thani v. Hanke*,
No. 20 CIV. 4765 (JPC), 2021 WL 1895033 (S.D.N.Y. May 11, 2021)
(Cronan, J.).....................................................................................................................12

*Alfaro v. 65 W. 13th Acquisition, LLC*,
904 N.Y.S.2d 205 (2d Dep't 2010)..................................................................................9

*Aluminum Co. of America v. Toba Adjustments, Inc.*,
No. 96 CIV. 9536 (PKL), 1998 WL 120355 (S.D.N.Y. Mar. 18, 1998) ................................12

*Amimon, Inc. v. Shenzhen Hollyland Tech Co.*,
No. 20-CV-9170 (ER), 2023 WL 2478159 (S.D.N.Y. Mar. 13, 2023) ...................................29

*Appleton Papers Inc. v. George A. Whiting Paper Co.*,
No. 08-C-16, 2012 WL 2704920 (E.D. Wis. July 3, 2012) ......................................................7

*Barbagallo v. Marcum LLP*,
2012 WL 1664238 (E.D.N.Y. May 11, 2012) ......................................................................26

*Commander Terminals, LLC. v. Commander Oil Corp.*,
No. 12037-02, 2009 WL 434605 (Sup. Ct. Nassau Cnty. Jan. 27, 2009)..............................16

*Concord Capital Management, LLC v. Fifth Third Bank*,
No. 650478/2010, 2011 WL 10564345 (Sup. Ct. N.Y. Cnty. Dec. 1, 2011)...........................24

*Derechin v. State Univ. of New York*,
963 F.2d 513 (2d Cir. 1992)...............................................................................................27

*Furman v. Furman*,
34 N.Y.S.2d 699 (Sup. Ct. N.Y. Cnty. 1941), *aff'd,* 262 A.D. 512 (App. Div.
1941), *aff'd,* 287 N.Y. 772 (1942) ....................................................................................23

*Gary Friedrich Enterprises, LLC v. Marvel Characters, Inc.*,
716 F.3d 302 (2d Cir. 2013)................................................................................................9

*GEOMC Co., Ltd. v. Calmare Therapeutics Inc.*,
    918 F.3d 92 (2d Cir. 2019)......................................................................................28

*Georgia-Pac. Consumer Prod. LP v. NCR Corp.*,
    358 F. Supp. 3d 613 (W.D. Mich. 2018), *rev'd and remanded on other*
    *grounds,* 32 F.4th 534 (6th Cir. 2022) .......................................................2, 5, 7, 27

*Georgia-Pac. Consumer Prod. LP v. NCR Corp.*,
    980 F. Supp. 2d 821 (W.D. Mich. 2013) ...................................................... *passim*

*Gibbs-Alfano v. Burton*,
    281 F.3d 12 (2d Cir. 2002)......................................................................................26

*Giordano v. UBS, AG*,
    134 F. Supp. 3d 697 (S.D.N.Y. 2015)....................................................................24

*Gitlin v. Chirinkin*,
    993 N.Y.S.2d 914 (2d Dep't 2014)..........................................................................22

*Graphic Arts Mut. Ins. Co. v. Pine Bush Cent. Sch. Dist.*,
    73 N.Y.S.3d 241 (2d Dep't 2018)...........................................................................26

*Johnson v. Nextel Commc'ns, Inc.*,
    660 F.3d 131 (2d Cir. 2011)....................................................................................13

*Jujamcyn Theaters LLC v. Fed. Ins. Co.*,
    --- F. Supp. 3d ---, 2023 WL 2366789 (S.D.N.Y. Mar. 6, 2023).........................8, 27

*Kelly v. 21 Grp. Inc.*,
    No. 22-CV-0226 (MKB), 2023 WL 5831131 (E.D.N.Y. Sept. 8, 2023)................28

*Kimmell v. Schaefer*,
    89 N.Y.2d 257 (N.Y. 1996) ........................................................................18, 19, 20

*Kirschner v. KPMG LLP*,
    938 N.E.2d 941 (N.Y. 2010)...................................................................................22

*Kleiman v. Wright*,
    No. 18-CV-80176, 2020 WL 11420664 (S.D. Fla. Nov. 18, 2020) ........................12

*Langhamer v. Johnson*,
    No. 1:22-CV-05404 (JLR), 2023 WL 6691017 (S.D.N.Y. Oct. 12, 2023) ......17, 20

*Lively v. WAFRA Inv. Advisory Grp., Inc.*,
    6 F.4th 293 (2d Cir. 2021) ........................................................................................8

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*,
    LLC, 797 F.3d 160 (2d Cir. 2015) ..........................................................................17

*Mary & Alice Ford Nursing Home Co. v. Fireman's Ins. Co.*,
   446 N.Y.S.2d 599 (3d Dep't 1982), *aff'd*, 439 N.E.2d 883 (N.Y. 1982) ...............................26

*McIntosh v. Katapult Holdings, Inc.*,
   2023 WL 5049044 (S.D.N.Y. Aug. 8, 2023) ...........................................................................27

*Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*,
   500 F.3d 171 (2d Cir. 2007)....................................................................................................13

*MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*,
   199 F. Supp. 3d 818 (S.D.N.Y. 2016)................................................................................21, 23

*Modular Devices, Inc. v. Alcatel Alenia Space Espana*,
   No. 08-CV-1441 JS WDW, 2010 WL 3236779 (E.D.N.Y. Aug. 12, 2010) ..........................25

*Mushahada Int'l USA, Inc. v. Access Point, Inc.*,
   No. 04 CV 5270 (ARR), 2005 WL 1421620 (E.D.N.Y. June 17, 2005)..........................16, 18

*Nagelberg v. Meli*,
   299 F. Supp. 3d 409 (S.D.N.Y. 2017)................................................................................19, 20

*Naughright v. Weiss*,
   826 F. Supp. 2d 676 (S.D.N.Y. 2011)....................................................................................17

*NCR Corp. v. George A. Whiting Paper Co.*,
   768 F.3d 682 (7th Cir. 2014) ....................................................................................................7

*Noramco LLC v. Dishman USA, Inc.*,
   No. CV 21-1696-WCB, 2022 WL 2817876 (D. Del. July 19, 2022) ....................................12

*NXIVM Corp. v. Sutton*,
   No. 06-cv-1051, 2019 WL 4010859 (D.N.J. Aug. 26, 2019) .................................................25

*P.T. Bank Cent. Asia v. ABN AMRO Bank N.V.*,
   754 N.Y.S.2d 245 (1st Dep't 2003) ........................................................................15, 16, 18

*PaineWebber Inc. v. Int'l Mobile Machines Corp.*,
   No. 91 CIV. 7353(LJF), 1992 WL 75068 (S.D.N.Y. Mar. 30, 1992) ......................................8

*Rental & Mgmt. Assocs., Inc. v. Hartford Ins. Co.*,
   614 N.Y.S.2d 513 (1st Dep't 1994) ........................................................................................26

*Republic of Iraq v. ABB AG*,
   768 F.3d 145 (2d Cir. 2014)............................................................................................23, 24

*Rich v. Miller*,
   634 F. Supp. 3d 66 (S.D.N.Y. 2022).......................................................................................28

*Salcer v. Envicon Equities Corp.*,
    744 F.2d 935 (2d Cir. 1984), *vacated on other grounds*, 478 U.S. 1015 (1986)....................28

*Samsung C&T Am., Inc. v. Tommy Bahama Grp., Inc.*,
    2022 WL 624555 (S.D.N.Y. Mar. 3, 2022) (Cronan, J.) ..........................................12

*Securities Investor Protection Corp. v. Bernard L. Madoff Inv. Securities LLC*,
    987 F. Supp. 2d 311 (S.D.N.Y. 2013)......................................................................22

*Spencer Trask Software & Info. Servs. LLC v. RPost Int'l Ltd.*,
    383 F. Supp. 2d 428 (S.D.N.Y. 2003)......................................................................18

*Suez Equity Invs., L.P. v. Toronto-Dominion Bank*,
    250 F.3d 87 (2d Cir. 2001)........................................................................................20

*Swersky v. Dreyer & Traub*,
    643 N.Y.S.2d 33 (1st Dep't 1996) ...........................................................................15

*Tapjets Inc. v. United Payment Servs., Inc.*,
    No. 19-CV-3740 (MKB), 2022 WL 16788988 (E.D.N.Y. July 25, 2022) ...............12

