**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NCR CORPORATION, | |
| Plaintiff, | Case No.: 1:23-cv-1172-JPC |
| v. | |
| B.A.T INDUSTRIES p.l.c., | |
| Defendant. | |

**REPLY IN SUPPORT OF PLAINTIFF NCR CORPORATION'S MOTION FOR
JUDGMENT ON THE PLEADINGS, MOTION TO STRIKE AFFIRMATIVE
DEFENSES, AND MOTION TO DISMISS COUNTERCLAIMS**

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT ..........................................................................................................................3

    I.     THE COURT SHOULD GRANT JUDGMENT ON THE PLEADINGS
         ON NCR'S DECLARATORY JUDGMENT CLAIM. ...........................................3

         A.     The CSA Applies to Broke, Not Just "Finished Product." .........................3

         B.     Future Sites Liability Depends on *Allegations*, not *Findings*. .....................4

         C.     BAT's Counterclaims and Affirmative Defenses Do Not Preclude
             Judgment on the Pleadings. ........................................................................5

    II.    THE COURT SHOULD DISMISS BAT'S COUNTERCLAIMS. ........................6

         A.     BAT Cannot State Counterclaims for Fraudulent Inducement or
             Negligent Misrepresentation (Counts I and II). ..........................................6

         B.     BAT Cannot State a Counterclaim or Defense of *In Pari Delicto*
             (Count IV). ................................................................................................11

         C.     BAT Cannot State a Public Policy Claim or Defense (Count V). .............12

         D.     BAT Has Abandoned Its Breach of Contract Claim (Count III). .............13

    III.    THE COURT SHOULD STRIKE BAT'S AFFIRMATIVE DEFENSES. ...........14

CONCLUSION .....................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*28th Highline Assocs., L.L.C. v. Roache*,
No. 18-cv-1468, 2019 WL 917208 (S.D.N.Y. Feb. 25, 2019) .................................................6

*Adenariwo v. Fed. Mar. Comm'n*,
808 F.3d 74 (D.C. Cir. 2015).................................................................................................15

*Agora Gourmet Foods Inc. v. Edge*,
No. 60365/2018, 2020 WL 11272263 (Sup. Ct., Westchester Cnty. 2020) ...........................10

*Am. Motorists Ins. Co. v. GTE Corp.*,
No. 99-cv-2214, 2000 WL 1459813 (S.D.N.Y. Sept. 29, 2000) ...........................................12

*Austin v. Albany L. Sch. of Union Univ.*,
957 N.Y.S.2d 833 (Sup. Ct., Albany Cnty. 2013) ...................................................................9

*Bank of New York Mellon Trust Co., Nat'l Assoc. for Registered Certificate
Holders of Morgan Stanley Cap. I Inc. v. Morgan Stanley Mortg. Cap., Inc.*,
No. 11-cv-505, 2017 WL 698607 (S.D.N.Y. Feb. 10, 2017) .................................................15

*Bell v. Carey*,
No. 18-cv-2846, 2020 WL 3578150 (S.D.N.Y. July 1, 2020)..................................................9

*Bonilla v. Smithfield Assocs. LLC*,
No. 09-cv-1549, 2009 WL 4457304 (S.D.N.Y. Dec. 4, 2009)...............................................14

*Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*,
No. 22-cv-08842, 2023 WL 5971144 (S.D.N.Y. Sept. 14, 2023) ..........................................14

*Commander Terminals, LLC v. Commander Oil Corp.*,
897 N.Y.S2d 151, 153 (2d Dep't 2010)..................................................................................10

*Deutsche Bank Nat'l Trust Co. v. Sinclair*,
891 N.Y.S.2d 445 (2d Dep't 2009)..........................................................................................7

*K.D. ex rel. Duncan v. White Plains Sch. Dist.*,
921 F. Supp. 2d 197 (S.D.N.Y. 2013).....................................................................................12

*DVL, Inc. v. Niagara Mohawk Power Corp.*,
490 F. App'x 378 (2d Cir. 2012) .............................................................................................4

*In re Food Mgmt. Grp.*,
LLC, 380 B.R. 677 (Bankr. S.D.N.Y. 2008) ..........................................................................11

*Georgia-Pacific Consumer Prods. LP v. NCR Corp.*,
   358 F. Supp. 3d 613 (W.D. Mich. 2018) ............................................................12

*Georgia-Pacific Consumer Prods. LP v. NCR Corp.*,
   980 F. Supp. 2d 821 (W.D. Mich. 2013) .............................................5, 12, 13, 14

*GNB Battery Techs., Inc. v. Gould, Inc.*,
   65 F.3d 615 (7th Cir. 1995) .........................................................................11, 13

*In re Hanford Nuclear Reservation Litig.*,
   780 F. Supp. 1551 (E.D. Wash. 1991) ..............................................................12

*J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.*,
   992 N.E.2d 1076 (2013) .................................................................................13

