October 23, 2024

**Via ECF**
The Honorable Stewart D. Aaron
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007

Re:   *NCR Corporation v. B.A.T Industries p.l.c.,* No. 23-cv-01172-JPC-SDA

Dear Judge Aaron:

The parties write jointly to provide a status update in advance of the initial pretrial conference scheduled for October 30, 2024. The parties held a Rule 26(f) Conference on October 9, 2024 and have exchanged proposed case management plans. While the parties are in agreement on a number of issues and deadlines, they outline below the positions on which agreement could not be reached. The parties' Report of Rule 26(f) Meeting and Proposed Case Management Plan is attached as Exhibit A.

**I.   Discovery and Trial Schedule**

**NCR**. Fact discovery should close on May 2, 2025. The Court's Order on NCR's Motion for Judgment on the Pleadings (Dkt. 38) narrowed the scope of discovery significantly. The Court found that BAT is liable for its share of cleanup costs at the Kalamazoo River under the Confidential Settlement Agreement ("CSA") unless BAT can prevail on its counterclaims that the CSA is unenforceable due to fraudulent or negligent omissions or on its affirmative defenses. The Court dismissed three of BAT's counterclaims and one affirmative defense. The two remaining counterclaims are limited in scope; they involve a handful of key witnesses over a relatively short period of time on discrete questions, namely, what NCR and BAT knew at the time the CSA was executed.[1] The parties do not require nearly a year to complete discovery on these issues as BAT proposes. While it may take some time to pull back older documents from storage, the fact that extensive electronic discovery will not be necessary should streamline the document discovery portion of the case.

BAT's lengthy proposed discovery schedule appears to be the result of discovery subjects that expand far beyond the claims and defenses at issue and seek to re-litigate questions like NCR's production of CCP and the source of contamination at the Kalamazoo River. Those topics would massively expand the scope of discovery (requiring documents going back to the 1950s), are not relevant to any claim or defense, and even if they were, have already been litigated.

Consistent with its position on the discovery schedule, NCR is prepared to issue initial requests for production and interrogatories on November 8, 2024 and to serve requests for admission on March 7, 2025. NCR also believes, given the narrow scope of the remaining

---

[1] BAT's affirmative defenses were not pleaded with specificity, but NCR does not see how they can conceivably require the broad discovery referenced in BAT's proposed case management plan.

counterclaims and the limited number of witnesses, that the parties can be ready for trial by September 2025 and that only five days will be needed for trial.

**BAT**. Fact discovery should close on September 19, 2025. This case will involve extensive discovery of relatively old materials, dating as far back as the 1950s, which will require both time and effort to locate and produce. NCR's characterization of BAT's discovery topics as "far beyond the claims and defenses at issue" is not accurate. Contrary to NCR's position, the court's decision on NCR's pleadings motion (Dkt. 38) did not materially change the scope of discovery in this case. The court upheld BAT's claims for fraudulent omission, negligent omission, as well as BAT's affirmative defenses related to public policy bars, NCR's failure to mitigate damages, laches, waiver, estoppel, and unclean hands.

Thus, while discovery will be needed on the "short period of time" prior to the signing of the CSA, it will also require discovery concerning BAT's claims that NCR intentionally concealed the toxic nature of PCB's for many years in order to continue to produce CCP. This is, among other things, directly relevant to BAT's claim that NCR's claim for indemnification for its own intentionally harmful acts is barred as violative of public policy. For instance, multiple courts have held that NCR knew by no later than the 1960s that PCBs in its CCP were toxic. *See, e.g., Georgia-Pac. Consumer Prod. LP v. NCR Corp.*, 980 F. Supp. 2d 821, 824 (W.D. Mich. 2013).[2] Those courts have also held that NCR deliberately and intentionally misrepresented toxic waste as valuable and recyclable scrap paper to recyclers, including recyclers on the Kalamazoo River, in an attempt to offload its own liabilities. *Id.* at 834-35. The Court has already acknowledged that the public policy defense could be supported by evidence that NCR was attempting to indemnify itself for its own intentional misconduct. Dkt. 38 at 39. To prove its affirmative defense, BAT is entitled to discovery of, among other things, when NCR knew that CCP and CCP waste was toxic, whether NCR continued to ship toxic waste to recyclers on the Kalamazoo River after it knew of the toxicity, and whether NCR concealed the toxic nature of the waste from recyclers. As courts have noted that NCR's knowledge may go back to the early 1960s if not the 1950s, discovery is likely to cover a large time frame.

Even if NCR were correct that the only question at issue is "what NCR and BAT knew at the time the CSA was executed," that would still involve a fairly wide time range of documents. If NCR knew in the 1960s that it was shipping toxic waste to the Kalamazoo River, as courts have already found, then it would have been aware of its possible exposure for liability on the river prior to the signing of the CSA. A truncated discovery period limited to a few years before the CSA was signed would not uncover this evidence which is critical to BAT's defenses. Moreover, the burden of producing such materials is likely to be minimal, as NCR has apparently already produced it in other cases.

Given the scope of discovery and the relevant time frame of 40+ years, BAT believes that a longer discovery period is necessary. NCR's truncated schedule is likely to result in nothing more than repeated returns to the Court to ask for additional time for fact discovery. BAT's

---

[2] NCR's suggestion that to the extent such older discovery is relevant, it has already been litigated is irrelevant. Even if a party claims an issue has already been litigated and may be subject to preclusive effect, discovery of the issues is still appropriate. *See, e.g., In re Kolinsky*, 140 B.R. 79, 87 (Bankr. S.D.N.Y. 1992) ("[E]ven if the defendants' allegations were barred by *res judicata*, discovery would nevertheless be permitted.").

proposal of September 19, 2025 for fact discovery cutoff is more realistic given the issues in this case.

II. **Expert Discovery**

**NCR**. NCR does not plan to present an expert witness and does not believe that expert testimony will facilitate a factfinder's understanding of any issues relevant to any claim or defense. BAT has not identified any topics for expert discovery. NCR is concerned that including an expert discovery period in the schedule at this early stage will result in a *de facto* extension of the fact discovery schedule in the highly likely event that no experts are used. At a minimum, NCR respectfully suggests that the Court defer any resolution of this issue until the parties' next status conference.

**BAT**. BAT currently plans to retain one or more experts, but it is still considering its position. For example, in connection with NCR's argument that BAT should have conducted its own investigation of potential "future sites" BAT will likely need to present expert testimony on the availability of information on disposal of PCBs at the relevant time period and whether conducting an investigation on such matters would have been reasonable under prevailing standards at the time the CSA was signed. BAT may also wish to retain an industry expert to provide testimony on the paper making and recycling process. BAT is confused as to why NCR believes an expert discovery deadline will function as a "*de facto* extension of the fact discovery schedule." There is already a separate fact discovery deadline that cannot be altered without court approval in the proposed case management order (though the exact date has not been fixed). Thus, absent a further order of this Court, fact discovery could not be taken during the expert discovery period.

Respectfully submitted,

/s/ Zachary Payne
Zachary Payne

*Counsel for Plaintiff NCR Voyix Corporation*

s/ Dennis H. Tracey, III
Dennis H. Tracey, III

*Counsel for Defendant BAT Industries p.l.c*

3