**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NCR CORPORATION,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>B.A.T INDUSTRIES p.l.c.,<br><br>　　　　　　　Defendant. | Case No.: 1:23-cv-1172-JPC-SDA |

**REPLY IN SUPPORT OF PLAINTIFF NCR VOYIX CORPORATION'S MOTION TO STRIKE DEFENDANT B.A.T INDUSTRIES p.l.c.'S JURY DEMAND**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT........................................................................................................................2

    I.     BAT's Jury Demand on NCR's Complaint Was Untimely and Therefore Waived. ...................................................................................................................2

    II.    BAT's Counterclaims Are Equitable and Do Not Entitle BAT to a Jury.................7

CONCLUSION..................................................................................................................11

i

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Am. International Specialty Lines v. Conn. Res. Recover Auth.*,
  2012 WL 13018509 (D. Conn. Mar. 29, 2012) .................................................................4, 6

*In re Ben Cooper*,
  896 F.2d 1394 (2d Cir. 1990)................................................................................................8

*Binger v. Unger*,
  7 F.R.D. 121 (S.D.N.Y. 1946) ..............................................................................................5

*Bogosian v. Woloohojin Realty Corp.*,
  323 F.3d 55 (1st Cir. 2003).................................................................................................3, 5

*Century Sur. Co. v. Franchise Contractors, LLC*,
  2016 WL 1030134 (S.D.N.Y. Mar. 10, 2016) .......................................................................6

*Deckert v. Independence Shares Corp.*,
  311 U.S. 282 (1940)...........................................................................................................8, 9

*Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*,
  873 F.3d 85 (2d Cir. 2017)....................................................................................................8

*In re Friedberg*,
  131 B.R. 6 (S.D.N.Y. 1991)..................................................................................................7

*Granfinanciera, S.A. v. Nordberg*,
  492 U.S. 33 (1989).............................................................................................................7, 8

*In Re Hoag Urgent Care-Tustin, Inc., et al.*,
  8:17-ap-01230-TA (Bankr. C.D. Cal. September 26, 2019), Dkt. 332..................................5

*McCarthy v. Bronson*,
  906 F.2d 835 (2d Cir. 1990)..................................................................................................2

*Merex A.G. v. Fairchild Weston Sys., Inc.*,
  29 F.3d 821 (2d Cir. 1994)....................................................................................................1

*Provident Life & Acc. Ins. Co. v. Adie*,
  982 F. Supp. 1269 (E.D. Mich. 1997)..........................................................................8, 9, 10

*Rosen v. Dick*,
  639 F.2d 82 (2d Cir. 2980)....................................................................................................3

*Ross v. Bernhard*,
  396 US. 531 (1970)...............................................................................................................2

*Tights, Inc. v. Stanley*,
    441 F.2d 336 (4th Cir. 1971) ..................................................................................................5

*Transocean Air Lines v. Pan Am. World Airways, Inc.*,
    36 F.R.D. 43 (S.D.N.Y. 1964) ....................................................................................2, 3, 4, 6

*United Specialty Ins. Co. v. CDC Hous., Inc.*,
    233 F. Supp. 3d 408 (S.D.N.Y. 2017).....................................................................................7

*Virgin Air, Inc. v. Virgin Atl. Airways, Ltd.*,
    144 F.R.D. 56, 58 (S.D.N.Y. 1992) .........................................................................................3

*In re Weiss Multi-Strategy Advisers LLC*,
    664 B.R. 492 (Bankr. S.D.N.Y. 2024).....................................................................................7

*Winchester Indus., Inc. v. Sentry Ins.*,
    630 F. Supp. 2d 237 (D. Conn. 2009).............................................................................3, 4, 6

## INTRODUCTION

Under the Federal Rules of Civil Procedure and blackletter federal law, Defendant B.A.T Industries p.l.c. ("BAT") is not entitled to a jury on any claim or counterclaim in this action. BAT missed the deadline to demand a jury on NCR's complaint by more than one year. And BAT is not entitled to a jury on its counterclaims for rescission of the Confidential Settlement Agreement ("CSA") based on fraud and negligence because there is no right to a jury on the equitable remedy of rescission, which is within the discretion of the Court.

