

Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017
T  +1 212 918 3000
F  +1 212 918 3100
www.hoganlovells.com

April 8, 2025

*Via ECF*

Hon. Stewart D. Aaron
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10027

Re:     *NCR Corporation v. B.A.T Industries p.l.c.*, No. 1:23-cv-01172-JPC

Dear Judge Aaron:

We represent Defendant B.A.T. Industries p.l.c ("BAT") in the above-captioned action.  We write to request a conference with Your Honor regarding Plaintiff NCR Corporation's ("NCR") refusal to collect, review, and produce documents relevant to this case.

This case arises out of NCR's pollution of the Kalamazoo River between 1954 and 1971, when NCR produced a product known as carbonless copy paper ("CCP").  Decisions from prior cases against NCR found that (i) by the mid 1960's, at the latest, NCR learned that CCP contained toxic chemicals that cause serious health issues and (ii) despite this, NCR intentionally arranged to offload toxic scrap CCP known as "broke" to unsuspecting mills situated along the Kalamazoo River.  Consequently, NCR was found liable under CERCLA for intentionally arranging for the disposal of toxic CCP broke into the Kalamazoo River.

In 1978, years after NCR ceased polluting the Kalamazoo River, a subsidiary of BAT acquired the assets of NCR's Appleton Papers Division ("APD").  At the time, BAT had no knowledge of NCR's history of polluting the Kalamazoo River.  In 1995, NCR sued BAT, claiming that BAT was liable for the costs of NCR's pollution of the Fox River, where APD operated.  In 1999, the parties entered into a Confidential Settlement Agreement ("CSA"), under which BAT agreed to pay a percentage of NCR's cleanup costs at the Fox River and an industrial site called Marina Cliffs.

In these proceedings, NCR claims that BAT is required to indemnify it in connection with the Kalamazoo River as well.  However, no APD operations were located at Kalamazoo.  Rather, NCR's liability at the Kalamazoo River is the result of NCR arranging to sell toxic materials to recyclers there.  BAT's primary contention in this litigation is that NCR is not entitled to the relief it seeks because NCR was aware of, and failed to disclose, its actions and potential liability with respect to the Kalamazoo River when negotiating the CSA.  Accordingly, one of the primary issues in this case is **NCR's knowledge of its potential liability at the Kalamazoo River.**

To address this issue, BAT seeks targeted discovery for limited periods from 1980 through 2023.  NCR has only agreed to conduct searches from 1994-1999.  The parties have met and conferred three times, and have exchanged multiple letters regarding the relevant period for discovery.  *See* Exhibit A.  BAT has offered to narrow its requests or otherwise negotiate with NCR in good faith to

- 2 -                                                                                                        April 8, 2025

find a reasonable compromise to the parties' dispute but NCR has not moved from its initial position that it should only review documents from the 1994-1999 period.

NCR asserts four reasons for its position. Each lacks merit. First, NCR contends that there is no reason to believe there would be relevant documents outside of the 1994-1999 period. But, as BAT has explained to NCR, a number of significant events occurred prior to 1994 and after 1999 that would likely cause NCR to discuss its potential liability. Among other things:

- On December 11, 1980, CERCLA was enacted.
- On October 13, 1982, the Michigan Environmental Response Act became effective. The Michigan Department of Natural Resources ("MDNR") listed the Kalamazoo River as a contaminated site under this Act.
- In 1984, the MDNR began a long-term project to clean up the Kalamazoo River.
- On October 3, 1986 the MDNR issued a report for the Kalamazoo River, stating, "The major historical source of PCBs in the Kalamazoo River appear to be wastewater discharges from paper industries."
- On December 2, 1987, the State of Michigan filed a complaint under CERCLA in relation to the release of hazardous substances at the Kalamazoo River.
- On August 30, 1990, the Kalamazoo River was placed on the National Priority List, citing wastewater discharges from the paper industry.
- On April 8, 2003, the EPA issued a section 104(e) request to NCR regarding the Kalamazoo River.
- On December 3, 2010, Georgia-Pacific initiated litigation against NCR regarding its liability at the Kalamazoo River.
- On March 29, 2013, NCR initiated an arbitration against API under the CSA, which was effectively concluded by the Funding Agreement, dated September 30, 2014.
- On September 26, 2013, Judge Jonker found NCR liable as an arranger at the Kalamazoo River under CERCLA.
- On March 29, 2018, Judge Jonker allocated 40% of past costs at the Kalamazoo River to NCR.
- In December 2019, NCR entered into a consent decree with the U.S. Government and the State of Michigan, accepting liability for certain remediation work at the Kalamazoo River.

