**SIDLEY**

SIDLEY AUSTIN LLP
ONE SOUTH DEARBORN STREET
CHICAGO, IL 60603
+1 312 853 7000
+1 312 853 7036 FAX

+1 312 853 0644
CSCHAFER@SIDLEY.COM

April 11, 2025

<u>Via ECF</u>
Hon. Stewart D. Aaron
United States District Court
Southern District of New York
500 Pearl Street, New York, NY 10007

Re:   <u>NCR Corporation v. B.A.T Industries p.l.c.</u>, No. 1:23-cv-01172-JPC-SDA

Dear Judge Aaron:

We write for Plaintiff NCR Voyix Corporation ("NCR") in response to the April 8, 2025 letter of Defendant B.A.T Industries p.l.c. ("BAT") requesting an expanded discovery period.

### I.   Documents Before 1994 and After 1999 Are Not Relevant Here.

This action arises out of BAT's liability for its share of cleanup costs at the Kalamazoo River under the Confidential Settlement Agreement ("CSA") between NCR and BAT, which the parties negotiated in 1998 and executed in 1999. The Court already has determined that the CSA by its terms renders BAT liable for its share of those costs; the only question that remains is whether BAT's counterclaims and defenses for fraudulent inducement or negligent misrepresentation in negotiating the CSA render it unenforceable. Dkt. 38 at 15–17.

The time period relevant to those counterclaims is limited to the negotiation and execution of the CSA because BAT must establish knowledge of falsity ***at the time of the alleged representations or omissions***. *See, e.g., Kitchen Winners NY Inc. v. Rock Fintek LLC,* 2024 WL 3676931, at *26 (S.D.N.Y. Aug. 6, 2024). And because BAT's theories of liability are premised on the "superior knowledge" or "special facts" doctrine (which NCR continues to maintain does not apply to the facts here), it must at a minimum show that NCR had a duty to impart information because "***the person making the representation*** held or appeared to hold unique or special expertise;" and "***the speaker*** was aware of the use to which the information would be put and supplied it for that purpose." *Icahn Sch. of Med. at Mount Sinai v. Health Care Serv. Corp.*, 234 F. Supp. 3d 580, 583 (S.D.N.Y. 2017). BAT itself acknowledges that the present case revolves around what the parties knew, and what NCR had a duty to disclose, "when negotiating the CSA." BAT Ltr. at 1. Discovery going back to the 1980s or postdating the execution of the CSA (including by more than 20 years) will not shed light on those questions.

NCR has accordingly maintained that a period of 1994 to 1999 will capture documents relevant to BAT's counterclaims. 1994 is a natural starting point because that is when the State of Wisconsin notified NCR of potential liability at the Fox River site due to the manufacture of carbonless copy paper ("CCP"). This was the first allegation any entity had made that the manufacture of CCP or the sale of broke could be the cause of environmental liability. In other words, there is no reason to believe before 1994 that NCR would have contemplated that liability for the sale or arrangement of broke at the Kalamazoo or anywhere else was likely. 1994 is also

an appropriate starting date because it is close enough in time to the negotiation and execution of the CSA to capture what the parties negotiating the CSA might have known at that time.

BAT's position as to the relevance of documents from periods before 1994 and after 1999 is premised on a flawed framing of the nature of the case. BAT asserts that "this case arises out of NCR's pollution of the Kalamazoo River between 1954 and 1971." Not so. Questions about contamination at the Kalamazoo River are long settled and do not bear on what the parties negotiating the CSA knew when it was negotiated. It is for this same reason that the 12 allegedly "significant events" before 1994 and after 1999 are of no moment. As NCR explained to BAT in a March 25, 2025 letter, Ex. A, BAT fails to connect any of those events to NCR *at all*, much less to the individuals negotiating the CSA on NCR's behalf in 1998. The failure to establish any connection, apart from its own speculation, between the publicly available information about the Kalamazoo River dating back to 1980 and BAT's theories as to NCR's knowledge of liability renders its arguments for discovery unavailing. *See e.g.*, *Mitchell v. Unum Life Ins. Co. of Am.*, 2022 WL 2306862, at *5 (S.D. Ohio June 27, 2022) (declining to expand discovery date range based on "speculation"). And BAT's inability to draw any such connection is particularly glaring, as NCR has produced more than three million pages of documents from prior litigations and arbitrations—including *Georgia-Pac. Consumer Prods. LP v. NCR Corp.*, No. 1:11–cv–00483-RJJ (W.D. Mich.), which specifically concerned contamination of the Kalamazoo River.

