# EXHIBIT C



SIDLEY AUSTIN LLP
787 SEVENTH AVENUE
NEW YORK, NY 10019
+1 212 839 5300
+1 212 839 5599 FAX

+1 212 839 5760
ZPAYNE@SIDLEY.COM

March 7, 2025

**By Email**
Dennis H. Tracey, III
Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017
dennis.tracey@hoganlovells.com

      Re:    BAT's Proposed Search Process in *NCR Corporation v. B.A.T Industries p.l.c.*, 23-cv-1172-JPC-SDA (S.D.N.Y.)

Counsel:

    We write in response to: 1) BAT's letter of February 22, 2025 concerning the scope of discovery; 2) BAT's February 28, 2025 letter regarding BAT's proposed plan for collecting, searching, and reviewing potentially responsive documents; and 3) the questions posed by BAT about NCR's documents.

### I. NCR Response to February 22 Letter

#### a. BAT's Proposal to Begin the Discovery Period Before 1994

    BAT proposes in its February 22 letter that NCR begin its document collection in 1980 (after earlier proposing 1972) based on a seeming misunderstanding of the production period in the Kalamazoo River litigation. We write to clarify that the 1954-1972 "production period" in the Kalamazoo River litigation concerned the period during which PCB-containing carbonless copy paper at issue in that litigation was being "produced"; it was not the limit of the *discovery* period in that case. *See* 1:11-cv-00483, Dkt. 432. We are not aware of a singular discovery period in the Kalamazoo litigation and understand that the period for the various discovery requests depended on the nature of each specific request.

    In any event, NCR will not agree to BAT's proposal, which continues to defy proportionality, as Judge Aaron explained. There is no basis to believe (and, in fact, all evidence belies the notion) that NCR gained knowledge about potential liability at the Kalamazoo River before 1994 that could possibly justify a 20-year discovery period (or 40+ year period with BAT's additional request for documents going through 2023). 1994 is the only natural starting point for the Relevant Period because (as previously explained) NCR learned in 1994 for the first time that the sale of broke might be a trigger for Superfund liability (at the Fox River). There is no reason to believe prior to this notice in 1994 that NCR could have been aware that the

Sidley Austin (NY) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

# SIDLEY

Page 2

Superfund statute might trigger arranger liability at Kalamazoo based on the sale of broke. BAT's request is untethered from the facts and calls for a fishing expedition.

It may be that BAT is conflating two categories of discovery it seeks. BAT issued various discovery requests about the sources of contamination at the Kalamazoo River. It was in response to those requests that NCR agreed to produce documents from prior litigations and for which Judge Aaron stated that a fresh collection was not necessary. BAT has never before floated the idea that the separate question of NCR's knowledge about potential liability at the Kalamazoo River at the time the CSA was negotiated in the late 1990s could conceivably stretch back to 1972 or 1980. As such, NCR will not agree to any new collection or review of documents before 1994.

### b. BAT's Request for Documents from 2000-2023.

NCR also will not agree to a discovery period that ends at any point after 1999 (with a limited exception for RFP No. 40), the year the CSA was executed, for reasons we have articulated numerous times. The substantial burden imposed by a collection and review of documents over this lengthy period (during which NCR litigated several massive lawsuits regarding these issues) involving both hard copy and electronic files, is not proportionate to the low likelihood that documents after the execution of the CSA will be at all relevant to the question of what the parties knew *before* the CSA was executed and that would not otherwise be captured in the documents we are collecting from 1994 to 1999 and those produced in those other litigations.

Your examples of potential relevance from this period are unavailing. For example, the idea that "NCR would have been considering its potential liability for Kalamazoo around the time that it received 104(e) notices with respect to the Kalamazoo River in 2003," does not speak to any issue in this litigation. At most, it might establish what NCR was considering *in 2003*, but it says nothing of what NCR or BAT knew about the potential for liability at the Kalamazoo River *before the execution of the CSA*.

While we believe the burdens are not reciprocal, we will withdraw our request that BAT collect documents for the 2000 to 2023 period, with the exception of documents responsive to NCR's RFP No. 1, which, for similar reasons as BAT's RFP No. 40, calls for a limited set of communications about BAT's obligation to pay for cleanup at the Kalamazoo (and objections thereto) that necessarily occurred after 1999.

### II.     NCR Response to February 28 Letter

#### a. BAT's Collection and Review Proposal

NCR agrees to BAT's initial list of proposed custodians, although we reserve the right to request additional custodians as discovery progresses.

# SIDLEY

Page 3

We also are also generally amenable to BAT's proposed methodology for searching the electronic Custodian Folders belonging to the BAT custodians and the ARMS database described in your letter, although we reserve the right to revisit this protocol as discovery progresses. As set forth below, NCR will be undertaking a similar approach with respect to NCR documents. We do have a few questions about the processes outlined in BAT's letter:

1. Could you please clarify what you mean by BAT will review "these hits" in your chart to identify potentially relevant boxes? Are you planning to review the contents of the boxes themselves, the indexes, or something else?

2. What is BAT's plan for the boxes hitting on the term "Simpson," which you reference, but did not include in your chart?

