

Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017
T  +1 212 918 3000
F  +1 212 918 3100
www.hoganlovells.com

April 14, 2025

*Via ECF*

Hon. Stewart D. Aaron
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10027

Re:     *NCR Corporation v. B.A.T Industries p.l.c.*, No. 1:23-cv-01172-JPC

Dear Judge Aaron:

We write on behalf of Defendant B.A.T. Industries p.l.c ("BAT") in response to the letter submitted by NCR Corporation ("NCR") on April 11, 2025 (ECF Doc. No. 74, "NCR's Letter"), and in further support of BAT's motion to compel NCR to review and produce documents from specific periods during 1980-1994 and 1999-2023 (the "Disputed Time Periods") (ECF Doc. No. 73, the "Motion").

NCR seeks to avoid providing any discovery from these time periods on three grounds: that the requested materials are not relevant, that the documents already produced by NCR in previous litigation would be sufficient, and that it would be unduly burdensome to produce documents from the Disputed Time Periods.  None of these has any merit.  As shown below, documents from the Disputed Time Periods are not only relevant but potentially critical to this action.  And NCR has not demonstrated any specific burden whatsoever, much less a burden that would be disproportionate in a case concerning hundreds of millions of dollars.  Accordingly, BAT's motion to compel should be granted.

Documents From the Disputed Time Periods Are Relevant

NCR first claims that "[d]ocuments Before 1994 and After 1999 Are Not Relevant Here."  The facts are clearly otherwise.  Federal courts have already determined that by "no later than March of 1969 . . . NCR knew . . . that CCP broke was a legal liability," and that "NCR arranged for disposal of CCP broke that it knew to be an environmental and economic liability" as a "means of getting rid of a substance it knew to be hazardous."  *Georgia-Pac. Consumer Prods. LP v. NCR Corp.*, 980 F. Supp. 2d 821, 832-835 (W.D. Mich. 2013).  NCR's general counsel and outside counsel have further admitted that NCR's Kalamazoo liability remained top of mind in 1998, when NCR saw an opportunity to foist its Kalamazoo liability onto BAT through the CSA.  *See* Ex. A at NCRV_00022233 at 154:10-155:8; Ex. B at NCRV_00018792-93 at 404:21-405:22.  Thus, there is every reason to believe that NCR was aware of its potential liability in 1980, and that the issue was discussed at the highest levels of NCR, including its general counsel, from that time until 1998.

Against this backdrop, NCR's unsupported assertion that it has no relevant documents between 1980 and 1994 strains credulity.  For example, CERCLA was enacted on December 11, 1980, creating retroactive liability for the exact conduct NCR engaged in: intentionally arranging to dispose of toxins.  NCR almost certainly discussed whether its actions would have created liability under the new statute.  Indeed, NCR's general counsel could not have known about his company's Kalamazoo liability in 1998

- 2 -                                                                          April 14, 2025

unless NCR continued to monitor that liability throughout the 1980s and 1990s. BAT is entitled to discover what NCR knew about its Kalamazoo liability at what times, which individuals had that knowledge, and whether and how NCR evaluated and discussed its Kalamazoo liability following the specific events BAT described in its motion. BAT is also entitled to discover why NCR's Kalamazoo liability remained top of mind for its general counsel and outside counsel decades after NCR ceased making and selling CCP. Responsive documents on these issues are plainly relevant, and are potentially critical to this case.

NCR claims that "1994 is a natural starting point" because it received a notice from the State of Wisconsin regarding potential liability at the Fox River in 1994. NCR's Letter at 1. But that makes no sense given that Wisconsin's 1994 notice involved NCR's direct pollution of the Fox River and said nothing about the Kalamazoo River. There is no reason to believe that NCR would only have begun communicating about its Kalamazoo liability in 1994, and good reason to believe those communications took place much earlier. BAT identified six events that predate 1994 that likely would have caused NCR to contemplate its actual or potential liability at the Kalamazoo River. These were foundational events in exposing the Kalamazoo River as being contaminated by NCR, not the "*speculation*" that NCR suggests.

NCR's assertion that it could it had not received an "*allegation*" about such liability until 1994 is an unconvincing basis to commence discovery at that date, because it assumes that NCR did not have any internal discussions regarding the fact that it might be pursued for manufacturing and selling toxic broke. Indeed, discovery has already demonstrated that NCR was discussing its liability in the 1960s and 1970s. *See* Ex. C at NCRV_00137028-29, NCRV_00128190, Ex. D at NCRV_00117236, Ex. E at NCRV_00177188. These documents led Judge Jonker to conclude that NCR knew broke was a "*legal liability*" decades before 1994. It is illogical to suggest that, although NCR was discussing their liability in the 1960s and 1970s, it would not have addressed the topic at all between 1980-1994.

