UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

NCR Corporation,

Plaintiff,

v. 23 Civ. 1172 (JPC)(SDA)

B.A.T. INDUSTRIES, P.L.C.,

Oral Argument

Defendant.

------------------------------x

New York, N.Y.
May 13, 2025
2:00 p.m.

Before:

HON. STEWART D. AARON,

U.S. Magistrate Judge

APPEARANCES

SIDLEY AUSTIN LLP
Attorneys for Plaintiff
BY: CHARLES SCHAFER
ZACHARY PAYNE

HOGAN LOVELLS US LLP
Attorneys for Defendant
BY: DENNIS H. TRACEY, III
DAVID R. MICHAELI

THE COURT: Please be seated.

(Case called)

MR. SCHAFER: Good morning, your Honor. Charles Schafer and Zachary Payne from Sidley Austin on behalf of plaintiff.

THE COURT: Good afternoon.

MR. TRACEY: Good afternoon, your Honor. Dennis Tracey and David Michaeli for BAT.

THE COURT: Good afternoon. We're here for oral argument on the pending motion to strike the jury demand of defendant BAT. I want to be sure that the parties order the transcript. You can split the cost, and in order that things are fresh in my mind, I would like you to get it in no longer than a week. The reporter will speak with you about the various options available.

So as I believe my law clerk indicated to each side, I've allocated 30 minutes a side, and I do want to leave a little bit of time to discuss the schedule, which was addressed in the May 9 letter filed at ECF 78. And obviously I'll have questions along the way that I'll pose to each side.

So I'll hear from the movant first, which is NCR.

MR. SCHAFER: Thank you, your Honor. Is it your preference to speak from up here or?

THE COURT: Wherever is best for you. The important thing is to speak into the microphone so that the court

reporter can hear you.

MR. SCHAFER: Understood. Thank you, your Honor.

The briefing on NCR's motion to strike BAT's jury demand really elevated two questions for your Honor to decide. The first is whether BAT is entitled to a jury on its counterclaims. The second is whether BAT is entitled to a jury on NCR's claim. The answer is no to both of those questions but for different reasons.

Before getting to the questions though, I think it's important to remember the context in which this dispute arises, which is, I think, you know, part of BAT's pleadings or briefing seems to characterize this as, you know, an attempt to deny, you know, Seventh Amendment rights that were -- that they adequately preserved and were trying to enforce. But, in fact, this isn't a gotcha attempt to deny a jury. In fact, this is BAT's belated effort to get a jury to decide issues that it was perfectly comfortable having Judge Cronan decide up until Judge Cronan issued his order for the motion for judgment on the pleadings, and indicated that on NCR's claim and the interpretation of the contract, Judge Cronan was fully aligned with NCR's view of the case. Only after that ruling, 14 months after BAT filed its answer and when NCR filed its answer to BAT's separate counterclaims that raised a wholly separate issue from NCR's complaint, did BAT first attempt to demand a jury in this case.

So I want to start by talking about the counterclaim issue and whether BAT is entitled to a counterclaim on its claims that CSA is void and that it's entitled to essentially rescission of the CSA; that is, as we set forth in our briefing and we think as the case law demonstrates with clarity, a claim for rescission is an equitable claim. It was an equitable claim in 18th century England. It's an equitable claim today. And that's --

THE COURT: Here is a question for you. What law of rescission am I applying? The CSA has a New York choice of law clause. If there were an issue, what law applies to rescission? What law do you believe is the correct law?

MR. SCHAFER: I think either federal common law or New York law. I think they both push in the same direction, which is rescission has always been whether in cases that look back to 18th century England and in cases that don't undertake that analysis and just look at what a claim for rescission is today, it is an equitable claim.

THE COURT: So my understanding of my rescission is that there's rescission, as the word suggests, and that parties are put back to the status quo ante that existed in this case before the CSA was executed. But what's really being sought here, if you're right that in fact it's a rescissory remedy, it's partial rescission, which I think isn't available.

Aren't I right about that, that you can't get partial

rescission? A contract is either rescinded or it's not rescinded.

MR. SCHAFER: I think that's right, and I think -- I guess that's a better question for BAT as to what relief it actually claims to be seeking here. But my view is that you can read part of their complaint as seeking rescission of the entire agreement based on fraud. I don't think that's right. I think that their arguments are really tied to the future --

THE COURT: You think they are trying to get their money back that they paid with respect to the other sites?

MR. SCHAFER: I don't read them as saying that in terms of -- if you are saying would the parties be put back to where they were in 1998 as a result of rescission, no, I don't read them as seeking that relief.

