UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NCR Corporation,

                Plaintiff,

-against-

B.A.T. Industries P.L.C.,

                Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 05/22/2025

1:23-cv-01172 (JPC) (SDA)

**REPORT AND RECOMMENDATION**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE JOHN P. CRONAN, UNITED STATES DISTRICT JUDGE:**

Pending before the Court is a motion by Plaintiff NCR Corporation ("Plaintiff" or "NCR"), pursuant to Rule 39(a)(2) of the Federal Rules of Civil Procedure, to strike the jury demand of Defendant B.A.T. Industries P.L.C. ("Defendant" or "BAT"). (Pl.'s 12/19/24 Not. of Mot., ECF No. 58; *see also* Pl.'s 12/19/24 Mem., ECF No. 59.)

For the reasons set forth below, it is respectfully recommended that Plaintiff's motion be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

NCR manufactured and sold carbonless copy paper ("CCP") between 1954 and 1971. (Counterclaims ¶ 25.[1]) The CCP was manufactured at two mills located on the Fox River in Wisconsin that formed the company's Appleton Papers Division ("APD"). (Compl., ECF No. 1, ¶ 2; Counterclaims ¶ 29.) NCR sold the assets and liabilities of APD to a BAT subsidiary in 1978, which

---

[1] Defendant's Counterclaims are set forth at pages 16 through 39 of BAT's Answer to Plaintiff's Complaint and Counterclaims filed at ECF No. 21 in consecutively numbered paragraphs. Citations to paragraphs of the Counterclaims shall be made herein as "Counterclaims ¶ __."

subsequently called itself Appleton Papers Inc. ("API"). (Counterclaims ¶ 8.) In 1994, the State of Wisconsin alleged that NCR and API were potentially responsible parties for cleanup costs and natural resource damage to the Fox River under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"). (Compl. ¶ 18; Ans. ¶ 18.[2]) The allegations stemmed from the substance NCR used to coat CCP, which contained polychlorinated biphenyls ("PCBs"), highly toxic pollutants known to cause serious health problems in humans. (Counterclaims ¶ 27.) According to Wisconsin, APD discharged PCBs into the Fox River during the manufacturing process and sold a byproduct of the manufacturing process, a product known as "broke," to brokers and recycling mills that also discharged PCBs into the Fox River. (Compl. ¶ 18; Ans. ¶ 18.) During the same period, the Federal Government alleged that NCR and BAT/API were responsible for CERCLA costs at an industrial site in Marina Cliffs, Wisconsin. (Counterclaims ¶¶ 10, 50.)

In light of the pending allegations, NCR and BAT/API disputed which party should bear the responsibility of covering the cleanup costs related to the Fox River and Marina Cliffs. (Compl. ¶¶ 19-20; Ans. ¶¶ 19-20.) After engaging in mediation in July 1999, the parties entered into a Confidential Settlement Agreement ("CSA"), which became effective as of February 12, 1998. (Counterclaims ¶ 10; CSA, Ex. A to Kuster 10/2/23 Decl., ECF No. 31-1, at 1, 25) Under the CSA, NCR and BAT/API agreed to "allocate as between themselves all Claims, Damages, and Defense Costs . . . relating to the Fox River sites, to the Marina Cliffs sites . . . and to Future Sites, as defined

---

[2] Defendant's answers to the allegations in the Complaint are set forth at pages 2 through 14 of BAT's Answer to Plaintiff's Complaint and Counterclaims filed at ECF No. 21 in consecutively numbered paragraphs. Citations to paragraphs of the Answer shall be made herein as "Ans. ¶ __."

herein, up to a total of $75 million[.]"[3] (CSA at 4, 14.) An arbitration panel later concluded that for amounts over $75 Million, BAT/API would bear sixty percent of the costs while NCR would bear forty percent. (Compl. ¶ 23; Ans. ¶ 23.)

