UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                  :

NCR CORPORATION,                       :

                          Plaintiff,          :

                                    :

              -v-                    :

                                    :

B.A.T. INDUSTRIES P.L.C.,         :

                                    :

                         Defendant.      :

                                    :

------------------------------------------------------------------X     23 Civ. 1172 (JPC)

B.A.T. INDUSTRIES P.L.C.,         :     <u>OPINION AND ORDER</u>

                                    :

                         Counter Claimant,  :

                                    :

              -v-                    :

                                    :

NCR CORPORATION,                       :

                                    :

                         Counter Defendant.  :

                                    :

------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Plaintiff and Counter Defendant NCR Corporation ("NCR") brings this action against Defendant and Counter Claimant B.A.T. Industries p.l.c. ("BAT"), seeking a declaratory judgment that, under the terms of a 1998 Confidential Settlement Agreement ("CSA"), BAT is obligated to compensate NCR for sixty percent of the costs in certain environmental cleanup efforts. BAT's Answer to NCR's Complaint asserted eight affirmative defenses and five Counterclaims, each of which sought a declaratory judgment that the CSA is void or that BAT has no liability to NCR. On September 14, 2024, the Court denied NCR's motion for judgment on the pleadings, struck BAT's eighth affirmative defense, and dismissed BAT's third, fourth, and fifth Counterclaims.

*NCR Corp. v. B.A.T. Indus. P.L.C.*, No. 23 Civ. 1172 (JPC), 2024 WL 4188358, at \*1 (S.D.N.Y. Sept. 14, 2024). NCR then filed a Reply to BAT's remaining Counterclaims on October 18, 2024, and twelve days later, BAT made a jury demand on all issues triable. NCR moved to strike BAT's jury demand.

On May 22, 2025, the Honorable Stewart D. Aaron issued a Report and Recommendation, which recommended that NCR's motion to strike BAT's jury demand be granted in part and denied in part. Dkt. 82 ("R&R"). Specifically, Judge Aaron recommended that the jury demand be struck with respect to BAT's third, fourth, and fifth affirmative defenses, as well as both of BAT's remaining Counterclaims insofar as those Counterclaims seek rescission or equitable recoupment as a remedy. NCR objects to Judge Aaron's Report and Recommendation, urging that BAT's jury demand be struck in its entirety.

For reasons that follow, the Court adopts the Report and Recommendation in substantial part and as modified. The Court denies NCR's motion to strike BAT's jury demand with respect to issues raised by BAT's Counterclaims, but grants NCR's motion to strike as to all other issues, including those uniquely raised in the Complaint. This decision is without prejudice to NCR renewing its motion, if appropriate, prior to trial after any summary judgment motions are resolved.

## I. Background[1]

### A.    Factual History

The Court assumes familiarity with the facts and procedural history in this case, which

---

[1] In describing the background in this case, the Court relies on the parties' CSA, Dkt. 31-1, as well as factual allegations in NCR's Complaint, Dkt. 1 ("Complaint"), that BAT has admitted in its Answer, Dkt. 21 at 1-16 ("Answer"), and that are otherwise consistent with BAT's allegations in its Counterclaims, Dkt. 21 at 16-40 ("Counterclaims"). To the extent that the Court refers to allegations that have not been admitted, it does so solely to provide narrative context for the nature of the present dispute.

were described at length in the Court's Opinion of September 14. 2024.  *See NCR Corp.*, 2024 WL 4188358, at *1-5.[2]  The facts and procedural history are summarized below only to the extent relevant to resolving the pending motion to strike.

Between 1954 and 1971, two mills located on the Fox River in Appleton, Wisconsin manufactured carbonless copy paper ("CCP"), which was used to create exact copies of documents.  Complaint ¶ 2; Counterclaims ¶ 25.  During that time, the two mills formed the Appleton Papers Division ("APD") of NCR.  Complaint ¶ 2; Counterclaims ¶¶ 8, 29.  In 1978, NCR sold the assets and liabilities of APD to a BAT subsidiary, which subsequently changed its name to Appleton Papers Inc. ("API").  Complaint ¶ 3; Counterclaims ¶ 8.  Over a decade later, BAT spun off its ownership of API.  Complaint ¶ 16; Answer ¶ 16.

In 1994, the State of Wisconsin notified NCR and API that they were potentially responsible for cleanup costs and natural resource damage in the Fox River under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"). Complaint ¶ 18; Answer ¶ 18.  As it turned out, CCP contained pollutants called polychlorinated biphenyls ("PCBs").  Complaint ¶ 14; Counterclaims ¶ 27.  Wisconsin alleged that APD directly discharged PCBs into the Fox River during the CCP manufacturing process and also sold scrap paper produced as a byproduct of CCP manufacturing to brokers and paper recycling mills, which themselves discharged PCBs into the Fox River.  Complaint ¶ 18; Answer ¶ 18.

A dispute then arose between NCR, BAT, and API about which company should bear

---

[2] The facts and procedural history described in the Court's prior Opinion were taken from BAT's Counterclaims, allegations in NCR's Complaint that BAT admitted in its Answer, and documents incorporated by reference in or integral to the Counterclaims.  *See NCR Corp.*, 2024 WL 4188358, at *1 n.1.  Although the Court now draws upon a slightly different set of materials, the facts are not materially different for purposes of the pending motion.

responsibility for the CERCLA costs.  Complaint ¶¶ 19-20; Answer ¶¶ 19-20.  After engaging in mediation, the parties entered into the CSA, which was effective as of February 12, 1998. Complaint ¶ 5; Answer ¶ 5; CSA at 1.  Under the CSA, the three parties determined that they would "allocate as between themselves all Claims, Damages, and Defense Costs"—not just for the Fox River, but also for any "Future Sites."  CSA at 4.  The CSA provided that fifty-five percent of initial costs would be borne by BAT and API, with the remaining forty-five percent borne by NCR. *Id.* ¶ 3.  But if the CERCLA costs exceeded $75 million, then the parties would arbitrate how the additional costs would be split.  *Id.* ¶ 4.a.  As it happened, an arbitration panel later concluded that BAT and API are responsible for sixty percent of costs above $75 million, and that NCR shall bear forty percent of such costs.  Complaint ¶ 23; Answer ¶ 23.

