

Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017
T  +1 212 918 3000
F  +1 212 918 3100
www.hoganlovells.com

April 16, 2026

*Via ECF*

Hon. Stewart D. Aaron
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10027

**Re:**   *NCR Corporation v. B.A.T Industries p.l.c.*, **No. 1:23-cv-01172-JPC**

Dear Judge Aaron:

We represent Defendant B.A.T Industries p.l.c. ("BAT") in the above-captioned action. We write to request a conference with Your Honor regarding Plaintiff NCR Corporation's ("NCR") refusal to designate a 30(b)(6) witness to testify to critical issues relevant to this litigation.

On January 16, 2026, BAT served its Notice of 30(b)(6) Deposition to NCR ("BAT's Notice"). *See* Exhibit A. On January 21, NCR objected to the entire first half of BAT's Notice, refusing to designate a witness to testify to any of the first 16 topics ("Topics 1-16"). *See* Exhibit B.

There is no basis for NCR to object to producing a Rule 30(b)(6) witness on these topics. Topics 1-16 address the central issues in the case – NCR's knowing production and disposal of toxic PCB chemicals used in its carbonless copy paper ("CCP") and NCR's fraudulent concealment of the toxicity of PCBs, resulting in billions of dollars of environmental liability. NCR has brought this case to transfer a portion of that liability to BAT. BAT asserts that NCR cannot recover damages from BAT because NCR fraudulently concealed its wrongdoing from BAT and because NCR's effort to transfer liability for its own improper actions violates public policy.

NCR contends that Topics 1-16 are 1) not relevant to the claims and counterclaims in this litigation and 2) unduly burdensome and not proportional to the needs of the case. NCR's arguments are without merit and should be rejected.

*Relevance*

NCR argues that Topics 1-16 are "irrelevant to any claim or counterclaim in this case." Exhibit C, January 28, 2026 NCR Letter to BAT re 30(b)(6) Topics.  To the contrary, these topics are not just relevant, they are fundamental to the issues in the case.

As BAT alleged in its Answer and Counterclaims, "[t]his case arises from NCR's egregious and intentional pollution of American waterways with toxic compounds from the 1950s through the 1970s and its fraudulent and wrongful attempt to foist liability for its conduct on" BAT.  Dkt. 21, BAT's Counterclaims at ¶ 1. Moreover, as further alleged, "a series of federal court decisions…has found [that] NCR knew for years that its products were 'hazardous' and that by-products of its manufacturing were 'worthless waste…at best.' Yet, even after learning that its product was poisoning people and the environment, NCR did not cease production. Instead, it increased it…[and] 'deliberately attempted to conceal…the toxic nature of' its broke as part of a scheme to mislead the public and the government, pass NCR's broke off as 'useful,' and generate billions of dollars in revenues while 'getting rid of a substance it knew to be hazardous.'" *Id*. at ¶ 2.

These are the exact topics upon which BAT has requested testimony under Rule 30(b)(6).  BAT asserts that NCR knowingly concealed its improper actions from BAT when it induced BAT to execute the CSA.  BAT is plainly entitled to discovery on those facts.

Additionally, BAT's seventh affirmative defense asserts that NCR intentionally caused harm by knowingly dumping toxic PCBs into the Fox and Kalamazoo rivers. *See id.* at ¶ 16. Such intentional misconduct would render the indemnification provisions of the CSA void. *See Modular Devices, Inc. v. Alcatel Alenia Space Espana*, 2010 WL 3236779, at *4–5 (E.D.N.Y. 2010) (under New York law, "indemnification agreements are unenforceable as violative of public policy to the extent that they purport to indemnify a party for damages flowing from the intentional causation of injury"). NCR's knowledge of the issues outlined in Topics 1–16 (and thus the intentionality of NCR's conduct) is a key piece of BAT's defense. Moreover, NCR has not argued that these topics are irrelevant to the public policy defense, and thus appears to acknowledge their relevance.

