# Exhibit B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NCR CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>B.A.T INDUSTRIES p.l.c.,<br><br>Defendant. | No.: 1:23-cv-1172-JPC-SDA |

**PLAINTIFF NCR CORPORATION'S RESPONSES AND OBJECTIONS TO DEFENDANT'S B.A.T. INDUSTRIES P.L.C'S NOTICE OF 30(b)(6) DEPOSITION**

Pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, Plaintiff NCR Corporation ("NCR"), by and through the undersigned attorneys, submits the following objections and responses to Defendant B.A.T Industries p.l.c.'s ("BAT") Notice of 30(b)(6) Deposition, dated and served on January 16, 2026, (the "Notice") and the subject matters identified in Schedule A thereto (the "Topics").

All responses and objections are based on current knowledge and belief. NCR makes its objections without waiver of any rights. NCR expressly reserves the right, but does not assume any obligation to, supplement, revise, clarify, or amend the content of the Responses and Objections herein. Nothing herein should be construed as a waiver or admission regarding the admissibility, truth, accuracy, or relevance of any issue referenced in the Topics or otherwise.

These responses and objections are based upon NCR's good faith interpretation of the Notice. Should a different interpretation of any Topic be asserted, NCR reserves the right to add to, modify, or otherwise change or amend these Responses and Objections. In furnishing these Responses and Objections, NCR does not admit or concede the relevance, materiality, or

admissibility in evidence of any Topic or any information included in response thereto. All objections to the use, at trial or otherwise, of any information disclosed in response to the Notice are expressly reserved.

**NCR's DEFINITIONS**

1. "Production Period" means 1954 through 1971.
2. "Relevant Period" means January 1, 1994 through December 31, 1999.

**OBJECTIONS TO DEFINITIONS**

NCR objects to the definition of "API" as ambiguous. "Appleton Papers, Inc." (with the comma) was the name of a wholly-owned subsidiary of NCR between 1971 and 1973. "Appleton Papers Inc." (without the comma) is the company that is one of the parties to the CSA. NCR interprets "API" to mean Appleton Papers Inc. (without the comma).

NCR objects to the definition of "NCR" as unduly burdensome to the extent it purports to include all subsidiaries and divisions of NCR. NCR will prepare its designees on the basis that "NCR" means NCR Corporation, now known as NCR Voyix Corporation, a Maryland corporation.

NCR objects to the definition of "Georgia Pacific Litigation" as vague and ambiguous insofar as it appears to refer only to a single judicial decision whereas multiple judicial decisions have been issued in the civil action captioned *Georgia-Pacific Consumer Products LP v. NCR Corporation*, No. 1:11-cv-00483 (W.D. Mich.).

**SPECIFIC RESPONSES AND OBJECTIONS**

**TOPIC NO. 1**

NCR's knowledge of A1242's and/or CCP's toxicity, including: experiments or other investigations into potential or known A1242/CCP toxicity of which NCR was aware, the times

such experiments or other investigations occurred, the conclusions reached, and any related communications.

**RESPONSE TO TOPIC NO. 1**

NCR objects to this Topic as irrelevant to the claims and counterclaims that remain in this action. NCR further objects to this Topic as overbroad and not proportional to the needs of the case, including because it calls for information falling outside of the Relevant Period.

NCR will not designate a Rule 30(b)(6) witness on this Topic.

**TOPIC NO. 2**

NCR's knowledge of general PCB toxicity, including: experiments or other investigations into potential or known PCB toxicity of which NCR was aware, the times such experiments or other investigations occurred, the conclusions reached, and any related communications.

**RESPONSE TO TOPIC NO. 2**

NCR objects to this Topic as irrelevant to the claims and counterclaims that remain in this action. NCR further objects to this Topic as vague, overbroad, and not proportional to the needs of the case including because it calls for information falling outside of the Relevant Period, and does not define the meaning of "general PCB toxicity."

NCR will not designate a Rule 30(b)(6) witness on this Topic.

**TOPIC NO. 3**

NCR's knowledge that A1242 does not degrade, including: experiments or other investigations into potential or known A1242 degradation of which NCR was aware, the times such experiments or other investigations occurred, the conclusions reached, and any related communications.

**RESPONSE TO TOPIC NO. 3**

NCR objects to this Topic as irrelevant to the claims and counterclaims that remain in this action. NCR further objects to this Topic as overbroad and not proportional to the needs of the case, including because it calls for information falling outside of the Relevant Period.

