# Exhibit C

SIDLEY

SIDLEY AUSTIN LLP
787 SEVENTH AVENUE
NEW YORK, NY 10019
+1 212 839 5300
+1 212 839 5599 FAX

+1 212 839 5760
ZPAYNE@SIDLEY.COM

January 28, 2026

**By Email**
Dennis H. Tracey, III
Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017
dennis.tracey@hoganlovells.com

Re: *NCR Corporation v. B.A.T Industries p.l.c.*, 23-cv-1172-JPC-SDA (S.D.N.Y.)

Counsel:

We write to follow up on the parties' January 21 meet and confer regarding responses and objections to the parties' respective Rule 30(b)(6) deposition notices.

**NCR's Objections to BAT's 30(b)(6) Notice**

**Topics 1–16 (Historical Background Issues)**

Topics 1–16 seek wide-ranging testimony about NCR's historical knowledge of PCB and Aroclor 1242 toxicity, carbonless copy paper ("CCP") manufacturing and production practices, handling and disposition of broke and trim, alleged efforts to avoid public association between CCP and PCBs, and related communications. NCR maintains its position that these topics are irrelevant to any claim or counterclaim in this case. They are not probative of what NCR representatives negotiating the CSA knew or reasonably believed about the likelihood of liability at the Kalamazoo River Site.

BAT itself has recognized the minimal relevance of historical materials untethered to the CSA or the Kalamazoo River Site. In asserting that the number of documents produced by NCR was "misleading" because they came from prior litigations not focused on the CSA, BAT explained: "*the documents produced in prior litigations are unlikely to shed any light on the negotiations which took place in relation to the CSA in 1998*." BAT's August 23, 2025 Ltr at 2.

Nevertheless, BAT now contends that these topics are relevant because they go to purported allegations of general historical misconduct during the 1954-71 "Production Period" when Aroclor 1242 was an ingredient in CCP. But that is not what BAT's counterclaims are about. As BAT's counsel represented to the Court, "[t]he ***sole misrepresentation alleged*** is . . . with respect to the future sites language of the contract, which ***only relates to Kalamazoo***." Dkt. 80 at 32 (Transcript of oral argument on NCR's motion to strike jury demand). Consistent with that statement, BAT's counterclaims involve a narrow question: what the individuals negotiating

Sidley Austin (NY) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

SIDLEY



the CSA knew about the risk of Kalamazoo River liability during the Relevant Period. Topics 1–16 do not inform that inquiry.[1] The fact that BAT may now realize from the documents produced in discovery that it cannot come close to proving the counterclaim it pleaded does not open the door to wide-ranging 30(b)(6) topics relating to other issues in a belated attempt to fish for some cognizable claim.

Even if these topics were relevant to any of its claims, NCR still would be unwilling to prepare a witness on Topics 1–16 because that effort would be extraordinarily burdensome, if not impossible, and certainly would be disproportionate to the needs of the case. The purported knowledge – or really knowledge about knowledge – at issue in Topics 1–16 spans decades and evolved through investigation, legal developments, and extensive litigation that also lasted more than a decade and mostly occurred well after the CSA was signed. Rule 30(b)(6) does not require NCR to prepare a witness to synthesize and opine on an amorphous body of historical and litigation-driven information untethered to the issues actually in dispute.

The problems of relevance and burden introduced by BAT's continued requests for historical documents unconnected to the Kalamazoo River Site are not new. Early in discovery, Judge Aaron expressed the view that requiring NCR to undertake a fresh collection of documents going back decades would "not be proportional to the needs of the case." 10/30/2024 Conf. Tr. at 5. In response to BAT's Interrogatory No. 1, NCR declined to provide information in response to sweeping inquiries into decades-old issues concerning PCB toxicity, CCP manufacturing, and recycling practices, and directed BAT to the extensive discovery and adjudicated records developed in the Fox River and Kalamazoo River litigations. BAT ultimately accepted those responses. NCR made similar objections to BAT's requests for production on these historical issues unrelated to the Kalamazoo, and the Court permitted BAT to explore them only at BAT's own expense. BAT's third attempt to shift the burden to NCR of tracking these issues as they evolved from 1954 through the present is equally unwarranted. The thousands of documents any NCR witness would have to review to prepare to testify on these documents not only have been produced to BAT, but were the subject of entire separate litigations, both of which (the documents themselves and the opinions addressing them) BAT can review and synthesize on its own. There is no NCR witness who has a separate basis for testifying as to these issues outside of what is contained in the documents produced in discovery.

For these reasons, NCR will not designate a Rule 30(b)(6) witness on Topics 1–16.

