# Exhibit D

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NCR CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>B.A.T INDUSTRIES p.l.c.,<br><br>Defendant. | Case No.: 1:23-cv-1172-JPC-SDA |

**PLAINTIFF NCR VOYIX CORPORATION'S NOTICE OF 30(B)(6) DEPOSITION**

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendant NCR Voyix Corporation ("NCR") will take the oral deposition of B.A.T Industries p.l.c. ("BAT"). The deposition will commence on January 20, 2026, at 9:00 a.m., and will continue from day to day until completed. The deposition will be held at the offices of Sidley Austin LLP, 787 Seventh Avenue, New York, NY 10019, or at such place as may be agreed upon by counsel for the parties.

The deposition shall be taken before a duly authorized officer certified to administer oaths and take depositions, and shall be recorded by stenographic and audiovisual means. The deposition will be taken for the purpose of discovery, for use as evidence at any hearing or trial, and for any other purposes authorized by law.

BAT is requested to designate, pursuant to Rule 30(b)(6), person(s) to testify about information known or reasonably available to BAT regarding the subject matters listed in Schedule A, attached hereto.

BAT is requested to provide NCR's counsel, as soon as reasonably possible, a written designation of the name(s) and position(s) of the person(s) who will testify on behalf of BAT and,

for each person so designated, the matters set forth in the attached Schedule A as to which each person will testify.

Dated: January 6, 2026
New York, New York

Respectfully submitted,

*/s/ Charles K. Schafer*
Bruce R. Braun (admitted *pro hac vice*)
Charles K. Schafer (admitted *pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000
bbraun@sidley.com
cschafer@sidley.com

John J. Kuster
Zachary Payne
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300
jkuster@sidley.com
zpayne@sidley.com

*Attorneys for Plaintiff NCR Voyix Corporation*

## SCHEDULE A

### I. DEFINITIONS

1. Any reference to a person or entity, including each of the parties in this proceeding, includes any director, officer, partner, managing member, employee, corporate parent, subsidiary, or affiliate acting on behalf of the person or entity. Any reference to a person or entity, including each of the parties in this proceeding, does not include outside counsel or litigation consultants of the person or entity.

2. "Communication" shall be construed in the broadest sense possible and includes but is not limited to any conversation, correspondence, discussion, email, facsimile, letter, meeting, memorandum, negotiation, telephone conversation, text message (or similar chat message on any platform), or any other occurrence whereby thoughts, opinions, social media, or data is transmitted between two or more persons in any manner.

3. "Regarding" and "in connection with" mean regarding, relating to, concerning, describing, pertaining to, evidencing, reflecting, regarding, constituting, involving, in connection with, or touching upon in any way. Each of these terms may be used interchangeably herein and shall be treated as encompassing all these meanings.

4. "Including" means "including but not limited to."

5. "NCR" means NCR Voyix Corporation, the plaintiff in this action, formerly known as NCR Corporation and as AT&T Global Information Solutions Company.

6. "BAT" means B.A.T Industries p.l.c., the defendant in this action.

7. "API" means Appleton Papers, Inc.

8. "AWA" means Windward Prospects, Ltd., formerly known as Arjo Wiggins Appleton Ltd.

9. "STB" means Simpson Thacher & Bartlett LLP.

10. "Sidley" means Sidley Austin LLP.

11. "SDNY Litigation" means *AT&T Global Information Solutions Company v. Appleton Papers Inc. and B.A.T Industries Limited*, No. 95 Civ. 4620 (S.D.N.Y., filed June 20, 1995).

12. "1990 Demerger" means the transaction effected by the "Demerger Agreement" among BAT, Wiggins Teape Appleton p.l.c., and Wiggins Teape Appleton (Holdings) p.l.c., dated May 10, 1990. (*See* BAT.00730091.)

13. "NCR Paper Business" means the business sold by NCR to BAT and Lentheric in the 1978 Asset Purchase Agreement.

14. "Fox River Site" means the Fox River NRDA/PCB Releases Superfund Site, also known as the Lower Fox River and Green Bay Superfund Site, in Wisconsin, defined by the U.S. Environmental Protection Agency. (*See* BAT.00317563 and https://cumulis.epa.gov/supercpad/cursites/csitinfo.cfm?id=0507723.)

