SIDLEY

SIDLEY AUSTIN LLP
787 SEVENTH AVENUE
NEW YORK, NY 10019

+1 212 839 5300
ZPAYNE@SIDLEY.COM

April 21, 2026

**Via ECF**
Hon. Stewart D. Aaron
United States District Court Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *NCR Corporation v. B.A.T Industries p.l.c.*, No. 1:23-cv-01172-JPC-SDA

Dear Judge Aaron,

We write for NCR Voyix Corporation ("NCR") in response to BAT's April 16, 2026 letter (Dkt. 110) on topics 1–16 of its Rule 30(b)(6) notice. BAT's request should be denied.

***First***, BAT's request for relief on these issues is untimely. BAT served its Rule 30(b)(6) notice on January 16. NCR objected on January 21 and stated that it would not designate a witness on topics 1-16. NCR reiterated that position in a January 28 letter. BAT did *nothing* for 28 days as depositions proceeded. It failed to object when NCR sent 30(b)(6) designations on February 9 that did not include a witness for topics 1–16. *See* Ex. 1. And when the parties met and conferred on February 17 regarding other issues, BAT again did not raise the matter. BAT did not revive topics 1–16 until February 25, nearly a week ***after the then-operative February 19 close of fact discovery*** (BAT did not seek to extend discovery until March 24, citing only the difficulty of scheduling certain retired fact witnesses). Despite moving to extend the schedule, further correspondence with NCR, and a March 31 meet-and-confer, BAT still did not seek Court intervention on this issue until mid-April—two weeks before the extended fact discovery close and nearly three months after NCR first objected to those topics.

This delay is prejudicial to NCR. The case has been in fact discovery for roughly a year and a half. NCR already has prepared and produced three 30(b)(6) witnesses on other topics. At this point, the parties should be focused on expert discovery and summary judgment, not dragged backward into burdensome fact discovery issues that BAT chose not to present in a timely manner. Reopening these topics now would consume significant witness and attorney time, as further set forth below. Even if such an exercise were justified from a relevance and proportionality standpoint—and it is not (as addressed below)—that time has long passed.

***Second***, contrary to BAT's argument that these topics are "fundamental to the issues in the case" (Dkt. 110 at 1), topics 1–16 are untethered to the actual issues in dispute. The topics seek NCR's present-day knowledge about events during the 1954–1971 "Production Period" as defined in prior litigation relating to the Fox and Kalamazoo Rivers. In contrast, the claims here concern the parties' knowledge in 1998-99, when they negotiated and signed the agreement at issue. BAT's relevance argument cites primarily to background, rhetorical allegations from its counterclaims about NCR's supposed historical wrongdoing, without identifying any actual counterclaim that supplies the basis for topics 1-16. Dkt. 110 at 2-3. The only articulable

relevance of these *sixteen* topics BAT has identified is to its public policy affirmative defense. But the notion that 30(b)(6) testimony on 16 sweeping topics is necessary to litigate one defense (the legal merits of which Judge Cronan already questioned) strains credulity and is plainly disproportionate to the needs of the case.

The mismatch between BAT's public policy argument and the 16 topics further underscores the lack of proportionality. In its letter, BAT frames the defense broadly as one against indemnification for NCR's "improper actions," Dkt. 110 at 1, but the surviving defense is significantly narrower: Judge Cronan held that the only potentially viable public policy theory here is the "narrow" New York exception for intentionally harmful conduct, which requires proof not only of intentional conduct, but of "intent to harm or injure others." Dkt. 38 at 38-39. Topics 1–16 do not target that issue. Instead, they focus on issues of knowledge, analyses, communications, relationships, and other historical conduct over decades. But none asks NCR to testify about an intent to harm—and the sweeping topics at issue are far too attenuated even to invite any inference about intent.

These topics also are cumulative, since two district courts have already issued opinions after trial regarding NCR's liability at the Fox and Kalamazoo Rivers, trials that featured those same historical issues. BAT recognizes as much. *See* Dkt. 110 at 3 ("NCR has already litigated these issues through trial in the *Whiting* litigation.").

