# EXHIBIT 5

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NCR CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>B.A.T. INDUSTRIES p.l.c.,<br><br>Defendant. | No.: 1:23-cv-1172-JPC-SDA |

**PLAINTIFF NCR VOYIX CORPORATION'S RESPONSES AND OBJECTIONS TO <u>DEFENDANT B.A.T INDUSTRIES p.l.c.'s FIRST SET OF INTERROGATORIES</u>**

Pursuant to Rule 26 and 33 of the Federal Rules of Civil Procedure and Rule 33.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Plaintiff NCR Voyix Corporation ("NCR") by and through its undersigned counsel, hereby provides the following responses and objects to the First Set of Interrogatories (the "Interrogatories," each an "Interrogatory") by Defendant B.A.T Industries p.l.c ("BAT").

**GENERAL OBJECTIONS**

NCR incorporates by reference each and every General Objection set forth below into each Specific Response and Objection herein. A Specific Response may repeat a General Objection for emphasis or some other reason. The omission of any General Objection in any Specific Response is not intended to and shall not be construed as a waiver of any General Objection.

1. NCR objects to BAT's use of compound interrogatory requests and will construe the subpart of any Interrogatory to be its own separate Interrogatory. *See* Federal Rule of Civil Procedure 33(a)(1); *Brown v. New York City Dep't of Educ.*, 2024 WL 4493470, at *2 (S.D.N.Y. Oct. 15, 2024).

2. NCR objects to the Interrogatories to the extent they seek information or require responses from persons or entities other than NCR as defined herein, and on the grounds that they

seek information that is in the possession, custody, or control of other persons or entities, including BAT or API. These responses are on behalf of NCR, as defined below, alone.

3. NCR objects to the Interrogatories to the extent they imply the existence of facts or circumstances that do not or did not exist, and to the extent that they state or assume legal conclusions. In responding, NCR does not admit the factual or legal premise of any Interrogatory.

4. In providing these responses and objections, NCR does not in any way waive or intend to waive, but rather intends to preserve:

a) all objections as to competence, relevance, materiality, admissibility in evidence or other use of the Interrogatories or any portions thereof, or the subject matter thereof, or responses or objections by NCR thereto, or any documents or information produced pursuant thereto;

b) all objections as to vagueness, ambiguity, and undue burden;

c) all rights to object on any ground to the use of any information, Interrogatories, responses, or objections, or the subject matter thereof, in these or any other or subsequent proceedings;

d) all rights to object on any ground to any Interrogatories for further production or responses to these or any other Interrogatories for documents or information, or any other Interrogatories in, or relating to, this litigation.

5. The failure to object to an Interrogatory does not constitute a representation by NCR that any such information exists or is within its possession, custody, or control.

6. These responses and objections are based upon NCR's current knowledge, belief, and reasonable investigation. NCR expressly reserves the right to modify and/or further supplement any response to the Interrogatories as necessary and/or appropriate, including but not limited to the extent required by the Federal Rules of Civil Procedure and the Local Rules.

**OBJECTIONS TO DEFINITIONS**

1. NCR objects to the definition of "You," "Your," and "NCR" to the extent it purports to impose on NCR an obligation to provide information or produce documents, outside

of its custody and control insofar as it includes entities that are not affiliated with NCR, including the Appleton Papers Division, which NCR sold to BAT in 1978. By contrast, BAT has not defined "BAT" as including the Appleton Papers Division despite the fact that BAT owned the Appleton Papers Division (and Appleton Papers, Inc.) more recently than NCR. For purposes of its responses and objections to the Requests, NCR will interpret the terms "You," "Your," and "NCR" to mean Plaintiff NCR Voyix Corporation.

2. NCR objects to the definition of "Appleton Papers Division" as having been an "internal business division of NCR," while omitting that BAT acquired the Appleton Papers Division from NCR in 1978. NCR will not interpret the term "Appleton Papers Division" to have any affiliation with NCR after 1978.

3. NCR objects to the definition of the term "BAT" because it does not expressly include the Appleton Papers Division, which BAT acquired in 1978, or Appleton Papers, Inc., to which the Appleton Papers Division was renamed after BAT acquired it in 1978.

