**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NCR CORPORATION,

Plaintiff,

v.

B.A.T INDUSTRIES p.l.c.,

Defendant.

Case No.: 1:23-cv-1172-JPC-SDA

# **PLAINTIFF NCR VOYIX CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO EXCLUDE THE REPORT AND OPINIONS OF MICHAEL D. GOODSTEIN**

## PRELIMINARY STATEMENT

The Court should preclude BAT from offering the report or testimony of its expert Michael D. Goodstein, as his proposed testimony fails to meet several black-letter requirements for admissible expert evidence. BAT proffers Mr. Goodstein as a lawyer with experience "litigating and advising . . . on CERCLA and other environmental laws" and proposes to have him (1) "summarize the CERCLA caselaw about 'arranger' liability in existence at the time of the CSA," and (2) describe what he characterizes as NCR's "investigation" of "exposure at the Kalamazoo River" prior to the time that the parties entered the Confidential Settlement Agreement ("CSA"). Ex. A at 3–4, 13. Mr. Goodstein's opinions do not constitute proper expert testimony and should be excluded in their entirety.

First, Mr. Goodstein offers opinions on irrelevant issues. Sections 1 and 2 summarize the CERCLA arranger-liability framework that existed in the late 1990s. But this is not a CERCLA liability case. The core issues that remain in the case are BAT's counterclaims and affirmative defenses claiming that alleged fraud or misrepresentation makes the CSA unenforceable. *See* Dkt. 38 at 2–26, 29–30, 40. The jury[1] in this case will not decide whether NCR was liable as a CERCLA arranger at Kalamazoo—indeed, a federal judge already decided that issue more than 12 years ago (and more than 15 years after the CSA was executed by the parties). A summary of public CERCLA caselaw unrelated to NCR does not and cannot show what NCR allegedly knew or failed to disclose when the CSA was negotiated.

[1] The Court has determined that BAT's counterclaims may be tried to a jury but struck BAT's jury demand "with respect to issues that are unique to the claims in NCR's Complaint." *See* Dkt. 98 at 24–25. The Court's order was without prejudice to NCR's right to later renew its motion. *Id.*

Second, even if it were relevant, Mr. Goodstein's proffered testimony is inadmissible legal analysis. He recites text from CERCLA (and its implementing regulation), summarizes select examples[2] of decisions issued before the CSA was executed, and hypothesizes about how that law would have applied to the Kalamazoo River site. But this is legal analysis, not expert testimony. The Court instructs the jury on the law; a witness may not usurp this role under the banner of expert opinion.

Third, Mr. Goodstein's opinions regarding CERCLA are likely to confuse the jury. If BAT is permitted to present expert testimony on CERCLA arranger liability, jurors reasonably may conclude that they are supposed to decide whether NCR should have been liable under CERCLA, or that CERCLA liability is an element of BAT's claims.

Fourth, Mr. Goodstein offers a selective factual summary and interpretation of documents that a layperson could understand without expert assistance. In Section 3, he reviews a curated set of documents and deposition excerpts provided by BAT's counsel and proposes to tell the jury what he believes they mean, in a way that aligns with BAT's theory of the case. He provides no specialized or technical analysis, or CERCLA expertise, in interpreting these documents. Instead, he simply reads documents and fits them into BAT's preferred narrative. This is the province of lawyer advocacy—which is all Mr. Goodstein is providing—not admissible expert testimony.

Fifth, the apparent point of Mr. Goodstein's evidence summary is to opine improperly on NCR's state of mind. For example, he asserts, without any personal knowledge or reference to any expertise, a belief that NCR and its lawyers investigated Kalamazoo issues, "were concerned" about them, and "formed the view" that claims against NCR were "likely." Ex. A at 4, 15–16.

[2] Mr. Goodstein notably fails to address numerous cases decided before 1999 on arranger liability that undercut the point he seems to be making. This is a separate significant problem with his report but is not a basis on which NCR seeks to exclude his testimony at this time.

