**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NCR CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>B.A.T. INDUSTRIES P.L.C.,<br><br>Defendant. | Case No. 1:23-cv-1172-JPC-SDA |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF NCR CORPORATION'S MOTION TO EXCLUDE THE REPORT AND OPINIONS OF MICHAEL D. GOODSTEIN**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ..............................................................................................1

FACTUAL BACKGROUND ..................................................................................................3

LEGAL STANDARD ..............................................................................................................4

ARGUMENT ...........................................................................................................................6

1. Mr. Goodstein's Opinions Contained in Sections 1 and 2 of the Goodstein Report are Relevant and Helpful ..............................................................6

2. Mr. Goodstein's Opinions in Sections 1 and 2 do not Offer Inadmissible Legal Analysis. ..........................................................................................................9

3. Mr. Goodstein's Opinions in Sections 1 and 2 Satisfy Rule 403. ..........................13

Probative Value ............................................................................................ 14

Risk of Confusion ........................................................................................ 14

4. Mr. Goodstein's Opinions in Section 3 Are Admissible. ........................................17

Section 3 is not a Lay Factual Narrative ...................................................... 17

Section 3 of the Goodstein Report Does Not Impermissibly Opine on NCR's or Counsel's State of Mind. ........................................................................ 19

CONCLUSION ......................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. City of New York*,
466 F. Supp. 2d 545 (S.D.N.Y. 2006)....................5

*Coan v. Dunne*,
No. 3:15-CV-00050 (JAM), 2019 WL 2169879 (D. Conn. May 17, 2019) ...........5, 10, 11, 13

*In re E.I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*,
348 F. Supp. 3d 698 (S.D. Ohio 2016) ....................19

*Highland Cap. Mgmt., L.P. v. Schneider*,
379 F. Supp. 2d 461 (S.D.N.Y. 2005)....................12, 13, 19

*In re Initial Public Offering Sec. Litig.*,
174 F. Supp. 2d 61 (S.D.N.Y. 2001)....................13

*Kaiser Aluminum Warrick, LLC v. US Magnesium, LLC*,
766 F. Supp. 3d 462 (S.D.N.Y. 2025), *reconsideration denied*,
No. 22-CV-3105 (JGK), 2025 WL 2306864 (S.D.N.Y. Aug. 8, 2025)....................6

*LaSalle Bank Nat'l Ass'n v. Lehman Bros. Holdings, Inc.*,
237 F. Supp. 2d 618 (D. Md. 2002) ....................19

*Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*,
No. 11-CV-681 (KBF), 2015 WL 5459662 (S.D.N.Y. Sept. 16, 2015) ....................8

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
643 F. Supp. 2d 482 (S.D.N.Y. 2009)....................6, 19

*MPM Silicones, LLC v. Union Carbide Corp.*,
No. 1:11-cv-1542, 2017 WL 6408611 (N.D.N.Y. Sept. 22, 2017),
*aff'd*, 966 F.3d 200 (2d Cir. 2020), *as amended* (Aug. 13, 2020) ....................19

*Nimely v. City of New York*,
414 F.3d 381 (2d Cir. 2005)....................4

*Peckham v. Cont'l Cas. Ins. Co.*,
895 F.2d 830 (1st Cir. 1990)....................5

*In re Platinum-Beechwood Litig.*,
469 F. Supp. 3d 105 (S.D.N.Y. 2020).................... *passim*

*In re Rezulin Prods. Liab. Litig.*,
309 F. Supp. 2d 531 (S.D.N.Y. 2004)....................8, 19

*Scott v. Chipotle Mexican Grill, Inc.*,
315 F.R.D. 33 (S.D.N.Y. 2016) ....................17

*Territory of Guam v. United States*,
593 U.S. 310 (2021) ....................11

*In re Terrorist Attacks on Sept. 11, 2001*,
No. 03-MD-01570 (GBD)(SN), 2025 WL 2383768 (S.D.N.Y. Aug. 18, 2025),
*adopted*, No. 03 MDL 1570 (GBD) (SN),
2026 WL 769787 (S.D.N.Y. Mar. 18, 2026) ....................4, 5, 7

*United States Sec. & Exch. Comm'n v. Mudd*,
No. 11 CIV. 9202 (PAC), 2016 WL 2593980 (S.D.N.Y. May 4, 2016) ....................16

*United States v. Bilzerian*,
926 F.2d 1285 (2d Cir. 1991) ....................5, 9, 13

*United States v. Ingredient Tech. Corp.*,
698 F.2d 88 (2d Cir. 1983) ....................8, 16

*United States v. Offill*,
666 F.3d 168 (4th Cir. 2011) ....................5, 9

*United States v. Wilson*,
355 F.3d 358 (5th Cir. 2003) ....................17

**Court Rules**

Fed. R. of Evid. 403 ....................13, 14

Fed. R. of Evid. 702 ....................4

Defendant B.A.T Industries P.L.C. ("BAT") by its attorneys, Hogan Lovells Cadwalader US LLP, respectfully submits this memorandum of law in opposition to Plaintiff NCR Corporation's ("NCR") Motion to Exclude the Report and Opinions of Michael D. Goodstein (the "Motion").

