**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NCR CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>B.A.T INDUSTRIES p.l.c.,<br><br>Defendant. | Case No.: 1:23-cv-1172-JPC-SDA |

**NCR VOYIX CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE THE REPORT AND OPINIONS OF MICHAEL D. GOODSTEIN**

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT ..........................................................................................................2

I. SECTIONS 1 AND 2 OF THE GOODSTEIN REPORT ARE INADMISSIBLE. ..........................................................................................2

A. The CERCLA Legal Analysis in Sections 1 and 2 of the Report Is Not Relevant to Any Claim or Defense. ..........................................2

B. Sections 1 and 2 of the Report Constitute Inadmissible Legal Analysis..........................................................................................4

C. Sections 1 and 2 of the Report Will Confuse the Issues and Mislead the Jury. ..........................................................................6

II. SECTION 3 OF THE GOODSTEIN REPORT IS INADMISSIBLE. ....................7

A. Mr. Goodstein Presents an Impermissible Factual Narrative in Section 3..........................................................................................7

B. Mr. Goodstein Impermissibly Addresses Knowledge and State of Mind in Section 3. ........................................................................9

CONCLUSION ......................................................................................................11

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002)....................8

*Coan v. Dunne*,
No. 3:15-cv-00050, 2019 WL 2169879 (D. Conn. May 17, 2019)....................6

*In re E.I. du Pont de Nemours & Co. C-8 Personal Injury Litig.*, No.
348 F. Supp. 3d 698 (S.D. Ohio 2016)....................10

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
375 F.3d 168 (2d Cir. 2004)....................4

*Highland Capital v. Schneider*,
379 F. Supp. 2d 461 (S.D.N.Y. 2005)....................7

*LaSalle Bank Nat'l Ass'n v. Lehman Bros. Holdings*,
237 F. Supp. 2d 618 (D. Md. 2002)....................9

*Luitpold Pharmaceuticals, Inc. v. Ed. Geistlich Söhne A.G. für Chemische Industrie*, No. 11-cv-00681, 2015 WL 5459662 (S.D.N.Y. Sept. 16, 2015)....................3

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
643 F. Supp. 2d 482 (S.D.N.Y. 2009)....................9

*MPM Silicones, LLC v. Union Carbide Corp.*,
No. 11-cv-1542, 2017 WL 6408611 (N.D.N.Y. Sept. 22, 2017)....................10

*Nimely v. City of New York*,
414 F.3d 381 (2d Cir. 2005)....................5

*In re Rezulin Products Liability Litigation*,
309 F. Supp. 2d 531 (S.D.N.Y. 2004)....................1, 3, 8, 9

*Scott v. Chipotle Mexican Grill, Inc.*,
315 F.R.D. 33 (S.D.N.Y. 2016)....................8

*United States v. Bilzerian*,
926 F.2d 1285 (2d Cir. 1991)....................4, 5

*United States v. Ingredient Tech. Corp.*,
698 F.2d 88 (2d Cir. 1983)....................7

**Rules**

Fed. R. Evid. 403 ....................................................................................................................6

Fed. R. Evid. 702 ....................................................................................................................8

## PRELIMINARY STATEMENT

BAT's opposition confirms what Mr. Goodstein's report already made apparent: BAT seeks to use Mr. Goodstein to present BAT's preferred interpretation of the law and the facts under the guise of CERCLA expertise.

Judge Cronan's order on NCR's Motion for Judgment on the Pleadings (Dkt. 38) left BAT a narrow path forward. BAT could attempt to prove that NCR knew material historical facts bearing on its potential connection to contamination at the Kalamazoo River, that NCR had superior knowledge of those facts, and that NCR failed to disclose them when under an obligation to do so. Following fact discovery, BAT lacks documents or testimony sufficient to establish these elements. Faced with that record, BAT has enlisted Mr. Goodstein—not to apply specialized knowledge, but to walk the jury through curated case law and record documents to present inferences BAT wants it to draw.

This is precisely the misuse of experts Judge Kaplan warned against in *In re Rezulin Products Liability Litigation*, 309 F. Supp. 2d 531, 538 (S.D.N.Y. 2004): engaging experts who "lend their credentials and reputations to the party who calls them" but "whose intended role is more to argue the client's cause from the witness stand than to bring to the fact-finder specialized knowledge or expertise" helpful in understanding the facts. Mr. Goodstein's report lends his credentials to BAT's narrative, but supplies no specialized analysis that would assist the jury. Instead, Mr. Goodstein selected "some facts that stood out" to him and then supplies his gloss on what those facts supposedly show NCR knew or was "concerned" about. Goodstein Report, Dkt. 130-1 ("Report") at 4, 13, 15. As NCR has explained, each component of that exercise violates settled evidentiary principles.

