**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**NCR Corporation,**

**Plaintiff,**

**-against-**

**B.A.T. Industries P.L.C.,**

**Defendant.**

**1:23-cv-01172 (JPC) (SDA)**

**OPINION AND ORDER**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE:**

Pending before the Court is a motion by Plaintiff NCR Corporation ("Plaintiff" or "NCR") to exclude the report and opinions of Michael D. Goodstein, a legal expert retained by Defendant B.A.T. Industries P.L.C. ("Defendant" or "BAT").[1] (Pl.'s 6/22/26 Not. of Mot., ECF No. 129.) For the reasons set forth below, Plaintiff's motion is GRANTED.

## BACKGROUND

### I. Factual Background[2]

Between 1954 and 1971, two mills located on the Fox River in Appleton, Wisconsin manufactured carbonless copy paper ("CCP"), which was used to create exact copies of

[1] The Honorable John P. Cronan referred this case to the undersigned for general pretrial supervision, which includes nondispositive pretrial motions. (*See* 9/16/24 Order of Reference, ECF No. 39.) "A magistrate judge's decision to admit or exclude expert testimony is considered nondispositive of the litigation." *United States v. Bon Secours Health Sys., Inc.,* No. 10-CV-09650 (RMB), 2023 WL 1992639, at *2 (S.D.N.Y. Feb. 14, 2023) (quoting *RMed Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94-CV-05587, 2000 WL 420548, at *2 n.1 (S.D.N.Y. Apr. 18, 2000)) (internal quotation marks omitted).

[2] The factual background below is derived from a prior Opinion and Order in this case. *See NCR Corp. v. B.A.T. Indus. P.L.C.*, No. 23-CV-01172 (JPC), 2025 WL 2780066, at *2-3 (S.D.N.Y. Sept. 30, 2025). For ease of reading, record citations and internal quotation marks have been omitted, except for citations to, and quotations regarding, the relevant provisions of the confidential settlement agreement ("CSA") (ECF No. 31-1), which agreement is central to the issues in this case.

documents. During that time, the two mills formed the Appleton Papers Division ("APD") of NCR. In 1978, NCR sold the assets and liabilities of APD to a BAT subsidiary, which subsequently changed its name to Appleton Papers Inc. ("API"). Over a decade later, BAT spun off its ownership of API.

In 1994, the State of Wisconsin notified NCR and API that they were potentially responsible for cleanup costs and natural resource damage in the Fox River under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"). As it turned out, CCP contained pollutants called polychlorinated biphenyls ("PCBs"). Wisconsin alleged that APD directly discharged PCBs into the Fox River during the CCP manufacturing process and also sold scrap paper produced as a byproduct of CCP manufacturing to brokers and paper recycling mills, which themselves discharged PCBs into the Fox River.

A dispute then arose among NCR, BAT and API about which company should bear responsibility for the CERCLA costs. After engaging in mediation, the parties entered into the CSA, which was effective as of February 12, 1998. (CSA at 1.) Under the CSA, the three parties determined that they would "allocate as between themselves all Claims, Damages, and Defense Costs"—not just for the Fox River, but also for any "Future Sites." (CSA at 4.) The CSA provided that fifty-five percent of initial costs would be borne by BAT and API, with the remaining forty-five percent borne by NCR. (*Id*. ¶ 3.) But if the CERCLA costs exceeded $75 million, then the parties would arbitrate how the additional costs would be split. (*Id*. ¶ 4.a.) As it happened, an arbitration panel later concluded that BAT and API are responsible for sixty percent of costs above $75 million, and that NCR shall bear forty percent of such costs.

The Fox River has now been fully remediated, and API is bankrupt. But a new remediation issue arose after the United States Environmental Protection Agency informed NCR that it was investigating whether a byproduct of Fox River CCP manufacturing had been sold to brokers and paper recyclers, which, in turn, polluted the Kalamazoo River in Michigan. After a 2013 liability-phase trial, NCR was ultimately found to be a responsible party under CERCLA and held liable for costs relating to the Kalamazoo River contamination. Under a subsequent consent decree, NCR agreed to clean up certain portions of the Kalamazoo River in return for a release of liability. NCR alleges that its costs under that consent decree will exceed $350 million.

