**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NCR CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>B.A.T INDUSTRIES P.L.C.,<br><br>Defendant. | Case No. 1:23-cv-1172-JPC-SDA |

# DEFENDANT B.A.T INDUSTRIES P.L.C.'S PARTIAL OBJECTION TO THE OPINION AND ORDER ON PLAINTIFF NCR CORPORATION'S MOTION TO EXCLUDE THE REPORT AND OPINIONS OF MICHAEL D. GOODSTEIN

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

BACKGROUND ........ 4

LEGAL STANDARD ........ 5

Objections to Orders Issued by Magistrate Judges ........ 5

Expert Testimony ........ 5

Federal Rule of Evidence 403 ........ 7

ARGUMENT ........ 7

1. Sections 1 and 2 of the Goodstein Report are Relevant and Helpful ........ 7

2. Sections 1 and 2 of the Goodstein Report are Not Excludable Under Rule 403. ........ 13

Probative Value ........ 13

Risk of Confusion ........ 14

CONCLUSION ........ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. City of New York*,
466 F. Supp. 2d 545 (S.D.N.Y. 2006)........................................................................6

*Coan v. Dunne*,
No. 3:15-CV-00050 (JAM), 2019 WL 2169879 (D. Conn. May 17, 2019).............3, 6, 10, 11

*Kaiser Aluminum Warrick, LLC v. US Magnesium, LLC*,
766 F. Supp. 3d 462 (S.D.N.Y. 2025), *reconsideration denied*, No. 22-CV-3105 (JGK), 2025 WL 2306864 (S.D.N.Y. Aug. 8, 2025)......................................................7

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
643 F. Supp. 2d 482 (S.D.N.Y. 2009)........................................................................7

*NCR Corp. v. B.A.T. Indus. P.L.C.*,
No. 23 Civ. 1172 (JPC), 2024 WL 4188358 (S.D.N.Y. Sept. 14, 2024)...............................14

*Nimely v. City of New York*,
414 F.3d 381 (2d Cir. 2005)........................................................................................6

*Peckham v. Cont'l Cas. Ins. Co.*,
895 F.2d 830 (1st Cir. 1990)...................................................................................7, 10

*In re Platinum-Beechwood Litig.*,
469 F. Supp. 3d 105 (S.D.N.Y. 2020).......................................................3, 6, 10, 16

*Roberts v. Cooper*,
61 U.S. 467 (1857)..................................................................................................15

*Smith v. Borough of Wilkinsburg*,
147 F.3d 272 (3d Cir. 1998).......................................................................................15

*Territory of Guam v. United States*,
593 U.S. 310 (2021)....................................................................................................9

*In re Terrorist Attacks on Sept. 11, 2001*,
No. 03-MD-01570 (GBD)(SN), 2025 WL 2383768 (S.D.N.Y. Aug. 18, 2025), *adopted*, No. 03 MDL 1570 (GBD) (SN), 2026 WL 769787 (S.D.N.Y. Mar. 18, 2026). .....................................................................................6, 8

*United States v. Bilzerian*,
926 F.2d 1285 (2d Cir. 1991)........................................................................ *passim*

*United States v. Ingredient Tech. Corp.*,
698 F.2d 88 (2d Cir. 1983)....................15, 16

*United States v. Offill*,
666 F.3d 168 (4th Cir. 2011) ....................6, 9

**Other Authorities**

Fed. R. Civ. P. 72....................5

Fed. R. Evid. 403 ....................7, 13

Fed. R. Evid. 702 ....................5, 6

Defendant B.A.T Industries P.L.C. ("BAT") by its attorneys, Hogan Lovells Cadwalader US LLP, respectfully submits this Partial Objection to United States Magistrate Judge Stewart D. Aaron's Opinion and Order (ECF No. 136, the "Order") on NCR Corporation's ("NCR") Motion to Exclude the Report and Opinions of Michael D. Goodstein (the "Goodstein Report," a copy of which is attached hereto as Exhibit A).

