# EXHIBIT 4

P. 02

Exhibit D

SIMPSON THACHER & BARTLETT
A PARTNERSHIP WHICH INCLUDES PROFESSIONAL CORPORATIONS
425 LEXINGTON AVENUE
NEW YORK, N.Y. 10017-3954
(212) 455-2000

TELECOPIER: 455-2502
TELEX: 129158

LONDON
HONG KONG
TOKYO
COLUMBUS

WRITER'S DIRECT DIAL NUMBER
(212) 455-3979

BY HAND

December 19, 1995

Re: AT&T GIS v. API & BAT

Steven M. Bierman, Esq.
Sidley & Austin
875 Third Avenue
New York, New York 10022

Dear Steve:

I have enclosed an original of the Joint Defense Agreement signed by Ed Bush and Bob Bourque. I have also enclosed a copy of the stipulation and order extending our time to file papers in opposition to your pending motion that has been so ordered by Judge Duffy.

Please do not hesitate to call me with any questions or concerns.

Very truly yours,

Bill Russell

William T. Russell, Jr.

Enclosures

**Exhibit B**


NCRV_00492701

P. 02

# JOINT DEFENSE AGREEMENT

AGREEMENT, dated ~~November~~ December 19, 1995, by and between Appleton Papers Inc. ("API"), B.A.T Industries Limited ("BAT"), and AT&T Global Information Solutions Company ("AT&T GIS") (collectively referred to herein as "the parties").

WHEREAS, AT&T GIS received a letter from the State of Wisconsin Department of Justice dated September 9, 1994 notifying AT&T GIS that it "is probably a PRP" with respect to certain contamination of the Fox River with polychlorinated biphenyls ("PCBs") and that AT&T GIS' participation in cooperative cleanup efforts would likely influence the State's decision on whether to initiate legal action;

WHEREAS, the Assistant Attorney General of the State of Wisconsin has notified AT&T GIS that the State intends to commence legal action if the State does not receive a satisfactory response to its September 9, 1994 letter;

WHEREAS, pursuant to the terms of the Agreement of Purchase and Sale of Assets for Appleton Papers Division of NCR Corporation Dated June 30, 1978 ("Asset Purchase Agreement") and the related Assumption Agreement, AT&T GIS requested API and BAT to defend the State's assertion of a claim and indemnify and hold it harmless;

WHEREAS, API and BAT have denied that they are required to defend or indemnify AT&T GIS with regard to actions related to Fox River PCB contamination;

WHEREAS, the United States Environmental Protection Agency ("U.S. EPA") notified AT&T GIS by letter dated August 8, 1995 of potential liability with regard to alleged disposal of hazardous substances by Appleton Coated Paper Company and Appleton Paper, Inc. at the Marina Cliffs Barrel Dump Superfund Site ("Marina Cliffs Site") in Wisconsin, and has informed AT&T GIS that it will assume that AT&T GIS does not wish to

negotiate a resolution of its potential liability if AT&T GIS fails to notify U.S. EPA of its willingness to perform or finance response activities;

WHEREAS, pursuant to the terms of the Asset Purchase Agreement and the Assumption Agreement AT&T GIS requested API and BAT to defend and indemnify and hold it harmless with regard to the Marina Cliffs site;

WHEREAS, API and BAT have denied any obligation to defend or indemnify AT&T GIS with regard to actions related to the Marina Cliffs Site;

WHEREAS, AT&T GIS commenced a lawsuit in the U.S. District Court for the Southern District of New York in June 1995 against API and BAT seeking a declaratory judgment that API and BAT are required to defend and indemnify AT&T GIS for any liability it may incur relating to the alleged Fox River PCB and Marina Cliffs contamination pursuant to the Asset Purchase and Assumption Agreements among NCR Corporation (the former name of AT&T GIS), BAT and Lentheric Inc. (the "Southern District Action");

WHEREAS, API and BAT have filed a counterclaim in the Southern District Action seeking a declaratory judgment that AT&T GIS is required to defend and indemnify API and BAT for any liability it may incur relating to the Fox River PCB and Marina Cliffs contamination;

WHEREAS, the parties have concluded that they have interests in common and may assert common defenses and/or claims in connection with the alleged contamination of the Fox River and the Marina Cliffs Site, and the parties accordingly have concluded that the conduct of each party's respective defense may be best served by, from time to time, sharing documents, factual material, mental impressions, memoranda, interview reports and



CONFIDENTIAL – Subject to Protective Order API-ARB-00002705
CONFIDENTIAL NCRV_00492703
NCRV_00492701

other information in any form, whether written, oral, computerized or otherwise, relating to the alleged Fox River PCB contamination and the Marina Cliffs Site ("Defense Materials");

