# EXHIBIT 8

N6806

final -
executed
Nov/Dec 1998

# JOINT DEFENSE AND REPRESENTATION AGREEMENT

This Joint Defense and Representation Agreement ("JDR Agreement") is entered into between NCR Corporation ("NCR"), Appleton Papers Inc. ("API"), Sidley & Austin ("S&A"), Godfrey & Kahn ("G&K), and Simpson Thacher & Bartlett ("ST&B") (collectively, the "Parties"), and is effective July 1, 1998.

## RECITALS

***WHEREAS,*** the Sovereigns, as defined herein, have claimed that NCR and API, among others, are potentially responsible parties ("PRPs") under federal and state laws for investigation and remediation of Hazardous Substances, as defined herein, in the sediments of the Fox River Sites, as defined herein, and for damages to natural resources in the surrounding environment.

***WHEREAS,*** other parties identified by the Sovereigns as potentially responsible for the investigation and remediation of Hazardous Substances in the sediments of the Fox River Sites and for damages to natural resources, including but not limited to P.H. Glatfelter Company, Fort James Corporation, Wisconsin Tissue Mills, Inc., U.S. Paper Mills Corporation, and Riverside Paper Corporation (the "Original PRPs"), have claimed that NCR and API are responsible for certain liabilities incurred by the Original PRPs arising from or relating to the Fox River Sites.

***WHEREAS***, without admitting any fact, responsibility, fault or liability, NCR and API acknowledge that the commencement of litigation over the claims involving the Fox River Sites is imminent;

***WHEREAS,*** without admitting any fact, responsibility, fault, or liability, NCR and API recognize it is possible, though not probable, that claims similar to those asserted by the Sovereigns and the Original PRPs against NCR and API relating to the Fox River Sites may arise in the future with respect to Future Sites, as defined herein.

***WHEREAS,*** without admitting any fact, responsibility, fault, or liability, NCR and API expect to incur Joint Defense Costs, as defined herein, in connection with the Fox River Sites and may possibly incur such costs in connection with Future Sites.

***WHEREAS,*** NCR and API have agreed to share certain of those liabilities arising from or relating to the Fox River Sites and the Future Sites on a specified basis, as set forth in the Confidential Settlement Agreement Between NCR Corporation and B.A.T Industries P.L.C. and Appleton Papers Inc.

***WHEREAS,*** NCR, API, and B.A.T Industries p.l.c. previously entered into a Joint Defense Agreement, dated December 19, 1995 ("1995 Joint Defense Agreement"), pursuant to which they have cooperated with each other, exchanged joint defense materials, and otherwise assisted each other in the defense of claims arising from or relating to the Fox River Sites.

***WHEREAS,*** B.A.T Industries p.l.c., although it remains subject to the obligations contained in the 1995 Joint Defense Agreement, is not a party to this JDR Agreement and this JDR Agreement does not create an attorney-client relationship between B.A.T Industries p.l.c. and any of the law firms that are party to this JDR Agreement.

***WHEREAS,*** for the above reasons, NCR and API have concluded that they have significant joint and common legal interests in, and will assert common defenses and/or claims in connection with, the Fox River Sites and the Future Sites.

***WHEREAS,*** NCR and API have concluded that their joint and common legal interests would be best served by working together as closely as possible (as if they were one entity) to manage effectively and efficiently the handling of the Joint Defense Matters, as defined herein, by implementing a coordinated and efficient joint defense effort among themselves.

***WHEREAS,*** NCR and API have concluded that their joint defense effort requires the sharing of documents, factual material, mental impressions, memoranda, interview reports, and other information and work product in any form, whether written, oral, computerized or otherwise, relating to the Joint Defense Matters, while ensuring that such shared information and materials remains confidential and subject to all applicable privileges and protections from disclosure, including without limitation the attorney client privilege, the joint defense or common interest privilege, and the attorney work product doctrine.

***WHEREAS,*** NCR and API have also concluded that their joint defense effort requires the retention of joint legal counsel to assist them in the Joint Defense Matters, and that the authorization of work by, and the compensation of, such counsel should be conducted and shared between them as set forth in Section VI herein.

***WHEREAS,*** S&A has been retained by and has been working on behalf of NCR for many years and is familiar with the issues involved in the Joint Defense Matters.

***WHEREAS,*** ST&B has been retained by and has been working on behalf of API for many years and is familiar with the issues involved in the Joint Defense Matters.

***WHEREAS,*** G&K has been retained by and has been working on behalf of both NCR and API since June, 1988 and has become familiar with the Joint Defense Matters.

