**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NCR CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>B.A.T INDUSTRIES p.l.c.,<br><br>Defendant. | Case No.: 1:23-cv-1172-JPC-SDA |

**PLAINTIFF NCR VOYIX CORPORATION'S RESPONSE TO DEFENDANT B.A.T INDUSTRIES P.L.C.'S PARTIAL OBJECTION TO THE OPINION AND ORDER ON NCR CORPORATION'S MOTION TO EXCLUDE THE REPORT AND OPINIONS OF MICHAEL D. GOODSTEIN**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................ 1

BACKGROUND ........................................ 2

LEGAL STANDARDS ........................................ 4

ARGUMENT ........................................ 4

I. Judge Aaron Correctly Found That Mr. Goodstein's CERCLA Opinions Are Not Relevant to the Issues Remaining in This Case. ........................................ 4

II. Sections 1 and 2 Impermissibly Present Legal Analysis. ........................................ 8

III. Judge Aaron Independently and Properly Excluded Sections 1 and 2 Under Rule 403. .. 11

CONCLUSION ........................................ 13

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Appleton Papers Inc. v. George A. Whiting Paper Co.*,
2012 WL 2704920 (E.D. Wis. July 3, 2012) ....................7

*Coan v. Dunne*,
2019 WL 2169879 (D. Conn. May 17, 2019)....................10, 11

*Georgia-Pacific Consumer Prods. LP v. NCR Corp.*,
980 F. Supp. 2d 821 (W.D. Mich. 2013) ....................7

*Highland Cap. Mgmt., L.P. v. Schneider*,
379 F. Supp. 2d 461 (S.D.N.Y. 2005)....................10

*Luitpold Pharmaceuticals, Inc. v. Ed. Geistlich Söhne A.G. für Chemische Industrie*,
2015 WL 5459662 (S.D.N.Y. Sept. 16, 2015)....................9, 10

*In re Platinum-Beechwood Litigation,*
469 F. Supp. 3d 105 (S.D.N.Y. 2020)....................9

*In re Rezulin Products Liability Litigation*,
309 F. Supp. 2d 531 (S.D.N.Y. 2004)....................9

*Rodriguez v. Pataki*,
293 F. Supp. 2d 302 (S.D.N.Y. 2003)....................4

*Rush Indus., Inc. v. Garnier LLC*,
309 F. App'x 431 (2d Cir. 2009) ....................10

*Thomas E. Hoar, Inc. v. Sara Lee Corp.*,
900 F.2d 522 (2d Cir. 1990)....................4

*United States v. Bilzerian*,
926 F.2d 1285 (2d Cir. 1991)....................2, 8, 9

*United States v. Ingredient Technology Corp.*,
698 F.2d 88 (2d Cir. 1983)....................5, 11, 13

**Rules**

Fed. R. Civ. P. 72(a) ....................4

Fed. R. Evid. ....................2, 3, 11

Local Civ. R. 7.1(c)....................14

## INTRODUCTION

BAT asks this Court to set aside Magistrate Judge Aaron's careful evidentiary ruling under a standard that permits reversal only if the ruling is clearly erroneous or contrary to law. BAT cannot meet that burden. Judge Aaron correctly started his analysis with the issues the factfinder actually must decide: whether NCR possessed superior knowledge concerning the extent of its liability and whether NCR knew BAT was acting on mistaken knowledge when it entered the CSA. He correctly concluded that Mr. Goodstein's retrospective exposition of CERCLA law and arranger liability is not relevant to those factual questions.

BAT tries to get around that relevance problem by invoking CERCLA's complexity and labeling Mr. Goodstein's testimony mere "background" necessary to educate the jury.[1] But that framing does not withstand scrutiny. BAT's assertions about complexity are conclusory. BAT fails to identify a particular document, piece of testimony, or disputed issue that the jury cannot understand without a CERCLA expert. And BAT's characterization of the testimony as mere background is belied by Mr. Goodstein's report itself, which, as Judge Aaron correctly found, applies CERCLA legal concepts to NCR and the Kalamazoo River site. Mr. Goodstein goes well beyond defining unfamiliar terminology: he sets out CERCLA's liability framework, identifies the factors he says courts considered at the time when deciding whether a party was liable, opines as to which elements were satisfied, explains what evidence would bear on NCR's potential liability, and describes what an arranger-liability investigation of the era supposedly would have entailed.

