**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**NCR Corporation,**

**Plaintiff,**

**-against-**

**B.A.T. Industries p.l.c.,**

**Defendant.**

**1:23-cv-01172 (JPC) (SDA)**

**OPINION AND ORDER**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

Pending before the Court is a Letter Motion by Defendant B.A.T Industries p.l.c. ("Defendant" or "BAT") to compel Plaintiff NCR Corporation ("Plaintiff" or "NCR") to produce 91 documents listed on NCR's amended privilege log. (Def.'s 9/22/26 Ltr. Mot., ECF No. 148.) For the reasons set forth below, Defendant's Letter Motion is DENIED.

**BACKGROUND**

Familiarity with the factual background of this action, which has been set forth in prior Opinions and Orders in this action, *see NCR Corp. v. B.A.T. Indus. P.L.C.*, No. 23-CV-01172 (JPC), 2024 WL 4188358 (S.D.N.Y. Sept. 14, 2024); *NCR Corp. v. B.A.T. Indus. p.l.c.*, No. 23-CV-01172 (JPC), 2025 WL 2780066 (S.D.N.Y. Sept. 30, 2025), is presumed.

On February 23, 2023, NCR commenced this action against BAT seeking a declaratory judgment that, under the terms of a 1998 Confidential Settlement Agreement ("CSA"), BAT is obligated to compensate NCR for sixty percent of the costs in certain environmental cleanup efforts at the Kalazamoo River in Michigan. *See NCR Corp.*, 2025 WL 2780066, at *1-3**.** On June 23, 2023, BAT filed its Answer and asserted five Counterclaims against NCR, seeking declaratory

judgments that either the CSA was void or BAT had no liability to NCR, as well as eight affirmative defenses. (*See* Ans. & Counterclaims, ECF No. 21.)

On September 14, 2024, Judge Cronan granted in part NCR's motion for judgment on the pleadings, dismissing several of BAT's Counterclaims and one of its affirmative defenses. *See NCR Corp.*, 2024 WL 4188358, at *18. Following Judge Cronan's Opinion and Order on the motion for judgment on the pleadings, only the first two of BAT's Counterclaims remain. *See id*. at *9-16. BAT's first Counterclaim alleges that, in order to induce BAT to enter into the CSA, NCR concealed the fact that it had intentionally arranged for discharges of polychlorinated biphenyls ("PCBs") into the Kalamazoo River and that it was fully aware of the likelihood of it being found liable for such discharges. (*See* Counterclaims ¶ 77.)[1] BAT's second Counterclaim similarly asserts that NCR misrepresented and concealed the fact that it had engaged in discharges of PCBs into the Kalamazoo River, thereby negligently inducing BAT to enter into the CSA. (*See id*. ¶¶ 87-94.)

On October 30, 2024, the Court entered a Case Management Plan establishing a fact discovery deadline of July 11, 2025, and an expert discovery deadline of October 13, 2025. (*See* Case Mgt. Plan, ECF No. 47, at 2-3.) On June 16, 2025, at the parties' request, the Court extended the fact discovery deadline to October 15, 2025, and the expert discovery deadline to January 16, 2026. (*See* 6/16/25 Mem. End., ECF No. 87.) On September 9, 2025, at the parties' request, the Court further extended the fact discovery deadline to December 19, 2025, and the expert discovery deadline to March 27, 2026. (*See* 9/9/25 Mem. End., ECF No. 97.) On October 28, 2025,

[1] BAT's Counterclaims appear starting at page 16 of its Answer and Counterclaims filed at ECF No. 21.

NCR provided a privilege log to BAT that listed and described 88 of the documents at issue in BAT's present Letter Motion. (*See* Pl.'s 9/25/26 Ltr. Resp., ECF No. 149, at 1 & n.1.)

On November 14, 2025, the parties filed a joint letter regarding the status of discovery, in which they advised the Court that "[t]he parties have exchanged privilege logs and have also exchanged letters with questions on each other's privilege logs[,]" and that "[t]he parties will endeavor to resolve any issues with respect thereto without Court involvement." (11/14/25 Jt. Ltr., ECF No. 100.) In the November 14, 2025 status letter, the parties requested another extension of the fact and expert discovery deadlines. (*See id*.) By Order, dated November 17, 2025, the Court extended the fact discovery deadline to February 19, 2026 and the expert discovery deadline to May 27, 2026, stating that "[t]he parties should expect no further extensions of discovery deadlines." (*See* 11/17/26 Mem. End., ECF No. 101.)

