UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NCR CORPORATION, Plaintiff, -v- B.A.T. INDUSTRIES P.L.C., Defendant. | : | 23 Civ. 1172 (JPC) (SDA) OPINION AND ORDER |

JOHN P. CRONAN, United States District Judge:

On September 22, 2026, Defendant B.A.T. Industries P.L.C. ("BAT") moved to compel Plaintiff NCR Corporation ("NCR") to produce ninety-one documents listed on NCR's privilege log. On September 30, 2026, the Honorable Stewart D. Aaron, to whom this case has been referred for supervision of pretrial proceedings, denied BAT's motion because discovery had closed and BAT failed to show good cause to reopen it. *See NCR Corp. v. B.A.T. Indus. P.L.C.* ("*NCR III*"), No. 23 Civ. 1172 (JPC) (SDA), 2026 WL 2929769 (S.D.N.Y. Sept. 30, 2026). BAT now objects to that ruling with respect to seventy-four of the documents, which BAT contends were created as part of a joint-defense engagement between NCR and BAT's former subsidiary, Appleton Papers Inc. Because Judge Aaron's denial of BAT's motion based on the absence of good cause to reopen discovery was neither clearly erroneous nor contrary to law, the Court overrules BAT's partial objection.

## I. Background

### A. Factual History[1]

The Court assumes familiarity with the facts and procedural history in this case, which were described at length in the Court's Opinions of September 14, 2024, *see NCR Corp. v. B.A.T. Indus. P.L.C.* ("*NCR I*"), No. 23 Civ. 1172 (JPC), 2024 WL 4188358, at *1-5 (S.D.N.Y. Sept. 14, 2024), and September 30, 2025, *see NCR Corp. v. B.A.T. Indus. P.L.C.* ("*NCR II*"), No. 23 Civ. 1172 (JPC), 2025 WL 2780066, at *2-4 (S.D.N.Y. Sept. 30, 2025). As such, the Court recites only the facts and procedural history relevant to BAT's partial objection.

Between 1954 and 1971, two mills located on the Fox River in Appleton, Wisconsin manufactured carbonless copy paper ("CCP"), which was used to create exact copies of documents. *Id.* at *2. Those two mills formed the Appleton Papers Division ("APD") of NCR. *Id.* In 1978, NCR sold APD's assets and liabilities to a subsidiary of BAT, which subsequently changed APD's name to Appleton Papers Inc. ("API"). *Id.* Over a decade later, BAT spun off its ownership of API. *Id.*

In 1994, the State of Wisconsin notified NCR and API that they were potentially responsible for cleanup costs and natural resource damage in the Fox River under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"). *Id.* As it turned out, CCP contained pollutants called polychlorinated biphenyls ("PCBs"). *Id.* Wisconsin alleged that APD directly discharged PCBs into the Fox River during the CCP manufacturing

[1] The Court relies herein on the parties' 1998 Confidential Settlement Agreement ("CSA"), Dkt. 31-1, as well as factual allegations in NCR's Complaint, Dkt. 1, that BAT has admitted in its Answer, Dkt. 21 at 1-16, or that are otherwise consistent with BAT's allegations in its Counterclaims, Dkt. 21 at 16-40. Any reference to allegations that have not been admitted is solely to provide narrative context for the nature of the present dispute.

process and also sold scrap paper produced as a byproduct of CCP manufacturing to brokers and paper recycling mills, which led to those mills also discharging PCBs into the Fox River. *Id.*

A dispute then arose between NCR, BAT, and API about which company should bear responsibility for the CERCLA costs. *Id.* After mediation, the parties entered into the CSA, under which the three parties agreed to "allocate as between themselves all Claims, Damages, and Defense Costs"—not just for the Fox River, but also for any "Future Sites." *Id.*

The Fox River has now been fully remediated, and API is bankrupt. *Id.* But a new remediation issue arose when the United States Environmental Protection Agency informed NCR that it was investigating whether a byproduct of Fox River CCP manufacturing had been sold to brokers and paper recyclers, which, in turn, polluted the Kalamazoo River in Michigan. *Id.* After NCR was found to be a responsible party under CERCLA and held liable for costs relating to the Kalamazoo River contamination, NCR agreed, pursuant to a consent decree, to clean up certain portions of the Kalamazoo River in return for a release of liability. *Id.* NCR alleges that its costs under the consent decree will exceed $350 million. *Id.* BAT's refusal to share in those costs gave rise to this lawsuit.