*Teneyck, Inc. v. Rosenberg*,
    39 Misc. 3d 194 (Sup. Ct. N.Y. Cnty. 2013), *aff'd,* 975 N.Y.S.2d 335 (1st
    Dep't 2013) ...............................................................................................................23

*TIAA Glob. Invs., LLC v. One Astoria Square LLC*,
    7 N.Y.S.3d 1 (1st Dep't 2015) ...........................................................................15, 16

*Travelers Ins. Companies v. Stanton*,
    645 N.Y.S.2d 948 (3d Dep't 1996).....................................................................25, 26

*Walker, Truesdell, Roth & Assocs., Inc. v. Globeop Fin. Servs. LLC*,
    993 N.Y.S.2d 647 (Sup. Ct. N.Y. Cnty. 2013) ........................................................22

*Wells Fargo Bank, N.A. v. HoldCo Asset Mgmt., L.P.*,
    No. 16-CV-6356 (KBF), 2017 WL 2963501 (S.D.N.Y. July 11, 2017), *aff'd,*
    729 F. App'x 124 (2d Cir. 2018) ..............................................................................11

## Other Authorities

5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1381 .................................28

Fed. R. Civ. P. § 8(a) ...........................................................................................13, 29

Fed. R. Civ. P. § 9(b) .................................................................................................13

Fed. R. Civ. P. § 12(b)(6).............................................................................................1

Fed. R. Civ. P. § 12(c) .............................................................................................1, 8

Fed. R. Civ. P. § 12(f)....................................................................................................................27

Defendant B.A.T. Industries p.l.c. ("BAT"), by and through its undersigned counsel, hereby opposes the motion by plaintiff NCR Corporation ("NCR") (i) for judgment on the pleadings under Fed. R. Civ. P. 12(c); (ii) to strike BAT's affirmative defenses; and (iii) to dismiss BAT's counterclaims under Fed. R. Civ. P. 12(b)(6), and states as follows:

## PRELIMINARY STATEMENT

This case is anything but the "straightforward contract dispute" NCR claims it to be in its motion. ECF 30 at 1. NCR has been found liable under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") for knowingly and intentionally arranging for the disposal of highly toxic PCB containing "broke" into the Kalamazoo River in Michigan. NCR seeks a declaratory judgment based solely on the pleadings that BAT is required to indemnify NCR for that liability, under a 1998 Confidential Settlement Agreement ("CSA"). NCR is not entitled to that relief for numerous reasons.

First, the CSA was procured by fraudulent misrepresentation and omissions as set forth more fully below. It is therefore void.

Second, even if that were not the case, the specific NCR liability that has arisen here does not fall within the narrow indemnity BAT provided in the CSA. The indemnity only applies to liabilities (1) arising in respect of "NCR Paper brand carbonless paper" ("NCR Brand CCP") that (2) was "manufactured utilizing the assets" that a former BAT subsidiary, Appleton Papers Inc. ("API"), purchased from NCR in 1978. ECF 31-2 ¶ 1(i). NCR's liability for the Kalamazoo River satisfies none of these requirements. The liability arises in relation to "broke," a waste product, not NCR Brand Paper; and it is not attributable to the business purchased by BAT. Consequently, it is not covered by the CSA. NCR's liability is a liability of NCR in its own right, attributable to a business named Systemedia that NCR retained in 1978. It is not attributable to the business that NCR sold to API/BAT in 1978 (the "APD Business"). The CSA is an agreement which settled

1

litigation regarding whether liabilities attributable to the APD Business transferred to API/BAT in 1978 or were retained by NCR. There is no reason why, in a settlement relating to the business BAT acquired from NCR, BAT would have agreed to indemnify NCR for liabilities of a business that API/BAT did *not* acquire.

Third, even if NCR's liability for Kalamazoo cleanup costs fell within the CSA wording, the indemnity would be unenforceable on public policy grounds because NCR intentionally caused the harm at the Kalamazoo River. It is not open to NCR to contend that it did not cause such intentional harm because the federal courts have already determined that it did, in a series of decisions that are binding on NCR. Such findings include that "[b]y no later than 1969," NCR knew that broke was "a worthless waste product at best, and a serious environmental hazard and liability at worst." *Georgia-Pac. Consumer Prod. LP v. NCR Corp.*, 358 F. Supp. 3d 613, 629 (W.D. Mich. 2018), *rev'd and remanded on other grounds,* 32 F.4th 534 (6th Cir. 2022) ("*Georgia-Pacific II*"). "NCR was not open with the public about its use of PCBs in CCP, but instead tried to keep its use of PCBs out of the press or regulator cross-hairs until a suitable alternative was found." *Id*. at 649. Indeed, "NCR actively attempted to conceal the hazards associated with CCP broke-from recyclers, the public, and even governmental entities." *Georgia-Pac. Consumer Prod. LP v. NCR Corp.*, 980 F. Supp. 2d 821, 834 (W.D. Mich. 2013) ("*Georgia-Pacific I*"). Worse, after concluding that NCR Brand CCP was toxic and causing dangerous pollution, NCR *increased* its NCR Brand CCP production in a rush to earn billions more in profits before NCR was forced to cease manufacturing it, resulting in the knowing and intentional discharge of even larger quantities of toxic PCBs into American waterways. NCR also knowingly and intentionally arranged for the disposal of "broke" into the Kalamazoo River "as a means of getting rid of a substance it knew to be hazardous." *Id.* at 835. As a consequence of this, any recovery for

Kalamazoo liabilities under the CSA, even if it were valid, would be barred on the grounds of public policy and *in pari delicto*.

The above findings also amply support BAT's fraudulent misrepresentation claim. To induce it to enter into the CSA, NCR falsely represented to BAT that "it had no reason to think it would face liability at any sites other than Fox River and Marina Cliffs," and that "there was merely a 'potential' for claims in respect of future sites." Counterclaims ("CC"), ECF 21 ¶ 17. In fact, NCR knew that it had intentionally arranged for PCB-laden broke to be disposed of in at least one specific site – the Kalamazoo River – and that NCR had engaged in the other intentional misconduct set out above. NCR concealed that information and other critical facts from BAT.

Fourth, BAT is entitled to prove its well-pled allegations that the CSA was induced by fraud and, if construed as NCR urges, would violate public policy, all of which would render the CSA unenforceable. BAT has also asserted a claim under the *in pari delicto doctrine* and affirmative defenses. At the very least, BAT's claims and defenses raise complex, fact-intensive issues that cannot possibly be resolved on the pleadings. Yet that is exactly what NCR is asking this Court to do. NCR seeks not only a declaration of liability based solely on the pleadings; but also a ruling that would dismiss every one of BAT's five causes of action and strike every one of BAT's eight affirmative defenses, based solely on the pleadings and without any facts. This type of motion has been consistently characterized by courts as drastic and extraordinary relief. To obtain judgment on the pleadings, NCR must prevail on every single aspect of its motion. If the Court finds that even one of BAT's counterclaims or defenses is adequately pleaded, it must deny relief. In fact, all of BAT's counterclaims and defenses are robustly pleaded. Accordingly, NCR's motion must be denied.

## STATEMENT OF RELEVANT FACTS

This action arises out of the 1978 acquisition by former BAT subsidiary API of certain of the assets (the "Acquired Business") of the Appleton Paper Division of NCR ("APD"). The Acquired Business coated rolls of paper with emulsion in the 1950s through 1971 in plants located on the Fox River in Wisconsin. That paper was then provided to other parties which converted it into NCR Brand CCP. CC ¶¶ 1, 8. Following the Fox River's designation as a Superfund Site due in part to contamination by polychlorinated biphenyls ("PCBs") from APD operations, litigation took place between NCR and API/BAT. *Id.* ¶¶ 50-51. NCR took the position that API/BAT had assumed the liabilities of the Acquired Business in 1978 (despite this being an asset purchase) pursuant to the terms of an asset purchase agreement. *Id.* ¶ 51. API/BAT took the position that those liabilities had not been assumed and remained with NCR. *Id.* The scope of that litigation and the CSA was therefore limited to those liabilities of the Acquired Business that NCR had alleged that API/BAT had assumed under the purchase agreement. *Id.* ¶ 53. BAT agreed to meet part of the costs of cleaning up the Fox River where API had operated. *Id.* ¶¶ 9-10, 53. During the negotiation of the CSA the scope of the CSA was expanded to cover certain CERCLA liabilities of the Acquired Business at other sites, if any. *Id.* ¶¶ 54-55. However, BAT never agreed to be responsible for any liabilities of NCR which were attributable to the business that NCR retained in 1978. Answer ("Ans."), ECF 21, at 2.