*Jana L. v. W. 129th St. Realty Corp.*,
   802 N.Y.S.2d 132 (1st Dep't 2005) ................................................................9, 10

*JFK Hotel Owner, LLC v. Hilton Hotels Corp.*,
   42 Misc. 3d 1237(A), 2014 N.Y. Slip Op 50423(U) (Sup. Ct., N.Y. Cnty.
   2014) ........................................................................................................8, 9

*JJM Sunrise Auto., LLC v. Volkswagen Grp. of Am.*, Inc.,
   997 N.Y.S.2d 270, 292 (Sup. Ct., Nassau Cnty. 2014)..........................................9

*Johnson v. Nextel Commc'ns, Inc.*,
   660 F.3d 131 (2d Cir. 2011)..............................................................................6

*LaSala v. Bank of Cyprus Pub. Co.*,
   510 F. Supp. 2d 246 (S.D.N.Y. 2007)................................................................11

*Law Debenture Trust Co. of New York v. Maverick Tube Corp.*,
   595 F.3d 458 (2d Cir. 2010)...............................................................................4

*Lipton v. Cnty. of Orange*, N.Y.
   315 F. Supp. 2d 434 (S.D.N.Y. 2004)...........................................................13, 14

*Live Invest, Inc. v. Morgan*,
   64 N.Y.S.3d 466 (N.Y. Sup. Ct., Suffolk Cnty. 2017) .........................................13

*NCR Corp. v. George A. Whiting Paper Co.*,
   768 F.3d 682 (7th Cir. 2014) .............................................................................4

*Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*,
   85 F. Supp. 2d 282 (S.D.N.Y. 2000)..............................................................10, 11

*Oneida Indian Nation v. Phillips*,
   981 F.3d 157 (2d Cir. 2020)..............................................................................14

*Ortho-Clinical Diagnostics Bermuda Co. Ltd. v. FCM, LLC*,
    No. 15-cv-5607, 2017 WL 2984023 (S.D.N.Y. July 6, 2017)...................................................8

*Phoenix Cos., Inc. v. Concentrix Ins. Admin. Sols. Corp.*,
    554 F. Supp. 3d 568 (S.D.N.Y. 2021).........................................................................................8

*Purolator Prods. Corp. v. Allied-Signal, Inc.*,
    772 F. Supp. 124 (W.D.N.Y. 1991)...............................................................................11, 13

*Regan v. Cherry Corp.*,
    706 F. Supp. 145 (D.R.I. 1989)..................................................................................................12

*TIAA Glob. Invs., LLC v. One Astoria Square LLC*,
    7 N.Y.S.3d 1 (1st Dep't 2015).....................................................................................................9

*Trionic Assocs., Inc. v. Harris Corp.*,
    27 F. Supp. 2d 175 (E.D.N.Y. 1998), *aff'd,* 198 F.3d 235 (2d Cir. 1999)...........................6, 7

**Statutes and Other Authorities**

42 U.S.C. § 9607(e)(1).............................................................................................................13

Fed. R. Civ. P. 9(b) ............................................................................................................10, 11

## INTRODUCTION

When Defendant B.A.T Industries p.l.c., ("BAT") signed the Confidential Settlement Agreement ("CSA") in 1998, it agreed to contribute to past and future costs at sites alleged to be contaminated as a result of actions of the Appleton Papers Division ("APD"),[1] an entity BAT purchased in 1978. There is no ambiguity in the CSA. And there is no ambiguity that Georgia-Pacific alleged that the Kalamazoo River was contaminated as a result of APD's actions. As such, the application of the CSA to the liability at issue in this case is clear. In its Opposition, BAT asserts that the CSA somehow applies only to "finished products," but that plainly is not what the CSA says. BAT also contends that there are fact issues as to the *actual* source of Kalamazoo contamination, but that too is irrelevant under the clear terms of the CSA.

This Court also should reject BAT's attempt to muddy the waters through counterclaims and defenses that re-litigate issues resolved decades ago and instead enforce the unambiguous terms of the CSA. While BAT devotes much of its brief to depicting itself as an innocent party duped into paying costs for which NCR Voyix Corporation ("NCR")[2] alone is responsible, its pleadings demonstrate this is meritless. BAT is a party to the CSA—and contributed to cleanup costs at the Fox River—because it assumed the liabilities of a division of NCR. NCR is not asking BAT to cover costs for which NCR alone is responsible; NCR is demanding that BAT merely make good on its contractual obligations and pay its fair share of the costs it assumed when it acquired assets from NCR. Nor did NCR somehow trick BAT into signing the CSA without recognition of the possibility of liability at other sites in the future. Indeed, it is hard to imagine a more conspicuous and explicit recognition of that possibility than language in the CSA

---

[1] The "APD" comprised of two mills located on the Fox River in Wisconsin: the Appleton Coated Paper Company ("ACPC") and Combined Paper Mills ("CPM").
[2] NCR Corporation changed its name to NCR Voyix Corporation in October 2023.

which specifically obligates BAT to cover costs at "**Future Sites**," while at the same time expressly "recogniz[ing] that claims . . . may arise in the future with respect to other sites." CSA, Dkt. 31-1, at 3 (emphasis added).