In an attempt to sidestep these well-established legal principles, BAT resorts to reframing this case as one big unitary action about "whether a contract requires BAT to pay money." BAT's Memorandum in Opposition ("Opp."), Dkt. 65 at 1. BAT uses this oversimplified (and inaccurate) characterization of the case to argue: 1) because the complaint and counterclaims both concern the CSA, BAT did not need to demand a jury until after NCR answered BAT's counterclaims; and 2) BAT's counterclaims are actually legal, not equitable, in nature because the CSA concerns monetary payments.

BAT's framing of the case is wrong on both the facts and the law. First, because fraud, negligence, and contract interpretation are completely distinct issues that a prospective jury would need to assess from a factual and legal standpoint, BAT's counterclaims have no meaningful nexus to NCR's claim, as is required for counterclaims to toll a jury demand deadline on a complaint. Second, BAT's description of the entire case as "litigating whether BAT has to pay money" ignores that the remedy NCR seeks is a *declaration* about the meaning of the contract and the remedy BAT seeks amounts to *rescission* of the CSA. Neither party seeks damages. Rescission is a quintessentially equitable remedy so does not entitle BAT to a trial by jury. *See Merex A.G. v. Fairchild Weston Sys., Inc.*, 29 F.3d 821, 825–26 (2d Cir. 1994) (plaintiff "not entitled to a jury trial" on equitable claims).

1

The Court should not countenance BAT's attempts to rewrite this case for purposes of its jury demand. The Court should grant NCR's Motion to Strike the Jury Demand ("Mot."), Dkt. 59.

**ARGUMENT**

**I.    BAT's Jury Demand on NCR's Complaint Was Untimely and Therefore Waived.**

BAT missed the 14-day deadline under Federal Rule of Civil Procedure 38(b) to file a jury demand on NCR's claim by more than one year. BAT answered NCR's complaint on July 7, 2023 but did not file a jury demand until October 30, 2024. *See McCarthy v. Bronson*, 906 F.2d 835, 840 (2d Cir. 1990) (for purposes of Rule 38's deadline, the "last pleading directed to" an issue "is the pleading that contests the issue" and that for issues raised in a complaint, the last pleading is the answer). Accordingly, BAT waived any right to a jury trial on NCR's claims. *Id.* ("Failure to make a timely demand constitutes a waiver."). In an attempt to evade its waiver, BAT argues that the last pleading directed to NCR's complaint for Rule 38 purposes was actually *NCR*'s answer to *BAT's* counterclaims. BAT's contention is premised on the theory that NCR's complaint and BAT's counterclaims "all involve the same factual issue." Opp at 10.

BAT, however, relies on the faulty premise that some degree of factual overlap between claims and counterclaims, i.e., that both sets of claims implicate the CSA in some way, is sufficient for an answer to a *counterclaim* to toll the deadline for an otherwise untimely jury demand on a *complaint*. But whether a jury trial is required, "depends on the nature of the *issue to be tried* rather than the character of the overall action." *Ross v. Bernhard*, 396 US. 531, 538 (1970) (emphasis added).