Each of these events would likely cause a corporation that has knowingly polluted the Kalamazoo River to assess its potential liability. For example, as Judge Jonker has expressly found, NCR knew it had intentionally arranged for the disposal of toxic broke at the Kalamazoo River long before 1994. It is, therefore, inconceivable that when CERCLA legislation was introduced, creating legal liability for such actions, NCR would not have given consideration to its potential liability at the site.

NCR nonetheless contends that it should not be required to review documents from the time period of these events because such events do not definitively show that NCR knew of its liability at the Kalamazoo River before 1994, or that it discussed such knowledge after 1999. But NCR's argument puts the cart before the horse. It is nonsensical to claim that BAT must provide evidence of NCR's knowledge of potential liability before 1994 before it can obtain discovery regarding NCR's knowledge of potential liability before 1994. The purpose of BAT's discovery requests is to uncover this very evidence. NCR should be required to review documents from the proposed time periods because BAT has demonstrated that it is reasonable to expect that NCR would have addressed its

potential liability at Kalamazoo both before 1994 and after 1999 in connection with the events listed above.[1]

Second, NCR claims that reviewing documents from these time periods would be unduly burdensome.  NCR has entirely failed to demonstrate this.  NCR has not explained how their documents from these time periods are stored or what difficulties they would face if they reviewed these documents.  It does not appear that NCR has made any effort to gather such materials, much less provide a hit report for the periods prior to 1994 or after 1999.  Given NCR's refusal to share any information about the process of collecting documents outside of the 1994-1999 period, NCR cannot satisfy its burden of demonstrating that doing so would be unduly burdensome.  *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184 (S.D.N.Y. 2014) ("[O]bjecting party bears the burden of demonstrating 'specifically how . . . each question is overly . . . burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.'").

Third, NCR claims that conducting fresh collections of materials prior to 1994 is unnecessary because of their prior productions in other cases.  But, during the meet and confer process, NCR could not confirm that such prior productions included documents dated after 1980.[2]  **Thus, NCR cannot confirm that it has collected documents relevant to this topic between the years 1980-1994 and 1999-2023**.  NCR should not be permitted to rely on their prior productions when they cannot demonstrate that they are a reasonable (or any) substitute for fresh collections.

Fourth, NCR contends that communications dated after 1999 cannot speak to NCR's knowledge of its liability at the time the CSA was signed.  But it is incredibly common in litigation for parties to discuss their knowledge of a particular event after the fact.  Indeed, we already know that it happened here.  For example, on December 10, 2013, NCR's former general counsel testified that NCR negotiated the CSA "at a time when the Kalamazoo was at least lurking out there" and that NCR "knew that was another potential location."  Similarly, on March 4, 2014, NCR's outside counsel, testified that, when the parties were negotiating the CSA, NCR was "aware that the issues that were arising at the Fox River Site could arise at other sites.  And the particular site I have in mind here was the Kalamazoo River in Michigan."  Thus, there is no question that, after 1999, NCR's witnesses discussed their knowledge of NCR's liability at the Kalamazoo River at the time they negotiated the CSA.  NCR should be required to identify and produce any other communications dated after 1999 that demonstrate that NCR knew of its liability at the Kalamazoo River when it negotiated the CSA.

To ensure there is no unnecessary burden on NCR, BAT has limited its requests outside of the 1994-1999 period to approximately three months before and after each of the relevant events listed above.[3]  BAT considers this to be a fair and reasonable compromise and respectfully requests that Your Honor issue an order directing NCR to conduct document collections over, and produce responsive documents from, the above time periods.

Regards,

Dennis H. Tracey III
Partner

---

[1] NCR also argues that BAT's depositions of NCR witnesses did not indicate that NCR had knowledge of its liability at the Kalamazoo before 1994.  But this is irrelevant, as NCR's knowledge of its liability at the Kalamazoo River was not the subject of prior litigations involving BAT.
[2] Despite BAT's requests, NCR has also been unable to provide information regarding the search terms used or the custodians reviewed in NCR's prior productions.
[3] The exact date ranges for these periods are listed in Exhibit B.