BAT also mischaracterizes Judge Jonker's order in *Georgia Pacific* as a determination that NCR has *always known* that it arranged for the disposal of toxic broke at the Kalamazoo River. What Judge Jonker actually found is that NCR was aware that CCP broke was toxic, and, in the 1960s, arranged for the disposal of CCP broke (based on the 2011 testimony of a truck driver and certain shipping records produced by other parties more than a decade after the CSA was executed). *Georgia-Pac. Consumer Prods. LP v. NCR Corp.*, 980 F. Supp. 2d 821, 832–36 (W.D. Mich. 2013). Judge Jonker never suggested that anyone at NCR in the 1990s knew about these broke sales three decades earlier. In sum, neither Judge Jonker nor BAT has identified *any* evidence that NCR had knowledge of CCP broke going to the Kalamazoo River during the periods for which BAT seeks discovery (much less any period relevant here).

BAT's request for discovery outside of the 1994 to 1999 period is nothing more than a fishing expedition—and even then, one that has no reasonable likelihood of uncovering documents relevant to its counterclaims or defenses. That fishing expedition cannot justify the significant burdens, set forth below, associated with BAT's desired discovery period.

## II. NCR Already Has Produced Documents From 1980-1994 and After 1999.

Contrary to BAT's suggestion in its letter, NCR already has produced extensive documents from 1980 to 1994 —and after 1999 in its productions of documents from the Kalamazoo River litigation and other prior cases. *See* Ex. B (Payne Declaration). This fact aligns with Your Honor's statement at the initial pretrial conference that a new collection of decades-old documents would not be proportionate to the needs of the case:

> [W]hat the Court would envision is NCR . . . not having to do a fresh collection of older documents, but rather merely producing documents that have already been

>collected for other purposes, and what I mean by that is other litigation. Because I do believe that if NCR were forced or compelled to go back in time, as far as it appears that B.A.T. wants them to go and do a fresh collection that would, under concept[s] of proportionality, not be proportional to the needs of the case.

10/25/2014 Tr. at 5:3-13. In what appears to be an attempt to sidestep this guidance, BAT asserts that "NCR could not confirm that such prior productions included documents dated after 1980." This statement mischaracterizes the parties' discussion. BAT asked NCR if it was aware of the precise search terms and date ranges used in litigations more than a decade ago, not whether the productions contained documents before 1980, which BAT could have confirmed itself by looking at the documents NCR has produced and learning that the productions from prior litigations include extensive documents from these time periods. *See* Ex. C at 1.

### III.     BAT's Proposed Date Ranges Are Disproportionate to the Needs of the Case.

A new collection and review of documents for the periods BAT seeks would be a substantial undertaking defying any notion of proportionality. What BAT calls "targeted discovery" for "limited periods" actually creates a nearly 40-year discovery period requiring NCR to collect, review, and produce materials from *12* different six-month time spans from September 1980 to February 2020.[1] The significant scope of that discovery period would raise proportionality questions in any case, but particularly here, where the additional discovery sought is not targeted at any core issue.

BAT's proposed expansion of the discovery period would engender precisely the result the Court sought to avoid. The pre-1994 collections BAT proposes cover a time period for which NCR (like BAT) does not have electronic records. Records from these periods, to the extent they have been retained, are contained in thousands of archived boxes of paper records. To search, collect, and produce these hard-copy documents would require NCR to scour indices of thousands of boxes of paper records to identify which might contain potentially responsive documents falling within BAT's 12 sets of six-month periods.[2] Indeed, simply finding documents for a given six-month window would involve a significant effort given the general nature of these boxes' descriptors, which makes it difficult to determine responsiveness or precise dates. NCR would then need to conduct a hard-copy review of the contents of these boxes, expending considerable resources to locate, transport, and review them. The ends—discovery that has no reasonable likelihood of constituting material relevant to what the parties negotiating the CSA knew when it was negotiated—cannot justify the burdensome means.

Respectfully submitted,

/s/ Charles K. Schafer
Charles K. Schafer (admitted *pro hac vice*)

---

[1] BAT has not explained why documents from *after* 1999 would shed light on NCR's knowledge while negotiating the CSA, other than speculation that NCR custodians discussed the 1994 to 1999 timeframe in later communication.

[2] As one example of the burden of with hard copy review, NCR and BAT have agreed to produce hard copy documents from 1994 to 1999, yet it has taken both parties months to begin producing documents from that review.