3. You state that you "notified Windward's solicitors of the need to produce the documents filed/produced in the previous UK litigation, given that the documents produced were provided to BTI by Windward." But we also requested all filings in the UK litigations, not just document productions. Please produce the filings and document productions as soon as practicable. *See* NCR RFP Nos. 8,9. We also note that our requests relating to proceedings in the UK were not limited to a single action as your letter suggests. *See* NCR RFP No. 8.

### b. NCR's Answers to BAT's Requests to NCR

1. *What is the earliest date for which NCR has electronic records? To the extent the dates may be different, please answer by reference to (i) emails and (ii) other electronic documents.*

2. *How are such electronic documents held and organized?*

3. *How are NCR's electronic databases and mailboxes proposed to be searched, and are there limitations in that process?*

NCR has not identified any department- or enterprise-wide platform for storage of electronic records during the Relevant Period. Responsive records would be found only in email stores or hard drives of individual custodians. As you know, none of the proposed custodians who worked on these issues at NCR during the Relevant Period (i.e., Sue Chema, John Giering, Jon Hoak, Karen Konicki, or Paul Samson) is still employed at NCR. NCR has located a hard drive for Ms. Chema, but it has not located hard drives for the other proposed custodians who worked on these issues during the Relevant Period.

NCR has identified document stores for various NCR legal personnel whom BAT proposed as custodians, but who did not begin working on these issues at NCR until well after the Relevant Time Period (i.e., Jennifer Daniels, Ed Gallagher, John Hartje, and Chris Murphy). We are searching these later electronic records for communications with BAT.

# SIDLEY

Page 4

We plan to search the available emails and electronic documents for these custodians using the BAT search terms we agreed to run, followed by review of individual emails/documents for responsiveness and privilege. As we have discussed previously, we are also collecting and searching Sidley electronic documents in the same manner.

4.  *How are NCR's hard copy documents dated from 1980-2025 organized?*

NCR has identified two sources of hard copy documents that may include responsive documents from the Relevant Period: (1) hard copy records held offsite by a document storage vendor; and (2) hard copy records stored in the offices of the NCR Law Department.

The offsite storage boxes are listed on an index that is similar to the description your letter gives of BAT's "ARMS" archive. Like BAT's index of the ARMS archive, NCR's index identifies the department that owns the box, oldest and newest file date, and a description of the box. The description averages 30-35 characters. There are over 30,000 boxes in the archive.

We have generated search term counts for these documents in a manner similar to your search of the ARMS index. Below is a table of search terms and hit counts:

| Search Term | Hits |
|---|---|
| "future site" | 0 |
| CSA | 0 |
| "confidential settlement" | 0 |
| BAT (instead of "NCR"), excluding "battery," "batches," "rebate," "batterson," "batch," "rebates," "abatement," "batchelder," "baton" | 1 |
| "British American Tobacco" | 0 |
| Sidley | 3 |
| "Simpson Thacher" | 0 |
| Simpson | 0 |
| Thacher | 0 |
| Schlickman | 0 |
| Bierman | 0 |
| sbierman | 0 |
| Freeman | 1 |
| lfreemanjr | 0 |
| Hoak | 18 |
| Jonathan.hoak | 0 |
| Bourque | 0 |

# SIDLEY

Page 5

| | |
|---|---|
| bourque_r | 0 |
| Russell | 14 |
| w_russell | 0 |
| McIntosh | 1 |
| Karch excluding "Karchon," "Karcher" | 0 |
| pkarch | 0 |
| Hultgren | 0 |
| dhultgren | 0 |
| Mieliulis | 0 |
| bmieliulis | 0 |
| Kalamazoo | 1 |
| R006018024 | 0 |
| K'zoo | 0 |
| Kzoo | 0 |
| allied paper | 0 |
| Bryant Mill | 0 |
| Cercl (Including "CERCLA") | 1 |
| Superfun (Including "Superfund") | 12 |
| PCB (Including "PCBs", "PCB's") | 6 |
| Polychlorinated | 0 |
| Biphenyl | 0 |
| CCP | 2 |
| Carbonless | 2 |
| KRSG | 0 |
| Maris | 1 |
| Arjo (Excluding "Marjorie") | 0 |
| Kuster | 0 |
| Heyde | 0 |
| Westerfield | 0 |
| Hanebutt | 0 |

"Hit counts" are calculated as the number of box descriptions that hit on a search term and that cannot be excluded, based on the index metadata, as being wholly outside the Relevant Time Period.

The Law Department has 21 boxes in storage.

# SIDLEY

Page 6

5. *Is there an index (or indexes) or other descriptions of NCR's hard copy documents, and how detailed is that index?*

Please see the response to Question 4, above.

6. *How is it proposed that NCR's hard copy documents be searched, and are there any limitations in that process?*

We will review the documents from the offsite storage index in three steps. First, we will review the information contained in the index for all boxes included in the hit counts above. Unless the box description shows the boxes to be non-responsive, we will move the box to the second step. Second, we will recall the boxes from storage and have an NCR paralegal identify the contents in greater detail. Unless we can determine from that review that the contents of a box are non-responsive, we will have the contents scanned for our review. Third, we will review any scanned documents individually for responsiveness and privilege.

For the boxes in storage at NCR's Law Department, NCR identified for us all file names within all 21 boxes. We will have all files that potentially contain responsive documents during the Relevant Time Period scanned for our review. We will review those files individually and produce any non-privileged, responsive documents therein.

Sincerely,

/s/ Zachary Payne

Zachary Payne