<u>NCR Has Not Demonstrated that Its Productions From Prior Litigations Are Sufficient</u>

NCR next argues that it should not have to search for any documents at all during the Disputed Time Periods because some of the documents it produced in prior litigations cover those time periods. However, NCR has no record of the search parameters from those litigations; which custodians it collected documents from; or how it determined which subset of the materials it collected would be produced. Absent that information, there is no basis to determine that NCR's prior productions capture any, let alone all, of the responsive materials BAT is entitled to discover in this case.

Nor can NCR be excused from searching for responsive documents by producing *some* documents from the Disputed Time Periods that it chose to produce in prior litigations. Litigants do not have the right to pick and choose which documents they will disclose. *Sentis Grp., Inc. v. Shell Oil Co., 763 F.3d 919, 925–27 (8th Cir. 2014)* ("Plaintiffs' arguments presume that Plaintiffs possess the unilateral ability to dictate the scope of discovery based on their own view of the parties' respective theories of the case. Litigation in general and discovery in particular, however, are not one sided.").[1]

---

[1] NCR argues that BAT is attempting to "sidestep" Your Honor's guidance regarding fresh collections. NCR's Letter at 3. This is false. Your Honor explained that "documents dating back in time are relevant, but not as important . . . as documents that are closer in time to the execution of the CSA." 10/30/2024 Tr. at 4:22-5:2. With this instruction in mind, BAT limited its requests prior to 1994 to six time periods, each only six months in length.

BAT's Requests are Proportionate to the Needs of this Case and are Not Overly Burdensome

NCR's final argument is that it would be unduly burdensome for NCR to search for responsive materials from the Disputed Time Periods.  As the party seeking to avoid discovery, NCR bears the burden of demonstrating "specifically how" the Disputed Time Periods are overly burdensome "by submitting affidavits or offering evidence revealing the nature of the burden." *Pegoraro v. Marrero*, 281 F.R.D. 122, 128-129 (S.D.N.Y. 2011); *U.S. ex rel. Robinson v. Indiana Univ. Health Inc.*, No. 1:13-CV-02009-TWP, 2015 WL 3961221 (S.D. Ind. June 30, 2015) (rejecting burden objection where objecting party offered "no estimate regarding how much time or how much money will be expended").

NCR has not provided any evidence of any burden that could meet this standard. NCR provided no affidavits; no search term hit reports; and no estimates of the cost or time required to comply with BAT's requests.  Indeed, NCR has not even determined whether "records from these periods . . . have been retained."  NCR's Letter at 3.  All that NCR offers in its opposition is conclusory assertions that searching for old records would be difficult – well short of the showing NCR would need to make to avoid complying with relevant discovery requests.  Further, NCR's argument is focused on the 1980-1994 period.  NCR says nothing about the burdens of searching for responsive documents from to the 1999-2023 period – or why searching for documents from 1980-1994 would be any more burdensome than documents from 1994-1999.

NCR has also failed to demonstrate any lack of proportionality to BAT's requests.  While not required to do so, BAT voluntarily narrowed its requests to 12 six-month periods where it is reasonable to expect that NCR would have communicated about its potential liability for polluting the Kalamazoo River, beginning three months before and three months after CERCLA was passed.  This case involves hundreds of millions in liability, the parties have substantial resources, and the documents requested are not ones which BAT is able to access.  Moreover, BAT's requests focus on the primary issue in this case (when NCR learned of its Kalamazoo liability), and identified the narrow time periods in which this issue most likely would have been discussed.  In such circumstances, the 72 months covered by the Disputed Time Periods is reasonable. *See e.g. Marin v. Apple-Metro, Inc.*, 2023 WL 2060133 at *4, *5 (E.D.N.Y. Feb. 8, 2023) (granting plaintiff's motion to compel 16 years of records involving thousands of defendant's employees).  NCR has not demonstrated any specific burden to complying with the request, and accordingly cannot argue that it faces a disproportionate burden.  NCR cannot seriously claim otherwise, as NCR itself seeks discovery for the 33 year period between 1990 and 2023.

It bears emphasis that NCR brought this action – not BAT.  NCR cannot bring suit seeking hundreds of millions of dollars and then claim, without any basis, that it will not produce documents that may be highly relevant (and potentially devastating to NCR) on the basis of burdens that NCR has not substantiated.  The Court should require that NCR comply with its obligations by searching for and producing responsive documents from the Disputed Time Periods.

Respectfully submitted,

Dennis H. Tracey III
Partner