THE COURT: So if there's no partial rescission, then they couldn't possibly seek rescission because it's not available to them.

MR. SCHAFER: We would be fine with that result, your Honor.

THE COURT: Okay. And therefore, what they're looking for is a declaratory judgment with respect to money, no? Once you take rescission off the table, the so-called equitable remedy, all that's left is money, no?

MR. SCHAFER: Well, I don't think so. And I think if you look at the two counterclaims that survived in this case,

they seek two elements as to relief for each. One is to declare the agreement void, you know, the equivalent of rescission, and the other is something that they have termed in their own pleadings as equitable recoupment, which as the name would suggest is also an equitable remedy.

We didn't cite the case law in it, but I have case law that I can cite to your Honor that -- you know, if needed -- that equitable rescission has always been viewed as an equitable remedy. And that's where -- I don't think that they are looking for money here. If they are not seeking to unwind the full agreement, no part of their counterclaims seek damages with respect to payments already made with respect to, for example, the Fox River in Wisconsin.

That's no part of how I read their complaint. Their complaint is we're not entitled to damages with respect to the Kalamazoo River. And so I don't view them as seeking damages. I view them only as trying to rescind the contract that provides a specific set of terms as to what damages are owed if we are able to show that Kalamazoo is a future site. I don't know if that answers your Honor's question.

So with respect to the counterclaims, we think that the question is answered by the fact that the remedies BAT seeks in this case are equitable. They are not legal. What BAT does in its opposition brief is ask a different question, but not the question that the cases that set up the standard

for determining whether claims are legal or equitable asks. Question BAT answers is what are the grounds for the relief that we're seeking, and it says that those grounds are either negligence or fraud; and that claims for negligence or fraud can be classic claims decided as a matter of law, not equity.

And, of course, that's true, and I would venture to say that probably most claims for fraud and negligence are legal claims, not equitable claims, but that is based on the fact that the remedies in most of those cases are monetary, not rescission or an equitable claim. And so the fact that BAT cites a number of cases that say that a claim for negligence or a claim for fraud is legal, not one of the cases that they cite is a case where the party has sought rescission of the agreement. Those cases are about whether or not the party is entitled to damages as a result of that argument, or whether they're able to push back on another claim, you know, on a claim for damages by the other side, where that claim for rescission and the jury demand was timely made with respect to the legal claim.

They have neither of those here. Back to my statement that the reason they lose on both counts is for different reasons. The reason they lose as to our claim is a matter of timing where they missed the window by approximately 13 months. And as to their counterclaims, it's that they are seeking equitable not legal relief.

THE COURT: Let me ask you this, and it may be that you plan on getting here. But my understanding of how the jury demand works where respect to counterclaims is, and I'm going to read you a section from *Wright and Miller*, Section 2320: "The matter becomes more complicated in the counterclaims asserted since that is a pleading that necessitates a reply. A jury trial demand served no later than 14 days after service of the reply clearly is timely with regard to the issues raised by the counterclaim and the reply. If the counterclaim raises the same issues as does the answer, then a demand within 14 days after the reply to the counterclaim is effective as to those issues. However, if the counterclaim and reply raise new issues that were not in the complaint and answer, a demand served more than 14 days after the answer, but within 14 days after the reply is effective only for the issues raised in the counterclaim and reply and not those in the complaint and the answer."

So in other words, if the counterclaim raises issues that are raised in the complaint, then you're entitled to a trial by jury on the counterclaims if you make the demand within 14 days of the reply. Do you agree with that?

MR. SCHAFER: I will say yes, depending on the circumstances.

THE COURT: These circumstances.

MR. SCHAFER: Not under our current circumstances.

THE COURT: Well, why not? I mean, if the counterclaim raises the same issues as the complaint in this case, then why wouldn't that timing work?

MR. SCHAFER: Right. So I think that timing would work. What we don't have here is the counterclaim raising the same issue as the complaint.

THE COURT: All right. Explain that to me.

MR. SCHAFER: The complaint in this case seeks -- you know, the legal basis for a determination on NCR's claim is a matter of contractual interpretation. That is a wholly separate issue from BAT's counterclaims of the circumstances that led to the entry of the CSA and whether or not fraud or negligence was an underpinning of the parties agreeing to the CSA.

So you can see part of it by the fact that the NCR's -- the contractual interpretation question would be answered by looking at totally different facts, if any facts. In fact, Judge Cronan determined no facts were necessary to interpret the contract.

THE COURT: And in fact, interpretation is off the table because Judge Cronan has already interpreted the contract. Right?

MR. SCHAFER: Correct.