In 2003, the Environmental Protection Agency ("EPA") sent a notice to NCR pursuant to CERCLA Section 104(e) stating that the EPA was investigating to what extent NCR may have sold, either directly or indirectly through wastepaper brokers, NCR paper broke to any of the secondary fiber pulp and paper mills located within the Kalamazoo River area of Michigan. (Ans. ¶ 37; *see also* Compl. ¶ 37.) In 2011, NCR was sued by three Georgia-Pacific-related paper companies in the Western District of Michigan related to the contamination of the Kalamazoo River. (Georgia-Pacific Compl., Ex. B. to Kuster 10/2/23 Decl., ECF No. 31-2.) The liability phase of that trial found that NCR was responsible under CERCLA for the costs relating to the contamination of the river. (Compl. ¶ 40; Ans.¶ 40.) NCR subsequently entered into a consent decree with the United States and the State of Michigan, whereby NCR agreed to clean up portions of the Kalamazoo River in exchange for a release of liability for the entire site. (Compl. ¶ 42; Ans. ¶ 42.) NCR alleges that the costs under the consent decree exceed $350 million. (Compl. ¶ 43.)

NCR alleges that it "coordinated closely with BAT (and, until its bankruptcy in 2017, API) and kept it fully apprised concerning the developments on the Kalamazoo River." (Compl. ¶ 44.) However, in June 2019, NCR alleges that BAT changed its position and asserted that it was not bound by the CSA to help cover the cleanup costs of the Kalamazoo River because (1) the

---

[3] Costs initially were allocated so that fifty-five percent were absorbed by BAT/API and forty-five percent were absorbed by NCR. (CSA at 14.)

Kalamazoo River was not a "Future Site" as defined in the CSA, (2) NCR materially misrepresented the scope of its liabilities when it failed to disclose matters concerning the Kalamazoo River during negotiations related to the CSA and (3) NCR incurred costs relating to the Kalamazoo River "as a result of its own bad conduct," and that BAT was "not obliged to pay for the consequences of that conduct." (*Id*. ¶ 48-51.) BAT contends that NCR hid its contamination involvement of the Kalamazoo River, and that at the time of signing the CSA, BAT "was unaware of any sites other than the two expressly listed in the CSA." (Counterclaims ¶ 54-56.)

On February 10, 2023, NCR filed the Complaint in this action seeking a declaratory judgment that the Kalamazoo River Site is a "Future Site" under the terms of the CSA and therefore that BAT is obligated to compensate NCR for sixty percent of any costs NCR incurs in the environmental cleanup efforts in the Kalamazoo River. (Compl. ¶ 65.) On June 23, 2023, BAT filed its Answer and asserted five Counterclaims against NCR, all of which seek declaratory judgments that either the CSA is void or BAT has no liability to NCR for various reasons, as well as eight affirmative defenses. (*See* Counterclaims.)

After NCR moved for judgment on the pleadings to dismiss BAT's Counterclaims and strike its affirmative defenses, on September 14, 2024, District Judge Cronan granted NCR's motion in part and dismissed BAT's third, fourth and fifth Counterclaims and struck BAT's eighth affirmative defense. *See NCR Corp. v. B.A.T. Indus. P.L.C.*, No. 23-CV-01172 (JPC), 2024 WL 4188358, at *1 (S.D.N.Y. Sept. 14, 2024). Judge Cronan also held that the Kalamazoo River is a "Future Site" under the CSA. *Id.* at 8. Thus, only two Counterclaims remain in this action: Count One, which seeks a declaration that "NCR fraudulently induced BAT to enter into the CSA and that, as a result, the CSA is null and void" (Counterclaims ¶ 84), and Count Two, which seeks a declaration that "NCR

4

negligently induced BAT to enter into the CSA and that, as a result, the CSA is null and void." (*Id*. ¶ 94.) In addition, the affirmative defenses that remain in this case are (1) the Complaint fails to state a claim upon which relief can be granted; (2) NCR's claims are barred because NCR has breached the CSA; (3) NCR's claims are barred under the doctrine of equitable recoupment because NCR fraudulently induced BAT to enter into the CSA; (4) NCR's claims are barred by NCR's unclean hands; (5) NCR's claims are barred by the doctrines of waiver, estoppel and/or laches; (6) NCR's claims are barred by NCR's failure to mitigate its damages; and (7) NCRs claims are barred by public policy. *See NCR Corp.*, 2024 WL 4188358, at *5.