The Fox River "has now been fully remediated," Complaint ¶ 31; Answer ¶ 31, and API is bankrupt.  Complaint ¶ 44; Counterclaims ¶ 72.  But a new remediation issue arose after the United States Environmental Protection Agency informed NCR that it was investigating whether a byproduct of Fox River CCP manufacturing had been sold to brokers and paper recyclers, which, in turn, polluted the Kalamazoo River in Michigan.  Complaint ¶ 37; Answer ¶ 37.  After a 2013 liability-phase trial, NCR was ultimately found to be a responsible party under CERCLA and held liable for costs relating to the Kalamazoo River contamination.  Complaint ¶ 40; Answer ¶ 40. Under a subsequent consent decree, NCR agreed to clean up certain portions of the Kalamazoo River in return for a release of liability.  Complaint ¶ 42; Answer ¶ 42.  NCR alleges that its costs under that consent decree will exceed $350 million.  Complaint ¶ 43.

To date, BAT has not agreed to share in costs relating to the Kalamazoo River.  *Id.* ¶ 48; Answer ¶ 49.  NCR argues that BAT must pay because the Kalamazoo River is a "Future Site," which the CSA defines as:

any facility, property, or location, other than the Fox River sites, alleged to be contaminated with Hazardous Substances as a result, in whole or in part, of the manufacture, recycling, deinking, or repulping of any amount of PCB-containing NCR Paper brand carbonless paper that was manufactured utilizing the assets that were the subject of the Purchase Agreement.

CSA ¶ 1.i.  BAT's refusal to share in those costs gave rise to this lawsuit.

### B.    Procedural History

NCR initiated this action on February 10, 2023, by filing a Complaint asserting a single count under the Declaratory Judgment Act, 28 U.S.C. § 2201.  Dkt. 1.  NCR seeks a declaration that the Kalamazoo River is a "Future Site" under the CSA, and that BAT is obligated to compensate NCR for sixty percent of the clean-up costs at that location.  Complaint ¶ 65.

On June 23, 2023, BAT filed an Answer asserting eight affirmative defenses and five Counterclaims against NCR.  Dkt. 21.  Seven of BAT's affirmative defenses remain live.  *NCR Corp.*, 2024 WL 4188358, at *16-18.  Those seven affirmative defenses are: (1) the Complaint fails to state a claim upon which relief can be granted, (2) NCR's claims are barred because NCR breached the CSA, (3) NCR's claims are barred under the doctrine of equitable recoupment because NCR fraudulently induced BAT to enter into the CSA, (4) NCR's claims are barred by NCR's unclean hands, (5) NCR's claims are barred by the doctrines of waiver, estoppel, and/or laches, (6) NCR's claims are barred by its failure to mitigate damages, and (7) NCR's claims are barred by public policy.  Answer at 15-16.[3]

Through its Counterclaims, BAT sought a "declaration that the CSA is unenforceable, null and void," as well as a "declaration that NCR is not entitled to any payments from BAT under the

---

[3] BAT's eighth affirmative defense, which contended that NCR's claims are barred under the doctrine of *in pari delicto*, Answer at 16, has been struck.  *NCR Corp.*, 2024 WL 4188358, at *18.

CSA relating to the Kalamazoo River CERCLA action." Dkt. 21 at 39. Only the first two of BAT's five Counterclaims remain live. *NCR Corp.*, 2024 WL 4188358, at *9-16. BAT's first counterclaim is labeled "Fraud" and alleges that, "[i]n order to induce BAT to enter into the CSA, and to agree to the 'Future Sites' language proposed by NCR," "NCR concealed the fact that it had intentionally arranged for discharges of PCBs into the Kalamazoo River and that it was fully aware of the likelihood of it being found liable [for such discharges]." Counterclaims ¶ 77. BAT's second counterclaim is labeled "Negligent Misrepresentation" and similarly asserts that "NCR misrepresented and concealed the fact that it had engaged in discharges of PCBs into the Kalamazoo River," *id.* ¶ 87, thereby "negligently induc[ing] BAT to enter into the CSA," *id.* ¶ 94.[4]

On October 2, 2023, NCR moved for judgment on the pleadings, to strike all of BAT's affirmative defenses, and to dismiss all of BAT's Counterclaims. Dkts. 29-30. On September 14, 2024, the Court denied judgment on the pleadings, agreeing with NCR that the Kalamazoo River site qualifies as a "Future Site[]" under the CSA, but concluding that questions remain concerning the enforceability of the CSA for purposes of BAT's liability for costs incurred at that site. *NCR Corp.*, 2024 WL 4188358, at *6-8. And as noted above, the Court also dismissed BAT's third, fourth, and fifth Counterclaims, *id.* at *9-16, and struck BAT's eighth affirmative defense, *id.* at *16-18. NCR filed a Reply answering BAT's first and second Counterclaims on October 18, 2024. Dkt. 43.