In fact, NCR's own 30(b)(6) Notice addresses many of the same issues. In particular, NCR seeks testimony from BAT regarding facts that NCR, Sidley, and/or NCR's CSA negotiating team "knew (or allegedly should have known) in 1998–99 regarding:" 1) "the NCR Paper Business's knowledge during the Production Period of harmful effects of Aroclor 1242 in the environment;" and 2) "whether the recycling of NCR Paper broke during the Production Period resulted in the discharge of Aroclor 1242 to the environment." Exhibit D.

Accordingly, Topics 1-16 are plainly relevant to this litigation.

***Burden and Proportionality***

NCR also claims that Topics 1–16 are unduly burdensome and not proportional to the needs of the case. NCR argues that "Topics 1–16 span[] decades and [have] evolved through investigation, legal developments, and extensive litigation…" Exhibit C. NCR also argues that a witness would have to review "thousands of documents" to prepare to testify to these topics. *See id*.

But NCR's burden arguments are hollow, as the information requested by BAT is readily available. As numerous witnesses have testified, NCR conducted an extensive investigation of these very issues and has already collected the information requested by BAT. *See* Exhibit E,

April 16, 2026

NCRV_00018454 at 253:6-16 and 256:14-257:15 ("NCR undertook a factual investigation into all the issues that we could think of that related to all the claims we expected to be asserted against the companies [regarding the knowledge of PCBs and their alleged consequences back in the '60s and '70s] and that [began] as early as 1996 or 1997 [and] continued through the *Whiting* litigation").[1]  Moreover, NCR has already litigated these issues through trial in the *Whiting* litigation, and thus certainly has all of the evidence in its possession in a readily available form. Accordingly, NCR's 30(b)(6) witness would merely need to testify to the facts and conclusions arising from the work the company and its lawyers have already done, alleviating any alleged burden. *See Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 306 (S.D.N.Y. 2012) (allowing for discovery objected to as overly burdensome where defendant had already performed work "similar to the [discovery] requested by the plaintiffs").

NCR also argues that there are no individuals available to provide substantive information on these topics. But that is not true. John Heyde, a lawyer currently at Sidley Austin who was designated as NCR's 30(b)(6) witness on other issues, was personally involved in the referenced factual investigation and various litigations addressing these issues, and is available to provide information. As is Evan Westerfield, a former partner of Sidley who also participated in the factual investigation and litigations on these issues. In addition, former employees of NCR who were involved in the investigation and litigations are available as well.

In an effort to address NCR's burden concerns, BAT offered to provide a list of the documents it is aware of that relate to these issues (principally the documents and exhibits in the prior federal litigations that addressed these same issues), and to agree that the Rule 30(b)(6) witness would need to review only the listed documents in preparation for the deposition. NCR did not accept BAT's offer. Instead, it offered a new proposal under which NCR would agree only to provide testimony concerning the date such documents were received by NCR, but not any substantive information about Topics 1–16. Accordingly, the parties were not able to resolve the issue.

### *Meet and Confer Efforts*

The parties have engaged in extensive efforts to resolve this issue, without success. The parties first met and conferred on January 21. On January 23, BAT emailed NCR outlining the parties' respective positions and agreed upon follow up tasks, as articulated at the January 21 meet and confer. *See* Exhibit F. The parties thereafter exchanged letters on January 28 (Exhibit C), February 25 (Exhibit G), February 27 (Exhibit H), March 6 (Exhibit I), March 10 (Exhibit J), and March 18 (Exhibit K). The parties met and conferred again on March 31. However, the parties have been unable to resolve their differences, and therefore request the intervention of the Court.

Respectfully submitted,
Dennis H. Tracey III
Partner

---

[1] Although NCR's legal counsel led the referenced investigation, there is no dispute between the parties that the investigation was conducted as part of a joint defense effort and is therefore not privileged as against BAT.