NCR will not designate a Rule 30(b)(6) witness on this Topic.

**TOPIC NO. 4**

NCR's efforts to identify a replacement for A1242 for use in the manufacture of CCP, its decision as to when to replace A1242, and any communications or documents related to that decision.

**RESPONSE TO TOPIC NO. 4**

NCR objects to this Topic as irrelevant to the claims and counterclaims that remain in this action. NCR further objects to this Topic as overbroad and not proportional to the needs of the case, including because it calls for information falling outside of the Relevant Period.

NCR will not designate a Rule 30(b)(6) witness on this Topic.

**TOPIC NO. 5**

The increase in production of CCP prior to the replacement of A1242 in the manufacture of CCP, and any communications or documents related to those efforts.

**RESPONSE TO TOPIC NO. 5**

NCR objects to this Topic as irrelevant to the claims and counterclaims that remain in this action. NCR further objects to this Topic as overbroad and not proportional to the needs of the case, including because it calls for information falling outside of the Relevant Period.

NCR will not designate a Rule 30(b)(6) witness on this Topic.

**TOPIC NO. 6**

NCR relationship to any third-party waste paper brokers and/or recyclers, including any communications or directives made to them.

**RESPONSE TO TOPIC NO. 6**

NCR objects to this Topic as vague, overbroad, and not proportional to the needs of the case, including because it calls for information falling outside of the Relevant Period and calls for testimony regarding NCR's relationships with brokers or recyclers without specificity or limitation.

NCR will not designate a Rule 30(b)(6) witness on this Topic.

**TOPIC NO. 7**

NCR's knowledge of environmental risks of manufacturing and recycling CCP, including any communications and/or documents related to those environmental risks and NCR's knowledge thereof.

**RESPONSE TO TOPIC NO. 7**

NCR objects to this Topic as irrelevant to the claims and counterclaims that remain in this action. NCR further objects to this Topic as overbroad and not proportional to the needs of the case, including because it calls for information falling outside of the Relevant Period.

NCR will not designate a Rule 30(b)(6) witness on this Topic.

**TOPIC NO. 8**

NCR's efforts to avoid CCP being publicly linked with PCBs, including any communications with government regulators or with other corporate entities in the US or abroad.

**RESPONSE TO TOPIC NO. 8**

NCR objects to this Topic as irrelevant to the claims and counterclaims that remain in this action. NCR further objects to this Topic as overbroad and not proportional to the needs of the case, including because it calls for information falling outside of the Relevant Period.

NCR will not designate a Rule 30(b)(6) witness on this Topic.

**TOPIC NO. 9**

NCR's knowledge, as found in the Georgia Pacific Litigation, "that waste water treatment in paper recycling operations would do little, if anything, to remove PCBs from" effluent deposited into the environment as part of the CCP, broke, or trim recycling process.

**RESPONSE TO TOPIC NO. 9**

NCR objects to this Topic as irrelevant to the claims and counterclaims that remain in this action. NCR further objects to this Topic as vague and overbroad and not proportional to the needs of the case, including because it calls for information falling outside of the Relevant Period as to the "knowledge" at issue and fails to specify what knowledge the Topic purports to refer to except that it was derived from a prior litigation.

NCR will not designate a Rule 30(b)(6) witness on this Topic.

**TOPIC NO. 10**

NCR's analysis of the possibility of destroying CCP, broke, or trim by other methods, including incineration, and NCR's reasons for pursuing or not pursuing those approaches to disposal.

**RESPONSE TO TOPIC NO. 10**

NCR objects to this Topic as irrelevant to the claims and counterclaims that remain in this action. NCR further objects to this Topic as overbroad and not proportional to the needs of the case, including because it calls for information falling outside of the Relevant Period.

NCR will not designate a Rule 30(b)(6) witness on this Topic.

**TOPIC NO. 11**

NCR's communications with regulators regarding the toxicity or potential toxicity of CCP, broke, or trim.

**RESPONSE TO TOPIC NO. 11**

NCR objects to this Topic as irrelevant to the claims and counterclaims that remain in this action. NCR further objects to this Topic as overbroad and not proportional to the needs of the case, including because it calls for information falling outside of the Relevant Period.

NCR will not designate a Rule 30(b)(6) witness on this Topic.

**TOPIC NO. 12**

NCR's sales of CCP broke or trim to recyclers, and/or brokers.