---

[1] In BAT's email of January 23, 2026, it purports to support its request for these categories of documents by citing primarily to background allegations in its counterclaims. But the only paragraph it cites which is actually *part of* the counterclaim at issue is paragraph 90, which – as BAT's counsel's concession to the Court made clear – "only relates to Kalamazoo."

SIDLEY



**Topic 26 (post-CSA communications regarding Kalamazoo River liability)**

As discussed during the meet and confer, NCR will designate a Rule 30(b)(6) witness to testify regarding (i) the four specific events identified in Topic 26, and (ii) NCR's general pattern and cadence of communications with BAT concerning Kalamazoo River liability after the CSA.

By "pattern and cadence," as we thought we had explained on the call, NCR means testimony regarding the general nature, frequency, and context of communications on this subject (for example, whether communications occurred periodically or in response to particular events, and the types of issues typically discussed). NCR will not prepare a witness to recount every individual communication or to provide a chronological narrative of all post-CSA communications between the parties.

**Topic 28 (Joint Defense and Representation Agreement)**

With respect to Topic 28, NCR will designate a Rule 30(b)(6) witness to testify regarding why the 1998 Joint Defense and Representation Agreement ("JDRA") was entered into, what it covered, and its basic structure.

BAT has requested additional testimony regarding the negotiations and discussions leading to the JDRA; communications about the agreement before, during, and after its execution; and how the JDRA was implemented in practice, including what workstreams were undertaken pursuant to it. As with Topic 26, NCR is willing to provide high-level testimony on these subjects, through the date of the execution of the CSA, to the extent that such information is reasonably available, but will not prepare a witness to testify as to every communication, task, or activity undertaken over time pursuant to the JDRA, an effort that would be neither practical nor proportional to the needs of the case.

It likely would be productive for both parties if BAT could provide additional information or identify more narrowly-defined areas of inquiry that this Topic is intended to cover.

**<u>BAT's Objections to NCR's 30(b)(6) Notice</u>**

**Topics 4 and 16–22 (alleged omissions)**

BAT has objected to Topics 4 and 16–22 on the ground that they require improper contention testimony. BAT has proposed, as a compromise, to prepare a witness to testify only to the facts that, at the time BAT filed its counterclaims, BAT believed NCR had failed to disclose, and the effect such alleged omissions had on BAT's decision to enter into the CSA. While that proposal partially addresses NCR's point that BAT necessarily had some theory of fraud in mind when it filed its counterclaims, NCR also is entitled to testimony about what was known on these issues when the CSA was entered into, i.e., the period at issue in this litigation. NCR therefore

requests that BAT's 30(b)(6) designee on this topic testify as to what BAT knew during the 1998–1999 period about the information BAT believed (at the time of filing) NCR failed to disclose, what questions BAT asked NCR about that information during the CSA negotiations, and how knowledge of any particular fact would have altered BAT's decision to enter into the CSA.

**Topics 6, 9, 10, 24, and 26 (information known to STB)**

BAT has objected to these topics on the ground that they concern information known to its former counsel, Simpson Thacher & Bartlett ("STB"), rather than BAT itself. But, as previously explained, a party's obligations under Rule 30(b)(6) extend to information reasonably available to it, including non-privileged facts known to or obtained by counsel in connection with the matters at issue. BAT has not disputed this proposition nor has it stated (or could it state) that information held by STB is not reasonably available to BAT, but if it is aware of legal authority to the contrary, NCR is happy to review it. NCR will await BAT's follow-up on how it proposes to proceed on these topics.

**Topic 29 (K&E binders)**

BAT has stated that it will provide information in writing regarding the K&E binders. NCR is willing to accept a written response that adequately addresses the topic, including when the binders were created, by whom, and who had custody of the material that made up the binders at the time they were created. NCR requests that BAT provide this information, through a sworn statement, as soon as practicable and in any case no later than February 6, 2026. Once BAT provides such statement, NCR will withdraw its designation. If BAT does not provide such statement by February 6, 2026, NCR's designation of Topic 29 stands.

**Topics 30 and 31 (alleged harm and litigation strategy)**

BAT has objected to Topics 30 and 31 on the ground that its witness would not have knowledge of these issues and has suggested responding in writing as contention interrogatories. But if BAT intends to pursue defenses or claims based on alleged harm from the timing of NCR's lawsuit or purported shortcomings in NCR's litigation or settlement strategy, BAT must be able to identify supporting facts through its Rule 30(b)(6) witness. As the parties discussed on January 21, 2026, if BAT does not want to designate its outside counsel as its representative witness on this topic, it need not do so – so long as its designated witness is appropriately educated. If BAT does not know or have reasonably available any facts regarding how it allegedly was harmed or supporting its claims regarding the alleged deficiency of NCR's litigation or settlement strategy, BAT's witness may testify accordingly.

SIDLEY



Sincerely,

*/s/* Zachary Payne

Zachary Payne