15. "Kalamazoo River Site" means the Allied Paper, Inc./Portage Creek/Kalamazoo River Superfund Site in Michigan, defined by the U.S. Environmental Protection Agency. (*See* BAT.00317812, https://cumulis.epa.gov/supercpad/cursites/csitinfo.cfm?id=0502325, and NCR's Complaint in this case, ECF No. 1 at ¶ 35.)

16. "Production Period" means 1954 to 1971.

17. "2014 Funding Agreement" means the "Funding Agreement" among NCR, BAT, Appleton Papers Inc., AWA, and BTI 2014 LLC, effective as of September 30, 2014. (*See* BAT.0266867.)

18. "1978 Asset Purchase Agreement" means the "Agreement of Purchase and Sale of Assets by and among B.A.T Industries Limited; Lentheric, Inc.; and NCR Corporation," dated June 30, 1978. (*See* BAT.00678312.)

19. "Lentheric" means Lentheric, Inc., one of the signatories to the 1978 Asset Purchase Agreement.

20. "K&E Binders" means the binders produced by BAT with "Kirkland and Ellis" listed as the custodian, including BAT.00331371, BAT.00332634, BAT.00382088, BAT.00382604, BAT.00677296, BAT.00680413, BAT.00680964, BAT.00681213, BAT.00682642, BAT.00683150, BAT.00683899, BAT.00684132, BAT.00684609, BAT.00685070, BAT.00685673, BAT.00686198, BAT.00687047, BAT.00687070, BAT.00687211, BAT.00688539, BAT.00689364, BAT.00690644, BAT.00691265, BAT.00692315, BAT.00692447, BAT.00692531, BAT.00692992, BAT.00693475, BAT.00693882, BAT.00694488, BAT.00694918, BAT.00695368, BAT.00695806, BAT.00696528, BAT.00699152, BAT.00699549, BAT.00699596, BAT.00699880, BAT.00700117, BAT.00700602, BAT.00700967, BAT.00701404, BAT.00701536, BAT.00702272, BAT.00702510, BAT.00702733, BAT.00702878, BAT.00703025, BAT.00703216, BAT.00703672, BAT.00703863, BAT.00704313, BAT.00704776, BAT.00705528, and BAT.00705752.

## II. DEPOSITION TOPICS

1. Negotiation of the CSA, including drafts circulated among the parties and comments, meetings, phone calls, correspondence, and any other communications regarding the CSA at any point before it was signed by BAT.

2. BAT's due diligence, inquiries, and investigation conducted in connection with the negotiation of, and decision to sign, the CSA, including which BAT representatives (including STB or other outside counsel) were responsible for which aspects of any such diligence, inquiries, or investigation.

3. BAT's decision to sign the CSA, including its internal processes for and deliberations regarding its decision to sign the CSA (including the timing of, individuals involved with, and approvals required for such decision, but excluding any legal advice provided or requested in connection with such deliberations).

4. Each material omission that NCR and/or Sidley allegedly made on which BAT relied in deciding to sign the CSA, including, for each omission: (a) the information NCR and/or Sidley omitted to disclose; (b) when NCR and/or Sidley was obligated to disclose the information; (c) who at NCR and/or Sidley was obligated to disclose the information; (d) to whom NCR and/or Sidley was obligated to disclose the information; and (e) the reasons NCR was obligated to disclose the information.

5. All information that NCR and/or Sidley supplied to BAT regarding the CSA, including any information that NCR and/or Sidley supplied to induce BAT to enter into the CSA.

6. All requests for information that BAT (directly or through any representative, including STB) made to NCR and/or Sidley for purposes of informing BAT's decision whether to sign the CSA.

7. Each communication between BAT and NCR in or during which the CSA's Future Sites provision or the concept of potential future liability at locations other than the Fox River Site was discussed.

8. Each communication between BAT and Sidley in or during which the CSA's Future Sites provision or the concept of potential future liability at locations other than the Fox River Site was discussed.

9. Each communication between STB and NCR in or during which the CSA's Future Sites provision or the concept of potential future liability at locations other than the Fox River Site was discussed, that affected in any way BAT's decision whether to sign the CSA.