***Third***, BAT greatly understates the burden imposed by topics 1-16. For reference, Exhibit 2 hereto lists the categories of information implicated by topics 1–16 and demonstrates the breadth of the topics. Preparing a witness on these subjects would require NCR to identify, collect, and synthesize the nearly 800,000 documents from prior litigations produced to BAT. As NCR has explained to BAT, NCR has no current employees or consultants with personal knowledge or a head start on evaluating these documents, nor does NCR have any corporate knowledge other than the documents themselves. Therefore, to prepare to testify regarding a range of topics spanning decades, a witness would have to review the "prior litigation" documents in the same fashion that BAT's counsel could do themselves. BAT understands this, having proposed that these topics be covered not by NCR personnel, but by Sidley attorneys who worked, at various points between 10 and 30 years ago, on subsets of these issues (when, even then, the facts were already at least 30 years old).

Even with this preparation, a Rule 30(b)(6) deposition would serve little purpose. The "prior litigation" documents are what they are, they have been weighed already by two district courts, and BAT is as well-positioned as NCR to interpret them or make arguments as to how the documents support a conclusion on any of the 54 sub-issues identified in Exhibit 2.

These burden issues are not new. At the initial pretrial conference, Your Honor expressed the view that requiring NCR to undertake a fresh collection of documents going back decades would "not be proportional to the needs of the case," and that NCR need only re-produce the "prior litigation" documents to address those background issues from decades ago. Ex. 3 at 5. When BAT re-raised this issue in connection with a warehouse of documents dating back decades, the Court ordered that BAT would have to bear the expense of any effort to search those boxes. Dkt. 77. When BAT served RFPs and interrogatories on overlapping issues, NCR directed

BAT to the extensive discovery and disclosures from the Fox River and Kalamazoo litigations ("consistent with Judge Aaron's guidance"). *See* Exs. 4 and 5. BAT ultimately accepted that approach. BAT's current attempt to re-litigate the issues in the prior litigations is no more warranted than it was before. In fact, a 30(b)(6) deposition on these topics is even less warranted, as it requires not merely the production of documents or provision of written answers, but gathering such documents and answers and educating a witness on them.

BAT's proposal to identify for NCR's witness the exact documents BAT contends the witness should review to prepare for the deposition would not reduce the burden. None of the documents BAT has identified were authored by individuals still associated with NCR; indeed, the authors and recipients are likely all deceased. BAT's counsel can read and interpret documents as well as NCR's counsel, none of whom were involved in those documents or the issues addressed therein. And BAT has made clear that it wants more than document-specific testimony; it also wants to ask whether NCR has any additional information on those subjects.[1] To answer those questions, NCR would have to undertake the same sweeping preparation effort as if documents were not identified in advance.

For all of these reasons, NCR offered BAT what it viewed as a reasonable compromise to provide the only information NCR might have that is not apparent from the face of the documents: if BAT would provide a reasonable list of key documents relating to topics 1-16, NCR would provide an affidavit stating the information known or reasonably available to it regarding when NCR obtained those documents and make the affiant available for deposition. This information not only is within NCR's possession, but is *actually* relevant to *this case*. For example, it is relevant to BAT's concealment claim whether NCR had access to the information and documents in question before—or only after—the Confidential Settlement Agreement was executed. But BAT rejected that proposal.

Given the untimeliness of BAT's request of this Court, the sweeping breadth of its proposed 30(b)(6) topics 1-16, and the lack of any proportional relevance to the issues in dispute in this case, BAT's request should be denied.

Respectfully submitted,

/s/ Zachary Payne

Zachary Payne

[1] For example, in a March 18, 2026 letter (Ex. 6), BAT stated that the list of documents was merely a suggestion of how to educate a witness on the broader topics: "The documents that ***we have suggested you use to educate NCR's 30(b)(6) witness are evidence of NCR's knowledge and conduct during the production period***. That is the issue that NCR's 30(b)(6) witness needs to deal with in relation to BAT's public policy defense." (emphasis added).