4. NCR objects to the term "CSA" because it refers to three separate agreements. NCR will interpret the term "CSA" to mean the Confidential Settlement Agreement between NCR and BAT.

**RESPONSES AND OBJECTS TO INTERROGATORIES**

The foregoing objections are incorporated into each of the specific responses and objections to the extent they are applicable, and are not in any way limited by the specific responses and objections.

**INTERROGATORY NO. 1:**

Identify the names of all persons You are aware of with knowledge of information relevant to the subject-matter of the Action, including but not limited to (a) the Purchase Agreement; (b) the CSA, including the underlying action, the mediation, and the negotiation and execution of the CSA; (c) the use of PCBs in manufacturing CCP; (d) the potential and/or actual toxicity of PCBs; (e) the environmental hazards posed by PCBs, including but not limited to the

pollution of waterways from discharge of PCBs into such waterways; (f) the presence and causes of PCBs in the Kalamazoo River; (g) sales of Broke (whether directly or indirectly through Third Parties) to recycling plants on the Kalamazoo River; (h) Your knowledge of the processes used by recyclers of Broke and Your involvement and/or assistance in developing such processes; (i) the operation of Appleton Papers Division while under NCR control; (j) the operation and work of the paper mills that eventually became Appleton Papers Division prior to acquisition by NCR; (k) NCR communications with Monsanto regarding PCBs; (l) Your knowledge of potential arranger liability prior to executing the CSA; (m) communications with any insurance company regarding Your potential and/or actual liability for PCB contamination in the Kalamazoo River; and (n) NCR communications with Third Parties regarding any of the foregoing subjects.

**RESPONSE TO INTERROGATORY NO. 1:**

NCR objects to this Interrogatory as vague, overly broad, unduly burdensome, and not proportional to the needs of the case. NCR objects to this multi-part Interrogatory purporting to serve 16 interrogatories in the form of a single interrogatory and will treat this as constituting 16 interrogatories. NCR further objects because it seeks information not relevant to the claims or defenses at issue as to the majority of the issues inquired about, and seeks to re-litigate issues already addressed in other litigations. NCR also objects to this Interrogatory because it seeks information, without any limitation, regarding issues that in some cases are 50 years old or that otherwise extend over multiple decades.

Answering further as to each of the 16 interrogatories:

(a) NCR objects to Interrogatory 1(a) because it seeks documents not relevant to the claims or defenses at issue because the Purchase Agreement itself has no relevance to this litigation. NCR further objects to this Interrogatory because it seeks information, without any limitation, regarding an agreement that is almost fifty years old. NCR states that it is unable to otherwise answer the Interrogatory because BAT has not identified with any particularity the information relating to the Purchase Agreement that it seeks.

(b) Subject to and without waiving the foregoing objections, NCR identifies: (i) Lee A.

Freeman, Jr., John Giering, and Jonathan Hoak of NCR; (iii) J. Andrew Schlickman of Sidley Austin LLP; (iii) Dennis Hultgren, Dan McIntosh, and Paul Karch of API; and (iv) Robert Bourque, Janet A. Gochman, and William T. Russell, Jr. of Simpson Thacher LLP as having knowledge about the negotiation and terms of the CSA.

(c) Subject to and without waiving the foregoing objections, NCR directs BAT to the interrogatory responses and initial disclosures made by NCR in the Fox River and Kalamazoo River litigations. *See* NCRV_00476209 through NCRV_00476244.

(d) Subject to and without waiving the foregoing objections, NCR directs BAT to the interrogatory responses and initial disclosures made by NCR in the Fox River and Kalamazoo River litigations. *See* NCRV_00476209 through NCRV_00476244.

(e) Subject to and without waiving the foregoing objections, NCR directs BAT to the interrogatory responses and initial disclosures made by BAT in the Fox River and Kalamazoo River litigations. *See* NCRV_00476209 through NCRV_00476244.

(f) Subject to and without waiving the foregoing objections, NCR directs BAT to the interrogatory responses and initial disclosures made by BAT in the Fox River and Kalamazoo River litigations. *See* NCRV_00476209 through NCRV_00476244.