Interpreting case documents and making inferences about a party's knowledge and intent is a task for the jury, not an expert witness—and certainly not an expert witness like Mr. Goodstein, whose expertise has no connection to the opinion.

Each of these proffered opinions is squarely proscribed by well-established rules of evidence. At best, Mr. Goodstein's opinions are irrelevant, confusing, and unnecessary. At worst, they are an effort to smuggle BAT's legal theories and factual narratives into the case under the guise of environmental expertise. BAT may introduce admissible documents, examine witnesses with personal knowledge, and argue reasonable inferences through counsel. It may not present those arguments through a CERCLA expert in a case that does not turn on any CERCLA issue. Mr. Goodstein's opinions should therefore be excluded.

## BACKGROUND

### I. The CSA and the Remaining Enforceability Dispute

This case concerns the parties' obligations under, and BAT's challenge to the enforceability of, the CSA. Judge Cronan already has resolved the threshold contract issue on NCR's Rule 12(c) motion. The Court held that, under the unambiguous language of the CSA, the Kalamazoo River site qualifies as a "Future Site" for purposes of the CSA's Subsequent Allocation provision, which requires BAT to compensate NCR for sixty percent of costs NCR incurs relating to the Kalamazoo River site. Dkt. 38 at 16–17; *see also id.* at 4.

BAT's surviving counterclaims and affirmative defenses challenge whether the CSA is enforceable against BAT. BAT's theory is that the CSA is "void" because NCR induced BAT to enter the agreement through fraud or negligent misrepresentation. *Id.* at 18, 26. BAT's counterclaims allege that NCR concealed that it had arranged for discharges of PCBs into the

Kalamazoo River and that NCR was aware of the likelihood that it would be found liable there as an arranger. Counterclaims, Dkt. 21, ¶¶ 77–78; *see also* Dkt. 38 at 19.

Two key factual issues regarding NCR remain, therefore. One is BAT's allegation that NCR somehow had "superior knowledge" of certain issues, principally whether Fox River-adjacent paper mills (that NCR had sold to BAT 20 years before the CSA) had shipped or sold NCR Paper broke to mills in the Kalamazoo River area. *See* Dkt. 38 at 22–24. The second issue is whether NCR, in fact, knew of, but withheld from BAT, material facts about these issues. *See id.* at 23–25.

## II. Mr. Goodstein's Report

Mr. Goodstein is a lawyer in private practice with experience "litigating and advising clients on CERCLA and other environmental laws." Ex. A at 3. Mr. Goodstein's report states that he will summarize "CERCLA caselaw about 'arranger' liability in existence at the time of the CSA" and opine upon "NCR's potential legal exposure . . . at the Kalamazoo River Superfund Site." *Id.*

In Section 1 of the report, Mr. Goodstein recites the basic liability provisions and definitions in CERCLA and its implementing regulation. *Id.* at 5–6. He then introduces an appendix that lists and summarizes certain judicial decisions addressing parties who were, and were not, held liable under CERCLA as having "arranged" for the disposal of a hazardous substance. *Id.* at 6; *see also id.* at 17–21 (Appendix A).

Section 2 continues that legal discussion by identifying factors Mr. Goodstein says courts considered in the cases cited in his appendix and identifying facts that "[a] court might consider" in weighing each factor. Ex. A at 6–10. Section 2 also states conclusions on CERCLA issues that are not disputed in this case, such as that PCBs were a CERCLA hazardous substance (*id.* at 4–5)

or that NCR could be an “arranger” at the Kalamazoo River site only if NCR Paper broke from paper mills it owned actually reached the site (*id.* at 7).

Section 3 is titled “NCR Investigated Its CERCLA Liability at the Kalamazoo River Superfund Site.” *Id.* at 10. Mr. Goodstein describes Section 3 as identifying “some facts that stood out to me in my review of the documents.” *Id*. at 4. Mr. Goodstein recounts selected documents he reviewed, including deposition testimony, communications from NCR and its lawyers concerning the Kalamazoo River litigation, and consultant reports summarizing public filings from the Kalamazoo River litigation. *Id.* at 10–15.