## PRELIMINARY STATEMENT

At trial in this action, BAT intends to call Michael D. Goodstein as an expert witness in the area of environmental law. NCR's Motion seeks to exclude Mr. Goodstein's testimony in its entirety, primarily because NCR believes it will be unhelpful to the jury. But Mr. Goodstein's testimony will help the jury understand the complex legal and regulatory background that underpins BAT's position in this matter: that NCR was aware, but failed to disclose to BAT, its arranger liability at the Kalamazoo River.

Decisions from prior cases have already determined that NCR produced a toxic product known as carbonless copy paper ("CCP"), that NCR knew that CCP was toxic, that NCR intentionally arranged to dump toxic CCP offcuts ("broke" and "trim") at the Kalamazoo River, and that, as a result, NCR was liable as an arranger under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").

In this action, NCR seeks indemnity from BAT for NCR's arranger liability at the Kalamazoo River because, in a Confidential Settlement Agreement between the parties, BAT agreed to cover a portion of the cleanup costs at "future sites." In response, it is BAT's primary contention that NCR fraudulently induced BAT to agree to these terms because NCR knew of its arranger liability at the Kalamazoo River, but failed to disclose that liability to BAT.

For a jury to assess the overall question of fraudulent inducement, the jury must have a working understanding of the basis of the liability that NCR faced, but did not disclose to BAT.

More specifically, the jury must understand the legal framework of CERCLA as it was in 1999, including when and how a party may be held liable as an arranger under CERCLA. Such an understanding requires an explanation of the key concepts of CERCLA, a very complex area of the law. Not only is this case concerned with a complex area of law, it is also concerned with the state of the law as it stood in 1998/1999, i.e. around 27 years ago. The jury will need to understand, in particular, the legislation and case law regarding the scope of arranger liability, the defenses that were available to an alleged arranger, the kinds of evidence that would be relevant when assessing arranger liability, and the information in NCR's possession that was potentially relevant to its arranger liability. The scope of expert evidence does not purport to go further than this and does not impermissibly stray into the assessment of whether the fraud itself has occurred. The expert evidence simply provides background information which will help the jury to go on to consider and assess NCR's own awareness of its arranger liability.

To assist the jury, therefore, BAT intends to call expert Michael D. Goodstein. Mr. Goodstein has spent over 40 years litigating and advising clients on CERCLA and other environmental laws. Expert Disclosure Report of Michael D. Goodstein ("Goodstein Report"), attached hereto as Exhibit A, at 3. He served with the United States Department of Justice in the Environmental Enforcement Section from 1988-2000 and has been working on CERCLA matters in private practice since then. *Id.* He has extensive experience conducting investigations into environmental risks on behalf of his clients, as well as pursuing and defending environmental claims. *Id.* at 39 of 42. Mr. Goodstein also taught CERCLA at Tulane Law School. *Id.* at 3.

Contrary to the contentions in NCR's Motion, this testimony is directly and centrally relevant to this action. It will help the jury understand a very complex area of law which underpins

BAT's theory of the case. And, as explained further below, it is entirely permissible under existing law. Accordingly, NCR's Motion should be denied.

## FACTUAL BACKGROUND

This case arises out of NCR's pollution of the Kalamazoo River between 1954 and 1971, when NCR produced a product known as carbonless copy paper ("CCP") using an emulsion which contained Aroclor 1242, a polychlorinated biphenyl ("PCB") that was toxic. Decisions from prior cases against NCR found that (i) by at least March of 1969, NCR learned that CCP contained toxic PCBs that cause serious health issues and (ii) despite this, NCR intentionally arranged to offload toxic scrap CCP offcuts (specifically "broke" from NCR's Appleton Papers Division ("APD") and "trim" from NCR's Systemedia Division ("Systemedia")) to unsuspecting mills situated along the Kalamazoo River. Consequently, in 2013, NCR was found liable under CERCLA for intentionally arranging for the disposal of toxic CCP broke and trim into the Kalamazoo River.

In 1978, years after NCR ceased polluting the Kalamazoo River, a subsidiary of BAT acquired the assets of the APD. It did not acquire Systemedia (which still operates as a division of NCR today). At the time, BAT had no knowledge of NCR's history of polluting the Kalamazoo River. In 1995, NCR sued BAT, claiming that BAT was liable for the costs of NCR's pollution of the Fox River, where APD operated. In July 1999, the parties entered into the Confidential Settlement Agreement ("CSA"), under which BAT agreed to pay a percentage of NCR's cleanup costs at the Fox River and "future sites."