BAT, in response, reframes and minimizes the nature of Mr. Goodstein's opinions. BAT characterizes Sections 1 and 2 as mere CERCLA "background" and Section 3 as a "foundation"

for expert conclusions. But those characterizations crumble upon review of the report itself, which reads like BAT's closing argument. The Court should reject BAT's attempt to reframe Mr. Goodstein's opinions as something they are not. His testimony and opinions should be excluded in full.

## ARGUMENT

### I. SECTIONS 1 AND 2 OF THE GOODSTEIN REPORT ARE INADMISSIBLE.

#### A. The CERCLA Legal Analysis in Sections 1 and 2 of the Report Is Not Relevant to Any Claim or Defense.

NCR demonstrated in its opening brief that Mr. Goodstein's recitation of the CERCLA framework in Sections 1 and 2 is not relevant, and therefore inadmissible, because the jury will not decide NCR's CERCLA liability. Dkt. 130 ("NCR Br.") at 7–10.

BAT admits as much, acknowledging that "the jury will not determine NCR's arranger liability." BAT's Opposition, Dkt. 134 ("Opp.") at 7. It nevertheless contends that Mr. Goodstein's discussion of CERCLA's framework, elements, defenses, and case law is admissible "background" because the jury cannot assess "NCR's own awareness of its arranger liability" without it. *Id.* at 2, 6–8. That position fails because it both overstates the relevance and necessity of background on CERCLA and understates the opinion Mr. Goodstein proposes to offer, which goes far beyond "simply provid[ing] background information." *Id.* at 2.

A detailed recitation of the intricacies of the CERCLA legal framework that existed in 1998 and 1999 does not bear on the surviving factual issues in this case, which concern not whether NCR was liable under CERCLA but what material facts NCR actually knew in 1998–1999. Sections 1 and 2 will serve only to confuse the jury as to what issues it must decide. Background on those subjects might show what a hypothetical environmental lawyer *could* have concluded after applying the law to a set of facts. But it does not—and cannot—show that *NCR*

reached that conclusion or focused on the same cases Mr. Goodstein highlights. That distinction is especially important because arranger liability was a developing, fact-dependent body of law in the 1990s, as Mr. Goodstein recognizes and as his discussion of certain cases (but not others that undermine his conclusions) demonstrates. Different lawyers, with the same information, could have reached different assessments—or no settled assessment at all.

The understanding actually reached by NCR's lawyers—like that reached by BAT's lawyers—is privileged, and both parties have withheld their lawyers' advice and legal conclusions. BAT cannot fill that gap by having an expert tell the jury what he assumes NCR's lawyers *might have believed*. Tellingly, BAT never actually explains what makes this testimony relevant or necessary beyond invoking conclusory references to background and complexity. BAT identifies no relevant CERCLA term or concept that requires expert explanation. Mr. Goodstein's account of CERCLA's elements, arranger-liability factors, defenses, and case law is therefore not necessary background but legal exposition on a question the jury will not decide.

BAT's effort to distinguish NCR's authorities only reinforces NCR's point. BAT states that *In re Rezulin*, 309 F. Supp. 2d at 542–44, and *Luitpold Pharmaceuticals, Inc. v. Ed. Geistlich Söhne A.G. für Chemische Industrie*, No. 11-cv-00681, 2015 WL 5459662, at *8 (S.D.N.Y. Sept. 16, 2015), are inapposite because the ethical and industry standards at issue there had "no bearing on the issues to be decided." Opp. at 8. NCR agrees—and the same holds true here. *Rezulin* and *Luitpold* excluded expert testimony even though the proposed standards arguably supplied context for the conduct at issue, because they did not govern the claims or define the duties the factfinder was required to apply. *See In re Rezulin*, 309 F. Supp. 2d at 542–44; *Luitpold*, 2015 WL 5459662, at *8.

Finally, the CERCLA framework discussed in Sections 1 and 2 is also irrelevant insofar as Mr. Goodstein offers it to establish the prediction NCR *could have made* about future arranger liability. There are two principal problems with this opinion. First, Judge Cronan already held that "future predictions of possibility cannot support a fraud claim" and that BAT's omission theories survived only to the extent they rest on the alleged nondisclosure of "key facts related to NCR's past actions." Dkt. 38 at 20, 26–27; *see also, e.g.*, *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 188 (2d Cir. 2004) ("[A]n alleged misrepresentation must be factual and not promissory or related to future events.") (citation modified). Thus, even if BAT could establish that the caselaw Mr. Goodstein cites should have caused NCR to predict future liability, that still would not be relevant to BAT's fraud or negligent misrepresentation claims.