To date, BAT has not agreed to share in costs relating to the Kalamazoo River. NCR argues that BAT must pay because the Kalamazoo River is a "Future Site," which the CSA defines as:

> any facility, property, or location, other than the Fox River sites, alleged to be contaminated with Hazardous Substances as a result, in whole or in part, of the manufacture, recycling, deinking, or repulping of any amount of PCB-containing NCR Paper brand carbonless paper that was manufactured utilizing the assets that were the subject of the Purchase Agreement.

(CSA ¶ 1.i.) BAT's refusal to share in those costs gave rise to this lawsuit.

**II. <u>Relevant Procedural History</u>**

On February 10, 2023, NCR commenced this action, seeking a declaratory judgment that the Kalamazoo is a "Future Site" under the terms of the CSA and therefore, that BAT is obligated to compensate NCR for sixty percent of any costs incurred in its cleanup efforts. (*See* Compl., ECF No. 1, ¶ 65.) On June 23, 2023, BAT filed its Answer and asserted five Counterclaims against NCR, seeking declaratory judgments that either the CSA was void or BAT had no liability to NCR, as well as eight affirmative defenses. (*See* Ans. & Counterclaims, ECF No. 21.)

On September 14, 2024, Judge Cronan granted in part NCR's motion for judgment on the pleadings, dismissing several of BAT's counterclaims and one of its affirmative defenses. *See NCR Corp. v. B.A.T. Indus. P.L.C.*, No. 23-CV-01172 (JPC), 2024 WL 4188358, at *18 (S.D.N.Y. Sept. 14, 2024). Relevant to the motion currently pending before the Court, Judge Cronan "conclude[d] that, although the Kalamazoo River Site qualifie[d] as a 'Future Site[ ]' under the unambiguous language of the CSA, because BAT's affirmative defenses and counterclaims call into question the CSA's enforceability as to BAT's liability for costs incurred at the Kalamazoo River Site, judgment on the pleadings [was] not appropriate." *Id*. at *5.

Following Judge Cronan's Opinion and Order on the motion for judgment on the pleadings, only the first two of BAT's Counterclaims remain. *NCR Corp*., 2024 WL 4188358, at *9-16. BAT's first counterclaim is labeled "Fraud" and alleges that, "[i]n order to induce BAT to enter into the CSA, and to agree to the 'Future Sites' language proposed by NCR," "NCR concealed the fact that it had intentionally arranged for discharges of PCBs into the Kalamazoo River and that it was fully aware of the likelihood of it being found liable [for such discharges]." (Counterclaims ¶ 77.)[3] BAT's second counterclaim is labeled "Negligent Misrepresentation" and similarly asserts that "NCR misrepresented and concealed the fact that it had engaged in discharges of PCBs into the Kalamazoo River" (*id*. ¶ 87), thereby "negligently induc[ing] BAT to enter into the CSA." (*Id*. ¶ 94.) On September 30, 2025, Judge Cronan granted NCR's motion to strike BAT's jury demand with respect to issues unique to the claims in NCR's Complaint, but denied without prejudice NCR's motion to strike with respect to issues raised by BAT's first and second Counterclaims,

[3] BAT's Counterclaims appear starting at page 16 of its Answer and Counterclaims filed at ECF No. 21.

including any issues raised by those Counterclaims that also were raised in the Complaint. *See NCR Corp.*, 2025 WL 2780066, at *12.

BAT has proffered the Expert Disclosure Report of Michael D. Goodstein, dated May 15, 2026, who is an environmental attorney (the "Goodstein Report"). (*See* Goodstein Rpt., ECF No. 128-1.) Goodstein was retained by BAT "to review and summarize the CERCLA caselaw about 'arranger'[4] liability in existence at the time of the CSA and describe how that legal framework could have been applied in 1999 to evaluate NCR's potential legal exposure for PCB contamination at the Kalamazoo River Superfund Site." (*Id*. at 3.) The Opinions portion of the Goodstein Report includes three sections: (1) background on CERCLA, the elements of "arranger" liability under CERCLA and the state of the "arranger" liability case law at the time of execution of the CSA between NCR and BAT; (2) how the "arranger" liability framework could be applied, and what facts and information would be relevant in considering NCR's potential liability at the Kalamazoo River Site; and (3) some facts that "stood out" to Goodstein in his review of the documents that indicated to him that NCR and its legal counsel investigated NCR's potential CERCLA liability at the Kalamazoo River Site prior to execution of the CSA. (*See id*. at 4-16.)