## PRELIMINARY STATEMENT

BAT objects to the Order to the extent it excluded sections 1 and 2 of the Goodstein Report.[1] The Order's ruling that expert testimony "on matters of domestic law is inadmissible for *any* purpose" (Order at 8) (emphasis in original)) is contrary to law, and the Order's finding that sections 1 and 2 "seek[] to apply that law" (Order at 10) is clearly erroneous. The Second Circuit has long recognized that experts may provide testimony on domestic law to help the jury understand unfamiliar legal terms and concepts. That is precisely what sections 1 and 2 of Mr. Goodstein's testimony do here and, critically, they do so without applying the law to the facts of this case. Accordingly, BAT respectfully requests that the Court modify the Order to deny the Motion with respect to sections 1 and 2 of the Goodstein Report.

Sections 1 and 2 of the Goodstein Report will help the jury understand arcane legal terms that are at the core of BAT's theory of the case. BAT alleges that NCR deceived BAT into executing the Confidential Settlement Agreement by failing to disclose the fact that it had intentionally arranged for disposal of toxic pollutants in the Kalamazoo River in violation of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). At trial, BAT will present evidence relating to NCR's extensive investigation of its own liability under

---

[1] BAT will not solicit testimony from Mr. Goodstein on the opinions set forth in section 3 of the Goodstein Report.

CERCLA. The investigation was directed in part to determine whether NCR had liability as an "arranger" under CERCLA for the use of NCR's CCP paper in recycling activities at the Kalamazoo River. BAT will also present evidence that BAT and NCR entered into a joint defense agreement which required the parties to cooperate and assist each other in the defense of allegations relating to Fox River PCB contamination, including any investigations and activities relating thereto. Among the key questions for the jury at trial will be NCR's knowledge of, and failure to disclose, its liability as an "arranger" at Kalamazoo River and whether, in the circumstances, it was reasonable for BAT not to have so identified that NCR had such liability but concealed such from BAT.

CERCLA law, and its regulatory framework, are complex and involve concepts and terminology that are unfamiliar to jurors. For the jury to understand the testimony and documents, the jury must first have a working understanding of the framework of arranger liability under CERCLA, including an understanding of how that liability arises, what facts are relevant to the liability, how this liability can be proven, and what steps parties typically take when investigating that liability. Without such groundwork on the meaning of CERCLA arranger liability, it would be extremely problematic for a jury to properly analyze which facts are relevant to the allegations and, ultimately, determine whether NCR was aware of its liability and concealed it from BAT, despite NCRs representations to cooperate and assist BAT. Also, such groundwork is relevant to an assessment of any issue as to whether, in the circumstances, BAT could reasonably be expected to identify that NCR was so liable as an arranger at Kalamazoo River.

Sections 1 and 2 of the Goodstein Report will provide the jury with this background information. These sections provide an overview of the arranger liability, and the defenses relevant thereto. They also discuss the evidence that is generally relevant to arranger liability issues

(without discussing the specific evidence in this case or otherwise applying the facts of this case to the law), and how parties investigate arranger liability. Given the importance of arranger liability to this case and the fact that the average juror would be unfamiliar with these concepts, sections 1 and 2 of the Goodstein Report are clearly relevant and helpful.

While BAT acknowledges that experts are typically prohibited from testifying on domestic law, the Second Circuit has held that the general rule is not applicable where, as here, an expert provides testimony about legal concepts in order to provide the jury with "background information" and to explain "unfamiliar terms and concepts." *United States v. Bilzerian*, 926 F.2d 1285, 1294–95 (2d Cir. 1991); *In re Platinum-Beechwood Litig.*, 469 F. Supp. 3d 105, 117 (S.D.N.Y. 2020) (permitting expert testimony because it "contextualize[d] the evidence so that the jury may understand the standards under which [a party]"); *Coan v. Dunne*, No. 3:15-CV-00050 (JAM), 2019 WL 2169879, at *1 (D. Conn. May 17, 2019) (permitting expert testimony where there were "background or subsidiary principles of law that may govern or influence the parties' conduct but that are not directly at issue with respect to the law that will form the basis for final jury instructions").