WHEREAS, the parties wish to cooperate with each other and exchange Defense Materials from time to time in connection with any allegations of potential liability against any of them relating to the alleged Fox River PCB contamination and the Marina Cliffs Site, and to assist each other in the defense of such allegations, including any investigation, negotiations, and other activities or proceedings relating to such allegations, without prejudice to their respective positions regarding the Asset Purchase Agreement and the Assumption Agreement and without making any admissions or concessions; and

WHEREAS, it is the intent and desire of the parties that any information exchanged between or among them shall be maintained as confidential and shall be subject to all applicable privileges and protections from disclosure, including without limitation the joint defense privilege and the attorney work product doctrine.

NOW THEREFORE, the parties agree as follows:

1. The parties shall exchange Defense Materials pursuant to the terms of this Agreement. All such Defense Materials that are written shall be designated as such by the producing party and shall contain the following legend on the first page of each document: CONFIDENTIAL JOINT DEFENSE MATERIAL.

2. All Defense Materials shared pursuant to this Agreement shall be maintained as confidential by the receiving party and shall not be disclosed to third parties except in accordance with this Agreement.

3. All Defense Materials that are privileged or otherwise protected from disclosure under any applicable privilege or doctrine shall be maintained as privileged and

protected from disclosure by the receiving party and shall not be disclosed to third parties except in accordance with this Agreement.

4. By exchanging or disclosing Defense Materials pursuant to this Agreement, the parties do not intend to waive or diminish in any way the confidentiality of such materials or any privilege or other protection from disclosure applicable thereto. The parties specifically intend to invoke to the fullest extent possible the protections of all applicable privileges, including without limitation the joint defense privilege. In the event that a party hereto makes available to another party documents or information that could have been, but through inadvertence were not, designated as Defense Materials, the producing party may subsequently designate such documents or information as Defense Materials by promptly providing written notice to all other parties. Upon receiving and reviewing such notice, the receiving parties shall take such actions as are necessary to maintain the designated Defense Materials as confidential and/or privileged in accordance with the Agreement.

5. Defense Materials shall not be disclosed by any receiving party without the written permission of the party providing such Defense Materials, except that Defense Materials may be disclosed (a) to employees of the receiving party and employees of the receiving party's subsidiaries, parent corporations and other affiliates participating in investigation, negotiation, evaluation or other activities relating to the Fox River PCB contamination or the Marina Cliffs Site; (b) to counsel for the receiving party (and employees and support staff of such counsel) participating in investigation, negotiation, evaluation or other activities relating to the Fox River PCB contamination or the Marina Cliffs Site; (c) to experts and consultant retained by any party to participate in investigation,

negotiation, evaluation or other activities relating to the Fox River PCB contamination or the Marina Cliffs Site; (d) in the event that such disclosure is required under applicable law, provided that (i) three days prior written notice is given by the disclosing party to the party that provided such Defense Materials stating (A) the intent to disclose such materials, (B) to whom the disclosure is intended to be made, (C) the legal basis upon which disclosure is required, and (D) the time and place that such disclosure is intended to be made, and (ii) the disclosing party permits all affected parties an opportunity to protect their respective interests by motion or otherwise in an appropriate forum.

6. Counsel for the party receiving Defense Materials shall explicitly instruct all authorized recipients of such Defense Materials listed in Section 5(a)-(c) to maintain them in the strictest confidence and not to disclose them to anyone other than persons listed in Section 5(a)-(c).

7. Defense Materials that are shared pursuant to this Agreement, and the information therein, are to be used by the receiving party solely in the investigation and preparation of defenses regarding the Fox River PCB contamination and the Marina Cliffs Site, and any subsequent legal proceedings.

8. The parties will use their best efforts to ensure that Defense Materials are maintained as confidential and that no action is taken that would result in a waiver or loss of any confidentiality, privilege or other protection from disclosure.

9. Nothing in this Agreement is intended to or shall be deemed to restrict or limit the party producing Defense Materials from any use or disclosure of same (or information contained therein or derived therefrom) or the use of disclosure of any document or information which a party shall have acquired outside the scope of this Agreement.

10. In the event that any party shall no longer have a common interest with the other parties regarding the Fox River PCB contamination or the Marina Cliffs Site, that party shall promptly notify the other parties of that fact and shall withdraw from this Agreement. Such withdrawal shall not terminate the mutual obligation to maintain previously shared Defense Materials and information as confidential and/or privileged. Upon withdrawal, the withdrawing party shall return all documents provided to that party by the other parties hereto, including any copies of those documents subsequently made. The fact that the withdrawing party had been a party to this Agreement, and that Defense Materials had previously been shared pursuant to this Agreement, shall remain confidential and privileged.