## AGREEMENT

NOW THEREFORE, in exchange for the mutual conditions and covenants set forth herein, and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, NCR, API, S&A, G&K, and ST&B mutually agree as follows:

## I. DEFINITIONS

1. ***"Additional PRPs"*** shall mean those persons, as defined at 42 U.S.C. § 9601(21), other than API and NCR, who are not the Original PRPs and who have been or will be

identified by the Sovereigns or any other governmental entity or other PRPs as potentially responsible parties under federal and state laws for investigation and remediation of, and natural resource damages caused by, Hazardous Substances present at any of the Fox River Sites or the Future Sites.

2. ***"API"*** shall mean Appleton Papers Inc., formerly known as Lentheric, Inc.

3. ***"Authorized Persons"*** shall mean attorneys and consultants for NCR and API, employees of NCR and API, and other persons authorized to receive Confidential Information pursuant to this JDR Agreement.

4. ***"Authorizing Procedures"*** shall mean those procedures to be developed and established by NCR and API whereby Shared Tasks are identified, assigned, budgeted, and approved.

5. ***"Authorized Vendors"*** shall mean those attorneys, consultants, expert witnesses and other non-NCR and non-API persons and entities, including S&A, G&K, and ST&B, who have been retained by NCR and API to assist with the Fox River matter.

6. With the exception of Excepted Matters, as defined herein, **"Claim"** or **"Claims"** shall mean any and all liabilities, suits, claims, causes of action, or demands of any kind or nature asserted by or against NCR or API and relating to the release or disposal of Hazardous Substances to or at the Fox River Sites or Future Sites; whether incurred or yet to be incurred, whether presently known or unknown, whether developed in the future or now in existence, and whether based on:

(1) any federal, state, or local environmental or other law or regulation, whenever enacted or adopted, whether existing now or in the future, including without limitation any cause of action under CERCLA (and any regulations promulgated thereunder), 42 U.S.C. § 9601 et seq.; the Resource Conservation and Recovery Act ("RCRA") (and any regulations promulgated thereunder), 42 U.S.C. § 6901 et seq.; the Clean Water Act ("CWA")(and any regulations promulgated thereunder), 33 U.S.C. § 1251 et seq.; the Toxic Substances Control Act (and any regulations promulgated thereunder), 15 U.S.C. §§ 2601 et seq.; regulations governing PCBs, 40 CFR Part 761; the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, insofar as such act relates to a claim under a federal, state, or local environmental law or regulation as set forth above; Wis. Stat. Chapters 160, 283, 291, and 292; Wis. Stat. sec. 29.29; Wis. Stat. sec. 30.12; and any regulations promulgated thereunder.

(2) any administrative claim, statutory claim, or claim at common law, legal or in equity, in connection with any purported or alleged remedial action or damages, including natural resource damages, including but not limited to action required to: (a) clean up, restore, dredge, remove, treat, or in any way address the release or disposal of Hazardous Substances, including

off-site treatment and disposal; (b) prevent the release or threat of release or minimize the further release of Hazardous Substances; (c) observe the cleanup, restoration, removal or treatment of Hazardous Substances; and (d) perform pre-remedial studies and investigations, assessments of natural resource damages, post-remedial care, and restoration planning and implementation.

7. ***"Confidential Information"*** shall mean any and all written, electronic, and oral communications, as defined in Federal Rule of Evidence 1001, including but not limited to documents, writings, recordings, memoranda, notes, factual material, mental impressions, views, and opinions, interview transcripts, strategies, data, and electronic mail, that are transmitted from any party to this JDR Agreement (or its agent) to any other party to this JDR Agreement (or its agent) and that relate in any way to the Fox River Sites, the Future Sites, or the Joint Defense Matters.

8. With the exception of Excepted Matters, **"Damages"** shall mean:

(1) all out-of-pocket study, restoration, acquisition, cleanup, removal, remedial, investigative, oversight or response costs, or penalties allocated or assessed to, imposed upon, or incurred by NCR or API in response to Claims; whether arising from administrative proceedings, litigation, or settlement; and whether asserted directly by the Sovereigns, by way of private party actions (in the nature of contribution or otherwise), or pursuant to allocation proceedings conducted by and between potentially responsible parties at the Fox River Sites or the Future Sites;

(2) all damages, including natural resource damages, allocated or assessed to, imposed upon, or incurred by NCR or API in response to Claims; whether arising from administrative proceedings, litigation, or settlement; and whether asserted directly by the Sovereigns, by way of private party actions (in the nature of contribution or otherwise), or pursuant to allocation proceedings conducted by and between potentially responsible parties at the Fox River Sites or the Future Sites; and

(3) all costs allocated or assessed to, imposed upon, or incurred by NCR or API pursuant to the reopener provisions in the settlement agreement with U.S. EPA regarding the Marina Cliffs site.