---

[1] As Judge Aaron correctly noted, "it has not yet been finally determined whether or not there will be a jury," and this Court's prior ruling expressly was "without prejudice for NCR to renew its motion to strike after the close of discovery and the resolution of any motions for summary judgment." Opinion and Order, Dkt. 136 ("Order") at 9 n.7. Plaintiff uses the word "jury" here for brevity and reserves the right to renew its motion to strike if appropriate.

None of this is relevant to the questions at hand. The relevant question about NCR's knowledge is what it *did* learn from witnesses and documents in the 1990s, which is a factual question regarding which Mr. Goodstein has no personal knowledge. The issue is not what NCR *should* have learned or *could* have learned or whether, at the end of the day, NCR *should* or *could* have predicted that a court might hold it liable decades in the future at the Kalamazoo River site.[2]

BAT's remaining objections fare no better. BAT claims the Order was "contrary to law" because it misapplied *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991). But Judge Aaron expressly addressed that case, recognized that testimony explaining unfamiliar terms and concepts may be permissible under limited circumstances, and correctly found that Mr. Goodstein's proposed testimony goes materially further by presenting and applying CERCLA's liability framework to NCR. Order at 11. And Judge Aaron independently held that, even assuming Sections 1 and 2 were relevant, presenting the jury with Mr. Goodstein's "subjective, controverted view" of CERCLA law and its application would risk confusing and misleading the jury under Rule 403. Order at 12. BAT identifies no clear error or legal error in either conclusion. The objection should be overruled.

## BACKGROUND

This action concerns the parties' obligations under a Confidential Settlement Agreement signed in 1999 (the "CSA") allocating certain environmental liabilities between NCR and BAT. NCR alleges, and this Court already has held, that the Kalamazoo River is a "Future Site" under the CSA. NCR further alleges that BAT therefore must bear 60 percent of NCR's costs relating to that site. *See* Dkt. 38, at 16–17. BAT's remaining counterclaims challenge the enforceability of

[2] Also relevant, of course, but not even the purported subject of Mr. Goodstein's testimony, is whether NCR ever had "superior knowledge" such that it had a duty to communicate something it learned to BAT.

the CSA based on alleged fraud and negligent misrepresentation. As relevant here, the remaining factual issues include whether NCR had "superior knowledge" concerning the extent of its liability and whether NCR knew BAT was acting on mistaken knowledge when it entered the CSA. *Id.* at 21–26.

BAT retained Michael D. Goodstein, an environmental attorney, to "review and summarize the CERCLA caselaw about 'arranger' liability in existence at the time of the CSA and describe how that legal framework could have been applied in 1999 to evaluate NCR's potential legal exposure" at the Kalamazoo River. May 15, 2026 Report of Michael D. Goodstein, Dkt. 139-1 ("Goodstein Rpt.") at 3. His report contains three opinion sections: Section 1 addresses CERCLA and the historical law of arranger liability; Section 2 addresses how that arranger-liability framework could be applied, and what facts would be relevant, to NCR's potential liability at Kalamazoo; and Section 3 discusses "some facts that stood out to [him] . . . that indicate NCR and its legal counsel did investigate NCR's potential CERCLA liability" at the Kalamazoo River before the CSA was signed. *Id.* at 4.

NCR moved to exclude the report in its entirety, and Judge Aaron granted NCR's motion. Judge Aaron found Sections 1 and 2 "not relevant and [that they] will not assist the trier of fact," concluded that they improperly address and apply domestic law, and independently excluded them under Rule 403. Order at 8–13. He separately excluded Section 3 because Mr. Goodstein used selected documents and deposition testimony to construct a factual narrative and draw conclusions properly left to the factfinder. *Id.* at 13–15.

BAT now objects to the exclusion of Sections 1 and 2 and expressly states that it "will not solicit testimony from Mr. Goodstein on the opinions set forth in section 3." BAT's Partial Objection to Order on NCR's Motion to Exclude, Dkt. 139 ("Obj.") 1 & n.1.

## LEGAL STANDARDS

A district court may modify or set aside a magistrate judge's ruling only if it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *see also Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). A ruling is clearly erroneous when, upon review of the entire record, the Court is left with a "definite and firm conviction that a mistake has been committed." *Rodriguez v. Pataki*, 293 F. Supp. 2d 302, 304 (S.D.N.Y. 2003) (quoting *Thompson v. Keane*, 1996 WL 229887, at *1 (S.D.N.Y. May 6, 1996)). A ruling is contrary to law when it "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id.*

## ARGUMENT

### I. Judge Aaron Correctly Found That Mr. Goodstein's CERCLA Opinions Are Not Relevant to the Issues Remaining in This Case.