On December 29, 2025, NCR filed a letter regarding the status of discovery in which it stated:

> Since the last update on November 14, 2025, the parties have continued to exchange letters regarding each other's privilege logs, and the parties held a meet-and-confer session on December 19, 2025. The parties will continue to endeavor to resolve any issues with respect to privilege logs without Court involvement.

(Pl.'s 12/29/25 Ltr., ECF No. 102, at 1.) On December 30, 2025, BAT filed a letter concurring in the substance of NCR's December 29 letter. (*See* Def.'s 12/30/25 Ltr., ECF No. 103.)

In February 2026, NCR produced to BAT joint-defense time entries (referred to by BAT as "JDRA billing records").[2] (*See* Pl.'s 9/25/26 Ltr. Resp. at 1; *see also* Ex. C to Def.'s 9/22/26 Ltr.

[2] NCR entered into a Joint Defense and Representation Agreement with Appleton Papers Inc. ("API"), a BAT subsidiary, effective July 1, 1998 (the "JDRA"). Under the JDRA, NCR and API agreed to jointly engage Sidley Austin LLP ("Sidley") to investigate their potential liability at certain sites, including the Kalamazoo River site. (*See* Def.'s 9/22/26 Ltr. Mot. at 1.)

Mot., ECF No. 148-3.) On February 17, 2026, BAT took the deposition of J. Andrew Schlickman, NCR's lead lawyer on the JDRA ("Attorney Schlickman"). (*See* Def.'s 9/22/26 Ltr. Mot. at 3; Attorney Schlickman Dep., Ex. B to Def.'s 9/22/26 Ltr. Mot., ECF No. 148-2.) During that deposition, Attorney Schlickman testified about working very closely with attorneys for API and BAT on the factual investigation regarding the Fox and Kalamazoo Rivers. (*See* Def.'s 9/22/26 Ltr. Mot. at 2; Attorney Schlickman Dep. at 59.) On February 24, 2026, NCR provided its final privilege log to BAT. (*See* Pl.'s 9/25/26 Ltr. Resp. at 1 n.1; *see also* Ex. C to Def.'s 9/22/26 Ltr. Mot.)

On March 24, 2026, BAT filed a Letter Motion requesting a further extension of the fact and expert discovery deadlines, indicating that NCR did not oppose such request. (*See* Def.'s 3/24/26 Ltr. Mot., ECF No. 107.) On March 30, 2026, the Court entered an Order granting BAT's Letter Motion and extending the fact discovery deadline to May 1, 2026 and the expert discovery deadline to July 9, 2026. (*See* 3/30/26 Order, ECF No. 109.) The March 30, 2026 Order stated that "[a]ny further extension requests shall be granted only for a limited purpose and upon a substantial showing of good cause." (*Id*.)

On April 15, 2026, Attorney Schlickman provided Rule 30(b)(6) deposition testimony on behalf of NCR with respect to certain issues. (*See* Ex. B to Def.'s 9/22/26 Ltr. Mot. at PDF p. 5.) During that deposition, Attorney Schlickman was questioned by BAT about NCR's privilege logs and documents listed in the logs. (*See* Schlickman Rule 30(b)(b) Dep. at 415-25.)

On April 17, 2026, BAT filed a Letter Motion regarding NCR's "refusal to designate a 30(b)(6) witness to testify to critical issues relevant to this litigation." (Def.'s 4/17/26 Ltr. Mot., ECF No. 110, at 1.) On April 29, 2026, the Court granted in part and denied in part BAT's motion,

stating that the subject Rule 30(b)(6) deposition could be conducted after the May 1, 2026 discovery deadline. (*See* 4/29/26 Order, ECF No. 114.)

Thereafter, BAT proffered an expert disclosure report, dated May 15, 2026, by Michael D. Goodstein ("Goodstein"), an environmental attorney retained by BAT to review and summarize the caselaw regarding liability under the Comprehensive Environmental Response, Compensation and Liability Act that was in existence at the time of the CSA and describe how that legal framework could have been applied in 1999 to evaluate NCR's potential legal exposure for PCB contamination at the Kalamazoo River site (the "Goodstein Report"). (*See* Goodstein Rpt., ECF No. 128-1, at 3.) In reaching his opinions, Goodstein referred to and/or relied upon documents from Sidley's files, the JDRA and NCR's privilege logs. (*See id*. at 10-15 & Appendix B, items 146, 213 & 225.) On June 22, 2026, NCR filed a motion to exclude the Goodstein Report and Goodstein's opinions. (*See* Pl.'s 6/22/26 Not. of Mot., ECF No. 129.) On August 17, 2026, the undersigned granted NCR's motion in its entirety.[3] *See NCR Corp. v. B.A.T. Indus. P.L.C.*, No. 23-CV-01172 (JPC) (SDA), 2026 WL 2392197, at *8 (S.D.N.Y. Aug. 17, 2026).