**B. Procedural History**

NCR initiated this action on February 10, 2023. Dkt. 1. On October 30, 2024, Judge Aaron entered the initial case management plan establishing deadlines for fact and expert discovery. Dkt. 47. Those discovery deadlines then were extended a number of times. Dkt. 87, 97, 101, 109.

On October 28, 2025, NCR produced its original privilege log, which listed and described eighty-eight of the ninety-one documents at issue in this motion. *See* Dkt. 149 ("Motion

Opposition") at 1 n.1; *see also* Dkt. 158 ("Objection") at 7 n.3.[2] On November 14, 2025, after receiving two extensions of the discovery deadlines, Dkts. 87, 97, the parties sent Judge Aaron a letter advising that they "have exchanged privilege logs and have also exchanged letters with questions on each other's privilege logs" and requesting a third discovery extension. Dkt. 100. Judge Aaron granted that request, extending the fact discovery deadline to February 19, 2026 and the expert discovery deadline to May 27, 2026, while warning that "[t]he parties should expect no further extensions of discovery deadlines." Dkt. 101.

NCR provided an amended privilege log on November 26, 2025, and its final privilege log on February 24, 2026. Motion Opposition at 1 n.1; Objection at 7 n.3. NCR maintains that, in February 2026, it also produced billing entries by attorneys of Sidley Austin LLP ("Sidley"), which was engaged pursuant to a Joint Defense and Representation Agreement (the "JDRA") between NCR and API to jointly investigate their potential liability for certain sites, including the Kalamazoo River site. Motion Opposition at 1. BAT does not dispute that NCR produced these billing entries. *See* Objection at 11 (admitting that "NCR also produced the JDRA [billing entries] in advance of the discovery deadline"). Those entries referenced seventy-four documents that were either on NCR's privilege log or were not produced at all. *See* Motion, Exh. C (comparison of entries between NCR's February 24, 2026 privilege log and Sidley attorneys' JDRA billing entries); Motion, Exh. D at 8 (correspondence, dated August 18, 2026, from BAT to NCR, arguing that NCR waived privilege over all the documents referred to in the JDRA billing entries, "whether they have been included in the Privilege Log or are inexplicably absent therefrom").

---

[2] NCR represents that it produced the remaining three documents in redacted form: two in November 2025 and one in January 2026 in response to an earlier privilege challenge by BAT. *See* Motion Opposition at 1 n.1.

On March 24, 2026, BAT requested a fourth extension of the fact and expert discovery deadlines. Dkt. 107. Judge Aaron granted the request and extended the fact discovery deadline to May 1, 2026 and the expert discovery deadline to July 9, 2026. Dkt. 109. That extension order emphasized that "[a]ny further extension requests shall be granted only for a limited purpose and upon a substantial showing of good cause." *Id.*

On August 18, 2026—three-and-a-half months after the fact discovery deadline, and following four prior discovery extensions—BAT sent a letter to NCR seeking production of ninety-one documents: seventy-four that Sidley attorneys referenced in their JDRA billing entries and that NCR had either logged as privileged or not produced, and seventeen prepared as part of NCR's separate investigation of its potential liability with respect to the Kalamazoo River cleanup. *See* Motion, Exh. D at 7-8 . BAT argued that NCR had waived privilege with respect to both sets of documents and therefore must produce them. *Id.* NCR declined to do so, citing, among other reasons, passage of the fact discovery deadline. Motion, Exh. E at 4. BAT then moved on September 22, 2026 to compel NCR to produce all ninety-one documents. Dkt. 148 ("Motion"). On September 25, 2026, NCR opposed the motion, Dkt. 149, and BAT replied on September 28, 2026, Dkt. 150.