Unbeknownst to BAT, NCR learned of the toxic nature of the PCBs it used to make NCR Brand CCP by no later than the mid-1960s (and possibly much earlier), but continued making it anyway, resulting in the disposal of large quantities of PCBs into several American rivers, either by NCR-contracted manufacturers and paper coaters, by NCR itself, or by recyclers to which NCR sold "broke" (i.e. paper that does not meet finished product specifications, is damaged in the manufacturing process, or consists of trim or cuttings produced during manufacture and

conversion). CC ¶ 5. NCR knew that NCR Brand CCP and broke were toxic, but went to great lengths to keep the world in the dark about the dangers, showing no regard whatsoever for the health and safety of the public. *Id.* Worse, NCR *increased* its production after it determined that NCR Brand CCP was toxic, actively concealing the product's toxicity while earning "profit margins of twenty percent and . . . over $2.1 billion in revenues from the production of its CCP in 1970-1972 alone." *Georgia-Pacific II*, at 358 F. Supp. 3d at 647.

NCR also intentionally arranged to offload broke to unsuspecting mills situated along the Kalamazoo River, hundreds of miles from any APD facility, "as a means of getting rid of a substance it knew to be hazardous." *Georgia Pacific I*, 980 F. Supp. 2d at 835-36. When a problem called "bluing" arose that threatened to prevent NCR from continuing to arrange for the disposal of broke in Kalamazoo, "NCR spent considerable time and money researching a way to solve the blueing problem," fully aware that broke was a toxic and worthless liability rather than a useful product. *Id.* at 827. NCR "actively attempted to conceal the hazards associated with CCP broke- from recyclers, the public, and even governmental entities;" "deliberately attempted to conceal from them—and everyone else—the toxic nature of CCP broke" in order to offload waste that it knew was "toxic;" and did so with "knowledge and intent to dispose of what it well understood to be a hazardous, toxic substance." *Id.* at 834-35. On March 29, 2018, the *Georgia-Pacific* court found NCR 40% liable for the Kalamazoo River cleanup costs, despite NCR submissions asserting it was responsible for only 2.3% of the PCBs in the river, based on NCR's particularly wrongful activities. *Georgia Pacific II*, 358 F. Supp. 3d at 648. The court found that these facts "justify a substantially higher percentage of responsibility than that asked for by NCR." *Id.*[1]

---

[1] The court specifically found that APD was not an arranger under CERCLA and that NCR's liability "rests not on any findings as to [APD predecessor] ACPC's culpability or mindset during

NCR did not disclose any of the above to BAT, or even to the Environmental Protection Agency, which NCR lied to about the issue continuously until 2010. CC ¶¶ 58, 60-64. Instead, NCR actively misled BAT to enter into the CSA and to include "future sites" language therein by claiming that there was only the "potential" for liability, "if any," at sites other than Fox River and Marina Cliffs (another site of NCR's pollution). *Id.* ¶¶ 55-59. In fact, NCR knew that it had arranged for the disposal of PCB-containing broke in the Kalamazoo River, and was specifically trying to offload liability for that conduct onto BAT. *Id.* ¶¶ 57-58.

Ultimately, the parties agreed to include an indemnity for defined "future sites" that NCR now claims covers Kalamazoo cleanup costs. However, even if valid, the indemnity would apply only to certain claims regarding "PCB-containing NCR Paper brand carbonless paper that was manufactured utilizing the assets that were the subject of the Purchase Agreement . . . ." ECF 31-1 ¶ 1(i). It does not cover liability for broke or liability not attributable to the Acquired Business.

In 2012, a corporate successor to Kalamazoo-area facilities that recycled PCB-containing broke named Georgia-Pacific sued NCR in Michigan federal court under CERCLA. ECF 31-2 ¶¶ 12-13. Georgia-Pacific alleged that NCR had for "arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances, in the form of PCB-containing NCR paper broke and trim" in the Kalamazoo River. *Id.* ¶ 140. None of Georgia-Pacific's claims alleged NCR was liable in respect of "NCR Paper brand carbonless paper." Instead, Georgia-Pacific alleged "[c]ontamination from the PCB-laden broke and trim." *Id* ¶ 5. The Michigan federal court found NCR liable as an arranger on that basis after a trial in 2013,

---

the production period, but entirely on NCR's knowledge and intent to dispose of what it well understood to be a hazardous, toxic substance". *Georgia-Pacific I*, 980 F. Supp. 2d at 836.

*Georgia-Pacific I*, and ruled after a second trial in 2018 that NCR had to pay 40% of the Kalamazoo cleanup cost. *Georgia-Pacific II.* BAT was not a party to the case.

Federal courts also found that the Acquired Business was not an "arranger" under CERCLA. In relation, to the Fox River the Wisconsin federal court determined that the Acquired Business "did not know the broke contained hazardous substances," had "no intent to dispose" of any toxins, and "was not an arranger" under CERCLA. *Appleton Papers Inc. v. George A. Whiting Paper Co.*, No. 08-C-16, 2012 WL 2704920, at \*10-12 (E.D. Wis. July 3, 2012), aff'd sub nom. *NCR Corp. v. George A. Whiting Paper Co.*, 768 F.3d 682 (7th Cir. 2014). Equally, in relation to the Kalamazoo River the Michigan federal court found that NCR was liable in respect of its retained Systemedia business, not on the basis of the Acquired Business, with the court holding that its decision "rests not on any findings as to ACPC's culpability or mind set during the production period, but entirely on NCR's knowledge and intent to dispose of what it well understood to be a hazardous, toxic substance." *Georgia-Pacific I*, 980 F, Supp. at 836. The Court imposed liability on the basis of disposals of broke. The plaintiff did not allege, and the court did not impose, liability on NCR in relation to "NCR brand carbonless copy paper."

## <u>ARGUMENT</u>

The three motions filed by NCR seek drastic relief to which NCR is not entitled. The contractual language does not support NCR's position, and all of BAT's counterclaims and defenses are well-pleaded. NCR cannot avoid discovery through a grossly premature and legally unsupportable request for extraordinary relief, and discovery will show that BAT should prevail on all of its claims. For all these reasons, NCR's motion should be denied.

## I.     NCR IS NOT ENTITLED TO THE EXTRAORDINARY REMEDY OF JUDGMENT ON THE PLEADINGS

Judgment on the pleadings is an "extraordinary remedy which can be granted only in the unusual circumstance where the pleadings clearly demonstrate that one party is entitled to judgment as a matter of law." *PaineWebber Inc. v. Int'l Mobile Machines Corp.*, No. 91 CIV. 7353(LJF), 1992 WL 75068, at *2 (S.D.N.Y. Mar. 30, 1992). "When a plaintiff is the movant" under Fed. R. Civ. P. 12(c), "courts must accept all factual allegations in the answer and draw all reasonable inferences in favor of the defendants, who are the non-movants in that scenario." *Lively v. WAFRA Inv. Advisory Grp., Inc.,* 6 F.4th 293, 305 (2d Cir. 2021) (citation omitted). Judgment on the pleadings cannot be granted where, as here, the defendant asserts defenses that could thwart Plaintiff's claims for breach of contract. *See PaineWebber Inc.*, 1992 WL 75068, at *2. Judgment on the pleadings is also inappropriate if the contract that is the basis for the claim is ambiguous in any relevant way. *Jujamcyn Theaters LLC v. Fed. Ins. Co.*, --- F. Supp. 3d ---, 2023 WL 2366789, at *6-7 (S.D.N.Y. Mar. 6, 2023).

Judgment on the pleadings is inappropriate here for at least three reasons. First, the contract does not cover liability for broke only liability for NCR brand carbonless copy paper, and it also does not cover liability for pollution that is not attributable to the assets of the Acquired Business, which has not been demonstrated and which BAT has alleged did not occur[2]. Second, BAT has validly pleaded five fact-intensive counterclaims, none of which can be resolved on the pleadings, and all of which would bar the relief NCR seeks (which is a declaration that the CSA is valid and requires payment by BAT for Kalamazoo cleanup costs). Third, BAT has validly pleaded eight fact-intensive affirmative defenses, any one of which, if proven, would bar the relief NCR seeks.

---

[2] *Georgia-Pacific* found based on "circumstantial evidence" that NCR had arranged for broke from entities that included ACPC to be delivered to Kalamazoo, but these findings are not preclusive as to BAT because BAT was not a party to that litigation. *Georgia-Pacific I*, 980 F. Supp. 2d at 835.