BAT's counterclaims crumble against this backdrop. BAT pleaded that, while NCR disclosed a *potential* for liability, it did not sufficiently identify the precise "*degree of likelihood*." CC, Dkt. 21, ¶ 21 (emphasis added). But BAT's desire for the exact likelihood of liability does not render any alleged statement or omission by NCR false or misleading. This is true even if this Court draws the unreasonable inference from BAT's factual allegations that NCR could have known the degree of likelihood of future liability. Indeed, as BAT acknowledges, NCR did not receive a government request for information about the Kalamazoo River until five years after the CSA was signed. *See* BAT Ans., Dkt. 21, ¶ 37.

Also missing from BAT's pleadings and Opposition is the element of reasonable reliance. Indeed, it would be plainly unreasonable as a matter of law for BAT to have entered into the CSA on the belief that Future Sites liability would never arise. As BAT acknowledges, the CSA's broad Future Sites language and NCR's statements put BAT on notice of the potential for liability. BAT also fails to identify any legally cognizable duty requiring NCR to have disclosed the "degree" of likelihood of liability. All told, there is no basis for BAT to claim now, decades later, that the CSA was procured through fraud or negligence simply because it no longer likes the deal it made.

Similarly, nothing in BAT's Opposition resuscitates its *in pari delicto* counterclaim. BAT fundamentally misunderstands the nature of that doctrine. This is an action regarding contractual rights and obligations, and only BAT is alleged to have breached the CSA. The parties are not "at equal fault" for BAT's breach. BAT's continued attempt to contort the CSA into an

agreement barred by public policy also fails. No court has imposed punitive damages on NCR nor found that NCR intended to cause harm at the Kalamazoo River; the allegations and findings regarding NCR's liability at the Kalamazoo River site are standard Superfund claims that routinely are indemnified. In addition, nothing in BAT's threadbare affirmative defenses precludes entry of judgment in NCR's favor.

## ARGUMENT

I.    **THE COURT SHOULD GRANT JUDGMENT ON THE PLEADINGS ON NCR'S DECLARATORY JUDGMENT CLAIM.**

A.    **The CSA Applies to Broke, Not Just "Finished Product."**

BAT first attempts to avoid its obligations under the CSA by arguing that liability for Future Sites under the CSA does not apply to broke[3] that contaminated the Kalamazoo River. Opp. at 10. BAT contends that, instead, the definition of Future Sites refers to "NCR Paper brand carbonless paper," which BAT argues excludes broke because "[p]aper is not branded until it is a finished product ready for sale to consumers." *Id.* But BAT's contention that the term "NCR brand" somehow limits the CSA to waste generated from a "finished product," as opposed to waste generated in the course of producing an NCR-branded product, is absurd. Broke is a byproduct of the paper manufacturing process. *See id.* at 4-5. As such, broke falls squarely within the ambit of the CSA as it is generated as "a result . . . of the manufacture . . . of PCB-containing NCR Paper brand carbonless copy paper," CSA, Dkt. 31-1, at p. 11.

BAT's position is also untenable in the context of a settlement agreement designed to share costs relating to CERCLA liability. As relevant here, CERCLA liability attaches only where a party is found to have "arranged for the disposal" of a hazardous substance. *See e.g., DVL, Inc. v. Niagara Mohawk Power Corp.*, 490 F. App'x 378, 383 (2d Cir. 2012) (marks

---

[3] Broke is paper scrap, generated during the manufacturing process. *See* Compl., Dkt. 1, ¶¶ 2, 16-18.

omitted). A company does not "arrange for the disposal" of a finished, valuable product. The limitation BAT urges—that only contamination from "finished" NCR Paper can trigger indemnity—would eliminate any indemnity altogether, as NCR would never be held to be an "arranger" on account of the sale of finished paper to a customer or the potential recycling of that paper by a customer.

It thus is obvious why NCR did "not address the CSA indemnity's requirement that paper be branded anywhere in its motion," Opp. at 10; the "requirement" does not exist. BAT raised this argument for the first time in its Opposition. BAT made no mention of its "finished product" argument in its Counterclaims or Affirmative Defenses, and cites nothing in its Opposition even suggesting it has ever raised the argument before, including during the years it admits the parties were cooperating on the Fox River (another area where the recycling of "broke" was a primary issue). *See* Ans. ¶ 19; *see also NCR Corp. v. George A. Whiting Paper Co.*, 768 F.3d 682, 688 (7th Cir. 2014). BAT's tortured reading of the CSA is nonsensical, and cannot serve to avoid judgment on the pleadings. *See Law Debenture Trust Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (where the "interpretation urged by one party would strain the contract language beyond its reasonable and ordinary meaning," a finding of ambiguity is improper) (cleaned up).