Accordingly, for a jury demand on a counterclaim to extend to the original complaint, "the issues raised by the counterclaim" must be "essentially similar to those in the complaint." *Transocean Air Lines v. Pan Am. World Airways, Inc.*, 36 F.R.D. 43, 45 (S.D.N.Y. 1964). A "jury demand made in response to a counterclaim *does not extend to the complaint simply on the*

2

*basis that the complaint and the counterclaim arose from a common factual setting.*" *Winchester Indus., Inc. v. Sentry Ins.*, 630 F. Supp. 2d 237, 240 (D. Conn. 2009) (cleaned up) (emphasis added) (quoting *Bogosian v. Woloohojin Realty Corp.*, 323 F.3d 55, 62 (1st Cir. 2003)). Issues in a complaint and counterclaim "will not be found 'essentially similar' if . . . the ultimate issue for decision is different." *Winchester*, 630 F. Supp. 2d at 240 (quoting *Rosen v. Dick*, 639 F.2d 82, 94 (2d Cir. 1980)).

The principle of judicial economy underpins this caselaw: it makes sense to allow a jury demand as to one set of claims to overcome a waiver as to other claims only where the jury already would be hearing evidence on and addressing the same issues. *See Transocean*, 36 F.R.D. at 45; *Winchester*, 630 F. Supp. at 240 (explaining that an issue in one pleading is not "essentially similar" to another if "it requires 'a factual determination to be made by the jury that falls outside the matrix of fact for the issues already in the case'") (quoting *Virgin Air, Inc. v. Virgin Atl. Airways, Ltd.*, 144 F.R.D. 56, 58 (S.D.N.Y. 1992)).

BAT's position fails because the CSA is not the lone "issue" in this case for Rule 38 purposes. NCR's request for a declaratory judgment concerns the interpretation of the CSA and whether the Kalamazoo River qualifies as a "Future Site" as defined in the CSA. BAT's counterclaims involve the distinct issue of NCR's alleged fraud and negligence. Accordingly, if both sets of claims in this case were to be tried as BAT proposes, the jury would have at least two entirely separate issues to decide: 1) whether the Kalamazoo River site is a Future Site,[1] and 2) if NCR acted negligently or fraudulently in causing BAT to sign the CSA. There is nothing "essentially similar" about these sets of issues, and adding a trial on the complaint to a trial on

---

[1] This Court already has determined that the term "Future Sites" covers the Kalamazoo River Site. Dkt. 38 at 17.

3

the counterclaims would not achieve any meaningful degree of judicial efficiency; as between these claims there is no overlap in the evidence or application of the facts to the law.

Courts in the Second Circuit, applying these principles, have consistently rejected parties' attempts to use a jury demand on counterclaims to revive an otherwise untimely demand on a complaint. The court in *Transocean* found that counterclaims for nonpayment of a promissory note did not revive an untimely jury demand on a complaint for antitrust violations, unfair competition, and business torts because the issues in the two sets of claims were insufficiently similar. 36 F.R.D. at 45. The court made this determination notwithstanding the fact that conduct alleged in the complaint could have presented a defense to the counterclaim for nonpayment on a promissory note. *Id.* The court in *Winchester* similarly rejected the argument that a complaint and counterclaim were sufficiently related to toll a jury demand deadline, observing that the counterclaim "asserts how [the insurance] policy should be construed, which is unrelated to the issue [in the complaint] of whether the agent was negligent in obtaining a policy with deficient coverage for Plaintiffs." 630 F. Supp. 2d at 240.

The court in *American International Specialty Lines v. Connecticut Resources Recovery Authority* reached the same conclusion, similarly drawing out the critical differences between the plaintiff's claim involving the interpretation of a contract and the defendant's counterclaims going to separate, more fact-intensive issues:

> The amended complaint raises issues with respect to how the policy at issue should be construed, in relation both to the extent of coverage and also to [plaintiff's] duty to defend. The amended counterclaim, by contrast, alleges that [plaintiff] breached of the covenant of good faith and fair dealing in its hiring of a particular law firm in the underlying suit, the practices and qualifications of its claims adjusters, and the manner in which it carried out the underlying defense. Therefore, with respect to Rule 38, the issues are sufficiently distinct and the jury demand as to the amended counterclaim should not extend to the amended complaint.