THE COURT: So let me ask you this: In paragraph 51 of the complaint, it notes BAT's -- and I'm quoting -- BAT's

"claim that the CSA" -- I'm putting the word CSA in as an abbreviation "was initiated by material misrepresentation and failure to disclose matters known to NCR and relevant to the liabilities now faced by NCR, and that BAT was therefore not bound by the CSA with respect to the Kalamazoo River." So the complaint itself raises the issue that's raised in the counterclaims. In paragraph 51, isn't it the same issue?

MR. SCHAFER: I don't believe that's the issue that has to be decided for purposes of the contractual interpretation question.

THE COURT: Again, contractual interpretation is off the table. Judge Cronan decided that. The issue that is left before him is whether or not there were these material misrepresentations which are alleged in the complaint.

MR. SCHAFER: I think they -- well, the absence of them are alleged in the complaint as --

THE COURT: The?

MR. SCHAFER: The absence of any material misrepresentations are alleged in the complaint, but I do take your Honor's point. I think the answer still is if -- we would not be arguing that a jury is improper here or they waived their right to a jury if they pleaded that demand for a jury within 14 days of its answering the affirmative defenses.

THE COURT: So you're acknowledging that the claims in the complaint, with respect to those claims, there would be a

right to a jury trial?

MR. SCHAFER: Well, I don't -- well, I'm going to, I guess, disagree that the reference to the complaint in paragraph 51 is a claim as opposed --

THE COURT: Yes. Take that out of my question.

So you're acknowledging that if your adversary had demanded a jury in their answer within 14 days after the answer, they would be entitled to a jury, because what's alleged in the complaint is a matter at law, not in equity?

MR. SCHAFER: I think it would be a much tougher question if they had raised that jury demand within 14 days with what I think -- where we do agree is that NCR, the declaration it seeks does relate to the payment of money at the end of the day, so that is a legal claim. If they filed a jury demand within 14 days of that answer to their legal claim, I think it would be much tougher to say that they were entitled to a jury.

THE COURT: Well, you said "much tougher." You never said anywhere in your papers that they're not entitled to a jury on that claim, and the absence of that argument suggests to me that you're conceding the point. Now you're saying it's tougher. I'm not sure it's tough. I think it's crystal. But you are not going to agree with me that it's crystal clear that if they demanded it within 14 days, that they would be entitled to a jury?

MR. SCHAFER: I'd say it's less than crystal, but I do think that I would have a much tougher argument saying otherwise, your Honor. If your Honor read through some of the case law, some of the cases are a little complex when it gets into that middle ground of what counts as law or equity in a claim for declaratory judgment. But for purposes of today's argument, I will -- again, I don't think it's crystal, but I'll concede that the argument would be way better for BAT if they had made it within 14 days.

THE COURT: And they would win, right? I mean, "way better" suggests to me that they would win.

MR. SCHAFER: I don't know that. Well, your Honor would have to be the judge of that.

THE COURT: Or Judge Cronan, as the case may be. I will merely make a recommendation to Judge Cronan. He will be the ultimate decider.

MR. SCHAFER: Yes. I think if your Honor's recommendation to Judge Cronan's view was that NCR's claim in its complaint is a legal one and that the answer to that complaint, based on the case law cited, makes that a -- you know, puts that as a legal issue, not an equitable issue, then a jury demand made within 14 days would be timely and appropriate as to that claim.

THE COURT: Okay. Thank you.

MR. SCHAFER: So we sort of jumped around a little bit

from counterclaims into claims, but, you know, I will move back into other arguments. But I want to know are there any other questions that your Honor has because I don't want to burn my time talking about things your Honor isn't interested in.

THE COURT: And by the way, since I'm going to ask you a lot of questions, I am not going to hold you strictly to the 30 minutes. If you go five minutes over, it's not going to be an issue. Why don't you continue? I probably do have other questions, but why don't you continue with the points you wanted to make?

MR. SCHAFER: Understood. I think where we were just discussing was with respect to the propriety of a jury as to BAT's -- NCR's claim and whether or not that was timely. I think that, again, our view is that the easy response on the matter of a jury as to NCR's claim is timeliness or untimeliness, as the case may be. I think that when you go where I started, which was on the counterclaims, I think that a lot of it -- and some of the analysis folds into itself as to some of BAT's arguments sort of assume for purposes of addressing whether a jury is appropriate for NCR's claim, that a jury is appropriate for its counterclaims.

So I just want to make sure that I've wrapped up that issue and to see whether your Honor -- you know, in our view that one seems to me quite simple, that the claims that BAT has asserted in its counterclaims are equitable in nature. The

bases on which BAT sought to distinguish our cases, sort of really are besides the point where there was an argument about whether or not our cases talk about statutory claims. Obviously, we will concede our claim in this case is not statutory, but the relevance of those cases was when those courts were analyzing a statutory claim to determine sort of the two-step analysis set up by *Granfinanciera* as to whether or not it was legal or equitable, what they compared it to in determining that it was equitable was a claim for rescission.