On September 16, 2024, this case was referred to the undersigned for general pretrial supervision. (Order of Reference, ECF No. 39.) On October 18, 2024, NCR filed its Answer to BAT's Counterclaims. (Pl.'s Answer, ECF No. 43.) On October 30, 2024, BAT filed a Demand for Trial by Jury demanding "a trial by jury on all issues so triable in this action." (Def.'s Demand, ECF No. 48.) On November 20, 2024, NCR filed a pre-motion letter addressed to Judge Cronan in anticipation of a motion to strike BAT's jury demand. (Pl.'s 11/20/24 Ltr., ECF No. 51.) On November 22, 2024, Judge Cronan issued an Amended Order of Reference that referred Plaintiff's anticipated motion to strike BAT's jury demand to the undersigned. (Am. Order of Reference, ECF No. 54.)

On December 19, 2024, NCR filed the motion presently before the Court. (Pl.'s 12/19/24 Not. of Mot.; Pl.'s 12/19/24 Mem.) On January 30, 2025, BAT filed its opposition memorandum. (Def.'s 1/30/25 Mem., ECF No. 65.) On February 20, 2025, NCR filed its reply. (Pl.'s 2/20/25 Reply, ECF No. 66.) On May 13, 2025, the Court held oral argument on the pending motion. (5/13/25 Tr., ECF No. 80.)

## **LEGAL STANDARDS**

The federal right to a jury trial is provided by the Seventh Amendment to the U.S. Constitution and is "preserved to the parties inviolate." Fed. R. Civ. P. 38(a). Rule 38(b) of the Federal Rules of Civil Procedure provides that, "[o]n any issue triable of right by a jury, a party may demand a jury trial by: (1) serving the other parties with a written demand—which may be included in a pleading—no later than 14 days after the last pleading directed to the issue is served; and (2) filing the demand in accordance with Rule 5(d)." Fed. R. Civ. P. 38(b). "Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935).

The Wright & Miller treatise aptly addresses the timing of jury demands in cases like this one, where a counterclaim is asserted:

> The matter becomes more complicated if a counterclaim is asserted, since that is a pleading that necessitates a reply. A jury trial demand served no later than 14 days after service of the reply clearly is timely with regard to the issues raised by the counterclaim and the reply. If the counterclaim raises the same issues as does the answer, then a demand made within 14 days after the reply to the counterclaim is effective as to those issues. However, if the counterclaim and reply raise new issues that were not in the complaint and answer, a demand served more than 14 days after the answer, but within 14 days after the reply, is effective only for the issues raised in the counterclaim and reply and not those in the complaint and answer.

Charles Alan Wright and Arthur R. Miller, 9 *Fed. Prac. & Proc. Civ*. § 2320 (4th ed.) (footnotes citing cases omitted).

"In its demand, a party may specify the issues that it wishes to have tried by a jury; otherwise, it is considered to have demanded a jury trial on all the issues so triable." Fed. R. Civ. P. 38(c). Rule 39(a) of the Federal Rules of Civil Procedure provides that, where a jury trial has

6

been demanded, "[t]he trial on all issues so demanded must be by jury unless . . . the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial." Fed. R. Civ. P. 39(a)(2). The right to a jury trial, enshrined in the Seventh Amendment, is limited to "suits at common law, where the value in controversy shall exceed twenty dollars." U.S. Const. amend. VII. "Suits at common law" refers to "suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989) (emphasis in original) (citation omitted).