---

[4] BAT's other three Counterclaims have been dismissed. *NCR Corp.*, 2024 WL 4188358, at *14-16. BAT's third counterclaim alleged generally that BAT "has no liability to NCR for any cleanup costs relating to the Kalamazoo River." Counterclaims ¶ 101. BAT's fourth counterclaim alleged that it "has no liability to NCR for any cleanup costs relating to the Kalamazoo River under the doctrine of *in pari delicto*." *Id.* ¶ 108. BAT's fifth counterclaim alleged that BAT "has no liability to NCR for any cleanup costs relating to the Kalamazoo River, as any requirement to reimburse such damages would violate public policy." *Id.* ¶ 120.

Twelve days later, on October 30, 2024, BAT made a demand for "a trial by jury on all issues so triable." Dkt. 48. NCR moved to strike that jury demand on December 19, 2024, Dkts. 58-59, BAT filed an opposition on January 30, 2025, Dkt. 65, and NCR filed a reply brief on February 20, 2025, Dkt. 66.

In a May 22, 2025 Report and Recommendation, Judge Aaron recommended that NCR's motion be granted in part and denied in part.[5] Judge Aaron concluded that BAT's jury demand should be struck with respect to BAT's third affirmative defense seeking equitable recoupment, R&R at 16, fourth affirmative defense arguing that NCR's claims are barred by NCR's unclean hands, *id.*, and fifth affirmative defense contending that NCR's claims are barred by the doctrines of waiver, estoppel, and/or laches, *id.* at 17. Judge Aaron also concluded that the jury demand should be struck with respect to both of BAT's remaining Counterclaims, which alleged fraud and negligent misrepresentation, insofar as BAT seeks rescission or equitable recoupment as a remedy. *Id.* at 15-16. Judge Aaron recommended, however, that BAT's jury demand be sustained "with respect to the claim in [NCR's] Complaint related to BAT's obligations under the CSA" *id.* at 13-14, as well as BAT's Counterclaims and defenses insofar as they do not seek rescission or equitable recoupment, *id.* at 16-17.

NCR filed objections to the Report and Recommendation on June 5, 2025. Dkt. 83 ("Objections"). NCR argues that BAT's jury demand was untimely under Federal Rule of Civil Procedure 38. *Id.* at 12-14. NCR also urges that BAT has no right to a jury trial under Rule 38 and the Seventh Amendment of the United States Constitution, including for BAT's Counterclaims

---

[5] On November 22, 2024, the undersigned issued an Amended Order of Reference referring NCR's anticipated motion to strike to Judge Aaron to issue a report and recommendation. Dkt. 54. The undersigned previously had referred this case to Judge Aaron for general supervision of pretrial matters. Dkt. 39.

alleging fraud and negligent misrepresentation. *Id.* at 5-12. BAT responded to NCR's objections on June 20, 2025, Dkt. 88 ("Response"), and NCR replied to that response on June 30, 2025, Dkt. 91.

## II. Standard of Review

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" in a Report and Recommendation, and must conduct *de novo* review of any part of the magistrate judge's disposition to which a party submits a proper objection. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). "To be proper, an objection must be clearly aimed at particular findings, and may not be conclusory or general." *Riaz v. Comm'r of Soc. Sec.*, No. 20 Civ. 8418 (JPC) (SLC), 2022 WL 4482297, at *2 (S.D.N.Y. Sept. 27, 2022) (internal quotation marks and citations omitted). "Parties may neither regurgitate the original briefs to the magistrate judge nor raise new arguments not raised to the magistrate judge in the first instance." *Id.* (internal quotation marks omitted); *accord United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019). A district court reviews for clear error those parts of a Report and Recommendation to which no party has filed proper or timely objections. 28 U.S.C. § 636(b)(1)(A); *see Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008) ("To accept those portions of the report to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." (internal quotation marks omitted)).

## III. Discussion

### A. Legal Standard

#### 1. Scope of the Jury Trial Right

The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const.

amend. VII.  The Supreme Court has "consistently interpreted the phrase 'Suits at common law' to refer to suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989) (internal quotation marks and emphasis omitted).  Although "the thrust of the Amendment was to preserve the right to jury trial as it existed in 1791," *Curtis v. Loether*, 415 U.S. 189, 193 (1974), the Court has emphasized that "the Seventh Amendment also applies to actions brought to enforce statutory rights that are *analogous* to common-law causes of action ordinarily decided in English law courts in the late 18th century," *Granfinanciera*, 492 U.S. at 42 (emphasis added); *see also SEC v. Jarkesy*, 603 U.S. 109, 122 (2024) ("[T]he right is not limited to the common-law forms of action recognized when the Seventh Amendment was ratified." (internal quotation marks omitted)).

"To determine whether a [contemporary] action is more similar to cases that were tried in courts of law than to suits tried in courts of equity or admiralty," a court "must examine both the nature of the action and of the remedy sought."  *Tull v. United States*, 481 U.S. 412, 417 (1987). This entails a two-step test.  First, a court "compare[s] the [contemporary] action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity," *id.*, and second, a court "examine[s] the remedy sought and determine[s] whether it is legal or equitable in nature," *id.* at 417-18.  Between these two steps, the second is the "[m]ore important," *Curtis*, 415 U.S. at 196, and also avoids relying upon a "possibly abstruse historical inquiry" into pre-merger custom, *Ross v. Bernhard*, 396 U.S. 531, 538 n.10 (1970).

Under both prongs of the analysis, "the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings."  *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477-78 (1962).  Rather, the analysis is functional, looking to the "heart of the action," *Ross*,

396 U.S. at 539, "whatever may be the peculiar form which [it] may assume," *Parsons v. Bedford*, 28 U.S. (3 Pet.) 433, 447 (1830). Consistent with this flexible inquiry, "[p]leadings subsequent . . . may frame one or more of the issues in a fashion that requires a jury trial," even though the legal nature of a claim may not have been apparent from a single pleading. Wright & Miller, 9 FED. PRAC. & PROC. CIV. § 2304 (4th ed. 2025).