**RESPONSE TO TOPIC NO. 12**

NCR objects to this Topic as overbroad and not proportional to the needs of the case, including because it calls for information falling outside of the Relevant Period.

NCR will not designate a Rule 30(b)(6) witness on this Topic.

**TOPIC NO. 13**

Other ways in which NCR disposed of or dealt with broke and trim, other than by selling this to recyclers/brokers (for example, sending broke or trim to landfill and/or to be incinerated).

**RESPONSE TO TOPIC NO. 13**

NCR objects to this Topic as irrelevant to the claims and counterclaims that remain in this action. NCR further objects to this Topic as overbroad and not proportional to the needs of the case, including because it calls for information falling outside of the Relevant Period.

NCR will not designate a Rule 30(b)(6) witness on this Topic.

**TOPIC NO. 14**

NCR's communications with recyclers about the environmental risks of recycling CCP, broke, or trim.

**RESPONSE TO TOPIC NO. 14**

NCR objects to this Topic as irrelevant to the claims and counterclaims that remain in this action. NCR further objects to this Topic as vague and overbroad, including because it calls for information falling outside of the Relevant Period, and lacks any specificity or limitations as to the meaning of "environmental risks."

NCR will not designate a Rule 30(b)(6) witness on this Topic.

**TOPIC NO. 15**

NCR's awareness of and/or involvement in the recyclers' processes for removing PCBs from broke/trim, including deinking, and including any involvement by NCR in assisting the recyclers to develop or adapt their processes (for example, to attempt to resolve the problem of "bluing") and related communications.

**RESPONSE TO TOPIC NO. 15**

NCR objects to this Topic as irrelevant to the claims and counterclaims that remain in this action. NCR further objects to this Topic as vague, overbroad, and not proportionate to the needs of the case, including because it calls for information falling outside of the Relevant Period and to

the extent it calls for testimony regarding technical or operational processes employed by third parties.

NCR will not designate a Rule 30(b)(6) witness on this Topic.

**TOPIC NO. 16**

NCR's knowledge that broke/trim was not a useful product.

**RESPONSE TO TOPIC NO. 16**

NCR objects to this Topic as irrelevant to the claims and counterclaims that remain in this action. NCR further objects to this Topic as vague, overbroad, and not proportionate to the needs of the case, including because it calls for information falling outside of the Relevant Period and calls for testimony regarding subjective or conclusory assessments of "usefulness." NCR further objects to this Topic insofar as it calls for testimony regarding legal arguments rather than facts.

NCR will not designate a Rule 30(b)(6) witness on this Topic.

**TOPIC NO. 17**

NCR's knowledge that broke/trim was sent to the Kalamazoo River Site or recycling companies with operations at the Kalamazoo River Site.

**RESPONSE TO TOPIC NO. 17**

NCR objects to this Topic as vague, ambiguous, overbroad, and not proportional to the needs of the case, including because it calls for information falling outside of the Relevant Period.

Subject to and without waiving these objections, NCR will designate a Rule 30(b)(6) witness to testify regarding what, if anything, NCR knew during the Relevant Period concerning whether broke or trim was sent during the Production Period to the Kalamazoo River Site or to recyclers with operations at that Site.

**TOPIC NO. 18**

NCR's shipment of broke to the Kalamazoo River Site or recycling companies with operations at the Kalamazoo River Site.

**RESPONSE TO TOPIC NO. 18**

NCR objects to this Topic as overbroad and not proportional to the needs of the case, including because it calls for information falling outside of the Relevant Period.

Subject to and without waiving these objections, NCR will designate a Rule 30(b)(6) witness to testify regarding what, if anything, NCR knew during the Relevant Period concerning any shipment of broke or trim during the Production Period to the Kalamazoo River Site or to recyclers with operations at that Site.

**TOPIC NO. 19**

NCR's communications with BAT, API, and/or Simpson Thacher & Bartlett about the CSA.

**RESPONSE TO TOPIC NO. 19**

NCR objects to this Topic as vague and overbroad insofar as it fails to limit the scope of the testimony regarding the CSA that the Topic requests.

Subject to and without waiving these objections, NCR will designate a Rule 30(b)(6) witness to testify regarding NCR's communications during the Relevant Period with BAT, API, and/or Simpson Thacher relating to the negotiation and execution of the CSA.