10. Each communication between STB and Sidley in or during which the CSA's Future Sites provision or the concept of potential future liability at locations other than the Fox River Site was discussed, that affected in any way BAT's decision whether to sign the CSA.

11. Each communication between BAT and NCR that occurred between 1994 and 2000, including communications regarding the Fox River Site, the SDNY Litigation, and/or the CSA.

12. Each communication between BAT and Sidley that occurred between 1994 and 2000, including communications regarding the Fox River Site, the SDNY Litigation, and/or the CSA.

13. BAT's relationship and dealings with API and/or AWA in connection with the Fox River Site, the SDNY Litigation, and/or the CSA.

14. AWA's reporting relationship within BAT before the 1990 Demerger.

15. The roles and positions of BAT-affiliated individuals to whom AWA reported, including whether such individuals were still affiliated with BAT between 1994 and 1999.

16. All facts that NCR and/or Sidley knew (or allegedly should have known) in 1998–99 regarding whether PCB-containing broke from the NCR Paper Business was recycled by

paper mills located in or near the Kalamazoo River Site that NCR should have disclosed to BAT in connection with negotiating the CSA.

17. All facts that NCR's negotiating team for the CSA (including, if applicable, outside counsel) allegedly knew (or allegedly should have known) in 1998–99 regarding whether PCB-containing broke from the NCR Paper Business was recycled by paper mills located in or near the Kalamazoo River Site that NCR should have disclosed to BAT in connection with negotiating the CSA.

18. All facts that NCR and/or Sidley knew (or allegedly should have known) in 1998–99 regarding the NCR Paper Business's knowledge during the Production Period of harmful effects of Aroclor 1242 in the environment that NCR should have disclosed to BAT in connection with negotiating the CSA.

19. All facts that NCR's negotiating team for the CSA (including, if applicable, outside counsel) knew (or allegedly should have known) in 1998–99 regarding the NCR Paper Business's knowledge during the Production Period of harmful effects of Aroclor 1242 in the environment that NCR should have disclosed to BAT in connection with negotiating the CSA.

20. All facts that NCR and/or Sidley knew (or allegedly should have known) in 1998–99 regarding whether the recycling of NCR Paper broke during the Production Period resulted in the discharge of Aroclor 1242 to the environment that NCR should have disclosed to BAT in connection with negotiating the CSA.

21. All facts that NCR's negotiating team for the CSA (including, if applicable, outside counsel) knew (or should have known) in 1998–99 regarding whether the recycling of NCR Paper broke during the Production Period resulted in the discharge of Aroclor 1242 to the environment that NCR should have disclosed to BAT in connection with negotiating the CSA.

22. Facts supporting BAT's position that NCR possessed knowledge superior to that of BAT and/or API regarding facts relevant to the potential of future liability at locations other than the Fox River Site, including the potential of future liability at the Kalamazoo River Site, prior to BAT's signing of the CSA.

23. Facts that BAT knew in 1998–99 regarding the Kalamazoo River Site, including any facts regarding the Kalamazoo River's identification as a Superfund site or whether PCB-containing broke from NCR Paper Business was recycled by paper mills located in or near the Kalamazoo River Site.

24. Facts that STB knew in 1998–99 regarding the Kalamazoo River Site, including any facts regarding the Kalamazoo River's identification as a Superfund site or whether PCB-containing broke from NCR Paper Business was recycled by paper mills located in or near the Kalamazoo River Site.

25. Facts that BAT knew in 1998–99 regarding the possibility that NCR Paper broke was transported to paper mills located outside the vicinity of the Fox River Site.

26. Facts that STB knew in 1998–99 regarding the possibility that NCR Paper broke was transported to paper mills located outside the vicinity of the Fox River Site.

27. Any dispute (including any resolution of any dispute) between BAT and any insurer regarding the Fox River Site, Kalamazoo River Site, CSA, or 2014 Funding Agreement, including any litigation, arbitration, mediation, or settlement.

28. The scope of the business that NCR sold to BAT and Lentheric in the 1978 Asset Purchase Agreement.

29. The K&E Binders produced by BAT in this litigation.

30. Identification of any harm BAT suffered as a result of NCR bringing this civil action in 2023 rather than 2019.

31. Any shortcomings in NCR's "litigation and settlement strategy" regarding the Kalamazoo River Site.