(g) In addition to the above objections, NCR objects to Interrogatory 1(g) that it has never found evidence in its own files that NCR CCP broke went to the Kalamazoo River. The only purported evidence of NCR CCP broke sales to the Kalamazoo River area of which NCR is aware are documents produced by others in *Appleton Papers Inc. v. George A. Whiting Paper Co.,* No. 8-C-16 (E.D. Wis.), *United States v. NCR Corp.,* No. 10-cv-910-WCG (E.D. Wis.), and/or *Georgia-Pacific Consumer Prods. LP v. NCR Corp.*, et al, 11-cv-00483-RJJ (W.D. Mich.), which production occurred

approximately a decade after NCR and BAT entered into the CSA. Subject to and without waiving the foregoing objections, NCR otherwise directs BAT to the interrogatory responses and initial disclosures made by BAT in the Kalamazoo River litigation. *See* NCRV_00476209 through NCRV_00476244.

(h) In addition to the above objections, NCR objects to Interrogatory 1(h) that it has never found evidence in its own files that NCR CCP broke went to the Kalamazoo River. The only purported evidence of NCR CCP broke sales to the Kalamazoo River area of which NCR is aware are documents produced by others in *Appleton Papers Inc. v. George A. Whiting Paper Co.,* No. 8-C-16 (E.D. Wis.), *United States v. NCR Corp.,* No. 10-cv-910-WCG (E.D. Wis.), and/or *Georgia-Pacific Consumer Prods. LP v. NCR Corp.*, et al, 11-cv-00483-RJJ (W.D. Mich.), which production occurred approximately a decade after NCR and BAT entered into the CSA. Subject to and without waiving the foregoing objections, NCR directs BAT to the interrogatory responses and initial disclosures made by BAT in the Kalamazoo River litigation. *See* NCRV_00476209 through NCRV_00476244.

(i) In addition to the above objections, NCR objects to Interrogatory 1(i) because it seeks information that is approximately 50 years old. Subject to and without waiving the foregoing objections, NCR directs BAT to the interrogatory responses and initial disclosures made by BAT in the Fox River and Kalamazoo River litigations. *See* NCRV_00476209 through NCRV_00476244.

(j) In addition to the above objections, NCR objects to Interrogatory 1(j) because it seeks information that is more than 50 years old. Subject to and without waiving the foregoing objections, NCR directs BAT to the interrogatory responses and initial

disclosures made by BAT in the Fox River and Kalamazoo River litigations. *See* NCRV_00476209 through NCRV_00476244.

(k) In addition to the above objections, NCR objects to Interrogatory 1(k) as vague and ambiguous in that BAT has not identified with any particularity the "NCR communications with Monsanto regarding PCBs" on which it seeks information, so NCR cannot answer the interrogatory as propounded.

(l) In addition to the above objections, NCR objects to the Interrogatory 1(l) because it is overly broad, not proportional to the needs of the case, and seeks information not relevant to the claims or defenses at issue insofar as it fails to limit the scope of knowledge of potential arranger liability to the Kalamazoo River. Subject to and without waiving the foregoing objections, NCR states that it, API, and BAT all had knowledge before executing the CSA that other potentially responsible parties at the Fox River site were asserting that NCR and API had arranger liability at that site and that, from that knowledge, NCR, API, and BAT all had notice of the possibility that someone could argue that the sale of broke at another site, such as the Kalamazoo River site, was also an arrangement for disposal. On information and belief, NCR, API, and BAT all also knew that the Kalamazoo River was alleged to have been contaminated by PCBs from CCP recycling and that certain potentially responsible parties had filed a Superfund allocation lawsuit. However, NCR denies that it had knowledge that NCR Paper broke had been sold to mills near the Kalamazoo River site. NCR identifies the people listed in response to Interrogatory 1(b) as having knowledge of the state of knowledge of NCR, API, and BAT of potential arranger liability at the time the CSA was executed.

(m) In addition to the above objections, NCR objects to Interrogatory 1(m) as vague and ambiguous because BAT has not identified with any particularity the "communications with any insurance company regarding Your potential and/or actual liability for PCB contamination in the Kalamazoo River" on which it seeks information, and—as such—NCR cannot answer the interrogatory as propounded.