Based on his review of these documents, Mr. Goodstein opines that NCR’s counsel “appears to have been monitoring” Kalamazoo litigation and “appears to have provided advice to NCR” regarding those issues, and that the existence of privileged documents regarding the Kalamazoo site “suggests” a “focus by NCR and its counsel” on potential Kalamazoo liability. *Id.* at 10–11. He also opines that documents concerning consultants and litigation planning show work relating to broke, other possible PCB-contaminated sites, and potential exposure at the Kalamazoo River site. *Id.* at 11–15. Mr. Goodstein concludes: “Based on my review of documents and deposition testimony,” it “appears” NCR and its lawyers were “concerned” about Kalamazoo liability and “formed the view—prior to the execution of the CSA—that it was likely claims would be commenced against NCR regarding the Kalamazoo River Superfund Site.” *Id.* at 16.

Mr. Goodstein does not state that his conclusions in Section 3 involved the application of his expertise, industry standards, or some defined methodology. Mr. Goodstein does not purport to apply any independent environmental analysis to the Kalamazoo River or the alleged contamination there. Nor does Mr. Goodstein explain how his CERCLA experience supplies a basis for selecting the documents discussed or for drawing the inferences he draws from them.

**LEGAL STANDARDS**

"Trial courts serve as 'gatekeep[ers],' responsible for 'ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig.*, 341 F. Supp. 3d 213, 239 (S.D.N.Y. 2018) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Expert testimony must be directed to matters within the witness's specialized knowledge, "not to lay matters which a jury is capable of understanding and deciding without the expert's help." *Andrews v. Metro-North Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989). Expert testimony must also be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591 (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985)).

It is also impermissible for an expert to instruct the jury on the law. *See United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) ("As a general rule an expert's testimony on issues of law is inadmissible."). Expert testimony on legal issues "usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (quoting *Bilzerian,* 926 F. 2d at 1294).

"Even if the testimony is admissible under Rule 702, it still must pass muster under Rule 403." *United States v. Dukagjini*, 326 F.3d 45, 58 (2d Cir. 2003); *see also Daubert*, 509 U.S. at 595 ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses.") (citation modified). This means that the expert testimony's "probative value" must not be substantially outweighed by risks of "confusing the issues" or "misleading the jury." Fed. R. Evid. 403.

## ARGUMENT

### I. The Opinions Contained in Sections 1 and 2 of Mr. Goodstein's Report Are Not Relevant to Any Claim or Defense.

The Court should exclude the opinions in Sections 1 and 2 of Mr. Goodstein's report because the CERCLA arranger-liability framework discussed in those sections has no relevance to the claims or defenses in this case. As the Supreme Court explained in *Daubert*, "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." 509 U.S. at 591; *see also United States v. Rutkoske*, 506 F.3d 170, 177 (2d Cir. 2007) (explaining that relevance requires "a relation" between the evidence "and a matter properly provable in the case").

Courts consistently exclude expert testimony where an expert's opinion relates to standards that are not at issue. In *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 544 (S.D.N.Y. 2004), for example, the plaintiffs sought to introduce an expert on ethical standards relating to clinical trials and data. The court found that the ethics testimony "would not assist the fact-finder in determining any factual dispute in this case" because the case hinged on separate applicable legal standards. *Id.* at 544. Likewise, the court in *Luitpold Pharms., Inc. v. Ed. Geistlich Söhne A.G. für*

*Chemische Industrie*, No. 11-cv-00681, 2015 WL 5459662, at *8 (S.D.N.Y. Sept. 16, 2015) excluded proffered expert testimony on best sales and marketing practices because "[e]xpert opinion on a party's compliance with an industry standard is irrelevant when its obligations are contractually defined."