At the time that NCR and BAT agreed to this language, NCR was fully aware that it faced liability at the Kalamazoo River, in addition to its liability at the Fox River, because of the arrangements it had made to dispose of toxic CCP broke and trim at that site (from the APD and Systemedia respectively). In fact, the record in this case will show that, at the time the parties

signed the CSA, NCR had been conducting an extensive investigation of its liability for contamination of the Kalamazoo River. Through this investigation, NCR knew that it faced arranger liability at the Kalamazoo. Therefore, at the time the parties signed the CSA, NCR was fully aware of its arranger liability for environmental cleanup at the Kalamazoo River while BAT was entirely unaware of any such liability.

In these proceedings, NCR claims that the Kalamazoo River qualifies as a "future site" under the CSA and that, accordingly, BAT is required to indemnify NCR for its malfeasance at that site. In response, BAT's primary contention is that NCR is not entitled to this relief because NCR was aware of, and failed to disclose, its actions and liability with respect to the Kalamazoo River when negotiating the CSA. BAT also contends that the CSA is unenforceable on public policy and other grounds.

## **<u>LEGAL STANDARD</u>**

The Second Circuit has held that Rule 702 authorizes courts to admit expert testimony that meets three conditions: (1) the witness is "qualified," (2) the witness' "opinion is based upon reliable data and methodology," and (3) the witness' "testimony (as to a particular matter) will '[help] the trier of fact.'" *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (*quoting* Fed. R. Evid. 702); *see also In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MD-01570 (GBD)(SN), 2025 WL 2383768, at *2 (S.D.N.Y. Aug. 18, 2025), *adopted*, No. 03 MDL 1570 (GBD) (SN), 2026 WL 769787 (S.D.N.Y. Mar. 18, 2026).

NCR does not challenge the first two elements[1], but argues that the third condition above, whether the witness' testimony will be helpful, is not met here. Expert testimony is helpful when

---

[1] NCR's only comment on the reliability of the data and methodology is its unsupported statement in the Preliminary Statement, and never mentioned again or supported in any way, that Mr.

it "sheds light on activities not within the common knowledge of the average juror" and "'provide[s] the groundwork to enable the [trier of fact] to make its own informed determination[s]' on relevant issues." *In re Terrorist Attacks*, 2025 WL 2383768, at *4 (*quoting In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 114 (2d Cir. 2013). To be helpful, expert testimony must be relevant. *Id.* Expert testimony is not helpful if it "usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *Allen v. City of New York*, 466 F. Supp. 2d 545, 548 (S.D.N.Y. 2006). However, courts in the Second Circuit have consistently held that expert testimony on issues of law is helpful, and therefore admissible, when it provides "background information" to "help a jury understand unfamiliar terms and concepts." *United States v. Bilzerian*, 926 F.2d 1285, 1294–95 (2d Cir. 1991); *In re Platinum-Beechwood Litig.*, 469 F. Supp. 3d 105, 117 (S.D.N.Y. 2020) (permitting expert testimony that "contextualize[d] the evidence so that the jury may understand the standards under which [a party] were operating with respect to management of [its] assets"); *Coan v. Dunne*, No. 3:15-CV-00050 (JAM), 2019 WL 2169879, at *1 (D. Conn. May 17, 2019); *see also United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011) ("[C]ourts and commentators have consistently concluded that expert testimony that ordinarily might be excluded on the ground that it gives legal conclusions may nonetheless be admitted in cases that involve highly technical legal issues"); *Peckham v. Cont'l Cas. Ins. Co.*, 895 F.2d 830, 837 (1st Cir. 1990) (permitting testimony from insurance law experts because "[i]nsurance is a

---

Goodstein reviewed "a curated set of documents and deposition excerpts provided by BAT's counsel." NCR's Brief at 2. This is inaccurate. Mr. Goodstein was provided access to virtually the entire factual record relevant to the issue on which he was engaged, including all deposition transcripts except for one which occurred after Mr. Goodstein's report was due, and he made his own independent decisions as to documents and evidence that he deemed significant.

complicated subject" and "Defendant's proffered experts could reasonably be expected to shed some light in a shadowy domain"). Furthermore, "because the federal rules emphasize liberalizing expert testimony, doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions." *Kaiser Aluminum Warrick, LLC v. US Magnesium, LLC*, 766 F. Supp. 3d 462, 473 (S.D.N.Y. 2025), *reconsideration denied*, No. 22-CV-3105 (JGK), 2025 WL 2306864 (S.D.N.Y. Aug. 8, 2025) (*quoting United States v. Jakobetz*, 955 F.2d 786, 797 (2d Cir. 1992)).

"Within the courts of the Second Circuit, an expert may lead a jury to the precipice of a verdict, but she may not instruct them to leap." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 482, 505 (S.D.N.Y. 2009).

## <u>ARGUMENT</u>

### 1. Mr. Goodstein's Opinions Contained in Sections 1 and 2 of the Goodstein Report are Relevant and Helpful.

There is no question that the opinions in the first and second sections of the Goodstein Report are relevant and satisfy the "helpfulness" standard for expert testimony.