Second, the opinion is a level removed from establishing that NCR actually predicted future liability. Mr. Goodstein does not (and, of course, cannot) establish that NCR actually undertook a similar analysis or made a similar prediction as to the potential for future liability. Instead, he opines only that NCR *might* have made such a prediction based on the facts and case law at the time. But Mr. Goodstein's 2026 guess about NCR's 1999 prediction is baseless, confusing, and irrelevant.

**B. Sections 1 and 2 of the Report Constitute Inadmissible Legal Analysis.**

Mr. Goodstein's report is also replete with inadmissible legal analysis. BAT again responds that this is permissible "background" intended to help the jury understand unfamiliar legal terms and concepts. Opp. at 9–13. But Mr. Goodstein's analysis and application of legal concepts are not background; they are "testimony on issues of law," which "is inadmissible." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991).

An expert may, in appropriate circumstances, explain specialized legal terms and concepts necessary for the jury to understand the evidence. *Id.* at 1294–95. But Sections 1 and 2 of the report do far more than that, expressly analyzing CERCLA concepts *as applied to NCR's potential liability*. Section 2 is titled "The 'Arranger' Liability Framework for Determining Whether NCR Could Be Liable at the Kalamazoo River Superfund Site." Report at 6. It discusses CERCLA's four-part liability test, covered persons, statutory definitions of an arranger, and summarizes nearly two decades of *certain* arranger-liability decisions. Report at 4–6 & App. A. Section 2 of his report then applies these elements and cases to the facts here, asserting that three of the CERCLA elements "undisputably apply" and assessing the fourth. *Id.* at 6.

Mr. Goodstein describes the "useful product" defense and other legal doctrines, and explains the factors a court "would likely consider" in evaluating NCR's liability. *Id.* at 6–10. He further opines that particular facts would "indicate[] potential exposure" and, if not rebutted, "increase NCR's potential exposure," *id.* at 7, and that those facts would "point towards" arranger liability, "could make a strong case," *id.* at 9, and, ultimately, "g[i]ve rise to 'arranger' liability," *id.* at 10. These opinions exceed simple background on a legal framework or explanations of isolated terminology, and instead confirm that Mr. Goodstein proposes to instruct the jury on the law and its application. In so doing, Mr. Goodstein intrudes on a function that (if relevant at all to any determination the jury would be asked to make) would belong to the Court. *See Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005).

BAT's authorities do not support admitting Mr. Goodstein's legal analysis. *Bilzerian* observed that general background concerning the securities laws and Schedule 13D filing requirements may be admissible, while upholding the district court's limitation of testimony that

could have constituted an "impermissible legal instruction." 926 F.2d at 1294–95. *Coan v. Dunne*, No. 3:15-cv-00050, 2019 WL 2169879, at *1–2 (D. Conn. May 17, 2019), permitted an expert to explain general principles and practices of Irish law, but expressly prohibited him from commenting on the evidence or "whether any particular document in this case is consistent with the law or standard practices."

As with Section I, BAT's conclusory references to CERCLA's complexity and the need for background are unavailing. Expert testimony is helpful only where the witness's specialized knowledge will assist the jury in understanding the evidence or determining a fact in issue. The asserted complexity of a legal regime the jury will not apply provides no basis for presenting that regime through an expert witness.

### C. Sections 1 and 2 of the Report Will Confuse the Issues and Mislead the Jury.

The opinions in Sections 1 and 2 of Mr. Goodstein's report also create a Rule 403 problem because they would confuse the relevant issues and mislead the jury. Mr. Goodstein's detailed analysis of CERCLA's elements, doctrines and case law naturally would suggest that the jury is expected to apply that law to NCR. NCR Br. at 10–12. BAT's response that there is little risk of confusion because "Mr. Goodstein does not suggest that he will try to apply the facts of this case to the law," Opp. at 15–16, is mistaken. As above, Mr. Goodstein not only *suggests* as much but *does*, in fact, apply the law to facts in this case in no uncertain terms. *See supra* at 4–6. In so doing, his opinion blurs the line between NCR's liability under CERCLA and what NCR and its lawyers actually knew in 1998–1999. The jury could thus mistake Mr. Goodstein's present-day legal assessment for evidence of NCR's contemporaneous knowledge while also being drawn into deciding a CERCLA liability question that is not before it.