On June 22, 2026, Plaintiff filed its motion to exclude and accompanying memorandum of law. (*See* Pl.'s 6/22/26 Not. of Mot.; *see also* Pl.'s 6/22/26 Mem, ECF No. 130.) On July 13, 2026, Defendant filed its opposition memorandum. (Def.'s 7/13/26 Opp. Mem., ECF No. 134.) On June 20, 2026, Plaintiff filed its reply memorandum. (Pl.'s 7/20/26 Reply, ECF No. 135.)

---

[4] Under CERCLA, an "arranger" is defined as "any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility . . . owned or operated by another party or entity and containing such hazardous substances." (Goodstein Rpt. at 5 (citing 42 U.S.C. § 9607(a)(3)).)

## LEGAL STANDARDS

### I. Federal Rule Of Evidence 702

Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. "The fundamental requirements are thus that such evidence be relevant and reliable." *United States v. Jones*, 965 F.3d 149, 161 (2d Cir. 2020) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999)).

"'[T]he proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied,' although 'the district court is the ultimate gatekeeper.'" *Wells Fargo Bank, N.A. v. United States Life Ins. Co. in City of New York*, No. 22-CV-08606 (JPC), 2025 WL 2220948, at *20 (S.D.N.Y. Aug. 4, 2025) (quoting *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007)). "Under this framework, a district court's Rule 702 inquiry entails assessing three factors: (1) the qualifications of the expert to testify as to a particular matter, (2) the reliability of the methodology and underlying data employed by the expert, and (3) the relevance of the expert's testimony (*i.e.*, whether the expert's testimony as to a particular matter will 'assist the trier of fact')." *Id*. at *21 (quoting *Better Holdco, Inc. v. Beeline Loans, Inc.*, 666 F. Supp. 3d 328, 352 (S.D.N.Y. 2023)).

## II. Federal Rule of Evidence 403

"In addition to the requirements of Rule 702, expert testimony is subject to Rule 403, and 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (quoting Fed. R. Evid. 403). "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595 (internal quotation marks omitted).

## III. Expert Testimony Regarding Issues Of Law

"It is well-settled in this Circuit that expert opinions as to the interpretation and application of domestic law are inadmissible." *Thomsen v. Kefalas*, No. 15-CV-02668 (BCM), 2018 WL 1508735, at *18 (S.D.N.Y. Mar. 26, 2018) (citing *Marx & Co., Inc. v. Diners' Club Inc.*, 550 F.2d 505, 509-10 (2d Cir. 1977)). "As Professor Wigmore has observed, expert testimony on law is excluded because the tribunal does not need the witness' judgment. The judge (or the jury as instructed by the judge) can determine equally well what the law is—and how it should be applied to the facts of the case—thus making the witness' testimony superfluous." *Id*. (cleaned up) (citing *Marx & Co*., 550 F.2d at 510).

"[C]ourts have held that expert testimony on domestic law 'is inadmissible whether offered at trial for the benefit of the jury or submitted with motions for the benefit of the

judge.'"[5] *Marsh USA LLC v. Parrish*, No. 25-CV-06208 (GBD) (GS), 2025 WL 3237118, at *2 (S.D.N.Y. Oct. 14, 2025) (quoting *Music Sales Corp. v. Morris*, 73 F. Supp. 2d 364, 381 (S.D.N.Y. 1999)); *see also In re Initial Pub. Offering Sec. Litig*., 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) ("This Court has repeatedly held that the testimony of an expert on matters of domestic law is inadmiss[i]ble for *any* purpose." (quoting *Music Sales Corp*., 73 F. Supp. 2d at 381 (emphasis in original)).

## DISCUSSION

With respect to the Rule 702 factors, Plaintiff does not dispute that Goodstein is qualified as an expert. Nor does Plaintiff seriously dispute the reliability of the methodology and underlying data employed by Goodstein.[6] The question remains whether Defendant has met its burden of establishing by a preponderance of the evidence the third factor – that Goodstein's testimony as set forth in the three sections of the Opinions portion of his Report is relevant. As explained below, the Court finds that Defendant has not met its burden.

---

[5] By contrast, even where expert testimony is permitted in determining foreign law under Rule 44.1 of the Federal Rules of Civil Procedure, the expert testimony is presented to the judge, not the jury. *See* Fed. R. Civ. P. 44.1 ("In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence" and that "[t]he court's determination must be treated as a ruling on a question of law."); *see also Linde v. Arab Bank, PLC*, 920 F. Supp. 2d 282, 286 (E.D.N.Y. 2011) (noting that, while "the opinions of . . . experts addressing foreign law" may be submitted to the court, they "are not relevant because questions of foreign law are not to be determined through a proffer of expert testimony given to the jury").