The best way to provide the jury with this necessary context is through an expert on CERCLA law, such as Mr. Goodstein. The alternative approach suggested in the Order -- that this Court provide the context through jury instructions – will not capture key aspects of Mr. Goodstein's proposed testimony. For example, his testimony addresses what a typical investigation of arranger liability looks like, what facts are most relevant to an arranger liability claims and defenses, and the kinds of evidence that are typically relevant to an arranger liability case. These topics are beyond the scope of jury instructions, as they encompass not just legal standards, but the nature and scope of a CERCLA investigation that is relevant to the circumstances

of this case. Accordingly, jury instructions are no substitute for Mr. Goodstein's testimony.

## BACKGROUND

This case arises out of NCR's pollution of the Kalamazoo River between 1954 and 1971, when NCR produced a product known as carbonless copy paper ("CCP") using an emulsion which contained Aroclor 1242, a polychlorinated biphenyl ("PCB") that was toxic. Decisions from prior cases against NCR found that (i) by at least March of 1969, NCR learned that CCP contained toxic PCBs that cause serious health issues and (ii) despite this, NCR intentionally arranged to offload toxic scrap CCP offcuts (specifically "broke" from NCR's Appleton Papers Division ("APD") and "trim" from NCR's Systemedia Division ("Systemedia")) to unsuspecting mills situated along the Kalamazoo River. Consequently, in 2013, NCR was found liable under CERCLA for intentionally arranging for the disposal of toxic CCP broke and trim into the Kalamazoo River.

In 1978, years after NCR ceased polluting the Kalamazoo River, a subsidiary of BAT acquired the assets of APD. It did not acquire Systemedia (which still operates as a division of NCR today). At the time, BAT had no knowledge of NCR's history of polluting the Kalamazoo River. In 1995, NCR sued BAT, claiming that BAT was liable for the costs of NCR's pollution of the Fox River, where APD operated. In July 1999, the parties entered into the Confidential Settlement Agreement ("CSA"), under which BAT agreed to pay a percentage of NCR's cleanup costs at the Fox River and "future sites."

BAT alleges that at the time that NCR and BAT agreed to this language, NCR was fully aware that it faced liability at the Kalamazoo River, in addition to its liability at the Fox River, because of the arrangements it had made to dispose of toxic CCP broke and trim at that site (from APD and Systemedia respectively). In fact, BAT contends that the record in this case will show that, at the time the parties signed the CSA, NCR had been conducting an extensive investigation

of its liability for contamination of the Kalamazoo River. Through this investigation, BAT says that NCR knew that it faced arranger liability at the Kalamazoo. BAT alleges that at the time the parties signed the CSA, NCR was fully aware of its arranger liability for environmental cleanup at the Kalamazoo River while BAT was entirely unaware of any such liability.

In these proceedings, NCR claims that the Kalamazoo River qualifies as a "future site" under the CSA and that, accordingly, BAT is required to indemnify NCR for its malfeasance at that site. In response, BAT's primary contention is that NCR is not entitled to this relief because NCR was aware of, and failed to disclose, its actions and liability with respect to the Kalamazoo River when negotiating the CSA. BAT also contends that the CSA is unenforceable on public policy and other grounds.

On May 15, 2026, Michael D. Goodstein submitted the Goodstein Report. On June 22, 2026, NCR filed the Motion to Exclude the Report and Opinions of Michael D. Goodstein (the "Motion") and an accompanying memorandum. ECF No. 130. On July 13, 2026, BAT filed its opposition memorandum. ECF No. 134. On June 20, 2026, NCR filed its reply memorandum. ECF No. 135. On August 17, 2026, Judge Aaron issued the Order granting the Motion. ECF No. 136. Oral argument was not held on the Motion.

## LEGAL STANDARD

Objections to Orders Issued by Magistrate Judges

When a party objects to an order issued by a Magistrate judge, the district court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72.