11. Neither the existence of this Agreement, any provision hereof, nor any joint defense conducted by the parties shall be used in any fashion other than as set forth in this Agreement, including without limitation, any only by way of example, it shall not be used offensively or defensively to argue a waiver of any privileges or protections from disclosure, nor shall it be used by any party to claim that any counsel shall be disqualified in any litigation or other proceedings arising from the Fox River PCB contamination or the Marina Cliffs Site, or any other or different litigation or proceeding.

12. The parties acknowledge that disclosure by a party of any information in violation of this Agreement will cause the other parties to suffer irreparable harm for which there is not an adequate remedy. The parties acknowledge that immediate injunctive relief is an appropriate and necessary remedy for violation of this Agreement.

13. This Agreement shall remain and continue in force and effect notwithstanding any conclusion or resolution as to any party hereto of liability for the Fox

River PCB contamination or the Marina Cliffs Site, and the parties shall continue to be bound by this Agreement following any such conclusion or resolution.

14. Neither this Agreement, any provision hereof, nor any party's conduct under this Agreement shall be offered as evidence or as an admission against any party in any proceeding before any court or other body, including but not limited to the Southern District Action, and nothing in this Agreement is intended to be, nor shall be deemed to be, an admission of any liability on the part of any party or of the existence of facts upon which liability could be based.

15. Any notice required or permitted under this Agreement shall be sufficient if delivered to the following by confirmed facsimile transmission and/or by overnight delivery by a reputable overnight courier service:

If to Appleton and/or BAT:

Edwin F. Bush, II, Esq.
General Counsel and Secretary
Appleton Papers Inc.
1400 North Rankin Street
Appleton, WI 54911
Fax: (414) 749-8852

with a copy to:

Robert A. Bourque, Esq.
Simpson Thacher & Bartlett
425 Lexington Avenue
New York, NY 10017
Fax: (212) 455-2502

If to AT&T GIS:

Susan R. Chema, Esq.
Attorney
AT&T Global Information Solutions Company
101 W. Schantz Avenue, ECD-2
Dayton, Ohio 45479-0001
Fax: (513) 445-0801

with a copy to:

Steven M. Bierman, Esq.
Sidley & Austin
875 Third Avenue
New York, NY 10022
Fax: (212) 906-2021

16. Any waiver in any particular instance of the rights and limitations contained herein shall not be deemed to be, and is not intended to be, a general waiver of any rights or obligations contained herein and shall not operate as a waiver beyond the particular instance.

17. Any assignment, waiver or modification to this Agreement shall not be effective, and shall be void and of no effect, unless it is in writing and is signed by or on behalf of all parties.

18. This Agreement shall be governed by the law of the State of New York.

19. This Agreement may be executed in one or more counterparts, each of which shall constitute an original document.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the above date.

APPLETON PAPERS INC.

By ______________________
Robert A. Bourque
Simpson Thacher & Bartlett
Attorneys for Appleton Papers Inc.

and

By ______________________
Edwin F. Bush, II
General Counsel and Secretary
Appleton Papers Inc.

B.A.T INDUSTRIES LIMITED

By ______________________
Robert A. Bourque
Simpson Thacher & Bartlett
Attorneys for B.A.T Industries Limited

AT&T GLOBAL INFORMATION SOLUTIONS COMPANY

By ______________________
Steven M. Bierman
Sidley & Austin
Attorneys for AT&T Global Information Solutions Company

and

By ______________________
Susan R. Chema
Attorney
AT&T Global Information Solutions Company

IN WITNESS WHEREOF, the parties have executed this Agreement as of the above date.

APPLETON PAPERS INC.

By____________________
Robert A. Bourque
Simpson Thacher & Bartlett
Attorneys for Appleton Papers Inc.

and

By____________________
Edwin F. Bush, II
General Counsel and Secretary
Appleton Papers Inc.

B.A.T INDUSTRIES LIMITED

By____________________
Robert A. Bourque
Simpson Thacher & Bartlett
Attorneys for B.A.T Industries Limited

AT&T GLOBAL INFORMATION SOLUTIONS COMPANY

By____________________
Steven M. Bierman
Sidley & Austin
Attorneys for AT&T Global Information Solutions Company

and

By____________________
Susan R. Chema
Attorney
AT&T Global Information Solutions Company



CONFIDENTIAL – Subject to Protective Order API-ARB-00002713
CONFIDENTIAL NCRV_00492711
NCRV_00492701