9. ***"Excepted Matters"*** shall mean:

(i) Significant Claims, Damages or Group Defense Costs relating to or arising from the release or disposal of Hazardous Substances other than PCB to or at the Fox River Sites or Future Sites by API or NCR after June 30, 1978. For the purposes of this Agreement, "significant" means Claims, Damages, or Group Defense Costs attributable to

NCR's or API's liability for Hazardous Substances at the Fox River Sites or the Future Sites, the total of which exceeds $250,000.00.

(ii) Any and all claims asserted by private parties (i.e., non-governmental entities) alleging personal injury, property damage, or other similar claims as a result of exposure to or the presence of Hazardous Substances which are attributable to the operations of NCR or API. Notwithstanding the foregoing, nothing in this Agreement shall be construed or interpreted to exclude from the scope of this Agreement third-party claims for contribution arising from or relating to Claims, Damages, or Group Defense Costs otherwise covered by this Agreement.

10. ***"Fox River Sites"*** shall mean those portions of the lower Fox River in Wisconsin, from and including Little Lake Butte des Morts and continuing downstream to the mouth of the Fox River where it enters Green Bay, Green Bay, and Lake Michigan; the banks, floodplains and wetlands thereof; and any deposits, sediment management units, and other discrete areas of contamination within or adjacent to those areas; alleged to be contaminated with Hazardous Substances as a result, in whole or in part, of the manufacture, recycling, deinking, or repulping of any amount of PCB-containing NCR Paper brand carbonless paper that was manufactured utilizing the assets that were the subject of the Purchase Agreement. Fox River Sites shall also include the Marina Cliffs site.

11. ***"Future Sites"*** shall mean any facility, property, or location, other than the Fox River Sites, alleged to be contaminated with Hazardous Substances as a result, in whole or in part, of the manufacture, recycling, deinking, or repulping of any amount of PCB-containing NCR Paper brand carbonless paper that was manufactured utilizing the assets that were the subject of the Purchase Agreement.

12. ***"G&K"*** shall mean Godfrey & Kahn, its attorneys, partners, members, legal assistants, and support staff.

13. ***"Group Defense Costs"*** shall mean, with the exception of Excepted Matters, all investigation, administrative and defense costs allocable to NCR or API in connection with the Fox River Group's (a PRP group formed by API, NCR, and the Original PRPs) activities, as that group now exists or as its membership may be reconstituted from time to time, or any PRP group formed by API, NCR, and any Other PRPs in connection with the Fox River Sites or at any of the Future Sites.

14. ***"Hazardous Substances"*** shall mean hazardous substances as defined in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14) and its corresponding regulations; solid or hazardous wastes as defined in Section 1004 of the Resource, Conservation and Recovery Act, 42 U.S.C. § 6903, and its corresponding regulations; and hazardous, dangerous, or toxic wastes or substances as defined or used in the Wisconsin Spill Act and its corresponding regulations or other comparable Wisconsin laws and regulations.

15. ***"JDR Agreement"*** shall mean this Joint Defense and Representation Agreement, as well as all exhibits attached hereto.

16. ***"Joint Defense Fund"*** shall mean that fund established by NCR and API pursuant to Paragraph VI.2, herein, to pay the costs incurred in the performance of Shared Tasks.

17. ***"Joint Defense Fund Administrator"*** shall mean those persons or that entity mutually agreed upon and designated by NCR and API to administer the Joint Defense Fund.

18. ***"Joint Defense Costs"*** shall mean those costs incurred to perform the Shared Tasks, as defined herein. Unless agreed to in writing by NCR and API, Joint Defense Costs shall not include costs associated with the time and expenses incurred by employees of NCR or API.

19. ***"Joint Defense Matters"*** shall mean the defense, prosecution, and handling of Claims, Damages, Group Defense Costs, and other matters (excluding Excepted Matters) relating to or arising from the Fox River Sites or the Future Sites.

20. ***"1995 Joint Defense Agreement"*** shall mean the Joint Defense Agreement, dated December 19, 1995, entered into between NCR, API, and B.A.T Industries, p.l.c.

21. ***"Marina Cliffs site"*** shall mean the former Northwestern Barrel/Marina Cliffs facility located in South Milwaukee, Wisconsin near the intersection of Fifth Avenue and Marina Drive.

22. ***"NCR"*** shall mean NCR Corporation, formerly known as AT&T Global Information Solutions Company.

23. ***"Original PRPs"*** shall mean P.H. Glatfelter Company, Fort James Corporation (formerly known as Fort Howard Corporation), Wisconsin Tissue Mills, Inc., U.S. Paper Mills Corporation, and Riverside Paper Corporation.