Judge Aaron began the relevance analysis by identifying the issues that actually remain for the factfinder. He found that Sections 1 and 2 are "not relevant and will not assist the trier of fact" because NCR previously was found liable under CERCLA for contamination of the Kalamazoo River, this Court already has determined that Kalamazoo qualifies as a "Future Site" under the CSA, and the remaining issues in dispute in this case instead "concern NCR's alleged omissions"—including whether NCR had "superior knowledge of certain information" and whether "NCR knew that BAT was acting on the basis of mistaken knowledge when it signed the CSA." Order at 9. Those are questions about what NCR actually knew and allegedly failed to disclose, not what CERCLA law provided or how a lawyer applying that law might have assessed NCR's potential liability in the late 1990's.

BAT must prove through historical evidence what NCR actually knew and withheld.[3] What CERCLA law provided, or what a lawyer applying that law might have concluded, does not establish NCR's knowledge. As NCR explained below, *United States v. Ingredient Technology Corp.*, 698 F.2d 88 (2d Cir. 1983) is instructive. There, the Second Circuit rejected an attempt to use the state of the governing law as a proxy for the defendant's state of mind, emphasizing that "prior cases on willfulness consistently require factual evidence of the defendants' state of mind to negate willfulness under any theory." *Id.* at 97. The same principle applies here. What NCR actually knew, investigated, and concluded must be established through factual evidence, not Mr. Goodstein's view of what CERCLA law might have led a hypothetical lawyer to conclude. Indeed, *Ingredient Technology* cited with approval the conclusion that an expert's view of the governing law was irrelevant because the "complexity of laws sheds no light on defendant's intent." *Id.* (citing *United States v. Herzog*, 632 F.2d 469, 473 (5th Cir. 1980)).

BAT attempts to address this relevance problem by downplaying the scope of Mr. Goodstein's proposed testimony. According to BAT, "[t]he entire purpose of Mr. Goodstein's opinion is to explain the unfamiliar terms and concepts of CERCLA arranger liability to a lay jury."[4] Obj. at 11–12. But Mr. Goodstein himself describes a much broader assignment than the modest one of explaining that legal background.

---

[3] In addition, BAT must prove that NCR had "superior knowledge" of relevant facts such that NCR had a duty to provide those facts to BAT. Mr. Goodstein's opinions do not address this issue.

[4] Even there, Mr. Goodstein's expertise does not stop BAT from misstating basic CERCLA concepts in its Objection. One does not "violate" CERCLA, especially through conduct that occurred before the statute was enacted, nor does CERCLA "prohibit" conduct. (See Obj. at 1, 8.) CERCLA created a strict-liability, after-the-fact regime to determine who should bear the costs of cleaning up contaminated sites. *State of N.Y. v. Shore Realty Corp.*, 759 F.2d 1032, 1042 (2d Cir. 1985). Despite BAT's desire to convert CERCLA liability into evidence of bad acts, CERCLA liability is not fault-based. *Id*. at 1042, 1051.

He states that BAT retained him to "review and summarize the CERCLA caselaw about 'arranger' liability in existence at the time of the CSA and describe how that legal framework could have been applied in 1999 to evaluate NCR's potential legal exposure" at Kalamazoo. Goodstein Rpt. at 3. Section 1 sets out CERCLA's liability framework and the factors Mr. Goodstein believes courts considered when determining whether a party had "arranged for disposal" of a hazardous substance at a Superfund site. *Id.* at 5. Section 2 then applies that framework to NCR, identifying which elements Mr. Goodstein contends were satisfied, the remaining "key issue for analysis," what an investigation "would have examined," what records and witnesses he "would expect NCR to have" investigated, and which NCR-specific facts would bear on arranger liability. *Id.* at 6–10. That is not background information necessary to understand unfamiliar terminology as BAT contends. It is a framework for evaluating NCR's potential liability and interpreting NCR's historical conduct. Judge Aaron correctly recognized the difference.