On August 18, 2026, BAT sent a letter to NCR regarding NCR's privilege log, in which BAT stated, among other things, that, "[i]n the course of reconciling Sidley's JDRA billing records against [NCR's] Privilege Log, we have identified examples of documents referred to in the JDRA billing records which do not appear anywhere on the Privilege Log or in NCR's discovery." (8/18/26 Ltr. from BAT to NCR, ECF No. 148-4, at 8.) BAT argued in its letter that "NCR has waived privilege with respect to all documents referred to in the JDRA billing records, whether they have

[3] BAT's partial objection to the August 17, 2026 Opinion and Order (*see* Def.'s 8/31/26 Partial Obj., ECF No. 139) is *sub judice* before District Judge Cronan.

been included in the Privilege Log or are inexplicably absent therefrom." (*Id*.) BAT also argued in its letter that, based upon the deposition testimony of Attorney Schlickman, "NCR ha[d] waived privilege with respect to all documents relevant to NCR's potential CERCLA liability with respect to the Fox River, the Kalamazoo River, and other sites." (*Id*. at 6-7.) NCR refused to produce any of the documents identified by BAT, arguing, among other things, that BAT's request for additional documents was untimely since the fact discovery deadline had passed. (*See* Def.'s 9/22/26 Ltr. Mot. at 2; *see also* NCR 9/15/26 Ltr. to BAT, ECF No. 148-5, at 4.)

On September 22, 2026, BAT filed the Letter Motion currently before the Court seeking to compel NCR to produce 91 documents listed on NCR's amended privilege log. (*See* Def.'s 9/22/26 Ltr. Mot.) On September 25, 2026, NCR filed its response. (*See* Pl.'s 9/25/26 Ltr. Resp.) On September 28, 2026, BAT filed its reply. (*See* Def.'s 9/28/26 Reply, ECF No. 150.)

## LEGAL STANDARDS

Under Rule 16(b), district courts are required to enter scheduling orders that "limit the time to . . . complete discovery[.]"[4] Fed. R. Civ. P. 16(b)(3)(A). "Reopening discovery after the discovery period has closed requires a showing of good cause." *Gucci Am., Inc. v. Guess?, Inc.*, 790 F. Supp. 2d 136, 139 (S.D.N.Y. 2011) (citing *Gray v. Town of Darien*, 927 F.2d 69, 74 (2d Cir. 1991)). "Though Rule 37 does not establish time limits for such a motion, a party seeking to file a motion to compel after discovery has closed must similarly establish good cause." *Id*. at 139-40 (citing *Eng-Hatcher v. Sprint Nextel Corp*., No. 07-CV-07350 (BSJ) (KNF), 2008 WL 4104015, at *3 (S.D.N.Y. Aug. 28, 2008)). "Where a party is aware of the existence of documents or other

[4] Under this Court's local rules, "[i]n any case referred to a magistrate judge, the magistrate judge may issue or modify scheduling orders under Fed. R. Civ. P. 16(b)." S. & E.D.N.Y. Loc. Civ. R. 16.2.

information before the close of discovery and propounds requests after the deadline has passed, those requests should be denied." *Id*. at 140 (citing *Slomiak v. Bear Sterns & Co*., No. 83-CV-01542 (CSH), 1985 WL 410, at *1 (S.D.N.Y. Mar. 12, 1985)).