On September 30, 2026, Judge Aaron issued an Opinion and Order denying BAT's motion in its entirety. *See NCR III*, 2026 WL 2929769. Judge Aaron determined that BAT failed to show good cause to reopen discovery, relying primarily on BAT's lack of diligence in raising the privilege issue with the Court. *Id.* at *4. Judge Aaron further noted NCR's opposition to reopening discovery, assessed that BAT should have foreseen the need to raise the issue earlier, and doubted that reopening discovery would lead to the production of additional relevant evidence. *Id.* at *5. On October 14, 2026, BAT filed a partial objection, objecting to Judge Aaron's ruling with respect

to the seventy-four documents referred to in Sidley's JDRA billing entries. Dkt. 158.[3] On October 28, 2026, NCR filed a response opposing BAT's partial objection. Dkt. 161 ("Response").

## II. Standard of Review

Under 28 U.S.C. § 636(b)(1)(A), a district judge may "designate a magistrate judge to hear and determine any [non-dispositive] pretrial matter," save for certain specifically enumerated exceptions. Magistrate judges have "broad discretion in resolving non-dispositive disputes." *Marotte v. City of New York*, No. 16 Civ. 8953 (GHW), 2017 WL 11105223, at *1 (S.D.N.Y. Oct. 6, 2017) (internal quotation marks omitted). "Matters concerning discovery generally are considered 'nondispositive' of the litigation." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990).

Under Federal Rule of Civil Procedure 72(a), a party may file objections to a non-dispositive order made by a magistrate judge, and the "district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "A magistrate [judge]'s ruling is contrary to law if it fails to apply or misapplies relevant statutes, case law, or rules of procedure, and is clearly erroneous if the district court is left with the definite and firm conviction that a mistake has been committed." *Stollman v. Williams*, No. 20 Civ. 8937 (JPC) (JW), 2022 WL 1772552, at *4 (S.D.N.Y. June 1, 2022) (alteration in original) (quoting *Thai Lao Lignite (Thai.) Co. v. Gov't of Lao People's Dem. Rep.*, 924 F. Supp. 2d 508, 512 (S.D.N.Y. 2013)). "The party seeking to overturn a magistrate

[3] BAT does not object to the denial of its motion to compel production of the remaining seventeen documents, *i.e.*, those created during NCR's independent investigation of its potential liability for environmental cleanup costs at the Kalamazoo River. Objection at 1 n.1. Accordingly, this Court addresses *infra* only Judge Aaron's denial with respect to the seventy-four documents referenced in Sidley's JDRA billing entries.

judge's decision thus carries a heavy burden." *U2 Home Ent., Inc. v. Hong Wei Int'l Trading Inc.*, No. 04 Civ. 6189 (JFK), 2007 WL 2327068, at *1 (S.D.N.Y. Aug. 13, 2007).