8

### A.      The CSA Does Not Cover the Liabilities at Issue in This Action

Judgment on the pleadings should be denied first and foremost because the CSA indemnity does not cover NCR's Kalamazoo arranger liability.  It is well-settled that "a contractual indemnification provision must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed."  *Alfaro v. 65 W. 13th Acquisition, LLC*, 904 N.Y.S.2d 205, 207 (2d Dep't 2010) (citations omitted).  To prevail, NCR would need to prove that the CSA unambiguously requires indemnification under the facts alleged, all of which must be construed in favor of BAT as the non-movant, and that the CSA language is sufficiently clear to meet the "strict[] constru[ction]" standard New York law applies to indemnity agreements.  *Id*.  Contract "language is unambiguous only if it has a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion."  *Gary Friedrich Enterprises, LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 313 (2d Cir. 2013) (internal quotations and citation omitted).  "[I]f the terms suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement, then the agreement is ambiguous and extrinsic evidence may be considered to determine the parties' intent."  *Id*. at 313-14 (internal quotations and citations omitted).

NCR cannot satisfy its burden because the CSA expressly does not apply.  The CSA requires BAT to indemnify NCR for certain liabilities related to "Future Sites," defined to include "any facility, property, or location, other than the Fox River sites, alleged to be contaminated with Hazardous Substances as a result, in whole or in part, of the manufacture, recycling, deinking, or repulping of any amount of PCB-containing NCR Paper brand carbonless paper that was manufactured utilizing the assets that were the subject of the Purchase Agreement . . . ."  ECF 31-

1 ¶ 1(i).  There are at least three reasons this language does not apply to the Kalamazoo River cleanup.

First, the "future sites" provision, by its terms, applies only to contamination resulting from "PCB-containing **NCR Paper brand carbonless paper**."  *Id.* (Emphasis added).  NCR's Kalamazoo liability, however, does not result from even an allegation of contamination from "NCR Paper brand carbonless paper."  Paper is not branded until it is a finished product ready for sale to consumers.  NCR's Kalamazoo liability results from allegations – which were proven at trial – that NCR arranged to dispose of "broke," which the Court explained "consists of the paper that is **not** used in the finished paper product."  *Georgia Pacific I*, 980 F. Supp. 2d at 827 (emphasis added).  Broke is produced before paper is converted into a consumer product and is not a branded product.  As such, by its terms, the CSA cannot apply, since broke is not, and cannot be, "NCR Paper brand carbonless paper."  NCR does not address the CSA indemnity's requirement that paper be branded anywhere in its motion.

Second, the indemnity only applies to liabilities which are actually attributable to the Acquired Assets.  BAT has alleged that NCR's liability is attributable to NCR's Systemedia business that NCR retained in 1978, not the Acquired Assets.  It would make no sense to interpret the CSA to impose liability on BAT that is not attributable to the Acquired Assets.

Third, the pleadings present an unresolved issue of fact as to whether the site at issue was contaminated with NCR Brand CCP manufactured utilizing those assets.  The CSA requires indemnification where the site is "alleged to be contaminated" by "the manufacture, recycling, deinking, or repulping of any amount of PCB-containing NCR Paper brand carbonless paper," but only upon a showing that the paper was actually "manufactured utilizing the assets that were the subject of the Purchase Agreement."  ECF 31-1 ¶ 1(i).  NCR cannot re-write the definition of

10

"future sites" to provide for indemnification upon the mere allegation that paper that caused contamination was manufactured by the assets BAT acquired. The CSA could have required indemnification upon a mere *allegation* that the paper in question was manufactured utilizing the assets that were the subject of the Purchase Agreement, but it does not do so. Allegations of contamination may be sufficient, but allegations of manufacture are not.

Here, there is a dispute of fact as to whether any paper manufactured by BAT's former subsidiaries was disposed of in the Kalamazoo River. CC ¶ 31. At the very least, discovery is required with respect to the source of the Kalamazoo River pollution. In this procedural posture, however, the Court must assume, as pleaded, that the costs NCR seeks are "not attributable to the assets that were the subject of the SPA." *Id.* ¶¶ 22, 99. Judgment on the pleadings must be denied for any and all of these reasons. The CSA either does not apply or, at the very least, is ambiguous.

**B.    Judgment on the Pleadings Cannot Be Granted in Light of BAT's Counterclaims and Defenses**

Judgment on the pleadings must also be denied because BAT specifically alleges in its counterclaims and defenses that the CSA is void and unenforceable because it was procured through fraud, violates public policy, and cannot be enforced under the *in pari delicto* doctrine. NCR cannot show even the first element of its claim – the existence of a valid, enforceable agreement – in light of these counterclaims and defenses. *See Wells Fargo Bank, N.A. v. HoldCo Asset Mgmt., L.P.*, No. 16-CV-6356 (KBF), 2017 WL 2963501, at *15 (S.D.N.Y. July 11, 2017), *aff'd*, 729 F. App'x 124 (2d Cir. 2018) ("an essential element of both the declaratory judgment and breach of contract claims is the existence of a binding contract.").

NCR seeks to avoid the requirement to allege a valid contract by claiming, incorrectly, that "BAT does not dispute the validity of the CSA and admits that its terms 'speak for themselves.'" ECF 30 at 8 (quoting Ans. ¶ 5). That is simply incorrect. A pleading that a document "speaks for

itself" is an assertion that the document must be construed based on its text, not based on a characterization of the document by the plaintiff. *See, e.g.*, *Kleiman v. Wright*, No. 18-CV-80176, 2020 WL 11420664, at *8 (S.D. Fla. Nov. 18, 2020) ("[T]he Court does not agree . . . that Defendant's statement that a document 'speaks for itself' constitutes a judicial admission that binds Defendant to the authenticity, veracity, and supposed plain meaning of each document."); *see also Noramco LLC v. Dishman USA, Inc.*, No. CV 21-1696-WCB, 2022 WL 2817876, at *4 (D. Del. July 19, 2022) (same).

BAT's answer and counterclaims expressly challenge the validity of the CSA and emphatically deny that it imposes any liabilities for the Kalamazoo cleanup. Where a fact dispute exists concerning whether a valid contract exists, judgment on the pleadings cannot be granted. *See Tapjets Inc. v. United Payment Servs., Inc.*, No. 19-CV-3740 (MKB), 2022 WL 16788988, at *2 (E.D.N.Y. July 25, 2022). Similarly, judgment on the pleadings cannot be granted where a plaintiff's entitlement to relief depends on the outcome of a defendant's counterclaims. *Aluminum Co. of America v. Toba Adjustments, Inc.*, No. 96 CIV. 9536 (PKL), 1998 WL 120355, at *2 (S.D.N.Y. Mar. 18, 1998) (denying motion for summary judgment where plaintiff's entitlement to relief depended on validity of defendants' set off counterclaim); *see also Samsung C&T Am., Inc. v. Tommy Bahama Grp., Inc.,* 2022 WL 624555, at *3-8 (S.D.N.Y. Mar. 3, 2022) (Cronan, J.) (denying motion for judgment on pleadings because counterclaims plausibly stated claims for relief).

## II.    NCR'S MOTION TO DISMISS BAT'S COUNTERCLAIMS MUST ALSO BE DENIED

NCR has failed to show that any of BAT's counterclaims should be dismissed. "In deciding a motion to dismiss, a court must accept all allegations in the complaint as true and draw all inferences in the non-moving parties favor." *Al Thani v. Hanke*, No. 20 CIV. 4765 (JPC), 2021

WL 1895033, at *4 (S.D.N.Y. May 11, 2021) (Cronan, J.) (internal quotations and citations omitted). Fraud claims must be pleaded with specificity under Rule 9(b), though malice, intent, and knowledge related to such fraud may be alleged generally. All other claims fall under Rule 8(a)(2), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* (citation omitted). Here, BAT has amply alleged all of its counterclaims. Accordingly, NCR's motion to dismiss them should be denied.

### A.    BAT Amply Pleaded a Claim for Fraud in the Inducement

BAT's fraud allegations amply satisfy Rule 9(b)'s pleading requirements. To state a claim for fraud in the inducement, a party must allege: "(i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by [BAT]; and (iv) resulting damages." *Johnson v. Nextel Commc'ns, Inc.,* 660 F.3d 131, 143 (2d Cir. 2011) (citation omitted). Where a party asserts fraudulent inducement based on omission, it must also plead a duty to disclose the omitted information. *See Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.,* 500 F.3d 171, 181 (2d Cir. 2007).