**B.    Future Sites Liability Depends on *Allegations*, not *Findings*.**

BAT also argues that NCR's motion fails, and discovery is required, because NCR has not shown that indemnity was "actually attributable to the Acquired Assets," i.e., the APD, which BAT purchased in 1978, Opp. at 10, and that the "pleadings present an unresolved issue of fact as to whether the site at issue was contaminated with NCR Brand CCP manufactured utilizing" the Acquired Assets. *Id.* These arguments fail for two key reasons.

First, under the CSA, Future Sites liability hinges on what was alleged, not what was found to be "attributable" to the Acquired Assets. There is no support in the CSA for BAT's assertion that discovery is required "with respect to the source of" pollution at a Future Site, like the Kalamazoo River, or that Future Sites liability exists "only upon a showing that the paper was actually 'manufactured utilizing the assets that were the subject of the Purchase Agreement.'" *Id.* BAT cannot escape judgment on the pleadings by raising a purported factual dispute that is irrelevant to any provision of the CSA.

Second, pursuant to the *relevant* question, Georgia-Pacific alleged that the two APD mills acquired by BAT (ACPC and CPM) were responsible for Kalamazoo contamination by selling PCB-laden broke they knew or should have known "would result in the discharge of wastewater and the disposal of other waste containing PCBs." Georgia-Pacific Am. Compl., Dkt. 31-2, ¶¶ 76-78. BAT does not dispute that ACPC and CPM were the subject of the Purchase Agreement. *See* Ans., ¶¶ 2-3; CC, ¶ 29. Accordingly, there can be no question that Georgia-Pacific's allegations about these APD mills trigger Future Sites liability. Nothing further is required for BAT to bear its share of costs under the CSA.[4]

### C.    BAT's Counterclaims and Affirmative Defenses Do Not Preclude Judgment on the Pleadings.

Although BAT argues that its counterclaims and defenses preclude judgment on the pleadings, NCR has moved to dismiss them because they fail as a matter of law. In any event, the mere existence of counterclaims and defenses, without more, does not prevent the Court from entering judgment on NCR's contract claim. *See e.g., See 28th Highline Assocs., L.L.C. v.*

---

[4] Even if it were relevant to Future Sites liability, and it is not, BAT is wrong that "[f]ederal courts also found that the Acquired Business was not an 'arranger' under CERCLA." Opp. at 7. A federal court *did* find that APD-related broke contaminated the river. *See Georgia-Pacific Consumer Prods. LP v. NCR Corp.*, 980 F. Supp. 2d 821, 833-35 (W.D. Mich. 2013) ("knowledge of the PCB problem with CCP broke [ ] spread outside NCR, to companies like ACPC and CPM" and finding that "broke from ACPC . . . reached the [Kalamazoo] Site").

*Roache*, No. 18-cv-1468, 2019 WL 917208, at *8 (S.D.N.Y. Feb. 25, 2019), *aff'd*, 826 F. App'x

70 (2d Cir. 2020) (granting motion for judgment on the pleadings where "Defendant's answer,

affirmative defenses, and counterclaims do not include factual material to state a 'plausible'

claim to relief" and contract was unambiguous). BAT must plausibly plead its counterclaims and

defenses, which, for the reasons below and in NCR's Motion, it has not.

## II.    THE COURT SHOULD DISMISS BAT'S COUNTERCLAIMS.

### A.    BAT Cannot State Counterclaims for Fraudulent Inducement or Negligent Misrepresentation (Counts I and II).

BAT's contention that its failure to learn the precise likelihood of Future Sites liability

induced it to enter into the CSA must fail as a matter of law because BAT does not adequately

plead any actionable statement or omission, reasonable reliance, or duty.

#### 1.    BAT failed to plead any actionable misstatement or omission.

The misrepresentation and omission BAT alleges fail as a matter of law because they

concern NCR's alleged expectations of potential *future* liability, not presently known facts, as

New York law requires. Mot. at 15-16; *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 143 (2d

Cir. 2011). BAT now submits that the statements "were false when made" and that NCR "knew

at the time it entered into the CSA at least one specific future site existed." Opp. at 21. But this

wordsmithing does not bring NCR's alleged predictive statements about future liability into the

present. BAT's counterclaims are premised on NCR being "fully aware of the likelihood" of

Kalamazoo liability. *See e.g.,* CC ¶¶ 4, 16, 18, 19, 58, 77. But what NCR may have known at the

time it entered into the CSA about the likelihood of future liability remains "not a

misrepresentation of present fact, but a projection of future possible" events. *Trionic Assocs.,*

*Inc. v. Harris Corp.*, 27 F. Supp. 2d 175, 183 (E.D.N.Y. 1998), *aff'd,* 198 F.3d 235 (2d Cir.