2012 WL 13018509, at *2 (D. Conn. Mar. 29, 2012).

4

Courts outside this circuit have held similarly. In *In Re Hoag Urgent Care-Tustin, Inc.*, *et al.*, 8:17-ap-01230-TA (Bankr. C.D. Cal. Oct. 11, 2019), Dkt. 332,[2] for example, a court found that a timely jury demand on a cross-claim did not revive untimely jury demands on the original complaint and counterclaims because the complaint and counterclaims concerned whether breaches of certain agreements had occurred, while the cross-claim was "simply a contractual indemnity claim based only on language in certain sub-sublease agreements." *Id.* at 9. The court determined that "although [the cross-claims, amended complaint, and counterclaims] obviously share some factual similarities . . . the mere observation that these proceedings share some factual content is, by itself, insufficient to find that they occupy the same general area of dispute for purposes of a jury demand." *Id.* at 10; *see also Bogosian*, 323 F.3d at 61 (rejecting argument that plaintiff's timely jury demand on defendants' counterclaim for conversion preserved plaintiff's right to a jury trial on original complaint for breach of fiduciary against defendants, because the counterclaims were insufficiently "interwoven" with claims in the original complaint).

None of cases cited by BAT change this analysis; they all stand for the proposition, inapplicable to the pleadings in this case, that a jury demand on a counterclaim involving the same issues as a complaint can preserve the right to a jury on that complaint. But unlike the cases of *Binger v. Unger*, 7 F.R.D. 121 (S.D.N.Y. 1946) and *Tights, Inc. v. Stanley*, 441 F.2d 336 (4th Cir. 1971), where one party brought a claim for patent validity and the other counterclaimed for invalidity, the parties here make claims that do not overlap. BAT cannot point to a single case in which a complaint involving contract interpretation and counterclaims involving fraud or negligence were found to be the same for Rule 38 purposes. Instead, as with *Transocean*,

---

[2] This decision is attached hereto as Exhibit A.

*Winchester, American International*, and the other cases discussed above, both the facts and the issue for decision are different between the complaint and counterclaims here.

BAT also makes arguments about the logistical and constitutional issues presented by a potential bifurcated trial. *See* Opp. at 11. For reasons already stated, these merit only brief discussion. First, bifurcation assumes BAT is entitled to a trial on its counterclaims, which it is not because the counterclaims are equitable not legal in nature. Second, BAT's arguments about "holding a jury trial and then separately briefing the same issues" or "conflicting determinations on the same issue" are nothing more than empty rhetoric; BAT never actually articulates what evidence, briefing, or potential "determinations" would be redundant or potentially inconsistent between the two hypothetical proceedings. Third, BAT's suggestion that a hypothetical bifurcation would somehow run afoul of the Constitution, *id.* at 11, is difficult to follow and gets it exactly backwards: *it would be improper* for a *jury* to resolve equitable issues like the rescission BAT seeks, which falls within the discretion of the Court. *See Surgett v. Lapice*, 49 U.S. 48, 65 (1850) (finding it "improper" to allow jury to decide equitable questions); 27A Am. Jur. 2d *Equity* § 98 (availability and scope of equitable relief are matters "for the discretion of the trial court"). Finally, BAT also fails to take into account that the sole issue in NCR's complaint—whether the Kalamazoo River is a Future Site—is a question of contract interpretation reserved for the Court. *United Specialty Ins. Co. v. CDC Hous., Inc.*, 233 F. Supp. 3d 408, 413 (S.D.N.Y. 2017) ("[I]nterpretation of a contract is determined by the court as a matter of law.") (quoting *Century Sur. Co. v. Franchise Contractors, LLC*, 2016 WL 1030134, at *4 (S.D.N.Y. Mar. 10, 2016)).

The Court should reject BAT's attempt to revive its untimely demand by misconstruing the complaint and counterclaims as "the same" and find that BAT waived its jury demand on NCR's complaint.