So, you know, it's not -- the relevance is not the fact that the parties do or don't have statutory claims in this case. It's that when courts have undertaken the exercise of determining whether a claim is legal or equitable, rescission is such a core equitable claim, that that's what they say. Because this statutory claim looks like an 18th century claim for rescission, we are going to treat it as equitable in this case. And we cited other cases that didn't have to do with whether or not a jury was appropriate, but that support the same core fact or, you know, legal principle that a claim for rescission is an equitable claim, and it doesn't matter what the arguments are or the grounds are to get there.

And what *Granfinanciera* says and what the other cases say is you don't look to -- you don't look to the arguments, you look to the remedy in determining whether a case is legal or equitable.

THE COURT: If rescission were available?

MR. SCHAFER: Yeah. And I think if rescission is not available, then the only thing that they are left with is a claim that they themselves have titled equitable recoupment, which doesn't have to do with Fox River. It has to do with -- I don't read any part of BAT's counterclaims as reaching back to monies already paid for the Fox River. I view it all as saying, you know, this is a defense here of equitable recoupment, which is itself an equitable claim or an equitable defense to the claim that NCR brought.

THE COURT: Isn't what they're saying is we want a declaration; we don't know you any money?

MR. SCHAFER: I think at core, I'm sure that is what you will hear counsel get up here and say. But I do think that really is -- whenever you think of any claim for rescission, that's what the party is essentially arguing. Whether it's the insurance -- a lot of these cases that were cited to your Honor arise in the context of either an insurance company is seeking a declaratory judgment action from the outset that the policy doesn't apply or was obtained by fraud. What that claim for rescission is saying is: We, the insurance company, don't owe this policyholder money.

And when rescission is raised as a defense, the argument is still at core: We don't want to pay under this agreement, but the fact is that when Courts look at the -- when

the remedy that is sought and the means of getting there is rescission, the courts call that an equitable remedy, and say that they're not entitled to a jury.

I can't think if I were -- maybe your Honor has a hypothetical, but I can't think of a claim where one party would be seeking rescission of a contract where at the end of the day, what they're trying to avoid is the payment of money. Maybe there's some for personal services or something. But at least in the cases cited to your Honor, the cases where rescission is found to be an equitable remedy, the argument on the other side was they should be entitled to pay money. And where a jury demand was timely, that can be fine. Where a jury demand just relates to the claim for rescission, they are held not to be entitled to a jury on that question.

THE COURT: So Rule 39(b) says, "Issues on which a jury trial is not properly demanded are to be tried by the court." Next sentence, "But the Court may on motion order a jury trial on any issue for which a jury might have been demanded." So couldn't Judge Cronan decide that, yeah, they weren't timely, but we're having a jury anyway?

MR. SCHAFER: So 39(b) does allow that. I think if you read through the Southern District's and the Second Circuit's jurisprudence on 39(b), they say it's a very high standard, and it's strictly construed. Even cases in here involved missing it by just one day. And that's where they say

that's just on inadvertence, right. The only cases I saw in here where 39(b) was followed within this district or circuit is one where the party had a good-faith misunderstanding as to how this law would apply.

Again, we don't have inadvertence here. We have intentionality of not requesting a jury as to these issues until Judge Cronan ruled on the core of NCR's complaint. We would say far more than a case of inadvertence, this would not be a case where a judge should exercise discretion under 39(b) to allow a party the chance to avoid a ruling after seeing a substantive ruling on an issue that they didn't originally seek a jury on at all.

But I do think, to answer your Honor's general question, I think that the case law is very clear to me in the Second Circuit that 39(b) is not to be -- that is not discretion to be exercised lightly, and there has to be a very good reason to do so. Here I would say you have the opposite of a good reason to do so.

THE COURT: So what you're saying is that the case law modifies the plain language of the rule? Because, to me and Antonin Scalia, may he rest in peace, where it says, "The court may on motion order a jury trial on any issue," that's not really what it says. It says may only in very limited circumstances do so. You're saying that the rule shouldn't be read as the rule reads, rather it should be read with some

overlay of what other judges of a higher court, I might point out, would have to say?

MR. SCHAFER: Correct.

THE COURT: Obviously I'll be interested to hear what your adversary has to say about that.

MR. SCHAFER: That's correct, your Honor.