To determine whether legal or equitable rights are at stake in a suit, the Supreme Court has adopted a three-prong test, which considers: (1) whether the plaintiff's claims have an analogous eighteenth-century action that would have been "brought in the courts of England prior to the merger of the courts of law and equity," (2) whether "the remedy sought" is "legal or equitable in nature," and (3) where the two previous factors indicate that a party is entitled to a jury trial, a court should "decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder." *Granfinanciera*, 492 U.S. at 42 (quoting *Tull v. United States*, 481 U.S. 412, 417-18 (1987)). In the present case, only the first two prongs are applicable, and the second "is more important than the first." *Id*.

Courts carefully must analyze the nature of the issues raised by a claim to determine whether they are legal or equitable. This analysis is not based on the form of the complaint or the choice of words used in the pleadings but on the nature of the issues themselves. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477-78 (1962) ("the constitutional right to trial by jury cannot

be made to depend upon the choice of words used in the pleadings"). The term "issue," as used in Federal Rule of Civil Procedure 38, means "something more than the evidence offered and the legal theories pursued, although these are pertinent factors." *Rosen v. Dick*, 639 F.2d 82, 94 (2d Cir. 1980). The court must consider "the ultimate issue for decision." *See id*.

"[T]he longstanding federal policy favoring jury trials . . . counsels in favor of finding a right to a jury trial in ambiguous cases[.]" *Starr Int'l Co. v. Am. Int'l Grp., Inc.*, 623 F. Supp. 2d 497, 504 (S.D.N.Y. 2009) (citations omitted); *see also Prudential Oil Corp. v. Phillips Petroleum Co.*, 392 F. Supp. 1018, 1021-22 (S.D.N.Y. 1975) ("While few would dispute that challenges to th[e] right [to a jury trial], viewed against the merger of law and equity in the federal courts, have caused courts and commentators serious analytical difficulties over the years, the inescapable teaching of recent Supreme Court decisions is that there is a clear federal policy in light of the Seventh Amendment favoring jury trials and that, in doubtful cases, that policy should be favored." (citing cases)).

## DISCUSSION

Plaintiff contends that Defendant is not entitled to a jury trial in this action on two grounds: first, that Defendant waived its right to request a jury on the single claim in Plaintiff's Complaint because Defendant missed the 14-day window to demand a jury under Federal Rule of Civil Procedure 38(b)(1) by more than one year; and second, that Defendant's counterclaims seek only equitable relief. (Pl.'s 12/19/24 Mem. at 3-6.) The Court addresses the grounds in turn.

### I.   Whether Defendant Waived Its Right To A Jury Trial Regarding Plaintiff's Complaint

As an initial matter, Plaintiff is correct that Defendant did not request a jury trial in its Answer to the Complaint, or within 14 days thereafter. However, the inquiry does not end there

in deciding whether Defendant is entitled to a jury trial on the issues raised in the Complaint. As noted in the Legal Standards section above, where, as here, a counterclaim raises the same issues as the complaint and answer, the reply to the counterclaim serves as the last pleading directed to the issues. *See Binger v. Unger*, 7 F.R.D. 121, 122 (S.D.N.Y. 1946) (denying motion to strike jury demand where demand was timely made after service of reply directed to same issues as were raised in complaint).

District Judge Cronan already decided one important issue as a matter of law, which is that "the Kalamazoo River Site qualifies as a 'Future Site[]' under the unambiguous language of the CSA," but noted that the enforceability of the CSA was called into question by Defendant's counterclaims and affirmative defenses. *See NCR Corporation*, 2024 WL 4188358, at *5, 8. Hence, the issue of contract interpretation is off the table, and the only issues that remain for trial concern whether the CSA can be enforced to require Defendant to compensate Plaintiff for certain of the costs to clean up the Kalamazoo River.