In certain cases, a single claim has some aspects which sound in equity and other aspects which are purely legal. *See, e.g.*, *Ross*, 396 U.S. at 538 ("[T]he derivative suit has dual aspects."). When this occurs, "the right to trial by jury may [not] be lost" merely because the legal aspect of the claim is "characterized as 'incidental' to equitable issues." *Dairy Queen*, 369 U.S. at 470. As long as a "claim is, at least in part, a legal one," the right to a jury trial attaches. *Ross*, 396 U.S. at 542.

Just as a single claim can be partly legal and partly equitable, a single case can include some claims that are legal and other claims that are equitable. In that event, "the legal claims involved in the action must be determined prior to any final court determination of respondents' equitable claims." *Dairy Queen*, 369 U.S. at 479. Otherwise, "if an issue common to both legal and equitable claims was first determined by a judge, relitigation of the issue before a jury might be foreclosed by res judicata or collateral estoppel." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 334 (1979); *see also Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 550 (1990) ("When legal and equitable claims are joined in the same action, the right to jury trial on the legal claim, including all issues common to both claims, remains intact." (internal quotation marks omitted)).[6]

---

[6] The rule requiring legal claims to be tried before equitable claims is "prudential," *Parklane Hosiery*, 439 U.S. at 334, but "[s]ince the right to jury trial is a constitutional one, . . . [a court's] discretion is very narrowly limited," *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959). In evaluating "whether resolution of an equitable claim might infringe on the jury trial

### 2.      Extent of the Jury Trial Right

Even when there is a right to a jury trial on a particular claim, the Seventh Amendment protects only "the particular trial decision[s] [that] must fall to the jury in order to preserve the substance of the common-law right as it existed in 1791." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 376 (1996). In other words, the Seventh Amendment requires a jury to decide particular *issues* within a claim, but not necessarily the entire claim or the case as a whole. *See Ross*, 396 U.S. at 538 ("The Seventh Amendment question depends on the nature of the issue to be tried rather than the character of the overall action."). After all, "money damages are the prototypical common law remedy," *Jarkesy*, 603 U.S. at 123, but even in a suit for money damages, it has long been clear that "issues of law are to be resolved by the court," *Balt. & Carolina Line v. Redman*, 295 U.S. 654, 657 (1935). *See also Clark*, 89 F.4th at 100 ("[T]he right to a jury trial exists only with respect to disputed issues of fact." (cleaned up)).

Federal Rule of Civil Procedure 38 likewise reflects the fact that the "issue" is "the basic decisional unit in determining the right to jury trial." Wright & Miller, *supra*, at § 2302. Rule 38 allows parties to demand a jury trial "[o]n any *issue* triable of right by a jury." Fed. R. Civ. P. 38(b) (emphasis added). And in a jury demand, a party must "specify the *issues* that it wishes to have tried by a jury." Fed. R. Civ. P. 38(c) (emphasis added).

It is difficult to define an "issue," but in a general sense, issues are "the disputed conclusions which can be drawn from the evidence." *Rosen v. Dick*, 639 F.2d 82, 94 (2d Cir. 1980). For example, an issue in a plaintiff's claim might be whether that claim is timely. Another

---

right," the Second Circuit has "considered whether the elements of the claims are so similar that a finding in favor of a party on one claim necessitates a finding for that party on the other claim as well." *Clark v. Hanley*, 89 F.4th 78, 101 (2d Cir. 2023) (cleaned up).

issue might be the extent of the plaintiff's injury, or whether that injury can be adequately compensated by money alone.

When an issue is purely equitable, it may be decided by a judge regardless of whether the issue is part of a broader legal claim. That is because even though the claim as a whole is a "Suit[] at common law" under the Seventh Amendment, a purely equitable determination need not "fall to the jury in order to preserve the substance of the common-law right as it existed in 1791." *Markman*, 517 U.S. at 376. For example, in a legal claim under 42 U.S.C. § 1983, a judge may decide the issue of whether the statute of limitations should be equitably tolled. *See Clark*, 89 F.4th at 100-04 (explaining that when "the factual issues relevant to [a plaintiff's] equitable tolling claim and her § 1983 claims are analytically and temporally distinct," a district court does "not intrude on [her] jury trial right by determining whether she was entitled to relief from the statute of limitations before proceeding further with her case"). Similarly, although a claim in which both legal and equitable remedies are sought "is, at least in part, a legal [claim]," *Ross*, 396 U.S. at 542, a judge may decide the purely equitable issue of whether equitable relief is warranted. *See Brown v. Sandimo Materials*, 250 F.3d 120, 128 (2d Cir. 2001) ("[T]he jury will determine all issues bearing on plaintiffs' breach of contract claim, [and] . . . [t]he district court will then be free to consider whether any equitable remedies are available."). The upshot, then, is that a court must determine whether there is a right to a jury trial on an issue-by-issue basis.

### 3.    Asserting the Jury Trial Right

When the right to a jury trial is not properly asserted, it is considered waived.[7] *See United*

---

[7] When a party fails to assert a right, it is generally more accurate to say that the right has been "forfeited." *See United States v. Olano*, 507 U.S. 725, 733 (1993) ("Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." (internal quotation marks omitted)).

*States v. Moore*, 340 U.S. 616, 621 (1951) ("No demand for a jury trial was made as required by Federal Rule of Civil Procedure 38, and, so far as this record shows, any right to a jury trial was waived." (internal citations omitted)); *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 117 (2d Cir. 2021) ("The record of proceedings before the district court makes clear that plaintiffs waived their jury demand. Accordingly, we need not address the substance of their Seventh Amendment argument." (footnotes omitted)).