**TOPIC NO. 20**

The basis for NCR's belief at the time the CSA was negotiated and executed that the Kalamazoo River Site was "lurking out there."

**RESPONSE TO TOPIC NO. 20**

NCR objects to this Topic to the extent it improperly characterizes a statement made by an individual witness in 2014 as a corporate "belief" that was held "at the time the CSA was negotiated and executed."

Subject to and without waiving these objections, NCR will designate a Rule 30(b)(6) witness to testify regarding non-privileged facts reasonably available to NCR concerning what information NCR had during the Relevant Period regarding potential environmental liability at the Kalamazoo River Site.

**TOPIC NO. 21**

All information NCR provided to BAT about the Kalamazoo River Site prior to BAT executing the CSA.

**RESPONSE TO TOPIC NO. 21**

NCR objects to this Topic as overbroad insofar as it does not specify a defined date range beyond the reference to "prior to BAT executing the CSA."

Subject to and without waiving these objections, NCR will designate a Rule 30(b)(6) witness to testify regarding information provided by NCR to BAT during the Relevant Period concerning the Kalamazoo River Site.

**TOPIC NO. 22**

NCR's knowledge of NCR's actual or potential liability at the Kalamazoo River Site prior to execution of the CSA.

**RESPONSE TO TOPIC NO. 22**

NCR objects to this Topic as overbroad insofar as it does not specify a defined date range beyond the reference to "prior to execution of the CSA." NCR further objects to this Topic to the

extent it seeks testimony protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or protection.

Subject to and without waiving these objections, NCR will designate a Rule 30(b)(6) witness to testify regarding NCR's knowledge, or lack thereof, during the Relevant Period of NCR's actual or potential liability at the Kalamazoo River Site.

**TOPIC NO. 23**

NCR's reasons for proposing the "Future Sites" language in the CSA.

**RESPONSE TO TOPIC NO. 23**

NCR objects to this Topic to the extent it seeks testimony protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or protection.

Subject to and without waiving these objections, NCR will designate a Rule 30(b)(6) witness to testify regarding facts reasonably available to NCR concerning the reasons for which the "Future Sites" language was proposed.

**TOPIC NO. 24**

NCR's communications with BAT about any of the above-mentioned knowledge, communications, or actions.

**RESPONSE TO TOPIC NO. 24**

NCR objects to this Topic as vague, overbroad, and not proportional to the needs of the case insofar as the meaning of "any of the above-mentioned knowledge, communications, or actions" is not clear.

Subject to and without waiving these objections, NCR will designate a Rule 30(b)(6) witness to testify regarding NCR's communications during the Relevant Period with BAT

concerning NCR's knowledge, or lack thereof, of actual or potential liability at the Kalamazoo River Site and its reasons for proposing the "Future Sites" language in the CSA.

**TOPIC NO. 25**

Information NCR shared with BAT in connection with or prior to executing the CSA regarding any of the above.

**RESPONSE TO TOPIC NO. 25**

NCR objects to this Topic as vague, overbroad, and not proportional to the needs of the case insofar as the meaning of "any of the above" is not clear and "prior to executing the CSA" has no start date.

Subject to and without waiving these objections, NCR will designate a Rule 30(b)(6) witness to testify regarding information NCR shared during the Relevant Period with BAT concerning NCR's knowledge, or lack thereof, of potential liability at the Kalamazoo River Site and its reasons for proposing the "Future Sites" language in the CSA.

**TOPIC NO. 26**

NCR's communications with BAT regarding potential liability at the Kalamazoo River Site after the execution of the CSA, including in connection with the following events:

1. NCR's receipt of a section 104(e) information request, made by the EPA in April 2003;
2. NCR's receipt of an EPA notice identifying NCR as a PRP as the Kalamazoo River Site;
3. NCR being sued in the Georgia-Pacific Litigation; and
4. NCR being found liable in the Georgia-Pacific Litigation, in 2013 and in 2018.

**RESPONSE TO TOPIC NO. 26**

NCR objects to this Topic as vague, overbroad, and not proportional to the needs of the case because, although it refers to certain specific events, it uses the phrase "including, but not limited to," making the scope of the Topic unclear.

Subject to and without waiving these objections, NCR is willing to produce a witness to describe NCR's general pattern and cadence of communications with BAT regarding potential liability at the Kalamazoo River Site after the execution of the CSA.