(n) In addition to the above objections, NCR objects to Interrogatory 1(n) because BAT has not identified with any particularity the "NCR communications with Third Parties regarding any of the foregoing subjects" on which it seeks information. Without such identification, the Request is overbroad and unduly burdensome.

**INTERROGATORY NO. 2:**

Provide the custodian, location, and general description of all relevant documents, including pertinent insurance agreements, and other physical evidence.

**RESPONSE TO INTERROGATORY NO. 2:**

NCR objects to this Interrogatory as overly broad, unduly burdensome, not proportional to the needs of the case, and as premature because NCR's investigation and review of documents and sources is ongoing and the parties have yet to agree on discovery parameters including date ranges, custodians, or search terms.

Subject to and without waiving the foregoing objections, NCR states that it will produce all non-privileged documents as set forth in NCR's initial disclosures and responses to requests for production of documents.

**INTERROGATORY NO. 3:**

Provide a list of all shipments to a Kalamazoo River-based entity of PCB-containing CCP or CCP byproducts (including, but not limited to, Broke) that originated from You, including Your Appleton Papers Division, including (1) the date of the shipment, (2) the entity that shipped the

PCB-containing CCP or CCP byproducts, (3) the entity that received the PCB-containing CCP or CCP byproducts, and (4) any Third Party involved in the shipment process.

**RESPONSE TO INTERROGATORY NO. 3:**

NCR objects to this Interrogatory because it implies the existence of facts or circumstances that do not exist and because it exceeds the scope of permissible interrogatories at this stage of discovery under Rule 33.3 of the Local Rules. NCR further objects to this Interrogatory because it calls for information concerning the Appleton Papers Division, which NCR has not owned since 1978 when BAT acquired its assets. Any such information, if it exists, is more readily accessible to BAT. Answering further, NCR states that it has never found evidence in its own files that NCR CCP broke went to the Kalamazoo River, other than documents produced to it in *Georgia-Pacific Consumer Prods. LP v. NCR Corp., et al*, 11-cv-00483-RJJ (W.D. Mich.) ("*Georgia-Pacific*"), which production occurred approximately a decade after NCR and BAT entered into the CSA. NCR states that Georgia-Pacific alleged in that action that ACPC and CPM—the two Appleton Papers Division companies acquired by BAT from NCR—were responsible for Kalamazoo contamination by selling PCB-laden broke that they knew or should have known "would result in the discharge of wastewater and the disposal of other waste containing PCBs," *Id.* Dkt. 80 ¶¶ 76-78. The court in *Georgia-Pacific* found by a preponderance of the evidence that CCP broke reached the Kalamazoo River based on the testimony of a truck driver for Georgia Pacific and two transport records from National Fiber, which brokered CCP broke from ACPC and CPM—the two Appleton Papers Division companies acquired by BAT from NCR. The *Georgia-Pacific* court also identified a letter allegedly from ACPC employee Bud Heinritz in 1965 (prior to NCR's acquisition of ACPC)

detailing the shipment of "limited quantities" of ACPC broke to "Allied Paper Company, Kalamazoo Michigan."

Dated: December 13, 2024

**SIDLEY AUSTIN LLP**

/s/ Zachary Payne
John J. Kuster
Zachary Payne
787 Seventh Avenue
New York, NY 10019
Tel.: (212) 839-5300
jkuster@sidley.com
zpayne@sidley.com

Bruce R. Braun (admitted pro hac vice)
Charles K. Schafer (admitted pro hac vice)
One South Dearborn
Chicago, IL 60603
(312) 853-7000
bbraun@sidley.com
cschafer@sidley.com

*Attorneys for Plaintiff NCR Voyix Corporation*

**VERIFICATION OF INTERROGATORY ANSWERS**

I, Christopher Murphy, am Law Vice President and Chief Litigation Counsel of Plaintiff NCR Voyix Corporation. I have reviewed NCR's Responses and Objections to the First Set of Interrogatories by Defendant BAT and believe, based on reasonable inquiry, that the foregoing answers are true and correct to the best of my knowledge, information and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on December 13, 2024

______________________________
Christopher Murphy