Similarly, in the instant case, the legal framework for arranger liability under CERCLA is not relevant to the resolution of the declaratory judgment claim that is before this Court nearly thirty years later. The jury will not be asked to decide whether NCR was liable as a CERCLA arranger at the Kalamazoo River. The legal framework for CERCLA as of the 1990s does not control or resolve the questions before the jury or make BAT's claim any more or less likely.

BAT may argue that whether NCR was analyzing the potential for CERCLA liability at the Kalamazoo River is relevant to BAT's counterclaim. But BAT must establish facts regarding NCR's actions or state of mind through lay testimony and contemporaneous documents, not through an examination of 1990s caselaw. In *United States v. Ingredient Technology Corp.*, 698 F.2d 88, 97 (2d Cir. 1983), the Second Circuit made clear that evidence about the law that was applicable at the time of a party's conduct is not itself probative of factual issues regarding that party's conduct or beliefs. The court explained that such factual determinations must hinge on *facts*, and so cannot be inferred by reference to the governing law. *See id.* (recognizing that a determination of willfulness rests on the party's actual "conduct" and "subjective belief," not the applicable law). The court noted with approval the Fifth Circuit's similar holding that expert testimony regarding the complexity of tax laws was "irrelevant to willfulness issues since complexity of laws sheds no light on defendant's intent." *Id.* (citing *United States v. Herzog*, 632 F.2d 469, 473 (5th Cir. 1980)). Similarly, Mr. Goodstein's testimony regarding the arranger-liability framework as of the 1990s is not probative of NCR's knowledge, intent, or state of mind.

There is no reason, in short, that the jury would benefit from the testimony of a lawyer with CERCLA experience on the contours of that legal regime. Those legal concepts are not at issue. Mr. Goodstein's testimony does not "fit" the case and will not "assist the trier of fact." *See Daubert,* at 509 U.S. 591–92.

## II. Mr. Goodstein's Opinions in Sections 1 and 2 Offer Inadmissible Legal Analysis.

BAT may contend that Mr. Goodstein's opinions in Sections 1 and 2 of his report are helpful because they offer expertise about whether certain facts could satisfy CERCLA legal standards. That argument holds no water for the reasons discussed above. But even if it did, Mr. Goodstein's opinion on legal issues is inadmissible. The Second Circuit has held that "[a]s a general rule, an expert's testimony on issues of law is inadmissible." *Bilzerian*, 926 F.2d at 1294; *see also*, *e.g.*, *Rush Indus., Inc. v. Garnier LLC*, 309 F. App'x 431, 432 (2d Cir. 2009) (finding inadmissible a "purported expert opinion [that] consists almost entirely of discussion and application of legal standards").

Courts in this District consistently exclude expert testimony that opines on legal conclusions or legal interpretations. For example, in *Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461 (S.D.N.Y. 2005), the court excluded the expert testimony of a former prosecutor where his report discussed federal securities laws, defined legal terms such as "market manipulation," "insider trading," and "material" information, and applied those legal principles to conclude that securities laws had been violated. *See id.* at 466, 470. The court explained that "it is not for witnesses to instruct the jury as to applicable principles of law, but for the judge," and that experts may not "provide legal opinions, legal conclusions, or interpret legal terms." *Id.* at 470 (quoting *Marx & Co., Inc. v. Diners' Club, Inc.*, 550 F.2d 505, 509-10 (2d Cir. 1977))*; see also In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64–65 (S.D.N.Y. 2001) (excluding

declarations from law professors because "the testimony of an expert on matters of domestic law is inadmissible for *any* purpose") (quoting *Music Sales Corp. v. Morris*, 73 F. Supp. 2d 364, 381 (S.D.N.Y. 1999)); *Am. Empire Surplus Lines Ins. Co. v. J.R. Contracting & Env't Consulting, Inc.*, 743 F. Supp. 3d 530, 542–43 (S.D.N.Y. 2024) (precluding an insurance expert from testifying about his interpretation of the policy or offering legal conclusions, but allowing testimony on insurance-industry practices and audits and explaining that an expert who opines on questions of law is not helpful to the trier of fact because "legal opinions, legal conclusions, or interpret[ations of] legal terms" fall "solely within the province of the court").