The first two sections of the Goodstein Report easily satisfy this standard as his proposed testimony is directly relevant to BAT's allegations of fraudulent inducement, which Judge Cronan held would depend on whether "*NCR had 'superior knowledge of certain information', **namely the <u>extent of its liability</u>**, and that NCR knew that BAT was 'acting on the basis of mistaken knowledge' when it signed the CSA.*" Dkt. No. 38 at 22 (emphasis added); *id.* at 24. The jury in this case will assess, as a matter of fact, the ultimate questions of whether NCR did have superior knowledge to BAT, and whether NCR knew that BAT was acting on the basis of mistaken knowledge. BAT acknowledges this is not a task on which an expert can opine, and Mr. Goodstein does not purport to do so.

However, the jury's assessment cannot be undertaken in a vacuum, and in forming its view on these questions, in particular NCR's knowledge of the "*extent of [NCR's] liability*" the jury must already have an understanding of the underlying CERCLA concepts (based on the law as it stood in 1998/1999) which gave rise to that liability. The jury will not be able to assess NCR's understanding of the extent of its liability if it does not understand what the underlying CERCLA liability is or how such liability can arise. The purpose of Mr. Goodstein's testimony is to provide the background on CERCLA that will allow the jury to do its job. *See In re Terrorist Attacks*, 2025 WL 2383768, at *4 ("Expert testimony is helpful when it . . . provide[s] the groundwork to enable the [trier of fact] to make its own informed determination[s] on relevant issues."). Mr. Goodstein's first and second sections will help the jury understand this complex area of the law by providing an overview of the relevant aspects of CERCLA. In particular, Mr. Goodstein's testimony will explain:

- What CERCLA is and what it prohibited at the time the parties entered into the CSA (Goodstein Report at 4);
- What an arranger is, as that term is defined by CERCLA (*id.* at 5);
- What factors courts consider when determining whether a party meets CERCLA's definition of an arranger at the time the parties entered into the CSA (*id.* at 6–10);
- The potential defenses to arranger liability (such as the useful product defense) (*id.* at 8);
- the kinds of evidence that are relevant to arranger liability (*id.*at 7).

NCR's primary argument for excluding these opinions is a straw man. NCR argues that Mr. Goodstein's testimony is irrelevant because the "jury will not be asked to decide whether NCR was liable as a CERCLA arranger at the Kalamazoo River." Dkt. No. 130 ("NCR's Brief") at 8. While it is obviously true that the jury will not determine NCR's arranger liability, the jury will

need to consider what NCR knew in 1998/1999 regarding the extent of its liability under CERCLA, and for all the reasons set out above it requires background on CERCLA to do so.

The cases NCR cites on the relevance of expert testimony are clearly distinguishable. For example, in *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 542–44 (S.D.N.Y. 2004), an expert proposed to testify regarding whether defendant "acted in an unethical manner," which was entirely irrelevant to the principal issue in the case: "whether the defendants breached their legal duties . . . in the manufacturing, labeling and marketing of" a diabetes medication. Similarly, in *Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, No. 11-CV-681 (KBF), 2015 WL 5459662 (S.D.N.Y. Sept. 16, 2015), a breach of contract action, a party sought to admit expert testimony regarding what the expert believed constituted "best efforts" in a particular industry when the term "best efforts" was defined by the contract in question. *Id.* at 4. Finally, in *United States v. Ingredient Tech. Corp.*, 698 F.2d 88, 96 (2d Cir. 1983), defendants sought to admit expert testimony that the meaning of the applicable tax laws were so unclear that the defendants could not have had the requisite scienter. The court found that the proposed testimony was irrelevant, but only because the evidence showed that defendants subjectively believed that their conduct was unlawful and therefore did not consider the tax laws to be unclear. *Id.* at 97.

If anything, the cases NCR cites illustrate just how far afield expert testimony must stray before a court will deem it irrelevant. In each of these cases, the proposed expert testimony related to rules or standards that and no bearing on the issues to be decided. The same cannot be said here because sections 1 and 2 of the Goodstein Report provide background legal information that the jury must understand in order to resolve one of the most critical issues in this case: whether NCR was aware of its liability at the Kalamazoo River.

**2. Mr. Goodstein's Opinions in Sections 1 and 2 do not Offer Inadmissible Legal Analysis.**

While NCR cites *Bilzerian* for the rule that expert testimony on issues of law is generally not admissible, it fails to acknowledge that the very same decision recognizes an exception to this rule that permits experts to provide "background" on legal issues to "help a jury understand unfamiliar terms and concepts" in "complex cases." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991); *See also United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011) ("[W]e conclude that the specialized nature of the legal regimes involved in this case and the complex concepts involving securities registration, registration exemptions, and specific regulatory practices make it a typical case for allowing expert testimony that arguably states a legal conclusion in order to assist the jury.").