Nor would BAT's proposed general "instruction" concerning the elements of fraudulent inducement (i.e., the claim actually at issue) eliminate that confusion. The jury still would hear a

retained environmental lawyer instruct it on a separate body of domestic law, opine on legally significant facts, and explain how those facts might bear on NCR's potential liability. As the Second Circuit explains, "it would be very confusing to a jury to have opposing opinions of law admitted into evidence as involving a factual question for them to decide. . . . Questions of law are for the court." *United States v. Ingredient Tech. Corp.*, 698 F.2d 88, 97 (2d Cir. 1983).

## II. SECTION 3 OF THE GOODSTEIN REPORT IS INADMISSIBLE.

### A. Mr. Goodstein Presents an Impermissible Factual Narrative in Section 3.

Section 3 of Mr. Goodstein's report does not actually contain expert analysis. Mr. Goodstein simply summarizes BAT's favorite case documents (which he identifies as "some facts that stood out" to him) and makes inferences about them without reference to any expert methodology or specialized knowledge. In so doing, Mr. Goodstein does what *Highland Capital v. Schneider* and other cases unequivocally forbid, as "an expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence." 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005).

BAT responds that Section 3 is appropriate as "foundation" for Mr. Goodstein's conclusions, Opp. at 17, but never specifies what "conclusions" Mr. Goodstein's factual narrative supposedly supports. This argument fails because it conflates two distinct concepts: an expert's permissible reliance on record evidence to support a specialized opinion (which Mr. Goodstein does not do), and an expert's impermissible presentation of evidence and interpretation thereof *as the opinion itself* (which Mr. Goodstein does).

Rule 702 requires that an expert opinion rest on a sufficiently "reliable foundation," *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002), but this requirement does not authorize an expert to present a factual narrative *as an opinion*. In *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 45–46 (S.D.N.Y. 2016), which BAT cites, the

expert referenced facts not "as merely a narrative account of record evidence" but so that he could apply his industry expertise to them and proffer independent opinions that "identify Chipotle's practices and structures and place them within a larger context of industry norms." The court noted that this testimony "goes beyond" "restating facts in evidence" because the expert applied industry expertise to the facts. *Id.*

Mr. Goodstein offers no comparable expert opinion because, in Section 3, the factual narrative *is* the opinion. He does not apply a methodology or industry standard to the facts. He simply recounts selected facts and tells the jury what he believes they show. For example, he summarizes a record email and then declares it "shows" NCR's lawyers "had concluded it was likely NCR would be named as a CERCLA 'arranger' defendant." *Id.* at 13. Those assertions are not factual predicates for a specialized opinion; they are lay inferences from documentary evidence that belong to the jury. *See In re Rezulin*, 309 F. Supp. 2d at 551 (excluding an expert's narrative of selected events because the evidence was "properly presented through percipient witnesses and documentary evidence" and the expert's "glosses" were "simple inferences" that merely supported the proponent's theory).

BAT's separate contention that certain case documents are too technical for a lay jury does not make the opinions in Section 3 admissible. Opp. at 17–18. BAT may examine percipient witnesses who authored or received those documents. Indeed, several of the fact witnesses who were deposed in this action are, in fact, environmental lawyers with CERCLA expertise. But BAT may not use Mr. Goodstein to summarize and place BAT's preferred gloss on those documents.

Finally, as to BAT's assertion that the jury needs assistance understanding how the documents "bear upon the '*extent of [NCR's arranger] liability*' as a matter of CERCLA law,"

Opp. at 18 (emphasis added), that exercise involves the application of CERCLA law to the evidence—a legal argument for BAT's counsel to make if the court determines that is even relevant and appropriate.

**B. Mr. Goodstein Impermissibly Addresses Knowledge and State of Mind in Section 3.**

Section 3 of the report also contravenes the black-letter rule that an expert may not opine on a party's knowledge, belief, or expectations. Mr. Goodstein repeatedly makes affirmative assertions about what NCR and its counsel knew, concluded, or were concerned about. Report at 13–16. There can be no reasonable dispute that these opinions constitute improper "[i]nferences about the intent or motive of parties," which "lie outside the bounds of expert testimony." *In re Rezulin*, 309 F. Supp. 2d at 547.

BAT attempts to circumvent these straightforward legal principles by again ignoring Mr. Goodstein's actual stated opinions and attempting to align his report with cases that "permit experts to testify regarding when a party was 'alerted' or 'was put on notice' of particular facts." Opp. at 19. But Mr. Goodstein does not provide testimony as to when NCR was alerted to or put on notice of anything, and the cases BAT cites are inapposite. Two of four cases on which BAT relies are inapplicable to this Court's determination, because they do not involve a challenge to the expert opinion.[1] And the other two cases BAT cites also fail to support the admissibility of Mr. Goodstein's testimony.