[6] Although Plaintiff argued in its moving memorandum that Goodstein "review[ed] a curated set of documents and deposition excerpts provided by BAT's counsel[,]" (Pl.'s 6/22/26 Mem. at 2), Defendant notes that "Goodstein was provided access to virtually the entire factual record relevant to the issue on which he was engaged, including all deposition transcripts except for one which occurred after [his] report was due[.]" (Def.'s 7/13/26 Opp. Mem. at 4 n.1.)

## I. Sections 1 And 2 Of Goodstein's Opinions

Section 1 discusses the statutory and regulatory background regarding CERCLA and PCBs, as well as case law regarding arranger liability. (*See* Goodstein Rpt. at 4-6.) Section 2 discusses the arranger liability framework to be applied in this case, with citations to statutes and case law. (*See id*. at 6-10.) The Court finds that Sections 1 and 2 of Goodstein's opinions are not relevant and will not assist the trier of fact.

NCR already was found liable under CERCLA for contamination of the Kalamazoo River, and Judge Cronan already determined that the Kalamazoo River Site qualifies as a "Future Site[]" under the terms of the CSA. *See NCR Corp*., 2024 WL 4188358, at *3, 5. The issues remaining in this case that will need to be decided by the factfinder concern NCR's alleged omissions – whether NCR had "superior knowledge of certain information, namely the extent of its liability, and [whether] NCR knew that BAT was acting on the basis of mistaken knowledge when it signed the CSA." *Id*. at *10 (internal quotation marks and citation omitted).

The relevant law to be applied here is domestic (not foreign) law. CERCLA is a federal statute (with accompanying regulations) and the cases addressing CERCLA liability are federal cases. Thus, should Judge Cronan determine that the jury[7] will need to consider the possible extent of NCR's liability with reference to the CERCLA statute, regulations and case law, it is within

[7] The Court notes that it has not yet been finally determined whether or not there will be a jury. Although Judge Cronan denied NCR's motion to strike "with respect to issues raised by BAT's first and second Counterclaims, including any issues raised by those Counterclaims that were also raised in the Complaint[,]" he made this "decision . . . without prejudice for NCR to renew its motion to strike after the close of discovery and the resolution of any motions for summary judgment." *NCR Corp*., 2025 WL 2780066, at *12. Thus, it remains possible that this case will proceed by way of a bench trial and not a jury trial. If there were no jury then there certainly would be no need for Goodstein's testimony since Judge Cronan will determine CERCLA law for himself.

Judge Cronan's province to instruct the jury regarding these various aspects of CERCLA law. *See Scentsational Techs., LLC v. Pepsi, Inc.*, No. 13-CV-08645 (KBF), 2018 WL 1889763, at *3 (S.D.N.Y. Apr. 18, 2018) (referring to "the province of the judge to instruct on the law").

Section 1 purports to set forth the state of CERCLA law at the time the CSA was executed. (*See* Goodstein Rpt. at 4-6.) Section 2 goes further and contains legal analysis. For example, Section 2.a. posits that "there could be no dispute" that three of the CERCLA elements apply. (*See id*. at 6.) In Section 2.b., Goodstein applies CERCLA law to the Kalamazoo River site and outlines how NCR might have assessed its arranger liability, including what types of evidence it might have chosen to examine, and which witnesses it might have interviewed. (*See id*. at 7.) Section 2.c. contains a list of factors courts typically consider when determining whether arranger liability applies, as well as speculation on how and whether knowledge of those factors may have steered NCR's investigation of its arranger liability. (*See id*. at 7-10.)

"[E]xpert testimony that will opine on what the law is or to apply the law to the facts of the case is inadmissible, as it 'undertakes to tell the jury what result to reach,'" *United States v. Kurland*, No. 20-CR-00306 (NGG), 2022 WL 2669897, at *13 (E.D.N.Y. July 11, 2022), *aff'd*, No. 23-6755-CR, 2024 WL 5165547 (2d Cir. Dec. 19, 2024) (quoting *Nimely*, 414 F.3d at 397)), "or otherwise competes with the trial judge's capable instruction on the applicable law[.]" *Id*. (citing *Marx & Co*., 550 F.2d at 509-10); *see also Rush Indus., Inc. v. Garnier LLC*, 309 F. App'x 431, 432 (2d Cir. 2009) (finding inadmissible "expert opinion [that] consist[ed] almost entirely of discussion and application of legal standards"). Because Goodstein opines in Sections 1 and 2 on what CERCLA law was at a particular point in time, and seeks to apply that law, these opinions are not relevant and must be excluded.