Expert Testimony

The Second Circuit has held that Rule 702 authorizes courts to admit expert testimony that meets three conditions: (1) the witness is "qualified," (2) the witness' "opinion is based upon

reliable data and methodology," and (3) the witness' "testimony (as to a particular matter) will '[help] the trier of fact.'" *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (*quoting* Fed. R. Evid. 702); *see also In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MD-01570 (GBD)(SN), 2025 WL 2383768, at *2 (S.D.N.Y. Aug. 18, 2025), *adopted*, No. 03 MDL 1570 (GBD) (SN), 2026 WL 769787 (S.D.N.Y. Mar. 18, 2026).

As the Order recognizes (Order at 8), NCR does not challenge the first two elements, but argues that the third condition above, whether the expert's testimony will be helpful, is not met here. Expert testimony is helpful when it "sheds light on activities not within the common knowledge of the average juror" and "'provide[s] the groundwork to enable the [trier of fact] to make its own informed determination[s]' on relevant issues." *In re Terrorist Attacks*, 2025 WL 2383768, at *4 (*quoting In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 114 (2d Cir. 2013). Expert testimony is not helpful if it "usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *Allen v. City of New York*, 466 F. Supp. 2d 545, 548 (S.D.N.Y. 2006).

While expert testimony on issues of law is usually inadmissible, courts in the Second Circuit have consistently recognized an exception to this general rule that permits expert testimony that provides "background information" to "help a jury understand unfamiliar terms and concepts." *United States v. Bilzerian*, 926 F.2d 1285, 1294–95 (2d Cir. 1991); *In re Platinum-Beechwood Litig.*, 469 F. Supp. 3d 105, 117 (S.D.N.Y. 2020) (permitting expert testimony that "contextualize[d] the evidence so that the jury may understand the standards under which [a party] were operating with respect to management of [its] assets"); *Coan v. Dunne*, No. 3:15-CV-00050 (JAM), 2019 WL 2169879, at *1 (D. Conn. May 17, 2019); *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011) ("[C]ourts and commentators have consistently concluded that expert

testimony that ordinarily might be excluded on the ground that it gives legal conclusions may nonetheless be admitted in cases that involve highly technical legal issues"); *Peckham v. Cont'l Cas. Ins. Co.*, 895 F.2d 830, 837 (1st Cir. 1990) (permitting testimony from insurance law experts because "[i]nsurance is a complicated subject" and "Defendant's proffered experts could reasonably be expected to shed some light in a shadowy domain").

Furthermore, "because the federal rules emphasize liberalizing expert testimony, doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions." *Kaiser Aluminum Warrick, LLC v. US Magnesium, LLC*, 766 F. Supp. 3d 462, 473 (S.D.N.Y. 2025), *reconsideration denied*, No. 22-CV-3105 (JGK), 2025 WL 2306864 (S.D.N.Y. Aug. 8, 2025) (*quoting United States v. Jakobetz*, 955 F.2d 786, 797 (2d Cir. 1992)).

"Within the courts of the Second Circuit, an expert may lead a jury to the precipice of a verdict, but she may not instruct them to leap." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 482, 505 (S.D.N.Y. 2009).

Federal Rule of Evidence 403

Expert testimony is subject to Rule 403, which provides, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## ARGUMENT

### 1. Sections 1 and 2 of the Goodstein Report are Relevant and Helpful.

Sections 1 and 2 of the Goodstein Report provide background information and context necessary for the jury to understand the evidence at trial and resolve the issues in this case. Issue for Determination. Contrary to assertions made in the Motion and in the Order, these sections do

not apply the law to the facts or reach legal conclusions on the ultimate issues in this case Rather, Mr. Goodstein's testimony will provide an understanding of the complex terminology and structure of CERCLA law to allow the jury to understand the evidence Accordingly, sections 1 and 2 of the Goodstein Report are relevant, helpful, and admissible.

The evidence in this case will show that NCR conducted an extensive investigation into its arranger liability at the Kalamazoo River and, through this investigation, became aware that its arranger liability extended to that site. For the jury to appreciate the significance of this investigation and determine whether this investigation provided NCR with superior knowledge of its arranger liability, the jury must understand what CERCLA liability is or how such liability can arise.