24. ***"Other PRPs"*** shall mean the Original PRPs and Additional PRPs.

25. ***"Purchase Agreement"*** shall mean the "Agreement of Purchase and Sale of Assets by and among B.A.T Industries Limited, Lentheric, Inc. and NCR Corporation" and the "Assumption Agreement," both of which are dated June 30, 1978.

26. ***"Shared Tasks"*** shall mean those tasks and projects, necessary and appropriate for the Joint Defense Matters, that have been identified, assigned, budgeted, and approved in accordance with the Authorizing Procedures established pursuant to Paragraph VI.1, herein.

27. ***"S&A"*** shall mean Sidley & Austin, its attorneys, partners, members, legal assistants, and support staff.

28. ***"ST&B"*** shall mean Simpson Thacher & Bartlett, its attorneys, partners, members, legal assistants, and support staff.

29. ***"Sovereigns"*** shall mean the United States, through any of its agencies including but not limited to the U.S. Environmental Protection Agency ("U.S. EPA"), the Fish & Wildlife Service of the Department of the Interior, the National Oceanic and Atmospheric

Administration of the Department of Commerce, and the United States Department of Justice; the Menominee Indian Tribe of Wisconsin; the Oneida Tribe of Indians of Wisconsin; the State of Wisconsin, through any of its agencies including but not limited to the Wisconsin Department of Justice and the Wisconsin Department of Natural Resources; and any other agency of any federal, state or local governments, or Indian tribe, which may now or in the future assert claims arising out of or relating to the release or disposal of Hazardous Substances to or at the Fox River Sites or the Future Sites.

## II. PURPOSES

1. The purposes of this JDR Agreement are:

a. For NCR and API to share privileged and confidential information to further their joint and common legal interests in connection with, and in contemplation of, the Joint Defense Matters, without in any way reducing or compromising the privileges or the confidentiality of the information shared.

b. For NCR and API to manage and coordinate their handling of the Joint Defense Matters in such a way as to further their joint and common legal interests without undermining either NCR's or API's business or other interests.

c. For NCR and API to work together as closely as possible (as if the parties are one entity) to manage and share both the Joint Defense Costs and the supervision of the attorneys, consultants and other Authorized Persons in a fair, equitable and efficient manner.

## III. JOINT DEFENSE EFFORTS

1. API and NCR — through and with the assistance of S&A, ST&B, and G&K — agree to exchange documents, consult on strategy, and otherwise confer and cooperate with one another regarding all activities relating to the Joint Defense Matters. API and NCR further agree to make reasonable efforts to avoid any public positions or public statements regarding the Fox River Sites or the Future Sites, or any asserted or threatened Claims relating thereto, that are contrary to the other's interests.

## IV. JOINT DEFENSE COMMUNICATIONS

1. From time to time, NCR and API may elect to disclose to or share with each other Confidential Information, as defined herein. Any Confidential Information exchanged pursuant to this JDR Agreement shall be for the sole and limited purpose of furthering the joint and common legal interests of NCR and API in the Joint Defense Matters, and shall not be used for any other purpose (except as set forth in Paragraph IV.5).

2. NCR and API agree that any Confidential Information received from the other shall be made available only to those attorneys, consultants, and employees of the receiving party that are assisting the receiving party with the Joint Defense Matters ("Authorized Persons"). Authorized Persons shall hold all Confidential Information received in strict confidence and shall not disclose any such Confidential Information to any persons or entities

who are not Authorized Persons, unless such disclosure is in accordance with Paragraph IV.5, below, or is specifically authorized by the party from whom the Confidential Information originated. NCR and API shall take appropriate steps to ensure that each Authorized Person is familiar with and complies fully with the terms of this JDR Agreement. API and NCR understand and acknowledge that any Confidential Information is imparted and shared in the course and for the purpose of developing and implementing a joint legal strategy and effort.

3. The exchange of Confidential Information between NCR and API shall not waive any claim that the Confidential Information is covered by the attorney-client privilege, the work-product doctrine, or any other applicable privileges or rules that would protect the Confidential Information from disclosure to entities or persons not party to this JDR Agreement. NCR and API intend that the exchange of Confidential Information pursuant to this JDR Agreement shall be within the "joint defense" or "common interest" privilege as recognized by numerous authorities, and that it shall otherwise remain protected from disclosure to the maximum extent recognized by law.

4. Confidential Information may be, but need not be, marked "Confidential/Joint Defense Material" or with a similar legend. The failure to designate Confidential Information as such shall not result in a loss of its otherwise confidential or privileged status.