BAT also never shows that this "background" is actually necessary to understand the evidence in this case. BAT repeatedly falls back on the assertion that CERCLA is complicated and unfamiliar. But that does not establish that Mr. Goodstein's testimony is relevant to the issues the factfinder must decide. BAT does not identify any documents or testimony that would be unintelligible without Mr. Goodstein. It refers instead only generically to arranger liability, how liability can be proven, and how parties typically investigate it. BAT goes so far as to assert that, without a "working understanding" of these concepts, the jury would have "no ability" to determine whether NCR knew of its arranger liability. Obj. at 9. But BAT fails to explain why the witnesses who used particular terminology cannot explain what they meant, why the

contemporaneous documents cannot speak for themselves, or what specific evidence requires Mr. Goodstein's explanation.[5]

BAT's cases do not support relevance here because they involve expert testimony about standards or practices that directly informed the conduct the factfinder was to evaluate. In *In re Platinum-Beechwood Litigation*, for example, the expert addressed the fiduciary and investment management standards under which the defendants operated and what an investment manager ordinarily would do under relevant industry standards. 469 F. Supp. 3d 105, 116–17 (S.D.N.Y. 2020). BAT itself emphasizes that the testimony was admitted because it helped the jury understand "the standards under which" the parties were operating and standard industry practices for satisfying those standards. Obj. at 10. The factfinder here is not being asked to determine whether NCR or its lawyers complied with a professional standard governing a CERCLA investigation, or whether an investigation conformed to accepted environmental law practices. The question (in addition to superior knowledge) is what NCR actually investigated, learned, and knew.

The authorities NCR cited below are much closer analogs to the facts of this case. In *In re Rezulin Products Liability Litigation*, expert testimony concerning ethical standards was excluded because those standards did not bear on the issues the jury had to decide. 309 F. Supp. 2d 531, 542–44 (S.D.N.Y. 2004). And in *Luitpold Pharmaceuticals, Inc. v. Ed. Geistlich Söhne A.G. für*

[5] Moreover, even if understanding CERCLA or its caselaw were relevant to some question in the case, neither BAT nor Mr. Goodstein grapple with the fact that the only two courts to undertake the analysis of whether sales of carbonless copy paper broke created CERCLA liability undertook very different analyses and came to opposite conclusions. *Compare Appleton Papers Inc. v. George A. Whiting Paper Co.*, 2012 WL 2704920, at *10–12 (E.D. Wis. July 3, 2012) (finding no arranger liability), *aff'd sub nom. NCR Corp. v. George A. Whiting Paper Co.*, 768 F.3d 682 (7th Cir. 2014), *with Georgia-Pacific Consumer Prods. LP v. NCR Corp.*, 980 F. Supp. 2d 821, 835–36 (W.D. Mich. 2013) (finding arranger liability). This failure further undermines the framework Mr. Goodstein tries to introduce and the conclusions at least implied if not outright stated.

*Chemische Industrie*, expert testimony concerning industry "best efforts" standards was irrelevant where the parties' actual obligations were defined by their contract. 2015 WL 5459662, at *8 (S.D.N.Y. Sept. 16, 2015).

BAT may introduce contemporaneous documents, examine percipient witnesses, and argue the reasonable inferences those facts support in terms of what NCR knew or believed at the time. What it may not do is make Mr. Goodstein's CERCLA liability framework relevant simply by asserting that the jury needs an environmental lawyer to identify which historical facts would matter to an arranger-liability analysis the jury will not itself perform. Judge Aaron's conclusion that Sections 1 and 2 are "not relevant and will not assist the trier of fact" was correct and certainly was not clearly erroneous.

## II. Sections 1 and 2 of the Goodstein Report Impermissibly Present Legal Analysis.

BAT separately argues that the Order is "contrary to law" because, in BAT's view, Judge Aaron stated categorically that expert testimony can never concern domestic law. BAT focuses on the Order's quotation of the principle that expert testimony "on matters of domestic law is inadmissible for any purpose" and contends that this statement "cannot be squared with" *Bilzerian*, 926 F.2d at 1294, which permits experts in appropriate circumstances to explain unfamiliar legal terms and concepts. Obj. at 11–12.

But BAT's objection misconstrues the Order. Judge Aaron did not hold that an expert can never provide testimony touching on domestic law. He first stated the settled rule that "expert opinions as to the ***interpretation and application*** of domestic law are inadmissible," explaining that the court, or the jury as instructed by the court, can determine "what the law is" and "how it should be applied to the facts." Order at 7 (emphasis added). He then applied that rule to Mr. Goodstein, citing decisions excluding expert testimony that states the law or applies legal standards to facts. Order at 10. Those are blackletter principles, not a rule Judge Aaron invented for this case.