"'[T]he primary consideration' in determining whether good cause has been shown 'is whether the moving party can demonstrate diligence.'" *New York v. Mountain Tobacco Co*., No. 12-CV-06276 (JS) (SIL), 2015 WL 3455080, at *13 (E.D.N.Y. May 29, 2015) (quoting *Casagrande v. Norm. Bloom & Son, LLC*, No. 11-CV-01918, 2014 WL 5817562, at *2 (D. Conn. Nov. 10, 2014)); *see also Kassner v. 2nd Ave. Delicatessen Inc*., 496 F.3d 229, 244 (2d Cir. 2007). "In addition to diligence, other factors to consider when assessing whether to enlarge a discovery deadline include: (1) the imminence of a trial [Factor 1]; (2) whether the request is opposed [Factor 2]; (3) prejudice to the non-moving party [Factor 3]; (4) whether the moving party foresaw the need for additional discovery, in light of the discovery deadline set by the court [Factor 4]; and (5) whether further discovery is likely to lead to relevant evidence [Factor 5]." *Mountain Tobacco*, 2015 WL 3455080, at *13 (citing *Casagrande*, 2014 WL 5817562, at *6) (internal quotation marks omitted).

Ultimately, "[c]ourts possess extensive power to regulate discovery and enforce their scheduling orders." *Convolve, Inc. v. Compaq Comp. Corp*., No. 00-CV-05141 (GBD) (JCF), 2008 WL 5203675, at *2 (S.D.N.Y. Dec. 10, 2008). "The decision whether to reopen discovery is within a district court's discretion." *Moroughan v. County of Suffolk*, 320 F. Supp. 3d 511, 515 (E.D.N.Y. 2018).

## **DISCUSSION**

In its Letter Motion to compel, Defendant seeks two categories of documents. First, Defendant seeks production of 74 documents it refers to as "JDRA Documents," *i.e*., "documents

prepared as part of a joint defense engagement between NCR and non-party API." (Def.'s 9/22/26 Ltr. Mot. at 1; *see also* Ex. C to Def.'s 9/22/26 Ltr. Mot., ECF No. 148-3.) Second, Defendant seeks production of 17 documents it refers to as "NCR Only Documents," *i.e.*, documents created during NCR's separate investigation of "NCR's potential Kalamazoo liability." (Def.'s 9/22/26 Ltr. Mot. at 3; *see also* Ex. F to Def.'s 9/22/26 Ltr. Mot., ECF No. 148-6.) In order for Defendant to prevail on its motion to compel, the Court must reopen discovery since the fact discovery deadline expired on May 1, 2026. As explained below, applying the relevant factors, the Court, in its discretion, declines to reopen discovery because Defendant has not shown good cause.

As noted in the Legal Standards section above, the primary consideration in determining whether good cause has been shown is whether Defendant has demonstrated diligence. *See Kassner*, 496 F.3d at 244. Defendant plainly has not done so with respect to either the JDRA Documents or the NCR Only Documents. During the discovery period, the parties addressed Plaintiff's privilege logs between themselves, yet Defendant never sought relief from the Court. By February 2026, Defendant had available to it the information it now raises as the basis for its privilege challenges with respect to the JDRA Documents (*i.e.*, the JDRA billing records and Plaintiff's privilege logs). At the end of March 2026, the Court granted, at Defendant's request, what was the fourth extension of discovery deadlines in this case, setting a final fact discovery deadline of May 1, 2026, and stating that "[a]ny further extension requests shall be granted only for a limited purpose and upon a substantial showing of good cause." (*See* 3/30/26 Order, ECF No. 109.) By mid-April 2026, Defendant had the deposition testimony from Attorney Schlickman that is the basis for its privilege challenges with respect to the NCR Only Documents. By mid-May 2026, Defendant's proffered expert issued a report that addressed documents in Sidley's files,

having relied upon the JDRA and Plaintiff's privilege logs. (*See* Goodstein Rpt. at 10-15 & Appendix B, items 146, 213 & 225.) Yet, Defendant waited until August 18, 2026, the day after the Court granted Plaintiff's motion to exclude the Goodstein Report and Goodstein's opinions, *see NCR Corp.*, 2026 WL 2392197, at *8, to challenge Plaintiff's privilege assertions. (*See* 8/18/26 Ltr. from BAT to NCR.) In these circumstances, the Court finds that Defendant was not diligent in raising the privilege issues now before the Court. Thus, the primary consideration weighs against a finding of good cause to reopen discovery.[5]

Also weighing against a finding of good cause is the fact that Defendant's request to reopen discovery is opposed by Plaintiff (Factor 2). Moreover, Defendant reasonably should have foreseen the need to raise privilege assertions with the Court prior to the expiration of the extended discovery deadline (Factor 4).