## III. Discussion

"A district court has broad discretion in deciding whether good cause exists to amend the scheduling order and reopen discovery." *Dominguez v. Thompson*, No. 24 Civ. 7119 (GHW), 2025 WL 2855263, at *12 (S.D.N.Y. Oct. 7, 2025) (citation modified); *see* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). "The burden of demonstrating good cause rests with the movant." *Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC*, 282 F.R.D. 76, 79 (S.D.N.Y. 2012) (citing *Holmes v. Grubman*, 568 F.3d 329, 334-35 (2d Cir. 2009)). While Rule 16 does not define "good cause," the Second Circuit has explained that "the diligence of the moving party" is at the center of the analysis. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000); *accord Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) ("A finding of good cause depends on the diligence of the moving party."); *see Ritchie Risk-Linked Strategies Trading (Ir.)*, 282 F.R.D. at 79 ("A party seeking to reopen expert discovery must show that the tardy submission of its desired expert report was not caused by the party's own lack of diligence."). Thus, "[t]o satisfy the good cause standard the party must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met." *Saray Dokum ve Madeni Aksam Sanayi Turizm A.S. v. MTS Logistics Inc.*, 335 F.R.D. 50, 52 (S.D.N.Y. 2020) (citation modified). In addition to diligence, courts consider several factors in "assessing a request to modify a scheduling order by reopening discovery, including: (1) the imminence of trial; (2) whether the request is opposed; (3) prejudice to the non-moving party; (4) whether the moving party foresaw the need for additional discovery, in light of the discovery deadline set by the court; and (5) whether further discovery is likely to

lead to relevant evidence." *Jeannite v. City of New York Dep't of Bldgs.*, No. 09 Civ. 3464 (DAB) (KNF), 2010 WL 2542050, at *2 (S.D.N.Y. June 21, 2010); *see also Saray Dokum ve Madeni Aksam Sanayi Turizm A.S.*, 335 F.R.D. at 52 (articulating the same factors, including diligence, as relevant to a showing of good cause).

Upon weighing these considerations, Judge Aaron concluded that BAT had not shown good cause to reopen discovery and therefore denied its motion to compel production of the ninety-one documents. *NCR III*, 2026 WL 2929769 at *4-5. BAT's objection focuses on Judge Aaron's determinations with respect to its diligence and the likelihood that the requested discovery would yield relevant evidence.[4] *See* Objection at 10-12, 13-15.

Describing BAT's lack of diligence as "the primary consideration," Judge Aaron observed that BAT "had available to it the information it now raises as the basis for its privilege challenges with respect to the JDRA Documents (*i.e.*, the JDRA billing records and Plaintiff's privilege logs)." *NCR III*, 2026 WL 2929769, at *4. Judge Aaron further noted that the parties had addressed the privilege log between themselves without seeking relief from the Court, even as he extended the discovery deadlines for the fourth time in March 2026. *Id.* He thus concluded that BAT was not diligent in raising the privilege issues with the Court. *Id.*

BAT nonetheless insists that it could not have foreseen the need to move to compel prior to the fact discovery deadline. Objection at 10. It maintains that in February 2026, when the final privilege log was provided by NCR, "there was no way to discern, on the face of the [privilege] log, that NCR was withholding JDRA documents." *Id.* at 11. BAT further contends that it relied upon NCR's representation that it did not consider the documents referenced in Sidley's JDRA

[4] BAT separately argues that granting its motion would not prejudice NCR because BAT "does not seek to 'reopen discovery,'" Objection at 12, but a request to compel the production of documents after the close of discovery is precisely a request to reopen discovery.

billing entries to be privileged. *Id.* But as BAT acknowledges, "NCR also produced the JDRA [billing entries] in advance of the discovery deadline." *Id.*; *accord* Motion Opposition at 1 (NCR representing that it provided "joint-defense attorney time entries" in February 2026); *see NCR III*, 2026 WL 2929769, at *4. BAT therefore had the information it needed to assess whether to challenge the privilege designations of the documents referenced in these billing entries for least two months before the final fact discovery deadline on May 1, 2026. Yet not only did BAT fail to raise this issue by that deadline, but over three months elapsed after the deadline before BAT even brought this issue to NCR's attention, and then over another month elapsed after that before BAT moved to compel. Judge Aaron did not clearly err in finding that BAT failed to act diligently.