As set forth in detail below, BAT's fraud counterclaim satisfies all of these pleading requirements. BAT alleges in detail in its counterclaims that NCR knowingly and intentionally arranged for the disposal by unsuspecting third parties of PCB-laden broke into the Kalamazoo River; intentionally concealed that information from BAT; and instead actively misrepresented to BAT that there was merely the "potential" for there to be "future sites, if any" at a time when NCR knew for certain that it had created a polluted site at the Kalamazoo River. Contrary to NCR's assertions, all of these were *existing* facts known by NCR at the time NCR induced BAT to enter into the CSA. And all are facts that NCR either concealed or misrepresented in order to induce detrimental reliance by BAT.

13

1.     **BAT Adequately Alleges Material Omissions and Misrepresentations By NCR**

NCR challenges BAT's misrepresentation claims by misrepresenting BAT's pleading. Contrary to NCR's assertions, BAT alleges numerous material omissions and misrepresentations by NCR. BAT's counterclaims explain in detail that the *Georgia-Pacific* court, whose factual findings are binding on NCR, has already found that, prior to entering into the CSA, NCR "deliberately attempted to conceal . . . the toxic nature of" its broke as part of a scheme to mislead the public and the government, pass NCR's broke off as "useful," and generate billions of dollars in revenues while "getting rid of a substance it knew to be hazardous." *Georgia-Pacific I*, 980 F. Supp. 2d at 834-35. It also found that NCR knew for years broke was a "hazardous" and "worthless waste . . . at best" – and that NCR nonetheless knowingly arranged for broke to be disposed of into the Kalamazoo River. *Id.* at 833-36.

NCR did not disclose any of these facts to BAT. To the contrary, in order to induce BAT to enter into the CSA, and to agree to the "Future Sites" language proposed by NCR, NCR falsely represented to BAT that "it had no reason to think it would face liability at any sites other than Fox River and Marina Cliffs," and that "there was merely a 'potential' for claims in respect of future sites." CC ¶ 17. These were all intentional misrepresentations of existing fact. At the time NCR made these representations, NCR knew that it had intentionally arranged for PCB-laden broke to disposed of into at least one specific site – the Kalamazoo River. *Id.* ¶ 57. Claiming something is merely "possible" means that NCR had no actual knowledge of a specific future site. But NCR knew it had *already intentionally* contaminated the Kalamazoo River with PCBs, and that liability was a virtual certainty. NCR's representation of the mere "possibility" of contamination at future sites was a misrepresentation of existing fact.

14

Indeed, NCR's general counsel at the time of the CSA negotiations has already testified that, contrary to NCR's representations, NCR knew at the time it pushed to include Future Sites in the CSA that Kalamazoo was "lurking out there." CC ¶ 32. NCR's outside counsel, J. Andrew Schlickman (of Sidley Austin), similarly confirmed in his own deposition that "[w]e were aware that the issues that were arising at the Fox River Site could arise at other sites. And the particular site I have in mind here was the Kalamazoo River in Michigan." *Id.* NCR did not disclose any of that information to BAT, and instead provided affirmative misrepresentations about the "potential" for other sites, "if any" to mislead and induce BAT into executing the CSA. NCR also concealed the fact that it had intentionally arranged for discharges of PCBs into the Kalamazoo River and that it was fully aware of the likelihood of it being found liable as an arranger. *Id.* ¶¶ 19, 57, 77.

Contrary to NCR's assertions, BAT does not allege that NCR provided a "guarantee there would be no Future Sites liability." ECF 30 at 16. BAT alleges that it relied on NCR's misleading disclosures and omissions about future sites. Had NCR disclosed its intentional misconduct in Kalamazoo, a specific site as to which NCR had determined that it faced arranger liability for its intentional misconduct, BAT would not have executed the CSA.

## 2. **BAT Adequately Alleges that NCR Had a Duty to Disclose**

NCR had a clear duty to disclose facts that it knew about its intentional disposal of broke into the Kalamazoo River and the liability NCR faced as a result of that conduct. Under "the 'special facts' doctrine . . . a duty to disclose arises 'where one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair.'" *P.T. Bank Cent. Asia v. ABN AMRO Bank N.V.*, 754 N.Y.S.2d 245, 252 (1st Dep't 2003) (citation omitted); *see also Swersky v. Dreyer & Traub*, 643 N.Y.S.2d 33, 37 (1st Dep't 1996) (same). "This 'special facts doctrine' applies regardless of the level of sophistication of the parties." *TIAA Glob. Invs., LLC v. One Astoria Square LLC*, 7 N.Y.S.3d 1, 10 (1st Dep't 2015). Further, it is highly fact-intensive,

making it inappropriate for adjudication based solely on the pleadings. *P.T. Bank Cent. Asia*, 301 A.D.2d at 378 (inappropriate to resolve allegations that defendant had unique knowledge of facts that plaintiff could not readily determine as a matter of law). Nor is it dispositive that a party had an opportunity to conduct due diligence prior to entering into a transaction it contends was tainted under the special facts doctrine. *TIAA Glob. Invs.*, 7 N.Y.S.3d at 10–11.

New York courts have applied the special facts doctrine to preclude summary judgment in numerous cases involving environmental issues. *See, e.g.*, *Commander Terminals, LLC. v. Commander Oil Corp.*, No. 12037-02, 2009 WL 434605 (Sup. Ct. Nassau Cnty. Jan. 27, 2009) (denying summary judgment on fraud claims where there were fact disputes concerning whether the defendants had unique knowledge of oil seepage into neighboring tracts of land plaintiff alleged should have been disclosed); *Agora Gourmet Foods Inc. v. Edge*, No. 60365/2018, 2020 WL 11272263, at *21-25 (Sup. Ct. Westchester Cnty. Aug. 28, 2020) (denying summary judgment based on a factual dispute on claim of special facts fraud where defendants stated they had rectified issues in an OSHA complaint and were unaware of any potential hazards on the site when they were in possession of correspondence confirming lead paint and asbestos on the property).

NCR does not even mention the special facts doctrine in its motion. But even under the federal jurisprudence NCR relies on, BAT has amply alleged that NCR owed and breached a duty of disclosure to BAT. Federal courts, similar to state courts, have also found that "[i]t is no longer acceptable, if it ever was, to conclude in knowing silence, a transaction damaging to a party who is mistaken about its basic factual assumptions when . . . he would reasonably expect a disclosure." *Mushahada Int'l USA, Inc. v. Access Point, Inc.*, No. 04 CV 5270 (ARR), 2005 WL 1421620, at *5 (E.D.N.Y. June 17, 2005) (internal quotations and citation omitted). NCR's own cited caselaw notes that a duty to disclose can arise "if one party makes a partial or ambiguous statement that

requires additional disclosure to avoid misleading the other party or one party possesses superior knowledge not readily available to the other and knows that the other is acting on the basis of mistaken knowledge." *Naughright v. Weiss*, 826 F. Supp. 2d 676, 690 (S.D.N.Y. 2011) (citation omitted).

As NCR acknowledges in its motion, the "superior knowledge" doctrine (which is distinct from the special facts doctrine) imposes a duty to disclose where "a party (1) has superior knowledge, (2) that is not available to the other party by reasonable inquiry, and (3) the first party knows that the second party is acting on the basis of mistaken knowledge. *Id*. at 690-91 (internal quotations and citations omitted); *accord* ECF 30 at 20. NCR claims that BAT could have learned of NCR's misconduct through further inquiry, yet even the EPA, which unlike BAT has the full powers of a government regulator, did not learn that NCR had arranged for the pollution of the Kalamazoo River until 2010, despite investigating NCR's role since at least 2003. CC ¶¶ 60-64. BAT could not have reasonably discovered information in diligence that it took a government regulator years to uncover. At the very least, this is a fact issue that cannot be resolved now.

### 3. BAT Adequately Alleges Reliance

BAT has also amply alleged that it reasonably relied on NCR's omissions and misrepresentations in entering into the CSA. CC ¶ 81. "[D]ismissals for failure to allege reasonable reliance are heavily disfavored". *Langhamer v. Johnson*, No. 1:22-CV-05404 (JLR), 2023 WL 6691017, at *8 (S.D.N.Y. Oct. 12, 2023) (internal quotations and citations omitted). "The Second Circuit has explained that 'the reasonableness of a plaintiff's reliance is a 'nettlesome' and 'fact-intensive' question, which we, like our Circuit's many district courts, will not lightly dispose of at the motion-to-dismiss stage.'" *Id.* (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*, LLC, 797 F.3d 160, 186 n.19 (2d Cir. 2015)). "[T]he determination of reasonable

17

reliance is largely an issue of fact, inappropriate for resolution at this early stage". *Spencer Trask Software & Info. Servs. LLC v. RPost Int'l Ltd.*, 383 F. Supp. 2d 428, 452 (S.D.N.Y. 2003).