1999); *Deutsche Bank Nat'l Trust Co. v. Sinclair*, 891 N.Y.S.2d 445, 447 (2d Dep't 2009) (a

fraud claim cannot be based "upon an expression of future expectations"). Moreover, BAT's statement that NCR knew that "at least one specific future site existed" at the time of the CSA, Opp. at 21, assuming BAT is referring to the Kalamazoo River, is simply impossible given that BAT itself acknowledges that Georgia-Pacific did not make its allegations, which made Kalamazoo a Future Site, until more than a decade later. *See* Ans. ¶¶ 21, 38. BAT cannot plead, and has not pleaded, that by 1998 any party had alleged that the manufacture of NCR paper using APD assets had contaminated the Kalamazoo River.

Finally, even if NCR's alleged statements and omissions could be construed as facts known by NCR at the time made, BAT does not identify any false or misleading statement. As BAT acknowledges, NCR (and the CSA) specifically notified BAT of the potential for future liability at sites like the Kalamazoo River. BAT admits that it understood that liability "could arise at other sites." Opp. at 15; *see also* CSA at 3 ("BAT recognize[s] that claims similar to those asserted . . . relating to the Fox River sites . . . *may arise in the future with respect to other sites*") (emphasis added). Thus, while BAT broadly decries NCR's disclosure of only the "potential" for liability, that statement indisputably was true. BAT's assertion that statements about liability being "merely 'potential' . . . were false" is nonsensical. Opp. at 21. And BAT's insistence that NCR should have disclosed more, i.e., the "true degree of likelihood," CC ¶ 21, does not render NCR's statements false or misleading. BAT cannot establish fraud or negligence without a misrepresentation or falsity.

### 2. BAT failed to plead reliance.

BAT's Opposition only sparingly addresses its failure to plead the element of reasonable reliance, citing caselaw for the basic proposition that reliance can be a question of fact. *See* Opp. at 17-18, 20. But that generic proposition does not excuse BAT's failure to plausibly plead reliance at all. *See Ortho-Clinical Diagnostics Bermuda Co. Ltd. v. FCM, LLC*, No. 15-cv-5607,

2017 WL 2984023, at *4 (S.D.N.Y. July 6, 2017) ("fraud claims can fail as a matter of law for failure to plausibly allege reasonable reliance"). There is no set of facts that could support a finding of reasonable reliance under the circumstances. BAT knew that Future Sites liability was possible and was never told otherwise. CC ¶ 77. To the extent BAT chose to interpret the phrase "potential for liability" as "no potential for liability," as its Counterclaims suggest, it did so at its own peril and against both the language of the CSA and alleged representations made by NCR. Any such reliance would be unreasonable as a matter of law. *See Phoenix Cos., Inc. v. Concentrix Ins. Admin. Sols. Corp.*, 554 F. Supp. 3d 568, 595 (S.D.N.Y. 2021) ("courts may determine as a matter of law that a party's reliance is unreasonable where the alleged misrepresentation is explicitly contradicted by the written agreement") (cleaned up). No further discovery or evidence could remedy this failure to plead reasonable reliance.

### 3.    BAT failed to plead a duty to disclose.

BAT's brief also fails to identify a legally cognizable duty for NCR to have disclosed what BAT claims NCR omitted. BAT trumpets the "special facts" exception to well-established New York law providing that sophisticated, well-represented parties in arms-length negotiations do not have a duty to disclose outside of unique circumstances. But the special facts exception is not materially different from the "superior knowledge" or "special expertise" exceptions that NCR addressed at length in its motion. *See* Mot. at 20-21, 24. Fatal to BAT's duty argument is the requirement that the party invoking the "special facts" or "superior knowledge" exceptions must, at a minimum, engage in "the exercise of reasonable diligence." *Austin v. Albany L. Sch. Of Union Univ.*, 957 N.Y.S.2d 833, 844 (Sup. Ct. 2013). The court in *JFK Hotel Owner, LLC v. Hilton Hotels Corp.*, for example, rejected application of the special facts doctrine and dismissed a fraudulent inducement claim where, "despite Plaintiff's repeated allegations regarding the extreme importance of [Defendant's] affiliation," the complaint "does not aver that Plaintiff

asked [Defendant] about its ownership structure," or "conducted any research on this issue prior to closing. . ." 42 Misc. 3d 1237(A), 2014 N.Y. Slip Op 50423(U), at *11 (Sup. Ct., N.Y. Cnty. 2014).[5]