## II.     BAT's Counterclaims are Equitable and Do Not Entitle BAT to a Jury.

In its opening brief, NCR explained that an analysis of the factors set forth in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) establishes that BAT's counterclaims, which seek to rescind the CSA based on alleged fraud or negligence, are equitable and not legal in nature and therefore do not entitle BAT to a jury. *See*, *e.g., In re Friedberg,* 131 B.R. 6, 12 (S.D.N.Y. 1991) (finding rescission to be equitable and noting "[a]ll parties appear to be in accord that rescission is a classical equitable remedy"); *In re Weiss Multi-Strategy Advisers LLC,* 664 B.R. 492, 517 (Bankr. S.D.N.Y. 2024) ("Rescission is an equitable and extraordinary remedy" available when there is no "adequate remedy at law.") (cleaned up).

In response, BAT again attempts to refashion its counterclaims, insisting they are legal, not equitable, because they sound in fraud and negligence. In so arguing, BAT cites cases standing for the unremarkable proposition that fraud and negligence claims *can be* legal in nature. Opp. at 4. NCR does not contest that common law fraud or negligence claims *for damages* are legal in nature. The problem for BAT—and the reason the cases it cites are inapposite—is that it ignores the remedy it seeks here, i.e., the most important of the *Granfinanciera* factors. None of the authorities BAT cites discusses claims for rescission in the absence of any prayer for damages.

BAT's discussion of *In re Ben Cooper*, for example, omits the critical distinguishing fact that the insured in that proceeding *sought monetary damages* from its insurer (liability for losses, punitive damages of $5 million, and recovery for consequential losses). 896 F.2d 1394, 1397, 1401 (2d Cir. 1990). The court in *Cooper* quoted Moore's Federal Practice for the proposition

7

that "when an insurer's liability [i.e., its obligation to make payments] under the policy has matured, the basic issues are legal. This is true whether the insurer sues to cancel the policy and the beneficiary *counterclaims for recovery on the policy*, *or the beneficiary sues for recovery on the policy* and the insurer defends and/or counterclaims for cancellation." *Id.* at 1401–02. In other words, the heart of the dispute is the insured's attempt to recover money and a counterclaim seeking to void the policy does not change that.

This case, by contrast, does not have a corollary request for damages. Further, NCR has not located any case citing *Cooper* or any of BAT's other cases for the proposition that BAT claims they support, i.e., that an effort to cancel a contract on tort grounds entitles a party to a jury. Instead, as NCR established in its opening brief, the authorities that *have* examined actions like the one BAT brings here find them to be equitable. Mot. at 4–6 (quoting *Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85 (2d Cir. 2017)) (describing the traditional "action at equity for rescission, which extinguished a legally valid contract that had to be set aside due to fraud, mistake, or for some other reason."); *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 289 (1940) ("That a suit to rescind a contract induced by fraud . . . may be maintained in equity . . . is well established."); *Provident Life & Acc. Ins. Co. v. Adie*, 982 F. Supp. 1269, 1271 (E.D. Mich. 1997) (finding request for declaration that insurance policy was void due to misrepresentations equitable in nature).

In an attempt to distinguish the authorities offered by NCR, BAT employs a red herring, noting that several of these cases involved *statutory* claims for rescission and asserting "[s]uch cases have no relevance in this context as neither party here is asserting a statutory claim – and certainly not a claim with a sharply limited, statutorily defined remedy." Opp. at 7. BAT argues that, unlike these statutory cases, "BAT's traditional fraud and negligence claims are remediable

8

by damages as well as rescission and are thus claims 'at law.'" *Id.* This is an invented distinction. What matters is the remedy sought, not whether the basis of the claim is a statute. And here, the remedy BAT seeks is the same as the rescission sought via statute in the cases it attempts to distinguish.