Again, I think are many contexts in which discretion is either -- you know, the Second Circuit would say discretion should be freely exercised versus discretion should be very narrowly exercised. And this is an instance where the Second Circuit said in multiple cases that discretion should be very narrowly exercised, and that the waiver rule under Rule 38 should have meaning. If it didn't, there would be no reason for Rule 38 to have strict timelines if Rule 39 gave anyone a get-out-of-jail-free card without having anyone a very good argument for why they were entitled to one or didn't request a jury demand timely.

THE COURT: A lot of times judges, in their discretion, would prefer to have juries decide them rather than have to decide them themselves. There would be sound policy reasons where a judge should have discretion to do whatever he or she sees fit, but I take your point that if that's what the Second Circuit says, it is binding on this Court.

MR. SCHAFER: If your Honor wants -- it's in the cases we cited -- I can find it when I sit back down as to which

cases talked about it, but there were multiple that were talked about sort of confining that discretion. Again, I think that's, in a nutshell, the argument with respect to the counterclaims themselves. They're equitable. There's not an entitlement to a jury on an equitable claim.

When looking back to the question that we moved to a while ago, in response to your Honor's question as to whether or not BAT's jury demand in response to NCR's answer to the counterclaims relates back to the claims in NCR's complaint, again, putting aside I would say what I would call color in the complaint, the ultimate --

THE COURT: You call it color. I call it express allegations.

MR. SCHAFER: Yeah. I think that the -- but the question is: What does the agreement mean? What do the contract terms mean? And as your Honor has already held, Judge Cronan already engaged in that contractual interpretation. So the question is really what 38(b)(1) when it says no later than 14 days after the last pleading directed to the issue, when you look to the case law interpreting those cases, which was cited to your Honor, what the courts say is that it's where the counterclaim raises the same issue as the complaint, and, you know, I guess we may be at odds as to whether or not paragraph 51 is an issue that we require the Court to decide resolve our case versus, you know, anticipating what

affirmative defenses might be pleaded.

Those affirmative defenses were pleaded. And again, I think -- you know, I won't go as far as to call it crystal clear, but if that -- if the affirmative defense as an answer had been pleaded with a jury demand, that jury demand would be timely.

THE COURT: Let me ask you this: What is your view on what the difference is between a claim on the one hand and an issue as that word is used in Rule 38? How do they differ, if at all?

MR. SCHAFER: I think they are -- I think they're getting to the same core point, which is what does -- what would a jury have to decide on our complaint standing alone in order to rule for us? And, you know, to your Honor's point, would a jury even be entitled to weigh in on that, or is that an issue of contractual interpretation that is left to the province of the courts.

I think if a jury is required to weigh in on the issue in the complaint, not addressing affirmative defenses or counterclaims, then that is the same issue. It's the same complaint. You need the same trier of fact to judge the same set of facts. I would argue if BAT had not asserted affirmative defenses or counterclaims in this case, I don't think a jury, I don't think a court would have been held up or had to address paragraph 51 at all.

Again, I think that was -- you know, I think lawyers, as opposed to legislatures, are allowed to have surplusages in their pleadings. This was anticipating an affirmative defense that might arise, but if that affirmative defense hadn't been pleaded, I think there would have been no need to address that question in order grant the relief that NCR seeks. And that's what I think is the -- that's our claim.

That's why those are the issues that are required. When you read the case law they talk about what are the issues that are raised by or required to decide the issues in the complaint itself. I don't think a jury would be required or a court would be required to address the issues in paragraph 51 of the complaint. They might have been required to address the issues raised by the counterclaim or by the affirmative defenses, but that's a separate question. And had that jury demand been made within 14 days of either our complaint or the affirmative defenses, it would have been timely, but, as you know, it was 14 months later.

I think that you can look at cases like the *Transocean* case and the *Winchester* case that talk about that same issue, which is: Are the issues that are core to the complaint the same issues that are core to the counterclaims? We've explained why, you know, with paragraph 51, reference to those arguments notwithstanding, they are different. The contractual interpretation question in NCR's complaint is very different

from the question raised by either the affirmative defenses or the counterclaims.

I'm just looking through my notes here to see if there's any points we haven't addressed. One more case which was along the same lines, which was cited in our briefing, but the *American International Specialty* case, which is a District of Connecticut case, where the court held -- and there's a slightly different standard that your Honor may have seen or already had been aware of -- I was not -- with respect to whether an amended complaint or an amended counterclaim can somehow revive a right to a jury demand. And there the issue is: Is the issue a new issue that was not contained in the prior pleading?