Specifically, the issues that remain for trial concern the validity of the CSA based on allegations that NCR fraudulently and/or negligently induced BAT to agree to its terms. In its Counterclaims, BAT seeks declarations that (1) "NCR fraudulently induced BAT to enter into the CSA and that, as a result, the CSA is null and void" and (2) "NCR negligently induced BAT to enter into the CSA and that, as a result, the CSA is null and void." (Counterclaims ¶¶ 84, 94.) The central issues with respect to the Counterclaims revolve around whether NCR's alleged fraud and misrepresentation eliminate BAT's obligation to cover some of the costs to clean up the Kalamazoo River. These Counterclaims squarely address a central issue raised in the Complaint—*i.*e., whether, because the Kalamazoo River is a Future Site, BAT must compensate NCR for sixty

percent of the costs associated with cleanup of the Kalamazoo River under the CSA. (Compl. ¶ 65.)

Plaintiff contends that its Complaint involves contract interpretation, and that Defendant has not identified a case in which counterclaims involving fraud and negligence were found to be the same as a contract interpretation claim under Rule 38. (Pl.'s 2/20/25 Mem. at 5; 5/13/25 Tr. at 9:8-14.) Plaintiff's contention is misplaced.

While the Court agrees with Plaintiff that one issue raised in the Complaint involved contract interpretation (which issue already has been resolved by Judge Cronan), another issue involves the enforceability of the CSA. That issue is outstanding, and the determination of that issue will involve addressing Defendant's Counterclaims and affirmative defenses, which contend that the CSA cannot be enforced due to fraud and misrepresentation. Indeed, Judge Cronan did not rule in favor of NCR on its motion for judgment on the pleadings because of the remaining counterclaims and affirmative defenses that challenge the enforceability of the CSA. *See NCR Corporation,* 2024 WL 4188358, at *8.

In its Complaint, Plaintiff did not just seek a declaration that that the Kalamazoo River was a "Future Site" under the terms of the CSA. (Compl. ¶ 65.) It also sought a declaration that "BAT is therefore obligated to compensate NCR for 60 percent of any costs it incurs relating to the Kalamazoo River Site." (*Id*.) There does not appear to be a dispute that, as a matter of contract interpretation, if the Kalamazoo River is a Future Site, then under the plain language of the CSA and the subsequent arbitration decision, BAT is obligated to compensate NCR for sixty percent of any costs. (*See* CSA; Compl. ¶¶ 22-23, Ans. ¶¶ 22-23.) However, as Judge Cronan found, whether NCR is entitled to a declaratory judgment that BAT is "'obligated to compensate NCR for

60 percent of any costs it incurs relating to the Kalamazoo River Site' . . . turns on whether the relevant terms of the agreement are binding." *NCR Corp.*, 2024 WL 4188358, at *8.

It is noteworthy that the Complaint itself sets forth the same issues that underpin BAT's Counterclaims regarding purported misrepresentations and/or omissions by NCR, as pled in Counts One and Two of BAT's Counterclaims. For example, Plaintiff's Complaint expressly notes BAT's "claim[] that the [CSA] was vitiated by material misrepresentation and failure to disclose matters known to NCR and relevant to the liabilities now faced by NCR, and that BAT was therefore not bound by the [CSA] in respect of the Kalamazoo River."[4] (Compl. ¶ 51.) Thus, Plaintiff acknowledged in its Complaint the issues that are now central to this case, namely, "the CSA's enforceability as to BAT's liability for costs incurred at the Kalamazoo River Site." *NCR Corp.*, 2024 WL 4188358, at *5.

Because the same issues are raised in the Complaint, affirmative defenses and Counterclaims, and because the demand for a jury trial was filed by Defendant twelve days after Plaintiff filed its Answer to Defendant's Counterclaims (*i.e.*, the last pleading addressed to the issues raised in the Complaint), Defendant's demand for jury trial timely was filed during the 14-day window provided by Rule 38(b)(1). *See* Wright & Miller, 9 *Fed. Prac. & Proc. Civ*. § 2320.