To properly assert the right to a jury trial, Rule 38 requires a party to "serv[e] the other parties with a written demand . . . no later than 14 days after the last pleading directed to the issue is served." Fed. R. Civ. P. 38(b). "'[T]he last pleading directed to' an issue is not the pleading that raises the issue, it is the pleading that *contests* the issue." *McCarthy v. Bronson*, 906 F.2d 835, 840 (2d Cir. 1990) (emphasis added). "Normally," then, "that pleading is an answer, or, with respect to a counterclaim, a reply." *Id.*

Occasionally, the "last pleading directed to an issue" may be a later affirmative pleading such as an amended complaint or a new counterclaim, but that is true only when the later pleading requires a "factual determination to be made by the jury that falls outside the matrix of fact already covered in the pleadings," *Virgin Air, Inc. v. Virgin Atl. Airways, Ltd.*, 144 F.R.D. 56, 58 (S.D.N.Y. 1992), and thus raises "new issues" that are not "simply artful rephrasings of existing issues." *Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 356 (2d Cir. 2007) (internal quotation marks omitted). A "new issue" would be, for example, "the introduction of a new basic legal theory or a change in the character of the suit." *Cordius Tr. v. Kummerfeld*, No. 99 Civ. 3200 (DLC), 2006 WL 1876677, at *3 (S.D.N.Y. July 7, 2006). Under this exception, later pleadings

---

However, because courts commonly refer to the failure to assert the jury trial right as a "waiver," the Court uses that same language here.

"restart the clock for the filing of a timely demand for jury trial," *id.*, but only "with respect to [the] new issues raised by [those] later pleadings," *Westchester Day Sch.*, 504 F.3d at 356; *see also W. Geophysical Co. of Am. v. Bolt Assocs., Inc.*, 440 F.2d 765, 772 (2d Cir. 1971) (holding that even were the defendant entitled to a jury trial based on a demand made with respect to issues raised by newly pleaded counterclaims, the jury trial right had been waived with respect to the separate issues raised by earlier-pleaded counterclaims).

This general rule and its exception reflect a balancing of two competing notice-based considerations. On one hand, parties must declare their intention to seek a trial by jury promptly, so that all other parties know in advance which fact-finder they should expect will decide their case. *See Rosen*, 639 F.2d at 87 ("Undoubtedly, Rule 38 embodies the equitable principle[] of . . . adequate notice (for the other parties in an action)."). But on the other hand, parties must also be "on notice of the underlying facts and basic legal theory" before they can be expected to decide whether they should stand on their right to a jury. *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1310 (2d Cir. 1973). Put together, Rule 38 is intended to "satisfy justifiable expectations while avoiding undue surprise." *Rosen*, 639 F.2d at 87-88. In so doing, the rule measures the "point during the pretrial pleading stage of [a] litigation [that] the pleadings finally framed the various issues to be put before the trier-of-fact." *Commc'ns Maint., Inc. v. Motorola, Inc.*, 761 F.2d 1202, 1208 (7th Cir. 1985).

Requiring a jury demand within fourteen days of an answer to a complaint—or a reply to a counterclaim—tends to balance these considerations because it is the earliest time at which a party will be able to know how his counter-party intends to respond to the issues his claim presents. Indeed, the only instance in which the issues will *not* have been properly "framed" at that point in the litigation is when a party subsequently files an amended pleading that changes the "general

area of dispute," *Lanza*, 479 F.2d at 1310—which is why, in such a case, a party may still file a jury demand as to any new issues within fourteen days of that amended pleading (or any reply thereto).

This same set of considerations also produces a special timeliness rule with regard to counterclaims. Under that rule, "[i]f the counterclaim raises the same issues as does the [complaint and] answer, then a demand made within 14 days after the reply to the counterclaim is effective as to those issues." Wright & Miller, *supra*, at § 2320.

The logic of this rule rests on two principles. First, the parties' position on an issue in a defendant's counterclaim is not sufficiently "framed" until the plaintiff files a reply to that counterclaim. *See McCarthy*, 906 F.2d at 840 ("'[T]he last pleading directed to' an issue is . . . with respect to a counterclaim, a reply."). And second, if there is a timely jury demand on an issue that is a part of a counterclaim, then that issue must also be decided by a jury in relation to other aspects of the case. *See Lytle*, 494 U.S. at 550 ("When [multiple] claims are joined in the same action, the right to [a timely asserted] jury trial on the legal claim, including all issues common to both claims, remains intact." (internal quotation marks omitted)). Based on these two principles, if the issues raised by the claims in a complaint and the issues raised by a counterclaim are the same, then a jury demand within fourteen days of a reply to the counterclaim will ensure that all issues are tried to a jury. *See, e.g.*, *Whirlpool Fin. Corp. v. Sevaux*, 866 F. Supp. 1102, 1105 (N.D. Ill. 1994) (requiring a jury trial on all issues because "the factual issues raised by [the defendant] in his counterclaims . . . are inextricably intertwined with [the plaintiff]'s allegation [in its complaint]").

But things are not always so straightforward. A counterclaim could have issues overlapping with the complaint, while there may still be issues in the action which are entirely

15

unique to the complaint. When that occurs, a jury demand that is timely as to a counterclaim will not revive the jury right as to the unique issues raised by the claims in the complaint. *See, e.g.*, *Christenson v. Diversified Builders Inc.*, 331 F.2d 992, 995 (10th Cir. 1964) (holding that a jury demand was timely only as to a third-party surety claim and not the underlying dispute arising out of the same contract); *Rosen*, 639 F.2d at 96 (discussing *Christenson* with approval); *Winchester Indus., Inc. v. Sentry Ins.*, 630 F. Supp. 2d 237, 240-41 (D. Conn. 2009) ("[W]hile the evidence overlaps for both the malpractice count and the counterclaim, the 'ultimate issue for decision' is different," so "[u]nder the Second Circuit's [precedent], the stronger position with respect to Rule 38 likely is that the [claim and counterclaim] are sufficiently distinct that the jury demand should not extend to the [original malpractice] claim.").