**TOPIC NO. 27**

NCR's communications with any party to the Georgia Pacific Litigation and/or any state or federal agency regarding the potential settlement of NCR's CERCLA related liabilities in respect of the Kalamazoo River Site.

**RESPONSE TO TOPIC NO. 27**

NCR objects to this Topic as irrelevant and unduly burdensome to the extent it seeks testimony regarding settlement discussions or negotiations that post-date the Relevant Period and are not probative of what was known by the parties during that period. NCR further objects to this Topic to the extent it seeks testimony protected by the attorney-client privilege, the attorney work-product doctrine, the settlement privilege, or any other applicable privilege or protection.

Subject to and without waiving these objections, NCR will designate a Rule 30(b)(6) witness to testify regarding non-privileged information reasonably available to NCR concerning communications relating to the potential settlement of CERCLA-related liabilities at the Kalamazoo River Site.

**TOPIC NO. 28**

The 1998 Joint Defense and Representation Agreement.

**RESPONSE TO TOPIC NO. 28**

NCR objects to this Topic as vague and overbroad because it lacks sufficient particularity to identify the subject matter of the testimony sought. NCR further objects to this Topic to the extent it seeks testimony protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or protection.

Subject to and without waiving these objections, NCR will designate a Rule 30(b)(6) witness to testify regarding why the 1998 Joint Defense and Representation Agreement was entered into, what it covered, and its basic structure.

**TOPIC NO. 29**

Communications and information shared between NCR and Simpson Thacher during the period 1995 to July 1999 regarding potential liability for NCR in respect of the Kalamazoo River or other "Future Sites," as defined in the CSA.

**RESPONSE TO TOPIC NO. 29**

NCR objects to this Topic as duplicative of other Topics, including at least Topics 21, 24, 25, 31, and 32, which seek testimony regarding information shared with BAT and API—both of which were represented by Simpson Thacher.

Subject to and without waiving these objections, NCR will designate a Rule 30(b)(6) witness to testify regarding non-privileged communications and information shared between NCR and Simpson Thacher during the period 1995 to July 1999 concerning potential liability for the Kalamazoo River Site or other "Future Sites."

**TOPIC NO. 30**

Information held by NCR during the period from January 1, 1995 to December 31st, 2000 regarding potential liability for NCR in respect of the Kalamazoo River or other "Future Site," as defined in the CSA.

**RESPONSE TO TOPIC NO. 30**

NCR objects to this Topic as duplicative of other Topics, including at least Topics 22 and 29.

Subject to and without waiving these objections, NCR will designate a Rule 30(b)(6) witness to testify regarding any non-privileged factual information reasonably available to NCR regarding information held by NCR during the Relevant Period regarding potential liability for the Kalamazoo River Site or other "Future Sites".

**TOPIC NO. 31**

Communications and information provided by NCR directly to BAT during the period from January 1, 1995 to December 31, 2000 regarding potential liability for NCR in respect of the Kalamazoo River or other "Future Site," as defined in the CSA.

**RESPONSE TO TOPIC NO. 31**

NCR objects to this Topic as duplicative of other Topics, including at least Topics 21, 22, 24, 25, and 26.

Subject to and without waiving these objections, NCR will designate a Rule 30(b)(6) witness to testify regarding communications and information provided by NCR directly to BAT during the Relevant Period concerning potential liability for the Kalamazoo River Site or other "Future Sites."

**TOPIC NO. 32**

Communications and information provided by NCR directly to API during the period from January 1, 1995 to December 31, 2000 regarding potential liability for NCR in respect of the Kalamazoo River or other "Future Site," as defined in the CSA.

**RESPONSE TO TOPIC NO. 32**

NCR objects to this Topic as duplicative of other Topics that seek testimony regarding NCR's knowledge of potential liability and information shared during the Relevant Period.

Subject to and without waiving these objections, NCR will designate a Rule 30(b)(6) witness to testify regarding communications and information provided by NCR directly to API during the Relevant Period regarding potential liability for the Kalamazoo River Site or other "Future Sites."

Dated: January 21, 2026
New York, New York

Respectfully submitted,

/s/ Zachary Payne

John J. Kuster
Zachary Payne
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300
jkuster@sidley.com
zpayne@sidley.com

Bruce R. Braun (admitted *pro hac vice*)
Charles K. Schafer (admitted *pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000
bbraun@sidley.com
cschafer@sidley.com

*Attorneys for Plaintiff NCR Voyix Corporation*