To the extent Sections 1 and 2 offer anything more than an irrelevant summary of CERCLA provisions and caselaw, they do exactly what those cases forbid: instruct on CERCLA arranger-liability law and opine on how a court would decide whether a set of facts creates arranger liability. That is not the role of expert testimony. *See In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d at 64 (finding the rule prohibiting experts from providing their legal opinions or conclusions is "so well-established that it is often deemed a basic premise or assumption of evidence law—a kind of axiomatic principle") (quoting Thomas Baker, The Impropriety of Expert Witness Testimony on the Law, 40 U. Kan. L. Rev. 325, 352 (1992)).

## III. Mr. Goodstein's Opinions in Sections 1 and 2 Will Confuse the Issues and Mislead the Jury.

The same defects that make Mr. Goodstein's Section 1 and 2 opinions irrelevant and inadmissible legal analysis also create a substantial risk of juror confusion. This renders them inadmissible under Rule 403. *See United States v. Cruz*, 363 F.3d 187, 194 (2d Cir. 2004) ("Even relevant evidence 'may be excluded if its probative value is substantially outweighed by the danger

of unfair prejudice, confusion of the issues, or misleading of the jury.'") (quoting Fed. R. Evid. 403).

Mr. Goodstein's opinions in these sections of his report would interpose a complex CERCLA liability framework into a case about the CSA and whether its execution was fraudulently or negligently induced. The jury may believe, for example, that it is hearing testimony on the CERCLA legal framework and the elements of arranger liability because it must decide whether NCR could have been found liable as an arranger in the 1990s, or that it otherwise needs to apply the elements to NCR's conduct. Indeed, why else would BAT be offering the testimony of a CERCLA lawyer on this legal framework and its elements?

As the Supreme Court has recognized, "[e]xpert evidence can be both powerful and quite misleading." *Daubert*, 509 U.S. at 595. The Second Circuit has applied that principle to exclude expert testimony where its probative value is outweighed by the risk of "confusion of the issues[] or misleading the jury." *Nimely*, 414 F.3d at 397 (quoting Fed. R. Evid. 403).

In *Ingredient Technology Corp.*, 698 F.2d at 97, the defendants sought to introduce expert testimony concerning Treasury regulations and the asserted uncertainty of the tax law. The Second Circuit affirmed the district court's exclusion of that evidence, explaining that "it would be very confusing to a jury to have opposing opinions of law admitted into evidence as involving a factual question for them to decide." The court emphasized the basic proposition: "Questions of law are for the court." *Id.*

In *SEC v. Mudd*, No. 11-cv-09202, 2016 WL 2593980, at *7 (S.D.N.Y. May 4, 2016), the court excluded expert testimony about which disclosures investors found "useful" because "usefulness" was not at issue. The SEC had alleged that FNMA's disclosures were "materially false or misleading" and the court held that the expert's "opinion about the usefulness of FNMA's

disclosures is likely to confuse and mislead the jury on the issue of materiality, a distinct legal concept with a distinct legal definition." *Id.*

Accordingly, even if Mr. Goodstein's Section 1 and 2 opinions could provide any marginal probative value to the jury (and they do not), under Rule 403, any such value would be substantially outweighed by the risk that his opinion would confuse the issues and mislead the jury.

## IV. Mr. Goodstein's Opinions in Section 3 Constitute Inadmissible Factual Narrative and Argument, Not Expert Analysis.

The material presented by Mr. Goodstein in Section 3 of his report should be excluded because it is a lay factual narrative rather than an opinion based on Mr. Goodstein's expertise. In Section 3, Mr. Goodstein summarizes selected documents and concludes that they show that NCR's lawyers "investigated" certain topics before the CSA. Ex. A at 10. Mr. Goodstein asserts that NCR and its lawyers "were concerned" about those issues and "formed the view" that litigation was "likely." *Id.* at 4, 16. In doing so, Mr. Goodstein does not refer to his expertise, explain why a lay factfinder could not interpret the documents equally well, or indeed, offer any analysis beyond a mere summary of the documents and his assertion that the documents show what NCR's lawyers were "concerned" about and what "view" they formed. *Id.* at 16.