*In re Platinum-Beechwood Litig.*, 469 F. Supp. 3d 105, 117 (S.D.N.Y. 2020) illustrates how the exception to the general rule is applied. In that case, a plaintiff brought breach of fiduciary duty, fraud, and other claims against a hedge fund and its managers. The plaintiff sought to admit expert testify that "opines on the existence and contours of the fiduciary duties of care and loyalty owed by defendants . . . and discusses the legal prohibitions . . . under the Investment Advisors Act of 1940." *Id.* The plaintiff also proposed expert testimony regarding "(1) what a fiduciary or investment manager in a given context would ordinarily do according to relevant industry standards, (2) what the defendants here did instead, and (3) why the latter had the effect of defrauding or harming [a party]." *Id.* at 116. Judge Rakoff permitted this testimony because it "contextualize[d] the evidence so that the jury may understand the standards under which [a party] were operating with respect to management of [its] assets, as well as standard industry practices by investment managers to meet such standards." *Id.* at 117 (*citing Bilzerian*, 926 F.2d at 1295).

Mr. Goodstein's proposed testimony, like the expert in *Platinum-Beechwood*, will contextualize the evidence of NCR's knowledge of its arranger liability.

*Coan v. Dunne*, No. 3:15-CV-00050 (JAM), 2019 WL 2169879, at *1 (D. Conn. May 17, 2019), is particularly instructive here. In that case, the plaintiff alleged that the defendant engaged in fraudulent transfers, including the transfer of real property in Ireland. Defendant proposed to call an expert witness on Irish property law to help the jury better understand the context in which the transfer at issue was made. The court permitted the expert testimony, ruling:

> It is obvious, however, that many cases may require a jury to have some understanding of background legal concepts and related practices in order for the jury to make its ultimate factual assessments. ***This is especially true where there are background or subsidiary principles of law that may govern or influence the parties' conduct but that are not directly at issue with respect to the law that will form the basis for final jury instructions***. Thus, such "expert testimony may help a jury understand unfamiliar terms and concepts" and is permissible if "carefully circumscribed to assure that the expert does not usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it.

*Id.* at *1 (internal citations omitted) (emphasis added).

That is exactly what Mr. Goodstein does in Sections 1 and 2 of his report. As Mr. Goodstein explains in the overview of his report, Sections 1 and 2 respectively:

(i) "*provide some background on CERCLA, the elements of 'arranger' liability under CERCLA, and the state of the 'arranger' liability case law at the time of execution of the CSA between NCR and BAT*"; and

(ii) "*explain how the 'arranger' liability framework could be applied, and what facts and information would be relevant, in considering NCR's potential liability at the Kalamazoo River Superfund Site.*" Goodstein Report at 4.

Such testimony regarding "background" and "subsidiary principles of law" relating to arranger liability under CERCLA that may have "influenced [NCR's] conduct" (*id.*), falls squarely within the exception recognized by the Second Circuit whereby expert testimony on legal issues is admissible. At no point in Sections 1 and 2 of the Goodstein Report does Mr. Goodstein provide any testimony that is "directly at issue with respect to the law that will form the basis for final jury instructions," which in this case would focus on the legal principles surrounding fraudulent inducement claims. *See Coan*, 2019 WL 2169879, at *1. For reasons already explained above, the CERCLA background forms an important and relevant part of the jury's foundational understanding of the fraud allegation, as framed by Judge Cronan, but it does not opine on the fraud.

Further, there are additional reasons why expert testimony on CERCLA would be particularly helpful for a jury. First, courts and NCR recognize that CERCLA is a complex statutory scheme. *See Territory of Guam v. United States*, 593 U.S. 310, 312 (2021); NCR's Brief at 11 (describing CERCLA as "complex"). Second, the expert is opining on the application of CERCLA law at a fixed point in time nearly 30 years ago, so it would be even more challenging to discern the salient features of the framework without guidance from a practitioner with direct experience of that framework as it operated at the relevant time. Third, CERCLA and environmental law are specialized areas of law that require an understanding of technical legal concepts and also their practical application to Superfund sites in various regions of the United States. Accordingly, Second Circuit case law permits Mr. Goodstein to testify regarding background information that will allow the jury to understand CERCLA's unfamiliar terms and concepts.

NCR's brief suggests that Sections 1 and 2 of the Goodstein Report "*instruct on CERCLA arranger-liability law and opine on how a court would decide whether a set of facts creates arranger liability.*" NCR's Brief at 10. This sweeping statement, made without citation, is not accurate to the extent it suggests that Mr. Goodstein is providing legal conclusions to the jury. Properly read, Sections 1 and 2 of the Goodstein Report are appropriately circumscribed so that they outline the principles applicable to an assessment of NCR's arranger liability, but do not go on to make a conclusion about whether NCR did have such arranger liability. As such, those sections are plainly within the scope of the recognized exception outlined above.