Critically, *In re MTBE*, the principal authority on which BAT relies, undermines BAT's stance by making clear that experts may not opine about whether a particular party "knew" about

[1] *See generally MPM Silicones, LLC v. Union Carbide Corp.*, No. 11-cv-1542, 2017 WL 6408611 (N.D.N.Y. Sept. 22, 2017) (partial judgment), *aff'd*, 966 F.3d 200 (2d Cir. 2020), *as amended* (Aug. 13, 2020); *LaSalle Bank Nat'l Ass'n v. Lehman Bros. Holdings*, 237 F. Supp. 2d 618 (D. Md. 2002) (decision on summary judgment).

an issue at a certain point in time. 643 F. Supp. 2d at 498 ("Moreau may not testify that Exxon *knew* of the MTBE Problem in the 1980s and 1990s"), 505 ("She may opine that a defendant had access to information, but she may not opine that the defendant knew that information or that the information was *sufficient for* or *material to* a legal purpose."). Instead, the court made clear that the experts must limit their opinion to the issue of what information was accessible to such party or "what was known concerning that problem at the time." *Id.* at 498–99, 505. Mr. Goodstein, unlike the *MTBE* experts, does not apply his expertise to identify accessible information. Instead, he engages in plain-language reading of documentary evidence and fact-witness testimony to conclude that NCR and its counsel were "concerned," had "concluded" NCR likely would be sued, and had "formed the view" that claims were likely. Report at 13, 16. These are precisely the types of "final inference[s]" that *MTBE* reserved for the factfinder—and are clearly impermissible here, given that the documents and deposition testimony that Mr. Goodstein quotes and summarizes "can be understood by a layman." *Id.* at 505, 499.

The final case BAT cites, *In re E.I. du Pont de Nemours & Co. C-8 Personal Injury Litigation*, is similarly inapt and stands at most for the proposition that an expert in a *negligence* action may apply her technical or scientific expertise to assess what a party knew or should have known. 348 F. Supp. 3d 698, 719 (S.D. Ohio 2016) (finding that a physician's testimony regarding what a party "knew or should have known" was admissible where the expert's testimony was "based upon her unique qualifications" and her "review[ of] a complicated historical record").[2] This conclusion does not help Mr. Goodstein's opinions in relation to BAT's *omission* claims based on his lay analysis of record documents.

[2] The fact that this action was for negligence was critical to the Court's conclusion that such testimony was admissible; the court observed that what DuPont *should have* known was relevant to the disposition of the action. *Id.* at 703, 720. Testimony about what NCR "should have

BAT's own brief tacitly acknowledges the impropriety of Mr. Goodstein's Section 3 opinion. BAT states that it "does not intend to ask Mr. Goodstein regarding NCR's state of mind." Opp. at 20 n.4. But the entire upshot of Section 3 is Mr. Goodstein's gloss regarding NCR's state of mind. Thus, Section 3 is either an impermissible factual narrative laying the foundation for *no conclusion* at all (because Mr. Goodstein will not testify as to NCR's state of mind), or it is factual support for a conclusion that BAT acknowledges is impermissible. Either way, it is inadmissible and this Court should exclude it.

**CONCLUSION**

For the foregoing reasons, the Court should exclude the report and opinions of Mr. Goodstein.

Dated: July 20, 2026
New York, New York

By: /s/ Zachary Payne
John J. Kuster
Zachary Payne
**SIDLEY AUSTIN LLP**
787 7th Avenue
New York, NY 10019
(212) 839-5300
jkuster@sidley.com
zpayne@sidley.com

Bruce R. Braun (admitted *pro hac vice*)
Charles K. Schafer (admitted *pro hac vice*)
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL 60603
(312) 853-7000
bbraun@sidley.com
cschafer@sidley.com

*Counsel for NCR Voyix Corporation*

known," even if Mr. Goodstein *had* proffered it, would be relevant only to claims involving a reasonableness standard and could not be used to prove NCR's actual knowledge or intent.

**CERTIFICATE OF COMPLIANCE**

I, Zachary Payne, certify that the foregoing, NCR Voyix Corporation's Reply in Support of Its Motion to Exclude the Report and Opinions of Michael D. Goodstein complies with the word-count limitation set forth in Local Civil Rule 7.1(c).

I further certify that this document was prepared using Microsoft Word and contains exactly 3368 words. This count excludes the parts of the document exempted by the Local Rules, including the caption, table of contents, table of authorities, signature blocks, and any required certificates.

Dated: July 20, 2026
New York, New York

*/s/ Zachary Payne*
Zachary Payne