It is true that expert testimony may be used to "help a jury understand unfamiliar terms and concepts." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991). In *Bilzerian*, for example, the Second Circuit found no abuse of discretion where the trial court permitted a securities law expert "to furnish [the jury] with background concerning the meaning of terms, the procedures which are followed [regarding Schedule 13D][8] and his opinion as to the reason for these procedures." *Id*. at 1295. The Circuit stated that, "[p]articularly in complex cases involving the securities industry, expert testimony may help a jury understand unfamiliar terms and concepts." *Id*. at 1294. However, as the Circuit further stated in *Bilzerian*, the use of expert testimony in this context "must be carefully circumscribed to assure that the expert does not usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *Id*. (citations omitted). The Circuit noted how the trial court had taken care to ensure the expert did not exceed the boundaries of his prescribed role by giving "a limiting instruction indicating that the expert's testimony was simply background information." *Bilzerian*, 926 F.2d at 1295. In the present case, Defendant is not offering Goodstein's opinions to explain unfamiliar terms and concepts. Rather, Goodstein's opinions are being offered to show what the law was and how that law would be applied, which is verboten.

What's more, in *Bilzerian*, the Circuit determined that "the government's expert [ . . .] did not give his opinion as to whether [the defendant's] actions violated the securities laws."

[8] "When a person or group of persons acquires beneficial ownership of more than five percent of a voting class of a company's equity securities registered under the Securities Exchange Act, they are required to file a Schedule 13D with the [Securities and Exchange Commission ("SEC")]." SEC website, *Schedules 13G and 13D*, available at https://perma.cc/59M7-NJU6 (last accessed Aug. 12, 2026).

*Bilzerian*, 926 F.2d at 1294. In the present case, despite Defendant's arguments to the contrary, Goodstein offers his opinions in part to direct the jury towards an analysis of Plaintiff's knowledge at the time of the CSA that is favorable to Defendant. In other words, as Plaintiff contends, Defendant seeks to "present an interpretation of facts or offer [an] argument through an expert witness under the guise of specialized CERCLA analysis" (Pl.'s 6/22/26 Mem. at 16), which is improper.

Even assuming, *arguendo*, that Sections 1 and 2 of Goodstein's opinions were relevant, they are excluded under Rule 403 of the Federal Rules of Evidence, due to the danger of misleading the jury. In seeking to exclude the Goodstein Report and testimony, Plaintiff notes the "complex CERCLA liability framework" (Pl.'s 6/22/26 Mem. at 11), that "arranger liability was a developing, fact-dependent body of law in the 1990s" and that "[d]ifferent lawyers, with the same information, could have reached different assessments—or no settled assessment at all." (Pl.'s 7/20/26 Reply at 3.) Thus, if Goodstein's expert testimony were permitted, he would be subject to vigorous cross-examination by Plaintiff and Plaintiff could choose to submit a rebuttal expert report regarding CERCLA law.

The Court finds that it would be confusing for the jury to be presented with a subjective, controverted view by Defendant's expert, or a battle of two experts (one retained by Plaintiff and one retained by Defendant), regarding what CERCLA law provided and how it would be applied. *See United States v. Ingredient Tech. Corp.*, 698 F.2d 88, 97 (2d Cir. 1983) ("We agree . . . that it would be very confusing to a jury to have opposing opinions of law admitted into evidence as involving a factual question for them to decide."). It would be far better – and what the law requires – for Judge Cronan to instruct the jury regarding CERCLA law. *See Roberts v. Cooper*, 61

U.S. 467, 481 (1857) ("It is the province of the court to instruct the jury as to the principles of law affecting the case, and counsel cannot appeal to a jury to decide legal questions by reading cases to them . . .."); *see also Smith v. Borough of Wilkinsburg*, 147 F.3d 272, 278 (3d Cir. 1998) ("It is black letter law that '[i]t is the inescapable duty of the trial judge to instruct the jurors, fully and correctly, on the applicable law of the case, and to guide, direct, and assist them toward an intelligent understanding of the legal and factual issues involved in their search for the truth.'" (quoting 9A Charles A. Wright and Arthur Miller, *Federal Practice and Procedure* § 2556 at 438 (2d ed.1995)).