Mr. Goodstein's testimony will provide the jury with the background on CERCLA liability that is necessary for the jury to understand how NCR's liability *could*, in principle, have extended to Superfund sites. It is only with the benefit of this liability framework, which is complicated, that a jury will be able to grapple with evidence that is applicable to the issues in the case, including whether NCR had superior knowledge about its liability at the Kalamazoo River . *See In re Terrorist Attacks*, 2025 WL 2383768, at *4 ("Expert testimony is helpful when it . . . 'provide[s] the groundwork to enable the [trier of fact] to make its own informed determination[s]' on relevant issues.") (citations omitted). Mr. Goodstein's first and second sections will help the jury understand this complex area of the law by providing an overview of the relevant aspects of CERCLA. In particular, Mr. Goodstein's testimony will provide background information on:

- What CERCLA is and what it prohibited at the time the parties entered into the CSA (Goodstein Report at 4);
- What an arranger is, as that term is defined by CERCLA (*id*. at 5);
- What factors courts consider when determining whether a party meets CERCLA's definition of an arranger at the time the parties entered into the CSA (*id*. at 6–10);

- How an attorney conducting an investigation would gather evidence on arranger liability (*id.* at 7);

- The kinds of evidence that are typically considered during an investigation of arranger liability (*id.* at 7 ("Evidence is typically in the form of historical business records or factual accounts from witnesses with direct knowledge. In other words, the investigation requires searching through historical records and identifying, locating and interviewing witnesses with personal knowledge. Potentially responsible parties spend substantial time and effort investigating this type of nexus information")); and

- The potential defenses to arranger liability (such as the useful product defense) (*id*. at 8); and the kinds of evidence that are relevant to arranger liability (*id*. at 7).

Without a working understanding of these concepts, and their significance in the CERCLA framework, a jury would have no ability to properly determine whether NCR knew of its arranger liability and whether it was reasonable for BAT to expect NCR to disclose that liability. Accordingly, sections 1 and 2 are clearly relevant and helpful to the jury's resolution of the case.

Sections 1 and 2 are admissible under the Second Circuit's ruling in *United States v. Bilzerian*, which held that experts may provide "background" on legal issues to "help a jury understand unfamiliar terms and concepts" in "complex cases." 926 F.2d 1285,1294 (2d Cir. 1991); *see also United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011) ("[W]e conclude that the specialized nature of the legal regimes involved in this case and the complex concepts involving securities registration, registration exemptions, and specific regulatory practices make it a typical case for allowing expert testimony that arguably states a legal conclusion in order to assist the jury."). Consistent with *Bilzerian*, sections 1 and 2 provide background information on unfamiliar terms and concepts that the average juror (indeed, many attorneys) are not familiar with, such as CERCLA, arranger liability, the useful product defense, etc. And it cannot be disputed that CERCLA is "complex." *See Territory of Guam v. United States*, 593 U.S. 310, 312 (2021). Indeed, NCR readily admits this. Dkt. No. 130 at 11 (describing CERCLA as "complex"). As such, Mr. Goodstein's report could be expected to "shed some light in a shadowy domain."

*Peckham v. Cont'l Cas. Ins. Co.*, 895 F.2d 830, 837 (1st Cir. 1990).

*In re Platinum-Beechwood Litig.*, 469 F. Supp. 3d 105, 117 (S.D.N.Y. 2020) illustrates how the exception to the general rule is applied. In that case, a plaintiff brought breach of fiduciary duty, fraud, and other claims against a hedge fund and its managers. The plaintiff sought to admit expert testimony that "opines on the existence and contours of the fiduciary duties of care and loyalty owed by defendants . . . and discusses the legal prohibitions . . . under the Investment Advisors Act of 1940." *Id.* The plaintiff also proposed expert testimony regarding "(1) what a fiduciary or investment manager in a given context would ordinarily do according to relevant industry standards, (2) what the defendants here did instead, and (3) why the latter had the effect of defrauding or harming [a party]." *Id.* at 116. Judge Rakoff permitted this testimony because it "contextualize[d] the evidence so that the jury may understand the standards under which [a party] were operating with respect to management of [its] assets, as well as standard industry practices by investment managers to meet such standards." *Id.* at 117 (*citing Bilzerian*, 926 F.2d at 1295). Mr. Goodstein's proposed testimony, like the expert in *Platinum-Beechwood*, will contextualize the evidence of NCR's knowledge of its arranger liability without usurping the role of the jury to decide the issues in the case.