5. If either NCR or API is served with an administrative or judicial subpoena or request for production that seeks the disclosure of Confidential Information received from the other party pursuant to this JDR Agreement, or either party believes disclosure is otherwise required by law, that party shall notify promptly the other party in writing and give that other party the opportunity to take whatever action it deems appropriate to protect the confidentiality of the information. Production of Confidential Information in compliance with a court order shall not be a violation of this JDR Agreement, provided the procedures herein are complied with. If Confidential Information is produced, or ordered to be produced, after the procedures herein have been compiled with, such information shall no longer be deemed Confidential Information and will not be subject to the confidentiality provisions of this JDR Agreement.

6. The confidentiality provisions of this JDR Agreement shall not apply to information that becomes publicly available in a manner that is not inconsistent with the provisions of this JDR Agreement.

7. Inadvertent disclosure of Confidential Information shall not affect the confidential and privileged status of any Confidential Information.

8. NCR and API shall each have the right to have returned all Confidential Information produced to the other pursuant to this JDR Agreement, provided such return is otherwise in accordance with applicable law, if (a) Confidential Information is disclosed, whether inadvertently or not, in a manner inconsistent with the provisions of this JDR Agreement and without the consent of the party from whom the Confidential Information originated; or (b) this JDR Agreement is terminated. If at any time any party to this JDR Agreement withdraws from this JDR Agreement for any reason, that party shall promptly return

any Confidential Information in the party's possession to the party from whom the Confidential Information originated.

9. This JDR Agreement is intended to supplement and expand the 1995 Joint Defense Agreement as between NCR and API. NCR and API intend that the 1995 Joint Defense Agreement, and that the obligations imposed on NCR, API, and B.A.T Industries p.l.c. thereunder, shall remain in full force and effect notwithstanding this JDR Agreement. Privileged or work product documents or information exchanged between NCR and API pursuant to the 1995 Joint Defense Agreement shall be considered to have been received pursuant to this JDR Agreement.

10. No Confidential Information may be used directly or indirectly against the party from whom the Confidential Information originated in any proceeding, unless such information has become publicly available without violation of this JDR Agreement, or was obtained pursuant to applicable discovery procedures.

## V. JOINT REPRESENTATION

1. As of the date of this JDR Agreement, API, NCR, S&A, G&K, and ST&B agree that S&A, G&K, and ST&B shall each represent both API and NCR jointly in connection with the Joint Defense Matters.

a. The scope of S&A's, G&K's, and ST&B's engagement to API and NCR hereunder shall relate solely to the Joint Defense Matters. This engagement may be terminated by API or NCR at any time for any reason by written notice. S&A, G&K, and ST&B may withdraw from this representation, subject to and consistent with applicable rules of professional responsibility, at any time for any reason in accordance with Paragraph VII.4. In the event that S&A, G&K, or ST&B withdraw from this engagement, S&A, G&K, or ST&B shall provide notice to all Parties and shall take such steps as are reasonably practicable to protect API's and NCR's interests in the Joint Defense Matters. Unless previously terminated, S&A's joint representation of API and NCR shall terminate at such time as S&A sends its final statement for services rendered; G&K's joint representation of API and NCR shall terminate at such time as G&K sends its final statement for services rendered; and ST&B's joint representation of API and NCR shall terminate at such time as ST&B sends its final statement for services rendered. S&A's, G&K's, and ST&B's fees will be based on the prevailing, stated billing rates for each of their respective attorneys and legal assistants devoting time to this engagement. S&A's fees will be subject to the 10% discount previously agreed to between S&A and API and NCR. These billing rates are subject to change from time to time. S&A, G&K, ST&B, NCR, and API have discussed S&A's, G&K's and ST&B's current billing rates and have agreed to the procedures, set forth in Section VI, below, governing the authorization of work by S&A, G&K, and ST&B.

b. NCR acknowledges that ST&B has been representing, and will continue to represent, API individually in connection with the Fox River Sites and Future Sites, and consents and waives any objections to this representation. Should either this JDR Agreement or ST&B's joint representation of API and NCR be terminated, NCR consents and will not object to ST&B's representation of API in connection with any matters relating to the Fox River Sites or Future Sites. Further, NCR acknowledges that ST&B has represented, and will continue to represent, API in connection with the litigation, arbitration, and settlement discussions relating to the indemnity dispute between NCR, API, and B.A.T Industries, p.l.c. under the Purchase Agreement, and that this representation may involve work and advice that could be considered adverse to NCR's interests. NCR agrees that it will neither object to such representation nor claim that such representation constitutes a breach of this JDR Agreement or of any rule of professional responsibility, either during the course of ST&B representation pursuant to the JDR Agreement, or after this Agreement or after ST&B's joint representation is terminated.