Judge Aaron then expressly addressed *Bilzerian* and recognized the distinction BAT says he overlooked. *Bilzerian* permits limited expert testimony that helps a jury "understand unfamiliar terms and concepts." Order at 11. The securities law expert in *Bilzerian* provided background concerning the meaning of terms, the procedures surrounding Schedule 13D filings, and the reasons for those procedures. But the Second Circuit cautioned that such testimony must be "carefully circumscribed" so that the expert does not usurp the court's role in instructing on the law or the jury's role in applying it. *Id.* (quoting *Bilzerian*, 926 F.2d at 1294–95). Critically, the expert in *Bilzerian* "did not give his opinion as to whether [the defendant's] actions violated the securities laws." *Id.* That is the distinction Judge Aaron applied here.

Mr. Goodstein falls on the other side of that line, as Judge Aaron concluded. As discussed above, he does not merely define "arranger" or explain some discrete procedure. He lays out CERCLA's liability test and arranger liability caselaw, identifies the factors courts use to determine liability, and applies that test and those factors to NCR and the Kalamazoo River. His report states, among other things, that particular evidence "indicates potential exposure to 'arranger' liability" and "would increase NCR's potential exposure," Goodstein Rpt. at 7; that other factors "would point towards" arranger liability and "could make a strong case" for it, *id.* at 9–10; and that a court "may have found" certain evidence "gave rise to 'arranger' liability," *id.* at 10. Judge Aaron accordingly concluded that Mr. Goodstein is being offered "to show what the law was and how that law would be applied" and, in part, to "direct the jury towards an analysis of Plaintiff's knowledge at the time of the CSA that is favorable to Defendant." Order at 11–12.

BAT argues that this is not "appl[ication]" of the law because Sections 1 and 2 "do not analyze any evidence or reach any legal conclusions." Obj. at 12. But the report itself shows otherwise. Mr. Goodstein identifies the governing CERCLA test, determines that three elements

were satisfied given the facts here, isolates the remaining "key issue for analysis," and then explains how NCR-specific facts bear on that issue. Goodstein Rpt. at 6. That is an application of law to facts, regardless of whether Mr. Goodstein goes the final step and expressly states whether he thinks NCR was liable under CERCLA. *See*, *e.g., Rush Indus., Inc. v. Garnier LLC*, 309 F. App'x 431, 432 (2d Cir. 2009) (excluding an opinion consisting almost entirely of "discussion and application of legal standards"); *Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469–70 (S.D.N.Y. 2005) (explaining that experts may not instruct the jury on applicable legal principles or provide legal conclusions).

BAT likewise misses the point in criticizing Judge Aaron's reliance on Mr. Goodstein's statement that "there could be no dispute" that three CERCLA elements applied. Goodstein Rpt. at 6. BAT says Mr. Goodstein was merely setting those elements aside because NCR does not currently dispute them. Obj. at 13. But Mr. Goodstein did more than report a present-day lack of dispute as to the elements. He opined that "there could be no dispute *in 1999*" that the elements were satisfied and then concluded that "[t]herefore, the key issue for analysis during the time period leading up to the CSA" was whether NCR could be found liable as a covered person. Goodstein Rpt. at 6 (emphasis added). That is a retrospective legal assessment at the very historical moment BAT says matters to its knowledge theory. And if the propositions truly are undisputed, there is no reason for BAT's retained expert to testify about them.

The case of *Coan v. Dunne*, 2019 WL 2169879, at *1–2 (D. Conn. May 17, 2019), which BAT relies on, likewise is unavailing. There, the proposed expert was permitted to discuss Irish property law to provide context for transfers of Irish real property, but the court expressly prohibited the expert from commenting on the evidence or opining "whether any particular document in this case is consistent with the law or standard practices." *Id.* at *2. BAT quotes *Coan*

for the proposition that "background and subsidiary principles of law" may sometimes help a jury understand conduct, Obj. at 10–11, but *Coan* requires that any such testimony must be "carefully circumscribed" so that the expert does not instruct on or apply the law. 2019 WL 2169879, at *2. Mr. Goodstein's case-specific CERCLA analysis is precisely what that limitation is designed to prevent.

In sum, BAT identifies no legal error in the Order. Judge Aaron explained the settled prohibition on expert interpretation and application of domestic law, recognized *Bilzerian*'s allowance for genuinely explanatory background testimony, and then found from Mr. Goodstein's actual report that Sections 1 and 2 go beyond that limited role. Order at 11–13. BAT's disagreement with that record based application of settled law does not render the Order "contrary to law" or clearly erroneous.