With respect to Factor 5, on the current record before the Court, reopening discovery will not lead to the production of additional relevant evidence. Defendant's argument that the JDRA Documents should be produced because there are billing entries suggesting that such documents were created for both NCR and API (*see* Def.'s 9/22/26 Ltr. Mot. at 1; Def.'s 9/28/26 Reply at 2) is off the mark. Given Sidley's dual role – *i.e.*, performing work as counsel for NCR and performing work in the joint defense of NCR and API – the dispositive question is whether or not Sidley's privileged communications with NCR were shared with API. On that question, Plaintiff's counsel represented to the Court, as follows:

[5] Defendant seeks to justify its delay in bringing the instant motion by repeatedly referring to the "forensic examination" it conducted of Sidley's JDRA invoices as compared against NCR's final privilege log. (*See* Def.'s 9/22/26 Ltr. Mot. at 2-3; Def.'s 9/28/26 Reply at 3.) In that regard, the Court notes that, with tools available in modern litigation (including artificial intelligence tools), tasks that formerly took days or weeks to accomplish now can be done in a matter of minutes.

> As NCR conveyed to BAT last year, NCR's practice was to assess whether the documents at issue were specifically created for NCR, in which case they were withheld as privileged, or were created for both NCR and API, in which case they were not considered privileged as to BAT and were produced. Through its review, NCR determined that the contents of the withheld documents indicate that they were not shared with API as part of NCR's and API's joint-defense arrangements.

(Pl.'s 9/25/26 Ltr. Resp. at 2.) "In order for the Court to conduct proceedings properly, it must be able to rely upon representations made on the record by attorneys licensed to practice before it." *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 118 (S.D.N.Y. 2018).[6]

The fact that Sidley billed time spent creating the JDRA Documents to both NCR and API may be some evidence that the documents were shared by Sidley with both NCR and API. However, given the representation above that was made by NCR's counsel, it may be more likely that the Sidley timekeepers were imprecise in how they billed their time to NCR alone, on the one hand, and the joint defense, on the other. In order for the Court to compel NCR to produce to its communications with Sidley to BAT in this action, there would need to be further development of the record through additional discovery, including depositions, regarding whether such communications were shared with API. However, such development would prejudice Plaintiff due to delay in the case schedule and the expense associated with such additional discovery.[7] Thus, the Court finds that Factor 5 weighs against reopening discovery. *See*

---

[6] It is worth noting that, during Attorney Schlickman's deposition, BAT's counsel sought and obtained a representation from NCR's counsel that one of the documents on NCR's privilege log was not shared with BAT or API. (*See* Schlickman Dep. at 416-17.)

[7] In addition, the Court finds no basis for finding a waiver of privilege with respect to the NCR Only Documents identified in Exhibit F to Defendant's Letter Motion. In support of its argument that there has been a waiver of privilege, Defendant relies upon *In re Grand Jury Proc.*, 219 F.3d 175 (2d Cir. 2000). (*See* Def.'s 9/22/26 Ltr. Mot. at 3.) However, since Plaintiff has not disclosed the NCR Only Documents, and is not relying upon them in this action (*see* Pl.'s 9/25/26 Ltr. Resp. at 3), there has been no implied waiver of privilege. *See In re Grand Jury Proc.*, 219 F.3d at 182.

*Oliver v. Am. Express Co.*, No. 19-CV-00566 (NGG) (SJB), 2022 WL 18998430, at *7 (E.D.N.Y. Nov. 14, 2022) (stating in the context of Factor 5: "The speculative nature of Plaintiffs' arguments regarding the asserted attorney-client and work-product privileges reinforces the significance of Plaintiffs' failure to act in a timely manner.").

Because the primary consideration and most of the factors weigh against a determination of good cause, the Court declines to reopen discovery.[8]

## CONCLUSION

For the foregoing reasons, because the Court in its discretion declines to reopen discovery, Defendant's motion to compel (ECF No. 148) is DENIED.

**SO ORDERED.**

Dated: New York, New York
September 30, 2026

STEWART D. AARON
United States Magistrate Judge

[8] Based upon the record before it, the Court in its discretion declines to reopen discovery simply because trial is not imminent (Factor 1). *See Gao v. Savour Sichuan Inc.*, No. 19-CV-02515 (JPC)(KHP), 2021 WL 4892864, at *2 (S.D.N.Y. Oct. 20, 2021) ("Even though a trial date has not been set in this action and reopening discovery would not impact the timing of a trial, that is but one factor.").