Judge Aaron also found that the fifth factor—whether further discovery is likely to lead to relevant evidence—weighed against reopening discovery. In Judge Aaron's view, the fact that Sidley attorneys billed NCR and API jointly for work on the seventy-four documents was insufficient to establish that those documents were actually "shared by Sidley with both NCR and API," particularly in view of NCR's representation that, "[t]hrough its review, NCR determined that the contents of the withheld documents indicate that they were not shared with API as part of NCR's and API's joint-defense arrangements." *NCR III*, 2026 WL 2929769, at *5 (quoting Motion Opposition at 2). And confirming that those documents were shared with API, Judge Aaron reasoned, would require "further development of the record through additional discovery, including depositions," which would prejudice NCR. *Id.*

BAT objects to this finding on two grounds. First, BAT argues that Judge Aaron "applied the wrong standard to the determination of whether a document is privileged" by treating a document as unprivileged only if it was *shared* with API. Objection at 3-4, 13-14. In BAT's view, a document is unprivileged so long as it was *generated* pursuant to the JDRA. *Id.* at 14. And

because "Sidley's own billing records stated that the [seventy-four] documents were prepared pursuant to the JDRA and were billed jointly to both NCR and API," those documents are clearly unprivileged as to BAT. *Id.* at 4 (emphasis omitted). But BAT still has not shown that those documents were generated for both NCR and API. Presented with two competing accounts—BAT's assertion of non-privilege based on its speculation of how Sidley attorneys billed their time and NCR's assertion of privilege based on its review of the documents themselves—Judge Aaron did not clearly err in concluding that more discovery would be necessary to determine whether the documents were in fact privileged.

BAT's second argument with respect to this fifth factor is that Judge Aaron erred in doubting that "the 74 documents were actually JDRA documents." Objection at 4 (citing *NCR III*, 2026 WL 2929769, at *5). Judge Aaron commented that, in light of "Sidley's dual role" in "performing work as counsel for NCR and performing work in the joint defense of NCR and API," "it may be more likely that the Sidley timekeepers were imprecise in how they billed their time to NCR alone, on the one hand, and the joint defense, on the other." *NCR III*, 2026 WL 2929769, at *5. In light of the conflicting evidence, Judge Aaron's observation that Sidley's timekeepers may have been imprecise was a permissible inference from the record, and it certainly does not leave the Court with a "definite and firm conviction that a mistake has been committed." *Stollman*, 2022 WL 1772552, at *4 (citation modified).

The Court also finds no clear error in Judge Aaron's determinations that the second, third, and fourth factors weigh against BAT as well. *See NCR III*, 2026 WL 2929769, at *5. As to the second factor, NCR plainly opposes BAT's request. *See* Motion Opposition at 2 (citing the close of discovery). Next, as noted, Judge Aaron found that additional discovery would be needed to resolve the parties' privilege dispute, which would prejudice NCR by causing delay and additional

expense. *See NCR III*, 2026 WL 2929769, at *5. The undersigned agrees with that assessment. With respect to the fourth factor, BAT's foreseeability arguments, which largely overlap with its diligence arguments, *see* Objection at 10-12, fail for reasons discussed. As Judge Aaron explained, BAT "reasonably should have foreseen the need to raise privilege assertions with the Court prior to the expiration of the extended discovery deadline." *NCR III*, 2026 WL 2929769, at *5. Although Judge Aaron recognized that trial was not imminent so the first factor weighs in BAT's favor, he concluded that this factor could not overcome the weight of the remaining factors, particularly given BAT's lack of diligence. *Id.* at *6 & n.8.

Judge Aaron acted well within his discretion in finding that BAT failed to show good cause for reopening discovery. This Court therefore concludes that Judge Aaron did not clearly err in denying BAT's motion to compel discovery, filed several months after fact discovery had closed, of the seventy-four documents referenced in the JDRA billing entries.

## IV. Conclusion

For the foregoing reasons, BAT's partial objection to Judge Aaron's September 30, 2026 Opinion and Order denying BAT's motion to compel is overruled and that Opinion is affirmed.

SO ORDERED.

Dated: November 11, 2026
New York, New York

JOHN P. CRONAN
United States District Judge