That is equally true under the special facts and superior knowledge doctrines. *See generally P.T. Bank Cent. Asia*, 754 N.Y.S.2d at 252 ("inappropriate to determine" whether the plaintiff was "justified in relying on [the defendant's] misrepresentations" or if the omitted information was "available to plaintiff with the exercise of reasonable diligence" based solely on the pleadings); *Mushahada Int'l USA*, 2005 WL 1421620, at *4 ("[W]hen matters are peculiarly within the knowledge of the non-complaining party, the complaining party may rely on representations without conducting an investigation" and "[r]ecovery is not barred merely because [the complaining party] was negligent in [its] reliance.") (citations omitted).

Further, it is well-settled that all inferences must be drawn in favor of the non-moving party on a motion to dismiss. BAT is entitled to the inference at the pleadings stage that it was relying on the belief that NCR – a party that as late as 2010 was falsely telling the EPA that it had never disposed of PCBs in Kalamazoo – was not doing so. It would be commercially unreasonable for BAT to agree to be liable for NCR's intentional acts of arranging to dispose of PCBs into the Kalamazoo River, since BAT did not take part in that conduct and faced no independent liability for it.

For all these reasons, BAT has adequately alleged fraud claims. Accordingly, those claims, as well as BAT's related affirmative defense sounding in fraud, cannot be dismissed or stricken.

### B.    BAT Adequately Pleaded a Claim for Negligent Misrepresentation

BAT has also adequately alleged its claim for negligent misrepresentation.

NCR first argues that BAT's allegations do not give rise to a duty to disclose. But that is incorrect, as illustrated by NCR's own cases. NCR principally relies on *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (N.Y. 1996), for the proposition that "'liability for negligent misrepresentation

has been imposed only on those persons' who (i) 'possess unique or specialized expertise' or (ii) 'are in a special position of confidence and trust . . . .'" ECF 30 at 23 (quoting *Kimmell*). But *Kimmel* does not limit negligent misrepresentation claims to "professional" defendants. Rather, it requires a factual analysis of the plaintiff's relationship with the defendant to determine whether a duty arose based on that relation – a determination that is inherently fact specific and cannot be decided on the current record. For instance, despite the *Kimmell* defendant's lack of "professional status," the court nonetheless found "an adequate basis for . . . finding . . . a duty of care" where the defendant "was uniquely situated to evaluate the" relevant facts and because the "[d]efendant's efforts sought to induce plaintiffs to invest in the project" at issue. *Id.* at 264–65.

"In the commercial context, a duty to speak with care exists when 'the relationship of the parties, arising out of contract or otherwise, [is] such that in morals and good conscience the one has the right to rely upon the other for information.'" *Id.* at 263 (citation omitted) (alteration in original). Courts consider: (i) "whether the person making the representation held or appeared to hold unique or special expertise;" (ii) "whether a special relationship of trust or confidence existed between the parties; and" (iii) "whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Id.* at 264. A negligent misrepresentation claim is sufficiently pleaded when it is supported by "[s]trong allegations on the first and third factors." *Nagelberg v. Meli*, 299 F. Supp. 3d 409, 416-17 (S.D.N.Y. 2017) (citation omitted).

Here, BAT alleges that NCR had "unique knowledge of its own role in the discharge of PCBs into the Kalamazoo River and of the likelihood of consequent liability." CC ¶¶ 20, 89. Further, BAT has adequately alleged that NCR made representations and omissions "to induce BAT to agree to accept significant liability that BAT would not have otherwise had for NCR's contamination of a river hundreds of miles from any of the facilities that BAT purchased." *Id.* ¶

15. Such representations "crossed the line between 'casual statements and contacts that a seller would make informally in the course of a day's business' and 'deliberate representations that give rise to a duty to speak with care.'" *Nagelberg*, 299 F. Supp. 3d at 417 (quoting *Suez Equity Invs., L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001)).

Courts in this district have upheld negligent misrepresentation claims under similar circumstances. For instance, in *Advanced Knowledge Tech, LLC v. Fleitas*, the court upheld a negligent misrepresentation claim where the defendant "knew that [the plaintiff] would rely on his representations concerning [his company's] financial condition in deciding whether to do business with it and made the representations for that very purpose." No. 21-CV-992 (PKC), 2021 WL 6126966, at *4–5 (S.D.N.Y. Dec. 28, 2021); *see also Nagelberg*, 299 F. Supp. 3d at 416–17.

NCR next argues that BAT has not alleged sufficient reliance to maintain its negligent misrepresentation claim. But under *Kimmell*, the same considerations that underly whether a party has a duty to speak with care also establish "whether justifiable reliance exists in a particular case." *See Kimmell*, 89 N.Y.2d at 264. For the reasons discussed above, BAT has adequately alleged reasonable reliance on NCR's misrepresentations. *See supra* Section II.A.3. And "[w]hether the nature and caliber of the relationship between the parties is such that the injured party's reliance on a negligent misrepresentation is justified generally raises an issue of fact." *Kimmell*, 89 N.Y.2d at 264. As also noted above, disposition of the "'nettlesome' and 'fact-intensive' question" of a party's reasonable reliance is inappropriate at the motion to dismiss stage. *See Langhamer*, 2023 WL 6691017, at *8. It is no answer, and certainly not at the pleadings stage, for NCR to allege without any basis that BAT conducted insufficient due diligence before signing the CSA. ECF 30 at 19. BAT's diligence is not yet in the record, is not relevant to whether NCR complied with its duty to disclose, and in any event must be construed in BAT's favor at this stage. BAT was

obviously not required to uncover NCR misconduct through diligence that it took the EPA decades to discover.

NCR also claims that BAT has not alleged falsity, but this also is incorrect. NCR made affirmative statements that future sites, "if any," were merely "potential." CC ¶ 17. These statements were false when made. If the Kalamazoo River is a "future site," as NCR claims, then NCR knew at the time it entered into the CSA at least one specific future site existed.

### C.    BAT Has Properly Pleaded its *In Pari Delicto* Claim and Defense

NCR's arguments seeking dismissal of BAT's *in pari delicto* defense and counterclaim[3] fail for at least three reasons. First, contrary to NCR's assertions, a defendant is not required to admit wrongdoing or "mutual fault" to invoke the doctrine, and certainly not at the pleadings stage. Second, even if there were such a requirement, NCR itself has pleaded that there was "mutual fault" by alleging that BAT and its former subsidiary were involved in some way in producing the broke that NCR arranged to be disposed of in the Kalamazoo River – otherwise there would be no basis for NCR to even contend that Kalamazoo cleanup costs could be covered by the CSA. Third, the *in pari delicto* doctrine is not limited to cases involving co-wrongdoers but is routinely applied to bar claims by wrongdoers against third parties. Indeed, a fundamental purpose of the doctrine is to close the courthouse doors to a wrongdoer, irrespective of whether the wrongdoer has an otherwise valid claim against a third party.

The doctrine of *in pari delicto* "bars a party that has been injured as a result of its own intentional wrongdoing from recovering for those injuries from another party whose equal or lesser fault contributed to the loss." *MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 199 F.

---

[3] NCR incorrectly argues that *in pari delicto* is a defense only. That is irrelevant given that BAT has also alleged an *in pari delicto* defense, but also incorrect. BAT is entitled to a declaration that NCR's claims are barred under the *in pari delicto* doctrine.

Supp. 3d 818, 831 (S.D.N.Y. 2016). It serves two "important public policy purposes. First, denying judicial relief to an admitted wrongdoer deters illegality. Second, *in pari delicto* avoids entangling courts in disputes between wrongdoers." *Kirschner v. KPMG LLP*, 938 N.E.2d 941, 950 (N.Y. 2010). The principles underpinning the *in pari delicto* doctrine have been "wrought in the inmost texture of our common law for at least two centuries." *Id.* (citations omitted). The principle "that a wrongdoer should not profit from his own misconduct is so strong in New York that . . . the defense applies even in difficult cases and should not be 'weakened by exceptions.'" *Id.* (citing cases and describing the *in pari delicto* doctrine as "inflexible" and one that "mandates" dismissal of a wrongdoer plaintiff's claims).