The same is true here: BAT does not allege that it engaged in any diligence or inquiry whatsoever as to any potential Future Sites before entering into the CSA. Mot. at 25. The only case BAT cites in defense of its failure to conduct inquiry or diligence is *TIAA Glob. Invs., LLC v. One Astoria Square LLC*, 7 N.Y.S.3d 1, 10 (1st Dep't 2015). But that case does not help BAT, as the court there found that a question of fact existed as to whether it would "truly have been practical for plaintiff, prior to taking possession of the building, to do the requisite testing, some of it possibly destructive, that would have been necessary to reveal the alleged defects." *Id.* at 10-11. BAT does not allege, however, that it could not have made a reasonable inquiry or undertaken any diligence as to Future Sites. In fact, *TIAA* supports the view that where a party is *able* to perform diligence or inquiry, it *must*. Neither *TIAA* nor any other case cited by BAT supports the application of the special facts exception where a party makes no attempt at all to learn about allegedly material information through a simple inquiry. *See Jana L. v. W. 129th St. Realty Corp.*, 802 N.Y.S.2d 132, 135 (1st Dep't 2005) (finding no duty under the special facts doctrine and observing that plaintiff had "at the very least, a duty to inquire. If nothing else, the 'exercise of ordinary intelligence' suggests a simple inquiry . . . at closing").

BAT's failure to inquire about possible Future Sites illustrates another deficiency in BAT's special facts doctrine argument: as pleaded, the potential for Kalamazoo liability could

---

[5] *See also e.g.*, *JJM Sunrise Auto., LLC v. Volkswagen Grp. of Am.*, Inc., 997 N.Y.S.2d 270, 292 (Sup. Ct., Nassau Cnty. 2014) (special facts doctrine did not apply to fraudulent inducement claim where party "fail[ed] to allege that it exercised any 'ordinary intelligence,' much less made a simple inquiry" as to information allegedly within counterparty's peculiar knowledge); *Bell v. Carey*, No. 18-cv-2846, 2020 WL 3578150, at *7 (S.D.N.Y. July 1, 2020) ("parties to a transaction have a duty to exercise ordinary diligence and conduct an independent appraisal of the risk they are assuming") (cleaned up).

not plausibly be construed as a material fact that made the "transaction without disclosure inherently unfair." *Id.* There is no basis to conclude that an agreement with language broadly encompassing potential liability for Future Sites would become inherently unfair because one source of the very liability provided for in the agreement was not specifically disclosed.

This lack of materiality and unfairness is another reason the cases BAT cites in its duty argument are inapposite. Each case involves the omission of information critical to a purchase or sale. For example, in *Agora Gourmet Foods Inc. v. Edge*, No. 60365/2018, 2020 WL 11272263, at *22 (Sup. Ct., Westchester Cnty. 2020), the defendant concealed asbestos and lead paint exposure when executing a lease agreement. In *Commander Terminals, LLC v. Commander Oil Corp.*, 897 N.Y.S2d 151, 153 (2d Dep't 2010), the defendant concealed oil seepage prior to the sale of an oil storage facility. But this case does not involve the concealment of a material defect before the close of a transaction. It involves the potential for costs, expressly provided for in the CSA, to arise in the future. BAT's position would allow a party to avoid contractual obligations merely by claiming that any modicum of information unknown at signing should have been disclosed voluntarily. The Court should reject as a matter of law BAT's attempt to wildly expand the duties owed in arms-length contractual negotiations.

### 4. BAT has not satisfied Rule 9(b) pleading requirements.

With respect to its fraud claim, BAT's brief also does not address its failure to plead with particularity as required by Rule 9(b). That rule requires that for any alleged misstatements, BAT must identify the "speaker, time, place, individuals involved, and specific conduct at issue," or, with respect to alleged omissions, what the omissions were; the context, the person responsible, the manner in which they misled the plaintiff, and what the defendant obtained. *See Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000). BAT's failure to satisfy the pleading requirements of Rule 9(b) is fatal to its fraud claim.

### B.    BAT Cannot State a Counterclaim or Defense of *In Pari Delicto* (Count IV).

In its Opposition, BAT expends considerable energy discussing the background and fundamentals of the *in pari delicto* defense, but continues to fundamentally misapply it. *In pari delicto* "bars a plaintiff from recovering a loss caused in part by his own wrongful conduct." *LaSala v. Bank of Cyprus Pub. Co.*, 510 F. Supp. 2d 246, 277 (S.D.N.Y. 2007) (marks and citations omitted); *In re Food Mgmt. Grp.*, LLC, 380 B.R. 677, 693 (Bankr. S.D.N.Y. 2008) (*In pari delicto* "refers to the plaintiff's participation in the same wrongdoing as the defendant"). Here, the subject of the suit is BAT's breach of the 1998 CSA, while BAT's *in pari delicto* counterclaim concerns conduct dating back to the 1960s regarding NCR's purported "status as a wrongdoer," unrelated to any a breach of the CSA. Opp. at 23. *In pari delicto* is wholly inapplicable to the counterclaim and defense BAT has attempted to shoehorn into the doctrine.