BAT's attempt to distinguish *Deckert* fares no better. In *Deckert,* the Supreme Court explained: "That a suit to rescind a contract induced by fraud and to recover the consideration paid may be maintained in equity, at least where there are circumstances making the legal remedy inadequate, is well established." 311 U.S. at 289. BAT makes a familiar argument in trying to distinguish *Deckert*, focusing on the Court's language about "circumstances making the legal remedy inadequate" and asserting "[t]hat is not the case here. The parties in this case are litigating whether BAT has to pay money under the CSA." Opp. at 8. But this argument scarcely requires addressing, because no legal remedy could be adequate for the relief BAT seeks: to have the CSA voided. BAT's counterclaims present precisely the "inadequate legal remedy" scenario contemplated by *Deckert*.

Finally, BAT argues that *Provident* actually supports its arguments. Not so. The court in *Provident* determined that a claim for rescission of an insurance policy was equitable, not legal. 982 F. Supp. at 1271. The court there did allow a jury trial to go forward on the defendant's breach of contract claim for *damages* (which was indisputably legal in nature), *id.* at 1271–72, but this case, of course, does not include any claim for damages. Nor was a waiver at issue in *Provident*: that defendant, unlike BAT, timely demanded a jury trial in both its answer and counterclaims. *Provident* is also unhelpful to defendants for a more fundamental reason: the court's determination that issues should be put first before a jury, with any remaining equitable issues later resolved by the court, was based on its finding that to do otherwise would

9

functionally deny the defendant of his right to a jury for the legal counterclaim. *Id.* BAT does not contend that such a concern exists here. In sum, nothing about *Provident* supports BAT's argument, and BAT has no answer to the determination in that case that an action for rescission based on misrepresentation like its own was equitable. *Provident* compels the conclusion that BAT's claim is equitable and does not come with a jury right.

To the extent BAT does address the remedy it seeks, it asserts that "[a]t base, both parties ask the Court to determine whether payments are due under the CSA." Opp. at 5. But determining "whether payments are due under the CSA" is not the relief BAT sought in its counterclaims and in any event would not make BAT's claim legal in nature. BAT has not sought damages, and the declaration it asks the Court to make – "that the CSA is unenforceable, null and void" (Dkt. 21 at 39) – amounts to the equitable remedy of rescission.[3] Further, BAT's characterization of the case as legal because the parties are asking the court to determine rights on a contract for money would render almost every action for rescission legal, because the cancellation of a contract ordinarily will mean that one party does not have to make payments. That is not the law. BAT cannot escape the equitable nature of the rescission action it brought.

Finally, for the avoidance of doubt, BAT is wrong when it argues that "[i]t is immaterial that the parties positioned their requests for such relief as claims for declaratory judgments as to the validity of the CSA, as the right to a jury trial does not turn on the form of the complaint." Opp. at 5. NCR did not argue that BAT's counterclaims are equitable merely because it seeks a

---

[3] BAT also sought a declaration "that NCR is not entitled to any payments from BAT under the CSA relating to the Kalamazoo River CERCLA action," *id.*, but to the extent BAT intended that prayer as anything other than rescission of the CSA, the Court has limited the available relief by dismissing all of BAT's counterclaims except Counts I and II, both of which seek a declaration that the "CSA is null and void." Dkt. 21 ¶¶ 84, 94.

declaratory judgment. Rather, it is the *nature* of the declaratory judgment it seeks (i.e., for rescission) that renders the counterclaims quintessentially equitable.

## CONCLUSION

For all the foregoing reasons, the Court should grant NCR's Motion to Strike BAT's Jury Demand.

Word count: 3459

Dated: February 20, 2025
New York, New York

Respectfully submitted,

/s/ Zachary Payne
John J. Kuster
Zachary Payne
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300
jkuster@sidley.com
zpayne@sidley.com

Bruce R. Braun (admitted *pro hac vice*)
Charles K. Schafer (admitted *pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000
bbraun@sidley.com
cschafer@sidley.com

*Attorneys for Plaintiff NCR Voyix Corporation*