In that case, the court said, The amended complaint raises issues with respect to how the policy at issue should be construed in relation to both the extent of the coverage and also to claimant's duty to defend. The amended counterclaim, by contrast, alleges that plaintiff breached the covenant of good faith and fair dealing in its hiring of a particular law firm, the underlying suit, the practices and qualifications of its claims for adjusters. Therefore, with respect to Rule 38, the issues are sufficiently distinct and the jury demand as to the amended counterclaims should not extend to the amended complaint.

Again, same concept of whether or not the issues,

which are being -- that the plaintiff or the counter-plaintiff is seeking a ruling on are distinct from the basis for the counterclaimant's case.

If I've got some time left, maybe I'll reserve and respond to counsel's argument. Thank you.

THE COURT: I'll give you a brief period of time after. All right. So let me hear from BAT. I'd like you to start, please, with telling me whether BAT is seeking rescission.

MR. TRACEY: Happy to, your Honor.

We spoke a lot about rescission during this argument so far. I think if you look at our pleadings, you will not find that word. Not once. The claim that what we have sought is a declaration from the Court that BAT should not have to pay anything under the CSA in relation to Kalamazoo, and that is the relief that we're seeking. We are not seeking rescissory remedies of the kind that you find in the Section 12.2 cases, where you go back and try to put people in their original place.

The remedy we are seeking is the mirror image of the remedy that NCR is seeking. NCR is seeking to force us to pay amounts under the contract to clean up the Kalamazoo River, and the essentially sole remedy we seek is not to have to do that. It is all about the money.

THE COURT: Was it a poor choice of words by the

unfortunate person who wrote "equitable recoupment"? Because equitable recoupment sounds an awful lot like an equitable remedy to me. Were those words surplusage that you were seeking equitable recoupment?

MR. TRACEY: The reason equitable recoupment is in there is to the extent that one could view our counterclaims as seeking recovery against the obligations that NCR claims that we owe, equitable recoupment would allow us to offset any amounts they claim we owe against any amounts they owe us.

THE COURT: So you are acknowledging that in your counterclaim you are asserting an equitable remedy?

MR. TRACEY: Yes.

THE COURT: And some of your affirmative defenses also appear to raise equitable issues. Let me ask you this: If the Court agrees with you that your counterclaims are legal in nature, who decides the equitable issues? Does Judge Cronan let the jury decide some things and he decides others? How does that work? Is there a bifurcation?

MR. TRACEY: Yes. I think the law is fairly clear on this that when there are legal and equitable claims that are combined in a single trial, the jury decides the legal issues and the judge decides any equitable claims or remedies. So to take this case specifically, as your Honor pointed out, the contract interpretations are gone, so the only issue remaining on the claim, the complaint, and the defenses is whether the

contract is unenforceable due to fraud or negligent misrepresentation.

So those are clearly legal issues. I don't think anybody would dispute that. It sounded like my friend essentially admitted it, and so if that were the only thing going to the jury, the jury would be asked two questions, two factual questions, to be determined. One, was there a false statement or an omission that was attributable? And two, did BAT reasonably rely on that? Those are the factual issues that underlie the claim and defenses in this case.

THE COURT: So how do you distinguish, if at all, between the word "issue" as used in Rule 38, and "claims" as we understand them as judges and lawyers?

MR. TRACEY: I agree with my friend on that. I believe that the issue is: What is the issue you're presenting to the fact finder? And in this case, on the claim and defenses, it would be those two fact issues. That's what the jury would decide.

Now, throw in our counterclaims. Our counterclaims for fraud and negligent misrepresentation are essentially mirror images of our defenses. They assert the same factual underpinnings. They seek the same relief. The relief that they seek is we don't want to have to pay on the contract. And so if those claims and defenses and counterclaims go before a fact finder, in our view a jury, they will be the exact same

issues. No judge is going to submit, you know, the misrepresentation and reliance issues to a jury on the main claim and decide it himself or herself on counterclaims. Those two issues are going to be decided by a single fact finder, and we submit it would have to be a jury because it's a legal issue. These are garden variety legal issues.

THE COURT: What significance, if any, do you attach to paragraph 51 of the complaint? Do you agree with your adversary that there was merely an anticipation of what the defenses were going to be by NCR, or is there some greater significance to paragraph 51?

MR. TRACEY: They raised the issue. It's the same issue on our defenses. It's the same issue on our counterclaims. Even if they didn't do that though, we'd win because they are the same issues.

THE COURT: You don't win the case. You win the issue.

MR. TRACEY: We win the issue. Yes, sorry. We win the issue.

These are garden variety factual issues that are decided in legal claims every day by juries, and this case is no different. And NCR is trying to avoid a jury in this case. That's something that the Supreme Court has told us to be very skeptical about. You know, a jury is a very fundamental right, and I'll read from the *Dimick* case, the Supreme Court case that

addresses this, and the Supreme Court has actually repeated this throughout the years, "The maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care."