---

[4] Plaintiff also acknowledged the same issues in its Complaint when expressly setting forth Defendant's claim that no monies are owed to Plaintiff for any portion of the costs to clean up the Kalamazoo River Site. (Compl. ¶ 61 ("BAT claims that it has no obligation to pay for any portion of the investigation and cleanup costs relating to the Kalamazoo River because . . . the [CSA] has been 'vitiated' by NCR's purported misrepresentations or bad conduct, which BAT's vague accusations fail to specify.").).

11

However, the Court still must determine whether, in the first instance, Defendant had a right to a jury trial on the remaining portion of the declaratory relief claim in the Complaint.[5]

Defendant requested a jury trial "on all issues so triable in this action" (Jury Demand, ECF No. 48), which includes Plaintiff's claim. To determine Defendant's right to a jury trial on the remaining portion of the declaratory relief claim in the Complaint, the Court applies the *Granfinanciera* test discussed in the Legal Standards section above. *See Granfinanciera, S.A.*, 492 U.S. at 41.

With respect to the first prong, whether Plaintiff's claims have an analogous eighteenth-century action that would have been "brought in the courts of England prior to the merger of the courts of law and equity," the Court notes that "a declaratory judgment action is neither inherently equitable nor inherently legal[,]" but "is simply a procedural mechanism that provides a form of relief previously unknown both at law and in equity." *Chevron Corp. v. Salazar*, No. 11-CV-00691 (LAK), 2011 WL 3628843, at *6 (S.D.N.Y. Aug. 17, 2011), *abrogated on other grounds by Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85 (2d Cir. 2023). "[T]o determine whether there is a right to jury trial in a declaratory judgment action, first it is necessary to determine in what kind of an action the issue would have come to the court if there were no declaratory judgment procedure." *Starr Intern. Co.*, 623 F. Supp. 2d at 503. "[I]f the declaratory judgment action does not fit into one of the existing equitable patterns but is essentially an inverted law suit an action brought by one who would have been a defendant at common law,"

---

[5] In the briefing on the present motion, neither party addressed whether the Complaint asserts a legal claim as to which there would be a right to jury trial, thereby implicitly assuming that there was such a right.

it is legal in nature[,] . . . [b]ut if the action is the counterpart of a suit in equity, it is equitable." *Chevron Corp.*, 2011 WL 3628843, at *6 (cleaned up) (citation omitted).

Here, to the extent NCR seeks a declaration that BAT is obligated to compensate NCR for sixty percent of any costs it incurs relating to the Kalamazoo River Site, it was anticipating either its own need to enforce the CSA or anticipating that BAT either would repudiate or breach the CSA once the Court determined that the Kalamazoo River Site is a Future Site under the CSA (as now has happened). In that case, NCR would be able to seek damages for breach of the CSA. *See Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting that, when faced with anticipatory repudiation, one option for non-repudiating party is to seek damages for breach of contract[6]). Thus, the Court finds that absent a declaratory judgment procedure, this action ultimately would come to the Court as a breach of contract action seeking damages, which traditionally has been considered a legal claim. *See Citigroup Inc. v. VDN Sys., Inc.*, No. 08-CV-07527 (SHS), 2008 WL 5274091, at *2 (S.D.N.Y. Dec. 16, 2008) ("[A]ctions seeking damages for breach of contract are traditionally considered to be legal in nature.").

With respect to the second prong of the *Granfinanciera* test, whether the remedy sought is legal or equitable in nature, since the Court already has determined that the Kalamazoo River Site is a "Future Site" under the CSA, the remaining portion of the relief sought by Plaintiff in the Complaint is a declaration "that [Defendant] must . . . compensate [Plaintiff] for 60 percent of any costs it incurs relating to the Kalamazoo River Site." (Compl., Prayer for Relief, ¶ a, at 15.) This is a quintessential legal remedy, since the Complaint, as admitted by Plaintiff during oral

---

[6] The other option is to "await the designated time for performance before bringing suit." *Lucente*, 310 F.3d at 258.