This is similar to how a jury demand as to new issues raised in an amended pleading does not revive the jury right with respect to separate issues that were raised in initial pleadings. *See W. Geophysical Co. of Am.*, 440 F.2d at 772. Both rules follow from the premise that a jury demand must be made after the last pleading in which an issue is "finally framed." *Commc'ns Maint.*, 761 F.2d at 1208. So when an issue is properly framed by the complaint and the answer, and then is not altered by subsequent pleadings, the time for a jury demand is fourteen days after the answer—not after a reply to a counterclaim that may have come many months later.

## B. Analysis

### 1. Whether BAT's Jury Demand Was Timely Under Rule 38

NCR's Complaint was filed on February 10, 2023, Dkt. 1; BAT's Answer, including its Counterclaims, was filed on June 23, 2023, Dkt. 21; NCR's Reply to the two remaining Counterclaims was filed on October 18, 2024, Dkt. 43; and BAT's jury demand was filed twelve days after NCR's Reply, on October 30, 2024, Dkt. 48. BAT's jury demand therefore was

unquestionably timely as to any issues raised in its Counterclaims, as its demand was filed within fourteen days of NCR's Reply.  *See* Fed. R. Civ. P. 38(b)(1).  The more difficult question is whether the jury demand was also timely as to all issues raised in NCR's Complaint, notwithstanding the filing of the jury demand over a year after BAT's Answer.

BAT argues that its demand is timely as to all issues raised by the claims in the Complaint—including the affirmative defenses to those claims raised in its Answer—because its Counterclaims "raise the exact same issues" as the original pleadings.  Response at 10.  BAT points to the fact that its surviving Counterclaims for fraud and negligent misrepresentation both "seek[] a declaratory judgment that the CSA is null and void."  *Id.* (internal quotation marks omitted). According to BAT, this implicates the same issues raised by the Complaint because the Complaint "ultimately seeks a declaration that BAT must compensate NCR," which, in turn, "will require the Court to consider and rule on whether the CSA is unenforceable."  *Id.* (internal quotation marks omitted).  The Report and Recommendation similarly treated NCR's Reply to BAT's Counterclaims as "the last pleading addressed to the issues raised in the Complaint," because determining "the enforceability of the CSA . . . will involve addressing Defendant's Counterclaims."  R&R at 10-11.

This Court agrees in large part.  While NCR's Reply was the last pleading directed to *some* of the issues in the Complaint, it was not the last pleading directed to *all* of the issues in the Complaint.  As discussed above, "the basic decisional unit in determining the right to jury trial" is not a pleading or a claim as a whole—it is "the particular issue within a case on which [a] jury trial is demanded."  Wright & Miller, *supra*, at § 2302; *see also Ross*, 396 U.S. at 538 ("The Seventh Amendment question depends on the nature of the issue to be tried rather than the character of the overall action."); Fed. R. Civ. P. 38(b)(1) (providing that a jury demand be made on "any *issue*

triable of right by a jury" and be served "no later than 14 days after the last pleading directed to the *issue*" (emphases added)).  And a pleading is not necessarily directed to each particular issue raised by the claims in a complaint just because it addresses some of the issues raised by that claim, and thus relates to the same overarching dispute.  *Cf. Clark*, 89 F.4th at 100-04 (disaggregating "the factual issues relevant to [the plaintiff's] equitable tolling claim and her § 1983 claims" even though both could be said to "arise from the same set of operative facts").

Here, for instance, BAT's second affirmative defense argues that NCR breached the CSA, its sixth affirmative defense argues that NCR failed to mitigate damages, and its seventh affirmative defense argues that the CSA violates public policy.  Each of these defenses raises a host of issues regarding NCR's original claim, but BAT's Counterclaims for fraud and negligent misrepresentation—and by extension, NCR's Reply to those Counterclaims—do not directly bear on those issues.  After all, it could be that NCR breached the CSA and failed to mitigate damages, and that the CSA violates public policy, even if, at the same time, NCR did not commit fraud or negligently misrepresent facts to BAT.  For that reason, NCR's Reply to BAT's Counterclaims did not help frame each *particular* issue that BAT seeks a jury trial on.

If the rule were otherwise, then parties would lack certainty about which fact-finder would be deciding issues in their case even long after the parties' positions on those issues had been teed up.  *See W. Geophysical Co. of Am.*, 440 F.2d at 772 (explaining that the defendant was not entitled to a jury trial where the defendant "failed to" make a demand until "three and a half years after the suit was brought" and "after extensive discovery on the issues raised by the complaint [and] the answer").  In the present case, BAT's Answer to NCR's Complaint was filed in June 2023.  But under BAT's view, NCR would then have had to wait until October 2024 to learn whether BAT would ultimately demand a jury as to issues finally framed over a year earlier.  That view is far

18

afield from the "equitable principles" Rule 38 "embodies." *Rosen*, 639 F.2d at 87-88 (teaching that Rule 38 should "satisfy justifiable expectations while avoiding undue surprise").