This is not admissible expert testimony. Expert testimony must concern matters within the witness's "specialized knowledge." Fed. R. Evid. 702(a). It may not address "lay matters which a jury is capable of understanding and deciding without the expert's help." *Andrews*, 882 F.2d at 708. Applying that rule, courts in this District routinely exclude expert narratives that summarize documents or present one party's view of the record.

In *Highland Capital*, discussed above in Section II, the court also rejected the testimony of the former federal prosecutor proffered as an expert witness because the "Facts" section of his report "marshal[ed] Highland's evidence concerning the alleged dealings" among the parties. *Id.*

at 468. The court determined that the expert was "simply rehashing otherwise admissible evidence about which he ha[d] no personal knowledge," *id*. at 468-69, and explained that, although an expert may rely on facts or data in forming a proper expert opinion, "an expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence," *id.* at 469.

In *In re Rezulin*, the plaintiffs proffered an expert "to testify to a narrative reciting selected regulatory events concerning Rezulin, including Advisory Committee meetings, labeling changes, 'Dear Doctor' letters, and approval and withdrawal decisions by regulators in the United States and abroad." 309 F. Supp. 2d at 551. Judge Kaplan excluded the testimony, finding that the facts discussed should be "properly presented through percipient witnesses and documentary evidence" and that the "glosses that [the expert] interpolates into his narrative are simple inferences . . . that serve only to buttress plaintiffs' theory of the case." *Id*.

The *Rezulin* court explained throughout its opinion that testimony about factual issues regards "lay matter that the fact-finder can understand without the assistance of experts," regardless of the witness's experience. *Id.* at 549, 551; *see id.* at 553–54, 547 & n.45; *see also LinkCo, Inc. v. Fujitsu Ltd.*, No. 00-cv-07242, 2002 WL 1585551, at *2 (S.D.N.Y. July 16, 2002) (excluding expert testimony that was based on a review of "documents, computer files, deposition transcripts and exhibits, and other relevant sources of information" because fact witness testimony on such matters was "far more appropriate" and the expert's "secondhand knowledge" was unnecessary); *Media Sport & Arts s.r.l. v. Kinney Shoe Corp.*, No. 95-cv-03901, 1999 WL 946354, at *3 (S.D.N.Y. Oct. 19, 1999) (excluding expert testimony based on a "review of documents and depositions produced by the parties" because the expert's testimony could not "take the place of" testimony by witnesses with actual knowledge); *Taylor v. Evans*, No. 94-cv-08425, 1997 WL

154010, at *2 (S.D.N.Y. Apr. 1, 1997) (rejecting expert testimony that consisted of "a narrative of the case which a lay juror is equally capable of constructing").

Mr. Goodstein's opinions in Section 3 are indistinguishable from the testimony excluded in these cases. Rule 702 does not permit an expert to summarize select documents and tell the jury what he or BAT thinks the documents mean. Those are determinations for the jury to make by reference to fact witness testimony, admissible exhibits, and arguments by BAT's counsel.

## V. Mr. Goodstein's Opinions in Section 3 Are Inadmissible Because He Purports to Opine on NCR's and its Counsel's States of Mind.

Mr. Goodstein's opinion in Section 3 of his report also should be excluded because, to the extent Mr. Goodstein does anything beyond summarizing the documents, he asks the jury to adopt his conclusions about NCR's and its counsel's states of mind. As stated above, he asserts based on his review of the documents, that NCR and its lawyers "investigated" particular topics, "were concerned" about them, and "formed the view" that litigation was "likely." Ex. A at 4, 16.