Furthermore, Mr. Goodstein's proposed testimony bears little resemblance to the expert testimony in the cases cited by NCR. For example, in *Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 468 (S.D.N.Y. 2005), the expert testified that certain pieces of information were "material, non-public information," that certain individuals "are subject to criminal prosecution" for manipulating a stock's market price and/or insider trading, that the conduct of certain individuals violated criminal law, and that a federal prosecutor "would likely pursue a criminal investigation" of certain individuals. *Id.* at 466. This testimony is distinct from Mr. Goodstein's proposed testimony in several key respects:

- The expert report in *Highland* applied the facts of the case to general legal principles and concluded that certain individuals violated the securities laws, which "usurps the jury's role in finding the facts and applying those facts to the law." *Id.* at 470–71 (*citing Marx & Co. v. Diners' Club Inc.*, 550 F.2d 505, 510 (2d Cir. 1977)). Mr. Goodstein's testimony in sections 1 and 2 does not apply the facts of the case to the law or reach a conclusion about whether NCR was liable under CERCLA.

- The expert in *Highland* intended to testify regarding "ultimate legal conclusions" (*Id.* at 471). Mr. Goodstein does not do so.[2]
- The proposed expert testimony in *Highland* regarding what a prosecutor may find was irrelevant to the claims at issue. *Highland*, 379 F. Supp. 2d at 473. As discussed further above, Mr. Goodstein's testimony is clearly relevant here.
- Finally, to the extent that the expert in *Highland* proffered testimony regarding relevant legal principles, he did so in order to apply the facts of the case to the legal principles. *Id.* at 470–71. He did not discuss legal concepts to provide the jury with "subsidiary principles of law that may govern or influence the parties' conduct" (*Coan*, 2019 WL 2169879, at *1), as Mr. Goodstein intends to do here, as is permissible for the reasons explained above.

**3. Mr. Goodstein's Opinions in Sections 1 and 2 Satisfy Rule 403.**

NCR also claims that the first two sections of Mr. Goodstein's report violate Rule 403. But NCR ignores the probative value of Mr. Goodstein's testimony and overstates the chances that it will confuse the jury.

Rule 403 provides, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing

---

[2] NCR also cites to *In re Initial Public Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64–65 (S.D.N.Y. 2001) as stating, "the testimony of an expert on matters of domestic law is inadmissible for *any* purpose." However, that case has no application here. There, the defendants sought to recuse the district judge and offered legal opinions that expressed the legal conclusion that recusal was required. The court excluded the opinions because they expressed opinions on the ultimate legal issue in the case, which was reserved for the Court. Here, the expert opinion is not on the ultimate issue (whether NCR committed fraud), but on CERCLA, and is thus plainly admissible under the Second Circuit's ruling in *Bilzerian,* permitting experts to testify regarding background legal concepts in complex cases

the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Here, NCR claims that Mr. Goodstein's testimony confuses the issues. Thus, this court must weigh the probative value of the Goodstein Report against the risk of confusion.

Probative Value

Mr. Goodstein's testimony has high probative value. As explained above, Mr. Goodstein's testimony will provide a framework upon which the jury can determine the ultimate questions in this case, which relate to fraudulent inducement. Specifically, the framework of CERCLA expert testimony will educate the jury regarding the relevant underlying legal concepts when it considers what Judge Cronan referred to as the issue of the "*extent of [NCR's arranger] liability*." This concept is a threshold issue before the jury can properly assess the ultimate allegation of fraudulent inducement.

The expert testimony about how arranger liability arises will assist the jury to analyze and assess other facts and information in the case according to whether or not those relate to the "*extent of [NCR's] liability*." Without the benefit of guidance on such a complex legal framework, a jury would have difficulty discerning whether information does indeed connect with the "*extent of [NCR's] liability*," and therefore whether it is relevant to the jury when answering the questions on NCR's fraudulent inducement of BAT. The true probative value of the expert testimony is to provide the jury with assistance in understanding a complex area or the law, namely CERCLA as it stood in 1998/1999, before the jury proceeds to analyze the facts and information relevant to BAT's fraudulent inducement claim.

Risk of Confusion

The Goodstein Report is clear about its scope:

> BAT asked me to draw on my over forty years of experience with CERCLA to review and summarize the CERCLA caselaw about "arranger" liability in existence at the time of the CSA and describe how that legal framework could have been applied in 1999 to evaluate NCR's potential legal exposure for PCB contamination at the Kalamazoo River Superfund Site.

Goodstein Report at 3.

The ambit of Sections 1 and 2 are then outlined clearly, in the manner quoted in the section above. Mr. Goodstein does not suggest that he will try to apply the facts of this case to the law, nor does he attempt to do so in Sections 1 or 2 of his report.