Accordingly, Plaintiff's motion to exclude Section 1 and 2 of Goodstein's opinions is GRANTED.

**II. <u>Section 3 Of Goodstein's Opinions</u>**

In the Overview segment of the Goodstein Report, Goodstein describes Section 3 as "not[ing] some facts that stood out to [him] in [his] review of the documents that indicate NCR and its legal counsel did investigate NCR's potential CERCLA liability at the Kalamazoo River Superfund Site prior to execution of the CSA." (Goodstein Rpt. at 4.) In Section 3 itself, Goodstein cites selected documents and deposition testimony he reviewed that are part of the discovery record, and draws conclusions about those documents. (*See id*. at nn.31-32, 35-74; *see also id*. at 10 ("Sidley & Austin ('Sidley'), a law firm acting on behalf of NCR, appears to have been monitoring the CERCLA litigation at the Kalamazoo River Superfund Site. . . . Sidley appears to have provided advice to NCR regarding the litigation at the Kalamazoo River Superfund Site."), 13 ("Sidley appears to have been concerned enough about NCR's exposure at the Kalamazoo River Superfund Site . . ."), 15 ("The deposition testimony by NCR's witnesses and by witnesses

from Sidley in these proceedings confirms that Sidley and NCR were concerned about NCR's potential liability exposure in relation to the Kalamazoo River Superfund Site.").)

As well described by Judge Cronan in excluding certain expert testimony in a recent case, it is inappropriate for Goodstein to offer conclusions based upon his review of documents:

> Under Federal Rule of Evidence 704, an expert opinion "is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). But the Advisory Committee Notes to Rule 704 emphasize that "[t]he abolition of the ultimate issue rule does not lower the bars so as to admit all opinions," and that the Federal Rules of Evidence "afford ample assurances against the admission of opinions which would merely tell the jury what result to reach." Fed. R. Evid. 704 advisory committee notes. "[E]xpert testimony may not usurp the province of the judge to instruct on the law, or of the jury to make factual determinations," nor may an expert "act as a vehicle to present a factual narrative of interesting or useful documents for a case, in effect simply accumulating and putting together one party's 'story.'" *Scentsational Techs., LLC v. Pepsi*, Inc., No. 13 Civ. 8645 (KBF), 2018 WL 1889763, at *3-4 (S.D.N.Y. Apr. 18, 2018). Accordingly, "[i]t is well established that expert testimony is not relevant if the expert is offering a personal evaluation of the testimony and credibility of others or the motivations of the parties." *Snyder v. Wells Fargo Bank, N.A.*, No. 11 Civ. 4496 (SAS), 2012 WL 4876938, at *4 (S.D.N.Y. Oct. 15, 2012) (citation modified). "'[W]hen an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's'" and such testimony "goes well beyond the expert's 'limited role of providing the groundwork in the form of an opinion to enable the jury to make its own informed determination.'" *Id*. (quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)).

*Wells Fargo Bank*, 2025 WL 2220948, at *23; *see also Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-01318 (GBD) (BCM), 2021 WL 4810266, at *15 (S.D.N.Y. Sept. 30, 2021) ("The rule against expert testimony which states a legal conclusion is particularly important where the opinion is not based on personal knowledge, but instead on [the expert's] review of documents and depositions produced by the parties.") (citing *Media Sport & Arts s.r.l. v. Kinney Shoe Corp.*, No. 95-CV-03901 (PKL), 1999 WL 946354, at *3 (S.D.N.Y. Oct. 19, 1999)) (internal quotation marks omitted); *Island Intell. Prop. LLC v. Deutsche Bank AG*, No. 09-CV-02675

KBF, 2012 WL 526722, at *2 (S.D.N.Y. Feb. 14, 2012) ("This Court will not allow a proposed expert to walk the jury through a narrative of the numerous documents produced during discovery . . ..").

Accordingly, Plaintiff's motion to exclude Section 3 of Goodstein's opinions is GRANTED.

**CONCLUSION**

Because the Court finds that the three sections of Goodstein's opinions are excluded, his entire report is excluded. Accordingly, Plaintiff's motion to exclude the Goodstein Report and Goodstein's opinions in their entirety is GRANTED.

**SO ORDERED.**

Dated: New York, New York
August 17, 2026

Stewart d. Aaron
______________________________
STEWART D. AARON
United States Magistrate Judge