*Coan v. Dunne*, No. 3:15-CV-00050 (JAM), 2019 WL 2169879, at *1 (D. Conn. May 17, 2019), is instructive here as well. In that case, the plaintiff alleged that the defendant engaged in fraudulent transfers, including the transfer of real property in Ireland. Defendant proposed to call an expert witness on Irish property law to help the jury better understand the context in which the transfer at issue was made. The court permitted the expert testimony, ruling:

> It is obvious, however, that many cases may require a jury to have some understanding of background legal concepts and related practices in order for the jury to make its ultimate factual assessments. ***This is especially true where there are background or***

> ***subsidiary principles of law that may govern or influence the parties' conduct but that are not directly at issue with respect to the law that will form the basis for final jury instructions***. Thus, such "expert testimony may help a jury understand unfamiliar terms and concepts" and is permissible if "carefully circumscribed to assure that the expert does not usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it.

*Id.* at *1 (internal citations omitted) (emphasis added).[2] That is exactly what Mr. Goodstein does in Sections 1 and 2 of his report. He explains the background and subsidiary principles of law that governed NCR's actions so that the jury can resolve the ultimate issues in this case.

In the Order, Judge Aaron ruled that sections 1 and 2 were "not relevant" because they (a) opine "on what CERCLA law was at a particular point in time" and (b) "seeks to apply that law." Order at 10. As set forth further below, these findings are incorrect.

To the extent the Order holds that expert testimony "on what CERCLA law was at a particular point in time . . . must be excluded," the Order is contrary to law. *Id.* Indeed, it appears that the Order was premised on a misconstruction of the law. The Order states that expert testimony "on matters of domestic law is inadmissible for *any purpose*." *Id.* at 8 (quoting *In re Initial Pub. Offering Sec. Litig*., 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) (emphasis in original). This statement cannot be squared with the Second Circuit's ruling in *Bilzerian*, which expressly recognized an admissible purpose for expert testimony on domestic law: to provide "background" on legal issues to "help a jury understand unfamiliar terms and concepts" in "complex cases." *Bilzerian*, 926 F.2d at 1294. The Order acknowledges the Second Circuit's holding in *Bilzerian*, but stated that "Defendant is not offering Goodstein's opinions to explain unfamiliar terms and concepts." Order at 11. This finding is clearly erroneous. The entire purpose of Mr. Goodstein's opinion is to

[2] While the expert testimony in *Coan* related to foreign law, this did not factor into the reasoning of the *Coan* Court, which permitted the testimony under the reasoning set forth in *Bilzerian*.

explain the unfamiliar terms and concepts of CERCLA arranger liability to a lay jury. Moreover, as in *Bilzerian*, Sections 1 and 2 of Mr. Goodstein's report are "*carefully circumscribed*" to avoid usurping the jury's role in "applying that law to the facts before it." Order at 11. Section 1 consists of background on CERCLA law and regulation, and section 2 addresses the arranger liability framework. To the extent the Order alludes to Mr. Goodstein directing the jury towards an assessment of NCR's knowledge (*see*, for example Order at 11—12), it is clearly erroneous in respect of Sections 1 and 2 of his report. To the contrary, these sections explain unfamiliar terms and concepts that the jury must understand to resolve the issues before it, without intrusion into the jury's role.

Furthermore, to the extent the Order found that Sections 1 and 2 "seek[] to apply that law" (Order at 10) it is clearly erroneous. Sections 1 and 2 do not apply the law to the facts of this case. These sections do not analyze any evidence or reach any legal conclusions. They primarily explain background legal concepts. For example, Mr. Goodstein summarizes the useful product doctrine, identifies the relevant factors, and discusses key cases related thereto. Goodstein Report at 8.