c. API acknowledges that S&A has been representing, and will continue to represent, NCR individually in connection with the Fox River Sites and Future Sites, and consents and waives any objections to this representation. Should either this JDR Agreement or S&A's joint representation of API and NCR be terminated, API consents and will not object to S&A's representation of NCR in connection with any matters relating to the Fox River Sites or Future Sites. Further, API acknowledges that S&A has represented, and will

continue to represent, NCR in connection with the litigation, arbitration, and settlement discussions relating to the indemnity dispute between NCR, API, and B.A.T Industries, p.l.c. under the Purchase Agreement, and that this representation may involve work and advice that could be considered adverse to API's interests. In addition, API acknowledges that S&A has represented, and will continue to represent, NCR in connection with NCR's individual efforts to obtain insurance recoveries from certain insurance carriers. API agrees that it will neither object to such representations nor claim that such representations constitute a breach of this JDR Agreement or of any rule of professional responsibility, either during the course of S&A's representation pursuant to the JDR Agreement, or after this Agreement or after S&A's joint representation is terminated.

d. API acknowledges that ST&B will be representing NCR, as set forth in this Agreement, in connection with the Fox River Sites and Future Sites, and consents and waives any objections to this representation. NCR acknowledges that S&A will be representing API, as set forth in this Agreement, in connection with the Fox River Sites and Future Sites, and consents and waives any objections to this representation.

e. API and NCR recognize that it is possible an adverse relationship could develop in the future between API or NCR and one of the past, present or future clients of S&A, ST&B, or G&K. If S&A, ST&B, or G&K, as the case might be, is not representing API or NCR in such matter and that matter is not substantially related to S&A's, ST&B's, or G&K's representation of API and NCR in connection with the Joint Defense Matters, API and NCR agree that S&A, ST&B, or G&K may represent the other client.

f. API is a subsidiary of Arjo Wiggins Appleton, and both API and NCR have affiliated corporations. API and NCR agree that S&A's, ST&B's and G&K's representation of API and NCR in connection with Joint Defense Matters does not give rise, in and of itself, to an attorney-client relationship between S&A, ST&B, or G&K and Arjo Wiggins Appleton, API's other affiliates, or NCR's affiliates. S&A's, ST&B's, or G&K's representation of API and NCR in connection with Joint Defense Matters will not give rise to any conflict of interest in the event that other clients of S&A, ST&B, or G&K are adverse to Arjo Wiggins Appleton, API's other affiliates, or NCR's affiliates.

g. API acknowledges that S&A has been representing, and will continue to represent, Knickerbocker Properties, Inc. XI in connection with all matters concerning a lease between API and Knickerbocker for commercial property on Holton Drive in the Northern Kentucky Industrial Park, Independence, Kentucky, and consents and waives any objections to this representation.

h. Prior to the effective date of the JDR Agreement, G&K made certain disclosures to API and NCR about, and obtained API's and NCR's consent to and waiver of, certain potential conflicts. The correspondence relating to these disclosures, consents and waivers is attached hereto as Exhibit A and incorporated herein by reference.

i. API and NCR acknowledge that Additional PRPs may be designated as PRPs under federal and state laws in connection with the Fox River Sites or Future Sites; that S&A, ST&B, or G&K may represent or have represented one or more of such

Additional PRPs in connection with other matters; that S&A, ST&B, or G&K may be unable to obtain waivers of any potential conflicts of interest from these Additional PRPs; and that, as a result, S&A, ST&B, or G&K may be required to withdraw from the JDR Agreement, or be unable to assert claims on behalf of API and NCR against these Additional PRPs, in accordance with applicable rules of professional responsibility. API and NCR have been provided with the names of those current or former clients of S&A, ST&B, and G&K that, based on the information currently available, may be designated as PRPs in connection with the Fox River Sites or Future Sites.

## VI. JOINT RESPONSIBILITY FOR SUPERVISION AND COMPENSATION OF DEFENSE EFFORTS

1. NCR and API agree to establish procedures ("Authorizing Procedures") for all attorneys, consultants, and other non-NCR/API persons or entities retained to assist with the Joint Defense Matters, including S&A, G&K, and ST&B ("Authorized Vendors"), whereby tasks and projects necessary and appropriate for the Joint Defense Matters ("Shared Tasks") shall be identified, assigned, budgeted, approved, and then performed in a timely, effective, and efficient manner. The Authorizing Procedures shall specify, at a minimum, that each Authorized Vendor provide to NCR and API annual and quarterly projections identifying (a) the principal Shared Tasks the Authorized Vendor anticipates for the specified period; and (b) the anticipated costs associated with performing those Shared Tasks. NCR and API anticipate that the Authorizing Procedures may change from time to time, and may not be the same for each Authorized Vendor. NCR and API also agree to meet on a regular and periodic basis with each other, S&A, G&K, ST&B, and any other Authorized Vendor whose attendance is appropriate (in the determination of NCR and API) to review, among other things, the status of current Shared Tasks and to identify any new Shared Tasks to be assigned.