## III. Judge Aaron Independently and Properly Excluded Sections 1 and 2 of the Goodstein Report Under Rule 403.

Judge Aaron held that, "[e]ven assuming, arguendo, that Sections 1 and 2 of Mr. Goodstein's opinions were relevant," they still should be excluded under Rule 403 because of the danger of misleading the jury. Order at 12. That independent ruling provides a separate basis to reject BAT's objection.

If BAT can show superior knowledge on NCR's part (and it cannot), the factfinder would then be asked to decide what NCR actually knew and withheld in 1999. Mr. Goodstein, however, would present a retained CERCLA lawyer's view of what the law then provided, which elements were satisfied, what the remaining "key issue" was, and which facts affected NCR's potential exposure. Judge Aaron found that it would be confusing to present the jury with Mr. Goodstein's "subjective, controverted view" of what CERCLA law provided and how it would be applied. *Id.* at 12. He relied on *Ingredient Technology*, 698 F.2d at 97, which cautioned that it would be "very

confusing to a jury to have opposing opinions of law admitted into evidence as involving a factual question for them to decide."

BAT does not and cannot identify any clear error in that reasoning. It argues instead that Mr. Goodstein would make the case *easier* to understand because the jury needs his CERCLA framework before it can assess NCR's knowledge. Obj. at 14–15. But that is the very source of the confusion. The jury is not deciding NCR's arranger liability. Allowing Mr. Goodstein to provide the liability framework and apply it focuses the jury on an issue that is not actually before it.

BAT's reliance on Mr. Goodstein to describe a "typical" CERCLA investigation compounds the problem. BAT repeatedly asserts that NCR conducted an "extensive investigation into its arranger liability at the Kalamazoo River" and argues that Mr. Goodstein is needed so the jury can "appreciate the significance of this investigation." Obj. at 8. As argued above, this opinion is irrelevant because no question turns on the contents of a "typical" CERCLA investigation.

Beyond that, Mr. Goodstein's opinion has the potential to confuse the jury into thinking that he is telling them that such an investigation actually occurred. NCR disputes that it conducted an investigation into Kalamazoo River liability (as opposed to NCR's investigation regarding liability at the Fox River site, which did occur and involved, among many other pieces of information, examining public pleadings from litigation regarding the Kalamazoo River that raised issues similar to those the parties were then facing at the Fox River). If BAT wishes to prove that an investigation specific to potential liability at Kalamazoo River *did* occur, it must do so through documents and non-opinion witnesses, not by hanging an expert's opinion on the contents of a "typical" investigation and hoping the jury infers from that opinion that NCR must have conducted such an investigation.

Judge Aaron reasonably concluded that Sections 1 and 2—inviting the factfinder to substitute Mr. Goodstein's legal framework and hypothetical investigation for the historical evidence of what NCR actually knew and did—would do more to confuse than clarify.

**CONCLUSION**

For the foregoing reasons, the Court should overrule BAT's Partial Objection.

Dated: September 14, 2026
New York, New York

By: /s/ Zachary Payne
John J. Kuster
Zachary Payne
**SIDLEY AUSTIN LLP**
787 7th Avenue
New York, NY 10019
(212) 839-5300
jkuster@sidley.com
zpayne@sidley.com

Bruce R. Braun (admitted *pro hac vice*)
Charles K. Schafer (admitted *pro hac vice*)
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL 60603
(312) 853-7000
bbraun@sidley.com
cschafer@sidley.com

*Counsel for NCR Voyix Corporation*

## CERTIFICATE OF COMPLIANCE

I, Zachary Payne, certify that the foregoing NCR's Response to BAT's Partial Objection to the Opinion and Order Excluding Michael D. Goodstein contains 4,271 words, as calculated by Microsoft Word, excluding the portions of the document exempted from the word count.

NCR previously sought clarification from the Court as to whether the 3,500-word limit applicable to certain objections or the word-count limits in the Court's Individual Rules govern this briefing. The Court has not ruled on that request as of the time of filing. In the absence of further guidance, NCR has followed the same approach as BAT and complied with the word-count limit set forth in the Court's Individual Rules. NCR required the additional words to respond fully to BAT's 5,371-word Objection.

If the Court determines that the 3,500-word limit applies, NCR is prepared to file a shortened response, provided that BAT likewise is required to submit an Objection complying with the same limit.

Dated: September 14, 2026
New York, New York

/s/ Zachary Payne

Zachary Payne