In pari delicto has been repeatedly applied to bar claims for breach of contract. *See, e.g.*, *Gitlin v. Chirinkin*, 993 N.Y.S.2d 914 (2d Dep't 2014); *Walker, Truesdell, Roth & Assocs., Inc. v. Globeop Fin. Servs. LLC*, 993 N.Y.S.2d 647 (Sup. Ct. N.Y. Cnty. 2013). It applies both to claims against alleged co-wrongdoers and to claims a wrongdoer seeks to bring against third parties. *See Securities Investor Protection Corp. v. Bernard L. Madoff Inv. Securities LLC*, 987 F. Supp. 2d 311, 321 (S.D.N.Y. 2013) ("In pari delicto bars claims against third parties . . . ."). For instance, as the Court of Appeals has noted, "[a] criminal who is injured committing a crime cannot sue the police officer or security guard who failed to stop him; the arsonist who is singed cannot sue the fire department." *Kirschner*, 15 N.Y.3d at 464. This is true irrespective of whether, in the examples cited by the Court of Appeals, the police officer, security guard, or fire department breached their obligations. A wrongdoer plaintiff is barred from bringing claims for losses resulting from its wrongdoing, regardless of whether those claims would otherwise have been meritorious.

BAT has amply alleged a defense and counterclaim under the *in pari delicto* doctrine. NCR's status as a wrongdoer has already been established by federal court decisions. The *Georgia.-Pacific* court "conclude[d] as a matter of law that NCR arranged for the disposal of CCP broke" in the Kalamazoo River "as a means of getting rid of a substance it knew to be hazardous." *Georgia Pacific I*, 980 F. Supp. 2d at 835. It further found that NCR knew for years that its products were "hazardous" and that NCR "actively attempted to conceal the hazards associated with CCP broke-from recyclers, the public, and even governmental entities" and "deliberately attempted to conceal from them—and everyone else—the toxic nature of CCP broke" in order to offload products it knew were "toxic." *Id*. at 834-35. NCR did so with "knowledge and intent to dispose of what it well understood to be a hazardous, toxic substance." *Id*. at 836.

NCR argues that the *in pari delicto* doctrine "requires mutual fault for a particular harm," ECF 30 at 26, but New York courts have roundly rejected such a requirement and have held that *in pari delicto* prevents a wrongdoer from bringing claims against any party "whose equal *or lesser* fault contributed to the loss." *MF Global Holdings*, 199 F. Supp. 3d at 831 (emphasis added); *see also Republic of Iraq v. ABB AG*, 768 F.3d 145, 163 (2d Cir. 2014) (finding claims barred because the plaintiff "was the instigator and dominant force" behind the wrongdoing). Where the defendant "is less guilty," courts may "grant relief to the less guilty of the parties," but will deny relief to the more guilty party. *Teneyck, Inc. v. Rosenberg*, 39 Misc. 3d 194, 196–97 (Sup. Ct. N.Y. Cnty. 2013), *aff'd,* 975 N.Y.S.2d 335 (1st Dep't 2013), quoting *Furman v. Furman*, 34 N.Y.S.2d 699, 704 (Sup. Ct. N.Y. Cnty. 1941), *aff'd,* 262 A.D. 512 (App. Div. 1941), *aff'd,* 287 N.Y. 772 (1942)).

Here, NCR claims that BAT agreed to indemnify it because of BAT's own liability exposure as the former owner of a coating business. *See* ECF 30 at 1. Because NCR is clearly the primary wrongdoer, NCR is barred under the *in pari delicto* doctrine from enforcing any agreement

to apportion liability for its wrongdoing.  At the very least, BAT has adequately alleged, under a notice pleading standard, a plausible legal and factual basis for application of the *in pari delicto* doctrine.  No more is required for BAT to state a defense and counterclaim.

Also incorrect is NCR's argument that BAT cannot invoke the *in pari delicto* doctrine without first conceding its own wrongdoing.  Defendants routinely invoke *in pari delicto* while maintaining their innocence to bar claims by plaintiffs where, as here, it is clear from the record that the plaintiff is itself a primary or sole wrongdoer.  *See, e.g.*, *Republic of Iraq*, 768 F.3d at 163 (federal *in pari delicto* doctrine barred claims by the Iraqi government for claims against professional services companies, none of which conceded liability, relating to Iraq's own corruption of the UN Oil for Food Programme); *Giordano v. UBS, AG*, 134 F. Supp. 3d 697, 708-09 (S.D.N.Y. 2015) (dismissing "one of a series of cases brought by former UBS accountholders seeking to hold UBS responsible for their own tax fraud"); *Concord Capital Management, LLC v. Fifth Third Bank*, No. 650478/2010, 2011 WL 10564345, at *5 (Sup. Ct. N.Y. Cnty. Dec. 01, 2011) (granting motion by defendant bank to dismiss claims by wrongdoer plaintiff without any admission or finding of wrongdoing by the defendant, even though defendant was "not alleged to have willfully aided [the] wrongful conduct or to have benefitted from" it).  Equally baseless is NCR's argument that "BAT does not allege that NCR participated in the same wrongdoing that it alleged against BAT."  ECF 30 at 27.  It is undisputed that the Acquired Business applied toxic substances for NCR, albeit unknowingly.

In short, BAT has amply alleged a plausible basis for application of the *in pari delicto* doctrine, which would, if proven, bar the relief NCR seeks.

### D.    BAT Amply Pleaded a Claim for Violation of New York Public Policy

BAT has also properly alleged a claim for violation of New York public policy.  The CSA, if construed to apply to the Kalamazoo River, would be an illegal indemnity under two separate

public policy grounds: it would be (1) an agreement to indemnify for intentional harm and (2) an agreement to indemnify for punitive damages, both of which are barred and unenforceable under New York public policy.  The Court need not determine at this early stage whether BAT will ultimately prove that the CSA violates public policy.  It need only to determine that BAT has alleged a sufficient basis to assert a defense and state a counterclaim on public policy grounds.

BAT has clearly done so.  As noted above, a federal court has already determined that NCR arranged for the disposal of broke in the Kalamazoo River "as a means of getting rid of a substance it knew to be hazardous;" "actively attempted to conceal the hazards associated with CCP broke-from recyclers, the public, and even governmental entities" and "deliberately attempted to conceal from them—and everyone else—the toxic nature of CCP broke" in order to offload products it knew were "toxic;" and did so with "knowledge and intent to dispose of what it well understood to be a hazardous, toxic substance." *Georgia Pacific I*, 980 F. Supp. 2d at 834-36.

These findings on their own are sufficient to establish a public policy bar – and are certainly sufficient to plausibly allege public policy grounds for voiding the CSA.  As NCR itself concedes, New York public policy "prohibits indemnification when [a] fact finder determines that the indemnitee intended to cause harm."  ECF 30 at 28, (quoting *NXIVM Corp. v. Sutton,* No. 06-cv-1051, 2019 WL 4010859, at *8 (D.N.J. Aug. 26, 2019).  "[T]he New York Court of Appeals has held that, indemnification agreements are unenforceable as violative of public policy to the extent that they purport to indemnify a party for damages flowing from the intentional causation of injury." *Modular Devices, Inc. v. Alcatel Alenia Space Espana*, No. 08-CV-1441 JS WDW, 2010 WL 3236779, at *4–5 (E.D.N.Y. Aug. 12, 2010) (citations omitted).  "It is now well settled that where harm to the victim is inherent in the nature of the act performed, whatever injuries result are, as a matter of law, intentionally caused." *Travelers Ins. Companies v. Stanton*, 645 N.Y.S.2d

948, 949 (3d Dep't 1996) (citation omitted);  *see also Mary & Alice Ford Nursing Home Co. v. Fireman's Ins. Co.,* 446 N.Y.S.2d 599, 601 (3d Dep't 1982), *aff'd*, 439 N.E.2d 883 (N.Y. 1982) (barring indemnity where injuries "were the direct and natural consequence of plaintiff's intentional act").