Further, BAT's interpretation of *in pari delicto*—that a wrongdoer "is barred under the *in pari delicto* doctrine from enforcing any agreement to apportion liability for its wrongdoing," Opp. at 23-24, would lead to the absurd result that parties could never enter into agreements to allocate Superfund cleanup costs, because one side could always refuse to pay by citing the other's prior conduct giving rise to liability. This is not, and should not be, the law. Indeed, none of the cases cited by BAT stand for the proposition that a party's role in past contamination precludes it from entering into an indemnification agreement to allocate costs among responsible parties. *Cf. e.g., Purolator Prods. Corp. v. Allied-Signal, Inc.*, 772 F. Supp. 124, 134 (W.D.N.Y. 1991) (enforcing Superfund indemnity agreement); *GNB Battery Techs., Inc. v. Gould, Inc.*, 65 F.3d 615 (7th Cir. 1995) (same).

### C.    BAT Cannot State a Public Policy Claim or Defense (Count V).

BAT's public policy counterclaim is without merit.[6] Despite BAT's attempt to mischaracterize the *Georgia-Pacific* court's findings as punitive damages, the court did not impose punitive damages. In apportioning liability at the Kalamazoo, the court listed several equitable factors,[7] none of which evince any intent to punish NCR or any other defendant. *Georgia-Pacific,* 358 F. Supp. 3d at 635. Not only did Georgia-Pacific not seek punitive damages, Georgia-Pacific Am. Compl., at 38, but punitive damages are prohibited by CERCLA Section 107(a)(4)(B), the cost recovery provision under which Georgia-Pacific sought damages. *See Regan v. Cherry Corp.*, 706 F. Supp. 145, 152 (D.R.I. 1989) (finding 42 U.S.C.A. § 9607(a)(4)(B) "does not permit the recovery of punitive damages").[8] This alone compels rejection of the claim. *See Am. Motorists Ins. Co. v. GTE Corp.*, No. 99-cv-2214 (RCC), 2000 WL 1459813, at *4 (S.D.N.Y. Sept. 29, 2000) (settlement was not improper indemnification where complaint "did not include a claim for punitive damages").

Having no viable punitive damages argument, BAT now offers a new theory: the CSA indemnifies for *intentional injury* in violation of public policy. Opp. at 25-26. This theory too should be rejected, because it was neither pleaded in, nor otherwise supported by, BAT's counterclaims. *See* CC ¶¶ 109-117; *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013) (parties "cannot amend their complaint by asserting new facts or theories for the first time in opposition to [a] motion to dismiss").

---

[6] While BAT states that the "Court need not determine at this early stage whether BAT will ultimately prove that the CSA violates public policy," Opp. at 25, the Court must determine whether BAT states a plausible claim.

[7] These factors were contribution to a discharge, release, or disposal; the amount of the hazardous waste involved; the degree of involvement; the degree of care exercised; and the degree of cooperation by the parties with officials. *Georgia-Pacific Consumer Prods. LP v. NCR Corp.*, 358 F. Supp. 3d 613, 634 (W.D. Mich. 2018).

[8] *See also In re Hanford Nuclear Reservation Litig.*, 780 F. Supp. 1551, 1569 (E.D. Wash. 1991) (no authority "would allow plaintiffs to recover punitive damages as a 'response cost' under their CERCLA § 107 claim"), abrogated on other grounds by *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139 (9th Cir. 2002).

Even were this not a novel theory, the "public policy exception for intentionally harmful conduct is a narrow one, under which it must be established not only that the [indemnitee] acted intentionally but, further, *that it acted with the intent to harm or injure others*." *J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.*, 992 N.E.2d 1076, 1081 (2013) (emphasis added). BAT notes the *Georgia-Pacific* court's finding that NCR intended to dispose of substances; but an intent to dispose does not amount to a finding of an "intentional causation of injury," as BAT suggests. Opp. at 25. BAT does not allege that any court has found, nor that Georgia-Pacific even alleged, that NCR intended to cause injury. This dooms Defendant's public policy theory. *See Live Invest, Inc. v. Morgan*, 64 N.Y.S.3d 466, 471 (N.Y. Sup. Ct., Suffolk Cnty. 2017) ("[W]here no finding of an intent to injure has been made, nothing in the public policy of this State precludes indemnity for compensatory damages flowing from a defendant's volitional act.").

BAT's public policy theory also would mean that CERCLA arrangers could never enter into indemnity agreements. CERCLA is a strict liability statute, and the "intent to dispose of a hazardous substance is an element of arranger liability." *Georgia-Pacific*, 980 F. Supp. at 831. Under BAT's reasoning, any CERCLA agreement among arrangers would constitute a *per se* public policy violation. This result would directly contravene CERCLA's express authorization of private indemnity agreements, *see* 42 U.S.C. § 9607(e)(1), and the ample caselaw upholding them, *see e.g., Purolator Prod. Corp.*, 772 F. Supp. at 134; *GNB Battery Techs.,* 65 F.3d 615.