And here we would submit that there's no basis to not provide for a jury. These claims are garden variety legal, and the courts have looked at this numerous times, and we've cited a whole range of cases in which courts, including the Second Circuit in a binding case to *In re Ben Cooper* granted a jury on effectively the same situation, where one party was seeking to void a contract and one party was seeking to enforce it. And the party seeking to avoid the jury said, well, this is a rescission said, and the Second Circuit said, you know, you may arguably call it a rescission claim, but this type of claim seeking to avoid liability under a contract, under a fraud or negligent misrepresentation ground is a legal issue. It's just a mirror issue of the legal issue in the complaint.

We've cited many other cases, your Honor. They're in our papers: *National Union*, *Doe No. 1*, *Rush*, *Bank of New York*. And as I said earlier, the only cases cited by NCR are uniquely rescissory cases. Those are statutorily created rescissory remedies where the plaintiff's only claim was for rescission, which is defined in the statute in a particular way, which is

you turn back your shares, you get the money that you paid for it, to put the person back in the position in which they were when they entered into the contract.

Our claim by contrast is just to say we haven't paid anything under the contract. We haven't paid a penny as to Kalamazoo. This fraud issue came up before we had to start paying. And so that's why our counterclaims don't seek money damages, because we haven't paid any money. We seek not to be responsible on a contract purely on the claim.

THE COURT: And you're not seeking to undo the CSA in its entirety?

MR. TRACEY: We have not -- I would say I haven't asked my client about that, but I don't think I'd waive it here. But I would say that the thrust of our complaint is to stop paying, and we think that that is the legal issue that goes before a jury.

And I'll just -- very briefly on the second issue, I think it's extremely straightforward as I said earlier, the issues are -- we're not arguing that the claims and the counterclaims are similar or that they have overlapping issues. We're not making any of those claims. We fully agree with the law as cited by NCR, that the last pleading to an issue means that it raises the same jury issue as prior claims. And it could not be clearer than this case, where we assert counterclaims for fraud in the inducement to avoid endorsement

of a contract in a counterclaim, which is identical to the defense that we asserted to the complaint.

I point out that NCR has already admitted that, because when they moved to dismiss our defenses, they said those defenses are just recycled versions of the counterclaims, and actually Judge Cronan cited that in his decision. They're the exact same thing. And so we had the right under Rule 38 to file a jury demand, either 14 days after the answer or 14 days after the reply, because those issues are identical.

THE COURT: Do you agree with your adversary that the Second Circuit has construed Rule 39(b) very narrowly?

MR. TRACEY: Yes. They have, in recent years, raised the standard for the discretion to be applied there, and I would defer to the cases. I'm not sure if I agree exactly with the way it was phrased by my friends, but yes, it was a high standard and quite a high standard. It can't be mere inadvertence. That was the word I remember.

THE COURT: Thank you.

MR. TRACEY: With that, unless your Honor has questions?

THE COURT: I don't. Thank you.

I'll hear briefly any rebuttal.

MR. SCHAFER: Thank you, your Honor. I just want to respond. I raised part of this point earlier, but I do just want to read -- there are two counterclaims that survive in

this case after Judge Cronan's ruling. Each of those counterclaims request the exact same relief in two different paragraphs. There's the paragraph requesting equitable recoupment, and there, just for the record since we did not get into that issue in the brief, one of the cases I was referring to earlier is *Westinghouse Credit Corp. v. D'Urso,* 278 F.3d. 138, 148. That's a Second Circuit case from 2002, which refers to the equitable concept of recruitment in stating that the recoupment doctrine itself is derived from equity. Same ruling in the *Benenson v. United States* case, 385 F.2d 26, 31. That's a 1967 case from the Second Circuit referencing the doctrine of equitable recoupment as an equitable remedy.

So we think it's perfectly clear even if the name itself did not suggest that it was an equitable remedy, that equitable recoupment is a remedy at equity. And then with respect to whether or not BAT has sought rescission, in both of its counterclaims, the relief it seeks at paragraph 84 and at 94 is identical, and says, "Accordingly, BAT is entitled to a declaration that NCR fraudulently induced BAT to enter the CSA," and that "as a result, the CSA is null and void." That's paragraph 84, and 94 replaces fraudulently with negligently. But the ultimate relief that's sought is a declaration -- quote -- that "the CSA is null and void."