13

argument relates to the payment of money. (5/13/25 Tr. at 11:12-14 "where we do agree is that NCR, the declaration it seeks does relate to the payment of money at the end of the day, so that is a legal claim").

Accordingly, Defendant's jury demand was timely made with respect to the claim in Plaintiff's Complaint related to BAT's obligations under the CSA, which is legal (not equitable), and the Court recommends that Plaintiff's motion to strike Defendant's jury demand with respect to Plaintiff's claim be denied.

## II.  Defendant's Right To Jury Trial On Counterclaims

As noted above, Defendant requested a jury trial "on all issues so triable in this action" (Jury Demand, ECF No. 48.) This request, of course, includes Defendant's Counterclaims. To determine Defendant's right to a jury trial on its Counterclaims, the Court applies the *Granfinanciera* test.

With respect to the first prong, whether Plaintiff's claims have an analogous eighteenth-century action that would have been "brought in the courts of England prior to the merger of the courts of law and equity," Defendant in its Counterclaims seeks declaratory relief in order to vitiate its obligations under the CSA by asserting that Plaintiff engaged in fraud and misrepresentation. (*See* Counterclaims ¶¶ 17, 19, 21, 78, 81, 84-85, 89, 94.) In eighteenth-century England, fraud was equally within the jurisdiction of courts of law and equity. *See Full Spectrum Software Inc. v. Forte Automation Sys., Inc.*, 858 F.3d 666, 676 (1st Cir. 2017) (quoting 3 William Blackstone, *Commentaries* *432) ("[E]very kind of fraud is equally cognizable, and equally adverted to, in a court of law", as in a court of equity, "and some frauds are only cognizable [in a court of law], as fraud in obtaining a devise of lands."). Similarly, a claim for

misrepresentation was brought in courts of law and equity. *See In re Evangelist*, 760 F.2d 27, 32 (1st Cir. 1985) (citation omitted) (noting that misrepresentation is "a classical tort action brought at law"); *In re Friedberg*, 131 B.R. 6, 13 (S.D.N.Y. 1991) (explaining that misrepresentation cases were brought in law and equity). Because the first prong of the *Granfinanciera* test is inconclusive, the second prong of the analysis will be determinative of the right to a jury trial.[7]

With respect to the second prong, whether the remedy sought in Defendant's Counterclaims is legal or equitable in nature, one of the remedies sought by Defendant is "[a] declaration that NCR is not entitled to any payments from BAT under the CSA relating to the Kalamazoo River CERCLA action." (Counterclaims, Prayer for Relief, ¶ 3, at 39.) Like the remedy sought in the remaining portion of the Complaint, this remedy is a quintessential legal one since it relates to the payment of money. Thus, the Court finds that Defendant is entitled to a jury trial on its Counterclaims to the extent that Defendant seeks a declaration with regard to payments due and, to that extent, Plaintiff's motion to strike Defendant's jury demand with respect to the Counterclaims should be denied.

There are, however, equitable issues raised by Defendant in its Answer to Plaintiff's Complaint and Counterclaims as to which Defendant is not entitled to a jury trial. First, on their face, BAT's Counterclaims request a declaration that "the CSA is null and void" (Counterclaims ¶¶ 84, 94; *see also* Counterclaims, Prayer for Relief, ¶ 2, at 39), which is tantamount to a request for rescission. BAT acknowledged at oral argument that it does not allege any misrepresentations

---

[7] As noted in the Legal Standards section, *supra*, the third prong is inapplicable to this case.

with respect to the Fox River Site.[8] (5/13/25 Tr. at 32:16-20.) BAT stated that it only takes issue with the "Future Sites" language in the CSA related to the Kalamazoo River. (5/13/25 Tr. at 32:16-20.) Nevertheless, to the extent that BAT in its Counterclaims seeks rescission of the entire CSA, notwithstanding the acknowledgment made by BAT at oral argument,[9] such issue would need to be decided by the Court, and not by a jury. *See* 8 James Wm. Moore et al., *Moore's Federal Practice* § 38.30[4] (3d ed. 2008) ("[While a]ctions for money damages for breach of contract are legal in nature and are triable to a jury[, a]ctions seeking reformation of contract, rescission or cancellation of contract, or specific performance of contract are all equitable in nature, and [do not give rise to a Seventh Amendment jury trial right].").