*Binger v. Unger*, 7 F.R.D. 121 (S.D.N.Y. 1946), and *Tights, Inc. v. Stanley*, 441 F.2d 336 (4th Cir. 1971), on which BAT rely, are consistent with this view of jury-trial waiver. *See* Response at 9. In *Binger*, both the plaintiff's complaint and the defendant's counterclaim raised the issue of the validity of a patent, and a jury demand was filed shortly after the reply to the counterclaim. 7 F.R.D. at 122. Because the demand was thus timely as to the issue of the patent's validity, the court concluded that the *issue of validity* was triable to the jury such that the case belonged on the court's jury calendar, but the court did not hold that the jury demand was timely as to *all* issues raised by the claims in the complaint. *Id.* ("[T]hese pleadings were, *at least in part*, directed to the issue triable by right of jury." (emphasis added)). By contrast, in *Tights* the Fourth Circuit actually did find the jury demand to be timely as to all issues. But that was because "the issues of [patent] validity and infringement raised by the respective counterclaims . . . [were] *identical* to the issues of validity and infringement raised by the original complaints," which meant that "the last pleadings directed to [all of the] issues [were] the replies to the counterclaims." *Tights*, 441 F.2d at 344 n.21 (emphasis added). *Tights* is thus not relevant here, where the overlap between the issues raised by NCR's claims in the Complaint and BAT's Counterclaims is only partial: BAT's Counterclaims challenge the CSA's enforceability, but not whether, for instance, NCR breached the CSA or failed to mitigate damages.

That partial overlap makes the circumstances more analogous to those presented in *Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55 (1st Cir. 2003), and *Transocean Air Lines v. Pan American World Airways, Inc.*, 36 F.R.D. 43 (S.D.N.Y. 1964). In *Bogosian*, the plaintiff stated a claim for breach of fiduciary duty, alleging that the defendants had acted in bad faith by

19

initiating an earlier litigation. *Bogosian*, 323 F.3d at 59, 62. The defendants then counterclaimed that the plaintiff had breached her own fiduciary duty by using corporate funds to handle her personal defense in that same earlier litigation. *Id.* at 60. The First Circuit held that the jury demand, which was made within fourteen days of the reply to the counterclaim but more than fourteen days after the answer to the complaint, was untimely as to issues raised only by the claims in the complaint. Even though the issues in the plaintiff's "complaint and [the defendants'] counterclaim arose from a common factual setting," the issues that were unique to the initial pleadings had already been framed by the defendants' answer. *Id.* at 62. In other words, because the complaint and counterclaim "were not [completely] 'interwoven,'" her "latter demand" failed to "preserve[] her right" on the complaint-specific issues. *Id.* at 61-62.

Similarly, the plaintiffs' complaint in *Transocean Air Lines* raised antitrust and unfair competition claims which alleged that the defendants' anti-competitive conduct had forced the plaintiffs to enter into an unfavorable contract, while the defendants counterclaimed for payment on that same contract. 36 F.R.D. at 44-45. The plaintiffs' jury demand, which was made shortly after their reply to the counterclaim, was held to be untimely as to the issues that were unique to their claims in the complaint. Even though the complaint had "alleg[ed] conduct which might present a real defense" to the defendants' counterclaim, the overlap was incomplete, so the jury demand was not timely as to each issue that was initially raised. *Id.*

As reflected by these decisions, a jury demand made within fourteen days of a reply to a counterclaim is timely as to the issues that were part of the counterclaim. But a party cannot demand a jury trial as to issues relevant only to the complaint and answer, regardless of whether the entire dispute ultimately shares "a common factual setting." *Bogosian*, 323 F.3d at 62. From this principle, it follows that BAT's jury demand was not timely as to issues unique to the claims

in NCR's Complaint.[8]

### 2. Whether There is a Seventh Amendment Right to a Jury Trial on BAT's Counterclaims

Although BAT's jury demand was unquestionably timely under Rule 38 as to the issues raised in its Counterclaims, NCR contends that there is no Seventh Amendment right to trial by jury on those claims. Specifically, NCR argues that "the equitable remedies of rescission and equitable recoupment are the *only* forms of relief BAT seeks with respect to its remaining counterclaims." Objections at 9. And because "both of those remedies [are] equitable in nature," NCR says that there is no entitlement to a jury. *Id.* at 10.

On this issue, the Report and Recommendation started by "compar[ing] the [contemporary] action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity," *Tull*, 481 U.S. at 417, and concluded that, "[i]n eighteenth-century England, fraud was equally within the jurisdiction of courts of law and equity," R&R at 14. Judge Aaron then turned to "whether the remedy sought in Defendant's Counterclaims is legal or equitable in nature." R&R at 15; *see Tull*, 481 U.S. at 417-18. On this point, Judge Aaron concluded that, to the extent that BAT seeks a "declaration that NCR is not entitled to any payments from BAT under the CSA relating to the Kalamazoo River," that would be "a quintessential[ly] legal [remedy] since it relates to the payment of money," and thus, the jury right would attach. R&R at 15. However, Judge Aaron cautioned that "BAT's Counterclaims request a declaration that the CSA is null and void, which is tantamount to a request for rescission." *Id.* (citation modified). "[T]o the extent that BAT in its Counterclaims seeks rescission of the entire CSA," Judge Aaron concluded that

---

[8] Given this conclusion, the Court does not reach whether BAT would otherwise have had a right to a jury trial on issues uniquely raised in NCR's Complaint or BAT's affirmative defenses.