Under well-established law in the Second Circuit, experts may not tell the jury what a party knew, intended, believed, or understood. *See In re Rezulin*, 309 F. Supp. 2d at 547 ("Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony."). The Second Circuit applied the rule in *United States v. Aiyer*, a foreign-exchange price-fixing case. 33 F.4th 97, 126 (2d Cir. 2022). There, the district court allowed some defense expert testimony on market conditions, but drew the line where the expert attempted to explain the alleged conspirators' reasons for acting. The Second Circuit affirmed, quoting the district court's ruling that, "to the extent that [the expert opinion] attempts to suggest why the alleged conspirators in this case acted as they did, it would be an impermissible attempt for an expert to testify as to the state of mind of the alleged conspirators." *Id.*

The court's decision in *Island Intell. Prop. LLC v. Deutsche Bank AG*, No. 09-cv-02675, 2012 WL 526722, at *2–3 (S.D.N.Y. Feb. 14, 2012), is particularly apposite. The court ruled on the permissible scope of expert testimony in a patent case and stated that an expert may not "walk the jury through a narrative of the numerous documents produced during discovery," "directly transmit facts to the jury, about which [the expert] has no personal knowledge," or act as a "vehicle for lengthy factual narrative." *Id.* at *2. Nor may an expert opine on intent: "No proposed expert will be allowed to opine on the state of mind or intent of a particular individual" because that "invades the province of the jury members, who are tasked with determining facts and credibility." *Id.*

In *In re Rezulin*, the court considered expert testimony in a products liability case that the defendant "decided to focus on the incomplete and inaccurate approval data," and was motivated by profit, whereas other entities had altruistic or regulatory motives. 309 F. Supp. 2d at 545 & n.38. The court excluded those opinions. It explained that "the opinions of these witnesses on the intent, motives or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise." *Id.* at 546. The court further held that the experts were improperly attempting to "assume the role of advocates for the plaintiffs' case by arguing as to the intent or motives" underlying the defendant's conduct. *Id.*

Courts in this District repeatedly have held the same. *See*, *e.g., In re Platinum-Beechwood Litig.*, 469 F. Supp. 3d 105, 115 (S.D.N.Y. 2020) (finding expert "may not testify about the knowledge or intent of the defendants with respect to the alleged fraudulent schemes at issue"); *Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 729–30 (S.D.N.Y. 2011), *aff'd in relevant part*, *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 135–36 (2d Cir. 2013) (striking expert reports in a copyright work-for-hire dispute where experts opined about whether Marvel or

freelance artists had any "understanding or intent" that the works were made for hire; holding that "[i]nferences about the intent or motive of parties or others lie outside the bounds of expert testimony," and rejecting opinions from experts who lacked firsthand knowledge of the relevant events); *Highland*, 379 F. Supp. at 469–70 (excluding expert testimony that interjected opinions about the "state of mind and knowledge possessed by defendants and non-parties," because "[n]one of this speculation is admissible").

BAT's fraud and negligent-misrepresentation theories place NCR's alleged knowledge at the center of the case. BAT cannot attempt to prove that element through Mr. Goodstein's interpretation of selected documents. BAT is free to introduce admissible documents, question fact witnesses about them, and argue reasonable inferences from them through counsel. It may not, however, present an interpretation of facts or offer that argument through an expert witness under the guise of specialized CERCLA analysis. The Court should not countenance BAT's attempt to use Mr. Goodstein's claimed CERCLA expertise to inject a self-serving review of select documents.

**CONCLUSION**

For the foregoing reasons, the Court should exclude the report and opinions of Michael D. Goodstein in their entirety.

Dated: June 22, 2026
New York, New York

By: /s/ Charles K. Schafer
John J. Kuster
Zachary Payne
**SIDLEY AUSTIN LLP**
787 7th Avenue
New York, NY 10019
(212) 839-5300
jkuster@sidley.com
zpayne@sidley.com

Bruce R. Braun (admitted *pro hac vice*)

Charles K. Schafer (admitted *pro hac vice*)
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL 60603
(312) 853-7000
bbraun@sidley.com
cschafer@sidley.com

*Counsel for NCR Voyix Corporation*