What follows in the substance of Sections 1 and 2 of the Goodstein Report is a thoughtfully worded and reasoned outline of the CERCLA framework on arranger liability. There is (rightly) no suggestion by NCR that the language or structure Mr. Goodstein uses creates any juror confusion. There is also (rightly) no actual specific criticism of the Goodstein Report relied on by NCR in its motion.[3] Rather, NCR can only make a sweeping and unsupported assertion that Mr. Goodstein's testimony may lead the jury to believe that it "*must decide whether NCR could have been found liable as an arranger*." NCR's Brief at 11 (emphasis added).

To the contrary, there is no reason to believe that the jury would be confused about the question it must decide. The jury instructions will explain that the ultimate issue to be decided is whether NCR fraudulently induced BAT into signing the CSA, not whether NCR has arranger liability. The purpose of Mr. Goodstein's testimony is to provide them with an understanding regarding the background CERCLA law issues, in circumstances where it will not otherwise be intuitive for a jury. Far from creating confusion, the expert testimony would provide clarity about

[3] In this regard, BAT does not accept the criticism in footnote 2 of NCR's Brief, which is described as a "*significant problem*" but otherwise unexplained. NCR's Brief at 2. There is, however, no need to address it further given it is not relevant to the motion now at issue as NCR itself accepts in the footnote.

the operation of arranger liability under CERCLA. Sections 1 and 2 of Mr. Goodstein's report achieve that aim.

The cases NCR cites on this point are inapposite. In *United States v. Ingredient Tech. Corp.*, 698 F.2d 88, 96 (2d Cir. 1983), as discussed further above, the defendants sought to admit expert testimony that the meaning of the applicable tax laws were unclear and that "the clarity of whatever legal duty was owed" was "an issue of fact" that the jury must decide. *Id.* at 96. The court found that this may confuse the jury, but this is nothing like the testimony that Mr. Goodstein proposes here. Mr. Goodstein will provide background information on subsidiary legal principles that are relevant to the case; he will not question the clarity of the law that governs the ultimate issue in this case (whether NCR fraudulently induced BAT) and BAT does not seek to turn one of the ultimate issues of law in this case into an issue of fact. Furthermore, the *Ingredient Tech* court also found that the proposed testimony was irrelevant, as discussed above. *Id.* at 97. Thus, in *Ingredient Tech*, the potential for confusion was high while the probative value was low; the opposite of the situation presented by Mr. Goodstein's testimony.

*United States Sec. & Exch. Comm'n v. Mudd*, No. 11 CIV. 9202 (PAC), 2016 WL 2593980 (S.D.N.Y. May 4, 2016) is not relevant here either. That action turned, in part, on whether certain statements in defendant's public disclosures were materially false. One of defendant's experts sought to testify, "his view of what constitutes 'useful' disclosures for investors." *Id.* at *7. The court found that this testimony was inadmissible because whether the disclosures were "useful" was irrelevant and because jurors may confuse the concept of "usefulness" with the issue of "materiality." *Id.* The same cannot be said here, where Mr. Goodstein's testimony is clearly relevant and does not introduce a concept that is likely to be confused with the standards governing the ultimate question in this case.

**4. Mr. Goodstein's Opinions in Section 3 Are Admissible.**

NCR argues that the opinions in Section 3 of the Goodstein Report are inadmissible because, according to NCR, they provide factual narrative and opinions on NCR's state of mind. But this mischaracterizes the testimony that Mr. Goodstein proposes to give and how BAT intends to use Mr. Goodstein's testimony. When cast in the proper light, it is clear that Mr. Goodstein's third section properly lays a factual foundation and draws permissible inferences therefrom that will help the jury determine the ultimate issues in this case. Contrary to NCR's contentions, this is appropriate expert testimony under existing case law.

Section 3 is not a Lay Factual Narrative

Section 3 of the Goodstein report is not a simplistic re-hashing of the evidence, but rather a statement of the foundation for his conclusions. Expert witnesses are permitted to "lay a foundation" and draw inferences therefrom when the inferences "would not be apparent without the benefit of experience or specialized knowledge." *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 45–46 (S.D.N.Y. 2016); *United States v. Wilson*, 355 F.3d 358, 362 (5th Cir. 2003) (permitting an expert to "suggest appropriate inferences from facts in evidence because the average juror may not be aware of the significance"); *In re Platinum-Beechwood Litig.*, 469 F. Supp. 3d 105, 118 (S.D.N.Y. 2020) ("[A]n expert may lay a factual foundation for his or her opinion."). That is what Mr. Goodstein does here. He begins by analyzing a complicated factual record and utilizes his decades of experience as an environmental lawyer to explain salient aspects of that evidence that a lay juror may struggle to comprehend given the documents are dense with environmental and legal concepts.