Sections 1 and 2 also identify the key issues from decided cases that would be relevant to a factual investigation of whether a party had arranger liability. For example, Mr. Goodstein identifies the following key issues for the jury's consideration:

- "Whether NCR treated its broke as a waste" (Goodstein Report at 8);
- "Whether NCR sold its broke for a profit" (*id.*);
- "whether the party sold a new material that was still fit for its original purpose or whether it was a by-product of the party's operations or used material with only nominal value" (*id.*);
- "whether the paper industry, at the time, viewed NCR's broke as useful in its condition when sold" (*id.* at 9); and
- "whether NCR was aware of the environmental risks of PCBs in its CCP broke." (*id.*)

Identifying issues in this manner is not applying the law. It is merely informing the jury of the structural framework that is relevant to arranger liability so that the jury can understand the relevance of the documents and testimony that it will need to consider in deciding the case. Such a function was found proper by the Second Circuit in *Bilzerian*.

The Order contends that Mr. Goodstein applied the law to the facts by stating, "'there could be no dispute' that three of the CERCLA elements apply." Order at 10 (quoting the Goodstein Report at 6). But the Order misconstrues this portion of the Goodstein Report. This statement was intended only to make clear to the reader that the report does not address three of the CERCLA elements because they are not in dispute. And to be clear, NCR does not dispute these elements.

The Order also states that Mr. Goodstein's report "outlines how NCR might have assessed its arranger liability, including what types of evidence it might have chosen to examine, . . . which witnesses it might have interviewed [and] contains a list of factors courts typically consider when determining whether arranger liability applies." Order at 10. But this is not applying the law to the facts. It is providing background information on CERCLA investigations so that the jury can better appreciate the investigation that NCR conducted. This testimony is entirely appropriate.

**2. Sections 1 and 2 of the Goodstein Report are Not Excludable Under Rule 403.**

The Order also found that the first two sections of Mr. Goodstein's report violated Rule 403. But the Order did not properly consider the probative value of Mr. Goodstein's testimony and it overstates the chances that it will confuse the jury. Furthermore, jury instructions, which the Order suggests are a superior alternative to sections 1 and 2, are not a suitable replacement for sections 1 and 2 because these sections go beyond the scope of a typical jury instruction.

<u>Probative Value</u>

Mr. Goodstein's testimony has high probative value. As explained above, Mr. Goodstein's expert testimony will educate the jury regarding the relevant underlying legal concepts when it

considers the "extent of [NCR's arranger] liability." *NCR Corp. v. B.A.T. Indus. P.L.C.*, No. 23 Civ. 1172 (JPC), 2024 WL 4188358, at *10 (S.D.N.Y. Sept. 14, 2024). These concepts are a threshold issue before the jury can properly assess the ultimate allegations of fraudulent inducement and negligent misrepresentation. Without the benefit of guidance on such a complex legal framework, the jury will have difficulty discerning whether information does indeed connect with the "*extent of [NCR's] liability*," and therefore whether it is relevant to the jury resolution of the fraud and negligence claims. The true probative value of the expert testimony is to provide the jury with assistance in understanding a complex area or the law, namely CERCLA, as it stood in 1998/1999, before the jury proceeds to analyze the facts and information relevant to the issues in the case.

Risk of Confusion

The Goodstein Report is clear about its scope: to summarize the relevant principles of "arranger" liability in existence at the time of the CSA. Goodstein Report at 3. Mr. Goodstein does not suggest that he will try to apply the facts of this case to the law, nor does he attempt to do so in Sections 1 or 2 of his report. What follows in the substance of Sections 1 and 2 of the Goodstein Report is a thoughtfully worded and reasoned outline of the CERCLA framework on arranger liability. There is (rightly) no suggestion in the Order that the language or structure Mr. Goodstein uses creates any juror confusion or any actual specific criticism of Mr. Goodstein's summary of the relevant legal principles.