2. NCR and API agree to establish a fund (the "Joint Defense Fund") from which the costs associated with performing all Shared Tasks shall be paid. The Joint Defense Fund shall be established initially at API. the Joint Defense Fund shall be funded initially by equal payments from NCR and API of $500,000, and then thereafter on a quarterly basis by equal payments from NCR and API sufficient to cover the costs of the Shared Tasks identified by the projections required of Authorized Vendors under Paragraph 1 of this Section.

3. NCR and API shall mutually agree upon and designate those persons or that entity who shall act as the Joint Defense Fund Administrator. NCR and API may also elect to designate certain NCR and API employees to act as the Joint Defense Fund Administrator on a permanent or rotating basis. The duties of the Joint Defense Fund Administrator shall be to review requests for payment from the Joint Defense Fund and to authorize payments in accordance with the procedures set forth in Paragraph 2 of this Section. The costs of the Joint Defense Fund Administrator, if that person is not an employee of NCR or API, shall be borne equally by NCR and API.

4. Requests for payment from the Joint Defense Fund shall be handled in the following manner.

a. Each law firm assisting with the Joint Defense Matters, including S&A, G&K, and ST&B, shall submit to the Joint Defense Fund Administrator on a monthly basis a statement of services specifying the fees and expenses incurred in performing any Shared Tasks. This statement of services shall be formatted and have such notations as is required by the Authorizing Procedures to facilitate the Joint Defense Fund Administrator's review of the statement. The Joint Defense Fund Administrator shall review the statement and if the specified fees and expenses are appropriate and were incurred in the performance of the Shared Tasks, the Joint Defense Fund Administrator shall authorize payment out of the Joint Defense Fund. If the Joint Defense Fund Administrator believes any fees and expenses are inappropriate or were not incurred in the performance of Shared Tasks, or otherwise has questions or concerns about any portion of the statement of services, the Joint Defense Fund Administrator shall refer the statement of services to the Designated Representatives of NCR and API, who shall in turn attempt to resolve the issues with the law firm.

b. Each non-law firm Authorized Vendor shall submit a statement of services on an agreed-upon schedule to either S&A, G&K, or ST&B, as is appropriate. This statement of services shall be formatted and have such notations as is required by the Authorizing Procedures, S&A, G&K, or ST&B to facilitate the review of the statement. S&A, G&K, or ST&B will then review the statement of services and either forward the statement of services to the each Joint Defense Fund Administrator with a recommendation for payment, or return the statement of services to the non-law firm Authorized Vendor. The Joint Defense Fund Administrator shall review the statement of services from the non-law firm Authorized Vendor as well as the accompanying recommendation for payment, and if the fees, expenses and costs are appropriate and were incurred in the performance of Shared Tasks, the Joint Defense Fund Administrator shall authorize payment from the Joint Defense Fund.

c. Until such time as the Joint Defense Fund and Authorizing Procedures are established, Authorized Vendors shall submit statements or services for payment in accordance with their previously-existing letters or contracts of engagement.

5. In the event that this JDR Agreement is terminated, any funds remaining in the Joint Defense Fund shall be returned to NCR and API on a equal basis, with appropriate adjustments made for any funds owed to the Joint Defense Fund by NCR and/or API.

## VII. GENERAL PROVISIONS

1. In the event of any disputes between API and NCR under this JDR Agreement, such as disputes concerning strategy for the Joint Defense Matters, public statements, or the identification or approval of proposed Shared Tasks, API and NCR agree to submit the issue for resolution to their respective General Counsel, who shall attempt in good faith to resolve the dispute. If resolution is not reached, API and NCR will then submit the issue for resolution to their respective Chief Financial Officers who shall also negotiate in good faith to resolve the matter. If these inter-company dispute escalation procedures are not effective, API and NCR shall participate in non-binding mediation before a mediator jointly agreed upon by API and NCR. The costs of such non-binding mediation shall be borne equally by API and NCR.

2. Nothing in this JDR Agreement shall be construed to waive or affect any rights, claims, defenses, or privileges that NCR or API may have.

3. Nothing in this JDR Agreement shall be construed to create a partnership or joint venture between or among any of the Parties to this JDR Agreement.