NCR relies on *Gibbs-Alfano v. Burton*, 281 F.3d 12, 21 (2d Cir. 2002) for its holding in 2002 that "Defendants have not cited any case, and we found none, where a New York court declined to enforce an otherwise valid indemnification agreement between parties where the party seeking indemnification settled, without admitting liability, claims against it alleging intentional wrongdoing."  However, that is no longer accurate.  In 2018, the Second Department reversed an order requiring indemnification for a settlement of alleged intentional misconduct, concluding that "[w]hether the incidents set forth in the amended complaint in the underlying action were accidents present questions of fact which cannot be determined on a motion to dismiss".  *Graphic Arts Mut. Ins. Co. v. Pine Bush Cent. Sch. Dist.*, 73 N.Y.S.3d 241, 246 (2d Dep't 2018).  Here, if anything, the pleadings are even stronger, as BAT has pled actual, binding findings, rendered after trial, that NCR intentionally arranged for the disposal of toxic broke into the Kalamazoo River with full knowledge that doing so would result in harm.  *See Travelers Ins. Companies*, 645 N.Y.S.2d at 948-49 (indemnification void as against public policy where prior case found plaintiff liable for intentional misconduct).

In addition, it is against public policy to award indemnification for damages that are "penal in nature."  *See, e.g.*, *Rental & Mgmt. Assocs., Inc. v. Hartford Ins. Co.*, 614 N.Y.S.2d 513, 514 (1st Dep't 1994) (denying indemnification for damages "analog[ous] to punitive damages").  Public policy bars agreements to indemnify for intentional wrongdoing, including punitive damages that are a punishment for such conduct.  *See, e.g., Barbagallo v. Marcum LLP*, 2012 WL

1664238, at *4 (E.D.N.Y. May 11, 2012); *see also Derechin v. State Univ. of New York*, 963 F.2d 513, 519 (2d Cir. 1992) (public policy bars indemnification for punitive damages to Rule 11 sanctions).

Here, NCR seeks indemnification for a damages award in *Georgia-Pacific II* that the court stated expressly that it had enlarged under equitable reasons due to NCR's egregious misconduct. That award is clearly punitive in nature and therefore cannot be indemnified. For all these reasons, BAT amply states a claim, and has validly asserted a defense, for invalidity based on public policy.

### III.  NCR'S MOTION TO STRIKE BAT'S AFFIRMATIVE DEFENSES SEEKS DRASTIC AND EXTRAORDINARY RELIEF AND MUST BE DENIED

BAT asserted eight affirmative defenses in its Answer: (1) failure to state a claim; (2) breach of the CSA by NCR; (3) equitable recoupment, under which NCR is barred from recovering due to NCR's fraudulent inducement of BAT to enter into the CSA; (4) unclean hands; (5) waiver, estoppel, and laches; (6) failure by NCR to mitigate damages; (7) violation of New York public policy; and (8) the *in pari delicto* doctrine. To obtain judgment on the pleadings, NCR must prove that every single one of BAT's affirmative defenses is so deficient that it must be stricken. NCR does not even approach the extraordinary showing that would be needed to obtain that relief.

#### A.  Pleading Standards

"Rule 12(f) motions are highly disfavored" and "are not to be granted unless there is a strong reason for so doing." *McIntosh v. Katapult Holdings, Inc.*, 2023 WL 5049044, at *3 (S.D.N.Y. Aug. 8, 2023) (internal quotations and citations omitted). Affirmative defenses will not be stricken "unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." *Jujamcyn Theaters*, 2023 WL 2366789, at *8 (internal quotations and citation omitted). "Moreover, even when the facts are not disputed, several courts have noted that a motion to strike for insufficiency was never intended to furnish an

opportunity for the determination of disputed and substantial questions of law," particularly "when, as here, there has been no significant discovery." *Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984), *vacated on other grounds*, 478 U.S. 1015 (1986) (internal quotations and citations omitted). "[E]ven when the defense presents a purely legal question, the courts are very reluctant to determine disputed or substantial issues of law on a motion to strike; these questions quite properly are viewed as determinable only after discovery and a hearing on the merits." *Id.* (quoting 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1381, at 800–01).

Indeed, NCR concedes that "[t]o prevail on a motion to strike affirmative defenses, a party 'ordinarily must show that (1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense.'" ECF 30 at 12, *citing GEOMC Co., Ltd. v. Calmare Therapeutics Inc.,* 918 F.3d 92, 96 (2d Cir. 2019) (marks and citations omitted). An asserted defense need only be "plausible," and "the degree of rigor appropriate for testing the pleading of an affirmative defense" is reduced from that applicable to a claim because "[t]he pleader of a complaint has the entire time of the relevant statute of limitations to gather facts necessary to satisfy the plausibility standard." *GEOMC Co., Ltd.*, 918 F.3d at 98; *see also Rich v. Miller*, 634 F. Supp. 3d 66, 72  (S.D.N.Y. 2022) ("[C]ourts 'apply a lower plausibility threshold' to affirmative defenses 'because the pleader has less time to gather facts and craft a response.'") (citation omitted). "[E]ven if an affirmative defense is presented without accompanying factual allegations, a court may still decline to strike it where sufficient factual content is pled elsewhere to support the defense," even if the defense is "threadbare." *Rich*, 634 F. Supp. 3d at 72 (internal quotations and citations omitted); *see also Kelly v. 21 Grp. Inc.*, No. 22-CV-0226 (MKB), 2023 WL 5831131, at *6 (E.D.N.Y. Sept. 8, 2023) (denying motion to strike "boilerplate affirmative

28

defenses" because they provided "fair notice of the nature of the defenses and are not so legally insufficient that they should be stricken").

Here, BAT has amply alleged each of its defenses, all of which are fact-intensive, and many of which involve complex legal questions. There is no conceivable basis to strike any of BAT's defenses – let alone all, as would be needed in order to grant NCR judgment on the pleadings.

### B.      NCR Has Not Met, And Cannot Meet, Its Burden In Seeking to Strike BAT's Defenses

BAT addresses the sufficiency of its first, third, seventh and eighth affirmative defenses for NCR's failure to state a claim, NCR's fraudulent conduct, public policy and *in pari delicto* above. Each presents disputed or substantial issues of law and fact that cannot be resolved on a motion to strike defenses. BAT's other defenses similarly cannot be stricken on the pleadings.

BAT's fourth affirmative defense, for unclean hands, is based on the well pled allegations that NCR fraudulently induced BAT to enter into the CSA. NCR's sole argument for striking this defense in its motion is the baseless contention that BAT's "unclean hands" defense lacks a "nexus" to this action. ECF 30 at 12-13. That is simply incorrect. Indeed, the "nexus" is clear and cannot be disputed: BAT alleges that NCR acted with unclean hands by fraudulently inducing BAT to sign the very agreement NCR seeks to enforce in this action.

Equally unavailing is NCR's attack on BAT's fifth affirmative defense based on waiver, estoppel, and laches. NCR contends that this defense is "not pleaded with any particularly," ECF 30 at 13, but there is no such requirement and BAT need only show that these defenses are plausible. Fed. R. Civ. P. 8(a). BAT has amply done so. NCR alleges that BAT "disclaimed any obligation to pay for *any* share of the cleanup costs at the Kalamazoo River Site" on June 3, 2019 – nearly four years before NCR brought the instant action. Compl. ¶ 48. These allegations are more than sufficient to support BAT's defenses. *See, e.g., Amimon, Inc. v. Shenzhen Hollyland*

*Tech Co.*, No. 20-CV-9170 (ER), 2023 WL 2478159, at *18 (S.D.N.Y. Mar. 13, 2023) (declining to strike "sparse" affirmative defense of estoppel and waiver because plaintiff had not established that there were no set of facts under which the defenses could succeed).

NCR makes the same baseless assertion that BAT's sixth affirmative defense for NCR's failure to mitigate damages is not pled with specificity. ECF 30 at 13. BAT alleged in detail that NCR massively amplified the amounts it now seeks to recover from BAT by concealing what it knew about its intentional pollution of the Kalamazoo River from the public, the government, and recyclers. *See* CC ¶ 115. Whether this conduct impacts NCR's ability to recover in this action cannot be determined on the current record. For all these reasons, no basis exists to strike any, let alone all, of BAT's defenses.

## <u>CONCLUSION</u>

For all the foregoing reasons, BAT respectfully requests that the Court deny NCR's motion in its entirety.

Dated: November 20, 2023                    Respectfully Submitted,

By: <u>/s/ Dennis H. Tracey, III</u>
     Dennis H. Tracey, III
     David R. Michaeli
     Peter Bautz
     Ian Lewis-Slammon
     Hogan Lovells US LLP
     390 Madison Avenue
     New York, NY 10017
     Telephone: (212) 918-3000
     dennis.tracey@hoganlovells.com
     david.michaeli@hoganlovells.com
     peter.bautz@hoganlovells.com
     ian.lewisslammon@hoganlovells.com