### D.    BAT Has Abandoned Its Breach of Contract Claim (Count III).

NCR explained in its Motion that BAT's breach of contract claim is the mirror image of NCR's contract claim and should be dismissed for the same reasons the Court should grant NCR judgment on the pleadings. Mot. at 14. BAT does not address this point (or its breach of contract counterclaim at all) in its Opposition and has therefore waived it. *See Lipton v. Cnty. of Orange, N.Y.*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a

claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim

should be dismissed"); *Bonilla v. Smithfield Assocs. LLC*, No. 09-cv-1549, 2009 WL 4457304, at

*4 (S.D.N.Y. Dec. 4, 2009). The Court should dismiss BAT's Count III.

## III.    THE COURT SHOULD STRIKE BAT'S AFFIRMATIVE DEFENSES.

BAT's Opposition attempts to justify its sparse and conclusory affirmative defenses but

falls far short of supporting any of them. BAT argues that Rule 12(f) motions should not be

granted unless there is a strong reason for doing so. Opp. at 27. But this case presents just such a

reason: NCR has filed dispositive motions that will end the case if granted. There is no reason to

keep litigation alive because of the existence of implausibly pleaded defenses that lack any

factual or legal basis. These defenses will not benefit from discovery and should be stricken. *See

e.g., Oneida Indian Nation v. Phillips*, 981 F.3d 157, 169 (2d Cir. 2020) (affirming entry of

judgment on the pleadings and striking of fourteen affirmative defenses where no viable defenses

were raised); *Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*, No. 22-cv-08842, 2023 WL

5971144, at *18 (S.D.N.Y. Sept. 14, 2023) (granting motion for judgment on the pleadings and

striking affirmative defenses where defendant failed to plausibly plead affirmative defenses).

With respect to its fourth defense,[9] unclean hands, BAT now asserts—having provided no

substantive information in its Answer—that the defense refers to its allegation that NCR

fraudulently induced BAT to enter into the CSA. Opp. at 29. If that is the case, then it must be

dismissed for the same reasons as BAT's fraudulent inducement defense and counterclaim.

BAT argues that its fifth defense—waiver, estoppel, and/or laches—is "plausible"

because BAT "disclaimed any obligation to pay for any share of the cleanup costs at the

Kalamazoo River Site" on June 3, 2019. *Id.* NCR can only assume BAT is attempting to argue

---

[9] NCR analyzes only defenses four, five and six in this Reply as BAT's Opposition does not address its first defense (failure to state a claim), and defenses two, three, seven, and eight are duplicative of BAT's counterclaims.

that NCR waited too long—between June 2019 and 2023—to file suit. But BAT fails either to identify whether its claim is based on waiver, estoppel and/or laches, or to explain how any alleged delay in filing this lawsuit has harmed or prejudiced it.  Such a conclusory defense must be stricken.

With respect to its sixth defense, mitigation of damages, BAT now states that it alleged that NCR "amplified the amounts it now seeks to recover from BAT by concealing what it knew about its intentional pollution of the Kalamazoo River from the public, the government, and recyclers." Opp. at 30. Even accepting this allegation as true, it would not constitute a failure to mitigate damages, which concerns a plaintiff's actions *after* it has been harmed. *See Bank of New York Mellon Trust Co., Nat'l Assoc. for Registered Certificate Holders of Morgan Stanley Cap. I Inc. v. Morgan Stanley Mortg. Cap., Inc.*, No. 11-cv-505, 2017 WL 698607, at *1 (S.D.N.Y. Feb. 10, 2017) ("there is no such thing as 'pre-breach' mitigation. Only after a contract has been breached does a duty to mitigate damages arise"); *Adenariwo v. Fed. Mar. Comm'n*, 808 F.3d 74, 80 (D.C. Cir. 2015) ("Mitigation requires a party to take reasonable steps after it has been injured to prevent further damage from occurring"). NCR is being harmed by BAT's refusal to honor its contribution obligations under the CSA. The failed "mitigation" BAT raises relates to actions from decades before BAT breached the CSA—not the injury at issue in this litigation.

## **CONCLUSION**

For all of the foregoing reasons, the Court should grant judgment on the pleadings as to NCR's declaratory judgment action, strike BAT's affirmative defenses, and dismiss BAT's counterclaims in their entirety.

Dated: December 22, 2023
New York, New York

Respectfully submitted,

/s/ John J. Kuster
John J. Kuster
Zachary Payne
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300
jkuster@sidley.com
zpayne@sidley.com

Bruce R. Braun (admitted *pro hac vice*)
Charles K. Schafer (admitted *pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000
bbraun@sidley.com
cschafer@sidley.com

*Attorneys for Plaintiff NCR Voyix*
*Corporation*