The relief sought is not we don't owe money as to this issue related to Kalamazoo. Seeking a declaration that a

contract is null and void, that is seeking rescission, or at least within the declaratory judgment world where you look past sort of the framing of it as a declaratory judgment action and look to the ultimate relief. Asking for a contract to be determined null and void is seeking relief that is rescissory.

As to counsel's claim that the reason our cases are distinguishable is that, you know, under the statutes at issue, the parties were left with only the option as to a rescissory remedy and not monetary damages, that would be a fair point if any of the relief sought in BAT's counterclaims sought monetary damages. But they do not. They seek equitable recoupment, and they seek a declaration that the CSA is null and void. That is on all fours with the rescissory remedy that is permitted under the statutes that they claim to be distinguishable.

I don't actually there's any distinction there. I think counsel's admission that they are not claiming that the claims and counterclaims are similar or have overlapping issues is telling. I think that's what the case law looks to, and the cases we cited talk about, you know, the issues that are raised in the complaint, the same issues that are raised in the counterclaims, and here, they are not. So the jury demand as to counterclaims cannot relate back to NCR's claims.

MR. TRACEY: May I make one point?

THE COURT: Sure.

MR. TRACEY: Just in terms of the relief that's

requested, I would direct your Honor to page 39 of our answer and counterclaims in which there are three prayers for relief. Number one, the judgment in favor of BAT on all of its claims; two, a declaration of CSA is unenforceable null and void; and three, that the declaration that NCR is not entitled to any payments from BAT under the CSA relating to the Kalamazoo River CERCLA action.

THE COURT: Right. So that last one obviously is limited to Kalamazoo, and paragraph 51 of the complaint is limited to Kalamazoo River. And you wouldn't commit to me that your client is not seeking to undo the whole thing. But what basis would your client have to be able to equitably recoup or not have to pay for the other sites? Is there any argument that there was some sort of misrepresentation or omission with respect to the other sites?

MR. TRACEY: No, your Honor. The sole misrepresentation alleged is that -- is with respect to the future cites language of the contract, which only relates to date to Kalamazoo and does not relate to the Fox River, which is the original site under which the agreement was reached.

THE COURT: Right. Okay. So I thank the parties for the argument, and obviously I am going to be reserving decision. I want to look at the transcript, and I'll be issuing a report and recommendation to Judge Cronan in due course.

I did want to turn attention to the May 9 letter that was filed at ECF 78. I am not inclined at the present time to extend the fact discovery cutoff because it's not until July 11. I will extend it for good cause shown at a future date, and the amount of time, I'm hoping the parties can meet and confer and agree on it. If they can't, you'll give me your respective proposals. And obviously you shouldn't wait more than two weeks out, you know, two weeks prior to July 11.

I do have a question as to whether BAT is going to decide whether or not it intends to engage an expert. One would think that BAT has a good idea about that at this point. But why don't I hear from BAT?

MR. TRACEY: Yes, your Honor. We are considering two experts. One on CERCLA issues and one on due diligence issues. I don't want to limit myself because our date for disclosing that hasn't occurred yet. We're still analyzing it, but those are the two we're considering.

THE COURT: So there will be need to have an expert discovery deadline?

MR. TRACEY: I expect there will be, yes, your Honor.

THE COURT: Let me ask on NCR's side, do you expect to call experts?

MR. SCHAFER: We would not expect to have affirmative experts. That was our position from the outset. Obviously if BAT is going to put in expert reports, we will want an expert

to respond, but we don't think this is a case that warrants experts.

THE COURT: As I said, I'm not saying no. In fact, I would anticipate there would have to be some extension of the discovery cutoff, but I really would encourage the parties to meet and confer and come up with a compromise. If you don't, when you give me your respective positions, you can expect me to be somewhere between the two. I'm not suggesting the two of you take unreasonable positions, so therefore trying to move the center, because I don't always end up in the center. But I do think when it comes to deadlines like this, the parties can and should agree.

Anything else that we need to address at this time?

MR. TRACEY: Not from BAT's standpoint. Thank you.

MR. SCHAFER: Not for NCR's, your Honor, I guess, other than if BAT -- I don't know if we need to put it in the record or have a deadline for it, but if BAT decides it doesn't want to move forward with experts, that will obviously impact when other deadlines will be set and how the case will unfold.

THE COURT: And, again, you are going to meet and confer. Any letter that is sent seeking an extension of the discovery period, I expect BAT -- so that's two weeks before the deadline -- to fish or cut bait.

MR. SCHAFER: Understood.

THE COURT: That's how the expression goes. You'll

have experts, or you are not going to have experts. All right?

MR. TRACEY: Yes, your Honor.

THE COURT: This matter is adjourned. Thank you.

(Adjourned)

o0o