Second, to the extent that Defendant seeks equitable recoupment either by way of its affirmative defense (*see* Aff. Defenses. at 15[10]), or by way of its Counterclaims (Counterclaims ¶¶ 4, 85, 95), such defense and counterclaim raise equitable, not legal issues, as to which there is no right to a jury trial. *See Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 148 (2d Cir. 2002) (referring to "equitable concept of recoupment").

Third, Defendant has no right to jury trial with respect to other equitable affirmative defenses that it pled, *i.e.*, unclean hands (*see Daventree Ltd. v. Republic of Azerbaijan*, 349 F.

---

[8] The Court notes that, pursuant to the CSA, the Fox River Site was fully remediated. (Compl. ¶ 31; Ans. ¶ 31.)

[9] Under New York law, which is the governing law in the CSA (CSA at 22), partial rescission of a contract is not an available remedy. *See Simons v. Crowley*, 112 N.Y.S. 2d 851, 856 (Sup. Ct., N.Y. County, 1952) ("Rescission is not fractional. You do not remove from a document the part you dislike and compel the other side to accept what is left. It is an all or nothing process[.]"); *Merry Realty Co. v. Shamokin & Hollis Real Estate Co.*, 230 N.Y. 316, 323 (1921) ("If rescission is the remedy selected[,] it must be in whole and not in part.").

[10] Defendant's Affirmative Defenses are set forth at pages 15 and 16 of BAT's Answer to Plaintiff's Complaint and Counterclaims filed at ECF No. 31.

Supp. 2d 736, 753 (S.D.N.Y. 2004) (referring to "equitable doctrine of unclean hands")) and laches (*see Gordon v. Amadeus IT Grp., S.A.*, 194 F. Supp. 3d 236, 250 (S.D.N.Y. 2016) ("Laches is an equitable defense . . . .")).[11]

Accordingly, to the extent that Defendant seeks in its Counterclaims a declaration with regard to payments due, Plaintiff's motion to strike the jury demand with respect to the Counterclaims should be denied, but Plaintiff's motion should be granted in respect of the claims of rescission and equitable recoupment that are contained in Defendant's Counterclaims, as well as Defendant's equitable affirmative defenses.

## **CONCLUSION**

For the foregoing reasons, it is respectfully recommended that Plaintiff's motion to strike Defendant's jury demand be GRANTED IN PART and DENIED IN PART. Specifically, it is recommended that Defendant's jury demand be stricken only as to Defendant's claims seeking rescission and equitable recoupment that are contained in Defendant's Counterclaims, as well as its affirmative defenses asserting equitable recoupment, unclean hands and laches.

Dated:    New York, New York
          May 22, 2025

_____
STEWART D. AARON
United States Magistrate Judge

\*            \*            \*

---

[11] Where, as here, "legal and equitable claims are joined in the same action, the right to jury trial on the legal claim, including all issues common to both claims, remains intact," . . . and "the general rule is that the jury must decide the legal claims prior to the court's determination of the equitable claims, in order to prevent the court's determination of a common factual issue from precluding, by collateral estoppel effect, a contrary determination by the jury." *Clark v. Hanley*, 89 F.4th 78, 100 (2d Cir. 2023) (citations omitted) (cleaned up). Thus, the legal claims raised in Defendant's Counterclaims should be decided by the jury prior to the Court's decision on Defendant's equitable Counterclaims and affirmative defenses.

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Cronan.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).