"such issue would need to be decided by the Court, and not by the jury." *Id.* at 16.[9]

This Court agrees with that analysis. As Judge Aaron recognized, *see* R&R at 14-15, "fraud is not distinctively either a legal issue or one of an equitable nature," so "the jury right turns on the remedy sought and the context in which the fraud claim arises."[10] Wright & Miller, *supra*, at § 2311 (cleaned up); *see also* P. Devlin, *Jury Trial of Complex Cases: English Practice at the Time of the Seventh Amendment*, 80 COLUM. L. REV. 43, 55 (1980) (explaining that fraud historically could be brought in courts of law and courts of equity). Here, part of the remedy that BAT seeks on its fraud and negligent misrepresentation Counterclaims is a declaration that it is not required to pay NCR under the CSA. Dkt. 21 at 39. As Judge Aaron correctly noted, *see* R&R at 15, this remedy is legal because it seeks to prevent NCR from forcing BAT to pay money, and "money damages are the prototypical common law remedy." *Jarkesy*, 603 U.S. at 123; *see also Beacon Theatres*, 359 U.S. at 504 (explaining that the availability of a declaratory judgment "allow[s] prospective defendants to sue to establish their nonliability, [but] specifically preserves the right to jury trial for both parties"); Wright & Miller, *supra*, at § 2311 ("[W]hen the fraud defense is interposed to an action at law . . . and when such an action is imminent or pending, . . . the parties will be left to their rights as determined at law.").

In its objections to the Report and Recommendation, NCR argues that based on the way

---

[9] Along similar lines, Judge Aaron concluded that "to the extent that [BAT] seeks equitable recoupment . . . by way of its Counterclaims, such . . . counterclaim raise[s] equitable, not legal issues, as to which there is no right to a jury trial." R&R at 16 (internal citations omitted).

[10] For jury-trial purposes, no meaningful distinction can be drawn between BAT's counterclaim for fraud and its counterclaim for negligent misrepresentation. In fact, the concepts of "fraud" and "misrepresentation" are so closely linked that BAT's counterclaim for "fraud" actually seems to allege what is commonly referred to as a "fraudulent misrepresentation." *See* RESTATEMENT (SECOND) OF CONTRACTS § 164 (referring to "a fraudulent or a material misrepresentation").

that BAT pleaded its Counterclaims, it "sought a declaration that NCR is not entitled to any payments only as to counterclaims that the Court has dismissed." Objections at 9 (internal quotation marks omitted). In other words, if "the R&R traced the requests in [BAT's] general Prayer for Relief section to the individual counterclaims, it would have found that the request for a declaration that NCR is not entitled to any payments had been dismissed with the three counterclaims that actually requested that declaration as a form of relief." *Id.* at 10 (internal quotation marks omitted). This hyper-technical parsing of BAT's Counterclaims is not persuasive. *See Conley v. Gibson*, 355 U.S. 41, 48 (1957) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."); *see also Dairy Queen*, 369 U.S. at 477-78 ("[T]he constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings."). When the Court dismissed BAT's third, fourth, and fifth Counterclaims, it dismissed those specific claims—not the general prayer for a declaration that NCR was not entitled to payment under the CSA.

Because the relief that BAT seeks is partly legal, BAT's fraud and negligent misrepresentation claims are "at least in part . . . legal one[s]." *Ross*, 396 U.S. at 542. BAT is thus entitled to a jury trial on issues relating to those Counterclaims. *See Dairy Queen*, 369 U.S. at 470 ("[T]he right to trial by jury may [not] be lost as to legal issues [because] those issues are characterized as 'incidental' to equitable issues."); *In re Brazile*, 993 F.3d 593, 595 (8th Cir. 2021) ("[T]he remedy sought is at least partially legal, and Brazile has a right to trial by jury."); Wright & Miller, *supra*, at § 2306 ("[T]he constitutionally required solution in the situations in which a single issue may be either legal or equitable depending upon the remedy that may be awarded is to have a jury decide the issue." (footnote omitted)). To be sure, whether BAT is entitled to

23

rescission or equitable recoupment as a remedy would ultimately be determined by the Court. *See Clark*, 89 F.4th at 100-04 (deciding an equitable issue within the context of a legal claim); *Brown*, 250 F.3d at 128 ("[T]he jury will determine all issues bearing on plaintiffs' breach of contract claim, [and] . . . [t]he district court will then be free to consider whether any equitable remedies are available."). But such a determination would come only after a jury's decision. *See Dairy Queen*, 369 U.S. at 479 ("[T]he legal claims involved in the action must be determined prior to any final court determination of respondents' equitable claims.").

## IV. Conclusion

For the foregoing reasons, the Court adopts the Report and Recommendation in substantial part and as modified. NCR's motion to strike BAT's jury demand is granted with respect to issues that are unique to the claims in NCR's Complaint. But NCR's motion to strike is denied with respect to issues raised by BAT's first and second Counterclaims, including any issues raised by those Counterclaims that were also raised in the Complaint. And should the parties ultimately proceed to a jury trial on BAT's Counterclaims, it would be for the Court to ultimately determine whether equitable relief is warranted.

This decision is also without prejudice for NCR to renew its motion to strike after the close of discovery and the resolution of any motions for summary judgment. *See Chen v. Hunan Manor Enter., Inc.*, 340 F.R.D. 85, 89 (S.D.N.Y. 2022) ("A court has the discretion to permit a motion to strike a jury demand at any time, even on the eve of trial." (cleaned up)). Such a renewed motion may be appropriate should the legal or equitable character of issues change as the case progresses. *See, e.g.*, *Enchante Accessories, Inc. v. Turko Textiles, LLC*, No. 19 Civ. 581 (GHW) (SN), 2023 WL 395221, at *4 (S.D.N.Y. Jan. 25, 2023) ("Plaintiff has claimed to be pursuing 'damages' but has failed to make the disclosures mandated under Rule 26, and therefore is automatically

24

precluded from presenting related evidence at trial under rule 37. . . . All of Plaintiff's remaining claims are equitable in nature, and thus it is not entitled to a jury trial.").

 The Clerk of Court is respectfully directed to close the motion at Docket Number 58.

 SO ORDERED.

Dated: September 30, 2025
  New York, New York

              _____
                 JOHN P. CRONAN
              United States District Judge