Mr. Goodstein's assistance is particularly needed here because many of the key documents in this case were prepared in connection with NCR's investigation of its CERCLA liability, which was led by its lawyers Sidley & Austin LLP ("Sidley"). These documents were prepared by

Sidley/NCR attorneys or environmental consultants, specifically for review by other attorneys. For example, Mr. Goodstein discusses:

- a report prepared by environmental consultants for Sidley attorneys that summarizes legal filings that identify NCR CCP as a significant source of contamination at the Kalamazoo River (Goodstein Report at 11);
- an expert report prepared by an environmental scientist for Sidley attorneys regarding "chemical fingerprinting and fate and transport analysis of Kalamazoo River" (*id.*at 13);
- communications to and from Sidley attorneys regarding an environmental consultant's potential conflict of interest if it worked at the Kalamazoo River site (*id.* at 13);
- A legal memorandum prepared by Sidley attorneys regarding arranger liability and the useful product defense (*id.*at 14).

Since these documents are highly technical, and were not prepared for a lay person to understand, the average juror is unlikely to comprehend them fully without assistance. It is even more difficult for the jury to understand how these documents bear upon the "*extent of [NCR's arranger] liability*" as a matter of CERCLA law. Accordingly, Mr. Goodstein's decades of training in environmental law, including significant experience conducting investigations into environmental liability, will allow Mr. Goodstein to assist these jurors as they work through these materials. *In re Platinum-Beechwood Litig.*, 469 F. Supp. 3d at 118 (permitting expert testimony because "[t]his case is far from those involving uncomplicated facts that the jury is capable of understanding on their own").

Section 3 of the Goodstein Report Does Not Impermissibly Opine on NCR's or Counsel's State of Mind.

From the documents, Mr. Goodstein concludes that NCR was investigating its liability at the Kalamazoo River prior to signing the CSA, that NCR was in possession of documents that "would have informed NCR's assessment of whether it would be liable as an 'arranger' in connection with PCB contamination of the Kalamazoo River," and that this information was sufficient to alert NCR of its liability. Goodstein Report at 10–16. Such testimony is permissible under existing case law. For example, courts permit experts to testify regarding the information available to a party on an environmental issue at a particular point in time and, when doing so, are "free to emphasize that [the party's] statements and publications are particularly probative of whether particular information was available." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 482, 498–99 (S.D.N.Y. 2009). Similarly, courts permit experts to testify regarding when a party was "alerted" or "was put on notice" of particular facts. *See, e.g.*, *LaSalle Bank Nat'l Ass'n v. Lehman Bros. Holdings, Inc.*, 237 F. Supp. 2d 618, 635 (D. Md. 2002); *MPM Silicones, LLC v. Union Carbide Corp.*, No. 1:11-cv-1542 (BKS/ATB), 2017 WL 6408611, at *11 (N.D.N.Y. Sept. 22, 2017), *aff'd*, 966 F.3d 200 (2d Cir. 2020), *as amended* (Aug. 13, 2020); *In re E.I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 348 F. Supp. 3d 698, 719 (S.D. Ohio 2016) ("Dr. Redlich reviews a complicated historical record and, based upon her unique qualifications, opines on what she believes DuPont knew or should have known at given points in time. This is not testimony that goes to motive or intent.")

In sum, Mr. Goodstein's testimony will be far more than a "rehashing" of "lay matter that the fact-finder can understand without the assistance of experts," unlike the cases cited by NCR. *See* NCR's Brief at 13 (*quoting Highland*, 379 F. Supp. 2d at 468–69 *and Rezulin*, 309 F. Supp. 2d at 549). It will break down a record mired by complicated legal and environmental concepts to

reach inferences that would not be apparent to individuals that are not well versed in environmental law. Accordingly, Mr. Goodstein's testimony regarding whether NCR was investigating its liability at the Kalamazoo River, what information NCR had access to relating to its arranger liability, and whether this information alerted NCR of its potential expert testimony, should be permitted here.[4]

## **CONCLUSION**

For the foregoing reasons, BAT respectfully requests that the Court deny NCR's Motion.

Dated: July 13, 2026
New York, New York

*/s/ Dennis H. Tracey, III*

Dennis H. Tracey, III
David R. Michaeli
Nathaniel Benfield
HOGAN LOVELLS CADWALADER US LLP
200 Liberty Street
New York, NY 10821
Telephone: (212) 918-3000
dennis.tracey@hlc.com
david.michaeli@hlc.com
nathaniel.benfield@hlc.com

*Attorneys for Defendant*

[4] NCR cherry picks lines from Mr. Goodstein's testimony that they believe amount to an opinion on NCR's state of mind. BAT does not intend to ask Mr. Goodstein regarding NCR's state of mind.

**WORD COUNT CERTIFICATION**

I hereby certify that this Memorandum of Law complies with Local Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York. This certificate certifies that the document complies with the word count limit. Compliance relied on the word count of the word-processing system used to prepare the document. The total number of the words in this Memorandum, exclusive of the caption, table of contents, table of authorities and signature block is 6,255 words.

Dated: July 13, 2026
New York, New York

*/s/ Dennis H. Tracey, III*
Dennis H. Tracey, III