To the contrary, there is no reason to believe that the jury would be confused about the question it must decide. The jury instructions will explain that the ultimate issue to be decided is whether NCR fraudulently or negligently induced BAT into signing the CSA, not whether NCR has arranger liability. The purpose of Mr. Goodstein's testimony is to provide the jury with an understanding regarding the background CERCLA law issues, in circumstances where it will not

otherwise be intuitive for the jury. Far from creating confusion, the expert testimony would provide clarity about the operation of arranger liability under CERCLA. Sections 1 and 2 of Mr. Goodstein's report achieve that aim.

The Order suggests that Sections 1 and 2 can be replaced by jury instruction. Order at 12–13. But sections 1 and 2 go well beyond the scope of jury instructions, as they address not just the legal concepts, but also what a typical investigation of arranger liability looks like, what facts are most relevant to an arranger liability claims and defenses, and the kinds of evidence that are typically relevant to an arranger liability case. A working understanding of these issues will be critical to the jury, as they will be reviewing evidence of an investigation performed by NCR and will need to decide whether (1) NCR was in fact investigating its arranger liability and (2) whether that investigation gave rise to superior knowledge of arranger liability at Kalamazoo. Jury instructions on the legal concepts alone would not address these issues.[3]

The Order also relies on *United States v. Ingredient Tech. Corp*., 698 F.2d 88, 97 (2d Cir. 1983), but that case is inapposite. In that case, Defendants sought to admit expert testimony that the meaning of the tax laws governing the ultimate issue in the case were so unclear that the defendants could not have had the requisite scienter. This is nothing like the testimony that Mr. Goodstein proposes here. Mr. Goodstein will provide background information on subsidiary legal principles that are relevant to the case; he will not question the clarity of the law that governs the ultimate issue in this case. Thus, in *Ingredient Tech*, the potential for confusion was high while

[3] The Order cites to *Roberts v. Cooper*, 61 U.S. 467, 481 (1857) and *Smith v. Borough of Wilkinsburg*, 147 F.3d 272, 278 (3d Cir. 1998) for the proposition that instructing the jury is the duty of the trial judge. BAT does not dispute this. But Mr. Goodstein will not be instructing the jury on any issue of law, and will not address the ultimate issue in this case in any way. His testimony is only to provide the jury with necessary context, as discussed further above.

the probative value was low; the opposite of the situation presented by Mr. Goodstein's testimony.

The Order quotes *Ingredient Tech.* as stating, "it would be very confusing to a jury to have opposing opinions of law admitted into evidence as involving a factual question for them to decide." Order at 12. But this concern is not present here, as NCR has not identified any portion of Mr. Goodstein's summary of CERCLA law that it disagrees with or that its expert would oppose. If it were the case that any aspect of Sections 1 and 2 were incorrect, NCR would have identified those aspects. Even if NCR did disagree with Mr. Goodstein's proposed testimony, *In re Platinum-Beechwood Litig.*, 469 F. Supp. 3d 105, 117 (S.D.N.Y. 2020) identifies a simple way to handle the issue. In that case, Judge Rakoff ruled that an expert may testify on the law "so long as his statements are, in fact, what the law is as previously determined by the Court." *Id.* BAT would not object to a similar limitation in this case, so long as it applies to experts from both sides equally.

## CONCLUSION

For the foregoing reasons, BAT respectfully requests that the Court modify the Order to deny the Motion with respect to sections 1 and 2 of the Goodstein Report.

Dated: August 31, 2026
New York, New York

*Dennis H. Tracey, III*

Dennis H. Tracey, III
David R. Michaeli
Nathaniel Benfield
HOGAN LOVELLS CADWALADER US LLP
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3000
dennis.tracey@hlc.com
david.michaeli@hlc.com
nathaniel.benfield@hlc.com

*Attorneys for Defendant*

**WORD COUNT CERTIFICATION**

I hereby certify that this Memorandum of Law complies with Local Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York. This certificate certifies that the document complies with the word count limit. Compliance relied on the word count of the word-processing system used to prepare the document. The total number of the words in this Memorandum, exclusive of the caption, table of contents, table of authorities and signature block is 5,371 words.

Dated: August 31, 2026
New York, New York

*Dennis H. Tracey, III*
Dennis H. Tracey, III