4. This JDR Agreement may be terminated by NCR or API upon written notice to the Parties. Such termination shall be effective thirty (30) days from the receipt of such notice by the Parties, except that the termination of the engagement of S&A, G&K, or ST&B shall be effective immediately upon written notice (or upon such other date as specified in the written notice). Subject to and consistent with applicable rules of professional responsibility, S&A, G&K, and ST&B may withdraw from this JDR Agreement upon notice to the Parties. Each party agrees that in the event it withdraws from this JDR Agreement or this JDR Agreement is terminated, the provisions of Sections IV and V, and Paragraph VI.5, shall survive and remain in effect.

5. This JDR Agreement shall be construed under and governed by the laws of New York.

6. No amendments, changes, alterations, or modifications to the terms of this JDR Agreement may be made or shall be binding unless they are agreed to in writing by all of the Parties.

7. This JDR Agreement may be signed in one or more counterparts. All counterparts together shall constitute a single agreement.

8. This JDR Agreement may not be assigned by any party hereto without obtaining the prior written consent of all other parties.

9. The individual signatories hereto represent and warrant that they have read this JDR Agreement, that they are fully authorized to execute this JDR Agreement on behalf of the entities identified above their signatures, that they and the entity they represent understand the terms of this JDR Agreement, and that they are executing the same voluntarily upon their best judgment.

10. For the purposes of this JDR Agreement and any notices to be provided pursuant to this JDR Agreement, the Designated Representatives shall be:

a. For NCR:

Paul Samson
NCR Corporation
Law Dept. ECD/2
101 W. Schantz Avenue
Dayton, OH 45479.

b. For API:

Benjamin Mieliulis
Appleton Papers Inc.
1400 N. Rankin Street
P.O. Box 359
Appleton, WI 54912

c. For S&A:
J. Andrew Schlickman
Sidley & Austin
One First National Plaza
Chicago, IL 60603

d. For ST&B:

Robert A. Bourque
Simpson Thacher & Bartlett
425 Lexington Avenue
New York, NY 10017

e. For G&K:

Arthur J. Harrington
Godfrey & Kahn
780 N. Water Street
Milwaukee, WI 53202

11. This JDR Agreement is binding upon, and inures to the benefit of, NCR, API, S&A, G&K, and ST&B, and their respective partners, members, officers, employees, attorneys, agents, successors, and assigns.

Executed this date, ____________, 1998

NCR CORPORATION

______________________________
By: Paul M. Samson

APPLETON PAPERS INC.

______________________________
By: Benjamin Mieliulis

SIDLEY & AUSTIN

______________________________
By: J. Andrew Schlickman

SIMPSON THACHER & BARTLETT

______________________________
By: Robert A. Bourque

GODFREY & KAHN

______________________________
By: Arthur J. Harrington

**PRIVILEGED & CONFIDENTIAL**
**API/NCR JOINT DEFENSE MATERIALS**

11. This JDR Agreement is binding upon, and inures to the benefit of, NCR, API, S&A, G&K, and ST&B, and their respective partners, members, officers, employees, attorneys, agents, successors, and assigns.

Executed this date, Dec. 22, 1998

NCR CORPORATION

______________________
By: Paul M. Samson

APPLETON PAPERS INC.

[signature]
By: ~~Benjamin Mistiotis~~ Paul J. Karch

SIDLEY & AUSTIN

______________________
By: J. Andrew Schlickman

SIMPSON THACHER & BARTLETT

______________________
By: Robert A. Bourque

GODFREY & KAHN

______________________
By: Arthur J. Harrington

**PRIVILEGED & CONFIDENTIAL**
**API/NCR JOINT DEFENSE MATERIALS**

11. This JDR Agreement is binding upon, and inures to the benefit of, NCR, API, S&A, G&K, and ST&B, and their respective partners, members, officers, employees, attorneys, agents, successors, and assigns.

Executed this date, Nov. 19, 1998

NCR CORPORATION

[signature]

By: Paul M. Samson

APPLETON PAPERS INC.

By: Benjamin Mieliulis

SIDLEY & AUSTIN

By: J. Andrew Schlickman

SIMPSON THACHER & BARTLETT

By: Robert A. Bourque

GODFREY & KAHN

By: Arthur J. Harrington

11. This JDR Agreement is binding upon, and inures to the benefit of, NCR, API, S&A, G&K, and ST&B, and their respective partners, members, officers, employees, attorneys, agents, successors, and assigns.

Executed this date, Dec. 23, 1998

NCR CORPORATION

______________________
By: Paul M. Samson

APPLETON PAPERS INC.

______________________
By: Benjamin Mieliulis

SIDLEY & AUSTIN

J. Andrew Schlickman
By: J. Andrew Schlickman

SIMPSON THACHER & BARTLETT

______________________
By: Robert A. Bourque

GODFREY & KAHN

Arthur J. Harrington
By: Arthur J. Harrington

Orig.
Signature
Pages